UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
In Re: COLUMBIA ENTITIES LITIGATION )   CA No: 04-11704-REK
                                    )   ALL CASES
_____ )


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR APPOINTMENT OF CO-LEAD
<u>COUNSEL AND APPOINTMENT OF LIAISON COUNSEL</u>**

Plaintiffs Joan Cohen, Gene F. Osburn, Paula Slicker, Jean S.B. Simmonds and R.L. Simmonds (collectively, the "Plaintiffs"), by their counsel, submit this Reply Memorandum in Further Support of Their Motion for Appointment of Co-Lead Counsel and Liaison Counsel, approving Plaintiffs' selection of: (i) Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Stull, Stull & Brody as Co-Lead Counsel to oversee the above-captioned actions (the "Actions"); and (ii) Moulton & Gans, P.C. as Liaison Counsel (collectively, "Plaintiffs' Counsel").

## INTRODUCTION

As of September 10, 2004, there were four related actions pending in this District brought on behalf of a class of investors (the "class") in mutual funds belonging to the FleetBoston Financial Corporation ("FleetBoston") which include the Columbia Funds, and derivatively on behalf of the Columbia Funds, against the Columbia Funds investment advisers, their corporate parents and the Columbia Funds directors, during a class period beginning August 2, 1999 and ending March 22, 2004. The Actions allege a variety of claims, specifically violations of Sections 34(b), 36(b) and 48(a) of the Investment Company Act of 1940 (the "Investment Company Act"), violations of Sections 206 and 215 of the Investment Advisers Act of 1940 (the "Investment Advisers Act"), breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty.

In their Motion for Appointment of Co-Lead Counsel and Liaison Counsel, Plaintiffs' Counsel argued that such appointment was proper because of their extensive experience in the prosecution of shareholder class and derivative actions, their track record in such cases and their resources to efficiently conduct such cases. No other plaintiffs' counsel filed any competing motions. Nonetheless, Defendants now argue that Plaintiffs' Counsel should not be appointed as

Co-Lead and Liaison Counsel. Defendants do not dispute Plaintiffs' Counsel's experience, track record or resources, but instead make two arguments to prevent such appointment, neither of which has any merit.

First, Defendants claim that this case falls under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). They argue that that statute's "lead plaintiff" provisions apply and Plaintiffs have not complied with them. This is untrue. Because none of Plaintiffs' claims is brought under the Securities and Exchange Act of 1934 (the "Exchange Act"), Defendants' assertion that the PSLRA applies is flat-out wrong. In fact, in a virtually identical case, a court recently held that the very same causes of action did not fall under the PSLRA. *See In re Lord Abbett Mutual Funds Fee Litig.*, No. 04-CV-559 (D.N.J.) (WJM) (RJH). As such, the PSLRA "lead plaintiff" provisions do not apply and this argument should be rejected.

Defendants next attempt to fabricate the existence of a conflict of interest by Plaintiffs' Counsel arising from their concurrent representation in the Columbia Market-Timing Multi-District Litigation ("MDL") case pending in the District of Maryland, and also as a result of their simultaneous prosecution of class and derivative claims here. However, both of these arguments are based upon the incorrect premise that the Columbia Funds are named as Defendants. Again, this is untrue. The Columbia Funds have not been named as Defendants either in this litigation or in the Market-Timing case. *See* Declaration of Clifford Goodstein, submitted concurrently herewith ("Goodstein Dec."). Therefore, Plaintiffs' Counsel have no conflicts of interest because none of their clients is adverse to one another in any of the mutual fund cases and, instead, their interests are perfectly aligned to seek the maximum recovery from common wrongdoers who run the Funds and are supposed to be fiduciaries for the Funds. Accordingly, Defendants' baseless supposed conflict argument should be rejected.

For the reasons stated in their opening motion and memorandum and below, Plaintiffs' Counsel are eminently qualified to serve as Co-Lead and Liaison Counsel in this case, and they should be so appointed.

## ARGUMENT

**I.     DEFENDANTS INCORRECTLY ARGUE THAT THE PSLRA APPLIES**

Defendants argue that appointment of Co-Lead and Liaison counsel for Plaintiffs is premature and inappropriate because "lead plaintiffs" first need to be appointed pursuant to the PSLRA.  Def. Memo. at 4-7.  This argument is just plain wrong.  First, as Defendants well know, there are no claims in the Complaint brought under the PSLRA.  Rather, as demonstrated by even a cursory review of the Complaint, this case concerns allegations for violations of the following:

- Sections 34(b), 36(b), and 48(a) of the Investment Company Act;
- Sections 206 and 215 of the Investment Advisers Act;
- Breaches of fiduciary duty under state law; and
- Aiding and Abetting under state law.

Nowhere do Plaintiffs allege a violation of the Exchange Act, which is governed by the PSLRA. Instead, the federal counts in the Complaint allege that Defendants violated the Investment Advisers Act and the Investment Company Act by, *inter alia*, collecting excessive fees from mutual fund shareholders.  The excessive fees took many forms, including excessive adviser fees, excessive 12b-1 fees, improper directed brokerage, and improper use of soft dollars.[1]

---

[1] Soft Dollars are the commission amounts charged by brokerages to investment advisers in excess of the purchase and sales charges for a transaction.

3

In a virtually identical action, *In Re Lord Abbett Mutual Funds Fee Litig.*, No. 04-cv-559 (D.N.J.) (WJM) (RJH), on October 18, 2004, the Magistrate Judge ruled that these same causes of action did not fall under the PSLRA. (A copy of this order is attached hereto as Exhibit A.). The Magistrate Judge's order was affirmed by the District Court. Thus, as *Lord Abbett* held, the PSLRA has no relevance here and its lead plaintiff provisions do not apply.

Realizing that the Complaint does not allege any claims under the PSLRA, in a back door attempt to somehow nonetheless invoke the PSLRA requirements for appointment of lead plaintiff, Defendants, in a footnote, argue that Plaintiffs have brought a claim under Section 28(e) of the Exchange Act. Def. Memo. at 4 n.5. No such claim has been asserted. That is because no such claim exists. Section 28(e) creates a safe harbor for soft dollar payments by providing that fund managers shall not be deemed to have breached their fiduciary duties "solely by reason of [their] having caused the account to pay a . . . broker . . . in excess of the amount of commission another . . . broker . . . would have charged for effecting that transaction, if such person determined in good faith that such amount of commission was reasonable in relation to the value of the brokerage and research services provided." 15 U.S.C. § 78bb(e)(1). Thus, Section 28(e) serves as a potential defense against allegations, like those here, that Defendants breached their fiduciary duties under the Investment Company Act and the Investment Advisers Act through the collection and subsequent payment to brokers of soft dollars that were not covered by the Section 28(e) safe harbor. *See In the Matter of Kingsley, Jennison, McNulty & Morse Inc.*, Admin. Proc. File No. 3-7446, 1993 SEC LEXIS 3551, at *9 (S.E.C. Dec. 23, 1993) ("Section 28(e) thus provides a limited exception from fiduciary standards for the use of client commissions to obtain brokerage and research services."); *The Police Ret. Sys. of St. Louis v.*

4

*Midwest Inv. Advisory Serv., Inc.*, 940 F.2d 351, 356 (8th Cir. 1991) (at trial, defendants "sought to explain and justify their soft-dollar agreements through § 28(e)").[2]

Thus, there is no claim asserted under Section 28(e). Section 28(e) is mentioned in the Complaint only to explain that the safe harbor does not apply. As such, the PSLRA, which does not apply to the Investment Company Act or Investment Adviser Act claims, does not apply in this case. Since the PSLRA does not apply here, neither do its procedural requirements. Defendants' arguments to the contrary should be rejected out of hand.[3]

## II.  THERE ARE NO CONFLICTS THAT PREVENT CO-LEAD COUNSEL AND LIAISON COUNSEL FROM REPRESENTING PLAINTIFFS IN THIS CASE

Defendants also argue that there are supposedly two layers of conflicts that prevent counsel from adequately representing Plaintiffs, one purportedly as a result of counsel's

---

[2] The legal standard for removal of a state law claim to federal court is instructive in demonstrating that Plaintiffs' claims do not arise under the Exchange Act, and therefore the PSLRA does not apply. "It is well-established that to determine whether the claim arises under federal law, [courts] examine the 'well-pleaded' allegations of the complaint and ignore potential defenses. . . ." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig*., 2004 U.S. Dist. LEXIS 13135, at *11 (S.D.N.Y. July 13, 2004) ((citation omitted). Thus, the potential defense under Section 28(e) should be ignored for the purpose of determining whether the PSLRA applies. The well-pleaded allegations of Plaintiffs' Complaint allege claims under the Investment Company Act and the Investment Advisers Act, and not the Exchange Act.

[3] Defendants suggest that Plaintiffs improperly seek to represent all investors of the fund complex, even though they are only invested in two funds. Def. Memo . at 6. Plaintiffs will fully address this argument when it is properly raised, most likely on Defendants' motion(s) to dismiss or class certification. However, among other things, the juridical link doctrine would apply here since efficiency and expediency allow plaintiffs to join together numerous defendants to address common wrongs. "The Doctrine is a powerful tool that can allow a plaintiff's lawyer to force many defendants (and what might otherwise be numerous class actions) into a single lawsuit at a substantially reduced cost." *In Re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 2004 U.S. Dist. LEXIS 8158, at *108 (S.D. Tex. Feb. 24, 2004); *see also Payton v. Country of Kane*, 308 F.3d 673, 678 (7th Cir. 2002) ("if the plaintiffs as a group -- named and unnamed -- have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or 'otherwise juridically related in a manner that suggests a single resolution of the dispute would be expeditious, the claim could go forward.'"). The rationale of the juridical link doctrine is wholly applicable in the mutual funds context, where the Funds' common corporate parents, common distributors and common investment advisers dominate and control the operations of the mutual funds they offer.

5

concurrent representation in the Columbia Market-Timing case and the other as a result of their simultaneous prosecution of class and derivative claims here. Def. Memo. at 7. However, Defendants are incorrect on both of their assertions because they rely on the factually erroneous premise that the Funds are named as defendants. They are not and there is no conflict of interest and no violation of Massachusetts Disciplinary Rules of Professional Conduct or any other rules.

A. **As the Columbia Mutual Funds are not Named Defendants in Any Case Brought by Plaintiffs or their Counsel, there is No Conflict of Interest With The Market-Timing Cases**

Defendants' main argument is that counsel for Plaintiffs have disqualifying conflicts because they are purportedly suing the same Columbia Funds in the Columbia Market-Timing case that they simultaneously seek to represent in the derivative claims here. Def. Memo. at 7-10. The fundamental assumption supporting this argument -- that the Funds themselves are named as defendants in the Market-Timing case -- is untrue: **the Columbia Funds are not named as defendants in the Market-Timing case.** *See* Goodstein Dec. As with the Defendants' incorrect assertion that this is a PSLRA case, this erroneous argument should be rejected out of hand.

The MDL action covers Market-Timing cases, including class actions, derivative actions, and ERISA actions, for 17 different mutual fund families and dozens of other participants in the Market-Timing activities. Defendants in the action concerning the Columbia mutual fund family included the parent company FleetBoston (now Bank of America Corporation); Columbia Management Group, whose wholly-owned subsidiaries (also named as defendants) include the investment advisers to and distributor of the Columbia Funds; the Columbia Funds' transfer agent; the Registrants of the Funds and certain of their trustees and directors; certain hedge funds and other market timers; and the clearing companies.

6

The MDL action alleges that Defendants participated in a pattern of trading practices known as "market timing" or "late trading." Market timing is a practice whereby investors take advantage of inefficiencies in the pricing of mutual fund shares by rapidly trading in and out on multiple occasions within a short period of time. Through the rapid execution of a significant number of trades, market timers profit by capitalizing on the differential between the price of the mutual fund itself, and the value of the underlying securities that comprise the mutual fund. Late trading is a variation on this scheme, in which certain investors are permitted to trade mutual fund shares at the prior day's prices, in violation of federal law. Market timing causes significant monetary harm to fund investors because market timers, by quickly trading in and out of the funds, dilute the investment gains that would otherwise be realized by long-term investors and because market timers cause long-term investors to disproportionately bear investment losses. In addition, market timers impose additional transaction costs upon fund investors due to the huge inflows of cash resulting from their rapid trading. As a result of the rapid trading by market timers, portfolio managers must invest disproportionate amounts of fund assets in cash and other highly liquid assets, paying a significantly lower rate of return than other assets. The MDL plaintiffs allege that although the Columbia defendants had policies prohibiting market timing, they permitted market timing to occur. The MDL plaintiffs further allege that the Columbia defendants encouraged and facilitated market timing in order to increase the assets of the funds and thereby increase management fees.

The structure of the MDL action is set forth in Case Management Order No. 1 ("CMO No. 1"). CMO No. 1 was the product of discussions and negotiations among all plaintiffs' counsel. CMO No. 1 divided the 17 mutual fund families into four tracks; each track has a chair/administrative counsel for plaintiffs. Milberg Weiss (through partner David J. Bershad)

and Bernstein Litowitz (through partner Alan Schulman) are plaintiffs' co-chairs and chief administrative counsel for the MDL action. The duties of the co-chairs are: (1) to serve as a contact point for defense counsel on track-wide administrative issues; (2) to organize monthly conference calls among plaintiffs in the track and other track-wide proceedings; and (3) to serve as the primary spokespersons in conferences and hearings on track-wide issues.

Each of the four tracks contains a subtrack for each fund family assigned to that track. The MDL Court appointed a lead plaintiff and lead counsel for each subtrack. Jackie Williams and Milberg Weiss are Lead Plaintiff and Lead Counsel, respectively, in the Columbia subtrack. *See* Goodstein Dec. at ¶ 2. The Columbia subtrack also includes a derivative case that has separate representation. The Columbia class action and derivative action are coordinated for pretrial purposes. The MDL action is overseen by a panel of four judges: the Honorable Catherine C. Blake, the Honorable Andre M. Davis, the Honorable J. Frederick Motz, and the Honorable Frederick Stamp (the "MDL Court"). In many of the actions that were transferred to the MDL Court, the original complaints had named the mutual funds, including the Columbia Funds, as defendants. The MDL Court, however, questioned whether any funds should be named defendants. As expressed at a hearing on April 2, 2004, before the four judge MDL panel with all market-timing counsel participating:

> . . . are the plaintiffs in the investor classes really looking for the funds as the source of payment? I understand the legal theory why the fund's named as a defendant, because of the prospectuses were put out by the fund. And I understand that some injunctive relief may relate to the fund.
>
> To me, sitting here in the provinces, it doesn't make a lot of sense to me, and maybe I'm not understanding something, why one group of people who own mutual funds, people who, say, maybe bought and sold, should recover against people who still hold the funds. I mean, that's like one average Joe being victimized by the conduct of third parties allegedly, and then being victimized again by having to compensate the plaintiffs who have already sold.

8

> Maybe I'm missing something. But these are the kind of things we want you to focus on.

Transcript of Court Hearing in *In re: Mutual Funds Investment Litigation*, MDL No. 1586 (D. Md. Apr. 2, 2004) at 16 ("MDL Hearing Transcript").

One of the numerous plaintiffs' counsel at the MDL hearing, David Bershad of Milberg Weiss, agreed with the MDL Court that the issue of naming the Funds as defendants needed to be addressed in the amended complaints:

> We, on the class side, are cognizant of the issue brought up – do we want to take money from the fund and give it to other people who are in the fund? There are lots of issues that we can begin to address and we don't know the answers to, such as whether there is insurance, whether there may be individuals who should be doing something. But we are going to address that and do it collegially with other counsel in the entire plaintiffs' camp.

MDL Hearing Transcript at 40. As MDL counsel explained at the April 2, 2004 Hearing, there were other reasons to name the Funds in the MDL original complaints, including insurance considerations. However, a consolidated amended complaint was filed on September 29, 2004 in the Columbia MDL action and, consistent with the comments by the MDL Court, the Columbia Funds were ***not*** named as defendants. In fact, individual mutual funds were not named as defendants in any of the Amended Complaints filed in the MDL actions. The MDL plaintiffs all agreed that the Funds should not be named as defendants in the MDL actions. Instead, the Funds were named as non-parties in the amended complaints and the entities that are the legal registrants for the Funds and the issuers of the funds' shares (the "Registrants") were named as defendants.

The Registrants were named as defendants to seek recovery from any assets they hold apart from investor deposits (including securities, cash, or other assets related to or traceable thereto), and to ensure the fullest possible recovery for the injured investors based upon the

9

various theories of liability, many of which stem from alleged Registrant misconduct. *See* Goodstein Dec. at ¶ 4. To the extent the Registrants may have monies beyond the Fund assets, recovery may be sought. But a recovery from the assets of the Funds is not being sought in the MDL action because, as the MDL Court recognized, doing so would be the same as seeking a recovery from the plaintiff shareholders.

Thus, because the Funds are not named as defendants in the Market-Timing case, there is no conflict of interest by counsel due to their concurrent representation. Rule 1.7 of the Massachusetts Rules of Professional Conduct is not even implicated because none of the clients is adverse to one another. In fact, all clients in both sets of cases seek recovery only from wrongdoers who run the Funds (not the Funds themselves). Defendants have not offered a shred of evidence that a single shareholder in either set of cases perceives counsel is disloyal or adverse. Instead, the cases are complementary and will likely benefit many of the same investors. Accordingly, there is no perceived or actual conflict here with Plaintiffs' Counsel's representation in both cases.[4]

**B.   There are no Conflicts of Interest Between the Class and Derivative Claims in this Case**

Defendants argue, in a footnote, that there is an internal conflict preventing Plaintiffs' counsel from adequately prosecuting both the class and derivative claims "because recovery in a class suit typically reduces the potential recovery in a derivative suit." Def. Memo. at 7 n.9.

---

[4] The cases cited by Defendants can be readily distinguished from the present situation. *Bloomenthal v. Halstrom,* 1999 WL 1318980 (Mass. Super. Ct. Mar. 16, 1999) involved an attorney who provided advice to victims of a fire and also the company who was allegedly liable for the fire, thereby creating divided loyalties and a conflict of interest. Here, Plaintiffs' counsel are not attempting to simultaneously advise adverse parties. Furthermore, *Gaumer v. McDaniel*, 811 F. Supp. 1113, 1117 (D. Md. 1991), is not applicable here since the court found no conflict existed where a law firm merger resulted in an attorney bringing a case against a former client because the cases were not "substantially related." Finally, *McCourt Co. v. FPC Props., Inc.*, 386 Mass. 145, 434 N.E. 2d 1234 (1982) involved an attorney who represented a client in a lawsuit, and then in a subsequent case represented an adverse party of the former client. This has no relevance here.

First, this theoretical musing has no basis. Second, the supposed conflict simply does not exist. The class and derivative claims here both seek to recover monies from the same wrongdoers – those entities and individuals who run the Funds and have fiduciary duties to protect the Funds and their shareholders. Plaintiffs have **not** sued the Funds in this case. As such, the class and derivative claims are consistent and complementary because they seek to return *all* shareholders – both current and former – to the *status quo* they would have enjoyed absent the wrongdoing.

The cases on which Defendants rely all suffer from the same fatal flaw: they all involve situations where the plaintiffs are simultaneously suing the same defendant(s) they are representing in a derivative capacity. That is not the situation here. For example, in *Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101 (S.D.N.Y. 1990), on which Defendants rely, the subject companies were defendants on the class claims as well as nominal defendants on the derivative claims, creating a potential conflict. In contrast, the Columbia Funds are not named as defendants in this case. [5]

Moreover, even if it were true (which it is not) that Plaintiffs were suing the same Defendants on whose behalf they were bringing the claims, "it is well-settled that shareholders have the right to bring direct and derivative actions simultaneously."[6] Courts have held that there is no *per se* conflict, and a single counsel *can* represent both class and derivative actions when both are based upon proof of the same nucleus of facts and counsel can attack all fronts

---

[5] *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986), cited by Defendants, stated only that "suing in both an individual and derivative capacity presents a substantial *potential* for conflict," demonstrating that there is not a *per se* rule prohibiting such representation. *Id.* (emphasis added); *see also Koenig v. Benson*, 117 F.R.D. 330, 334 (E.D.N.Y. 1987), also cited by Defendants (bringing direct and derivative actions simultaneously does not create a *per se* conflict of interest).

[6] *In re Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978) (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964)); *Yamamoto v. Omiya*, 564 F.2d 1319, 1326 (9th Cir. 1977) (explicitly recognizing the right of a shareholder to bring both direct and derivative actions).

with equal vigor.[7] The court in *Bertozzi*, 420 F. Supp. at 1180, certified a class action upon finding that the plaintiffs' success in prosecuting both class and derivative actions was "equally contingent upon the proof of the same nucleus of facts" and that "they and their counsel can be expected to attack all fronts with equal vigor."

In this Action, Plaintiffs will prove their class and derivative claims based on the "same nucleus of facts." Plaintiffs allege that Defendants embarked on a single course of conduct by which they enriched themselves at the expense of both the Funds and their shareholders. In demonstrating Defendants' wrongful conduct, Lead Counsel will necessarily show the same nucleus of facts for both the class and derivative claims. Therefore, the interests of both current and former shareholders, as well as the Funds, are perfectly aligned against the common wrongdoers.

Furthermore, any discussion about a conflict regarding the allocation of a recovery among different categories of class members is premature. Def. Memo. at 8. As one court stated:

> "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7 Wright & Miller, [Federal Practice and Procedure: Civil], § 1768 at 639. . . . There is no conflict of interest among class members regarding [the] central issue [of liability] . . . . *The potential conflict troubling the defendants can arise only at the remedy stage of litigation, and only if the basic question of the defendants' liability is first resolved in the plaintiffs' favor.* . . . If the potential conflict . . . should materialize when and if remedy proceedings

---

[7] *See Transocean*, 455 F. Supp. at 1014 ("the great weight of authority rejects a *Per se* rule prohibiting such representation, and simultaneous prosecutions have been permitted where the asserted 'antagonism' between the primary and derivative actions is merely a 'surface duality'") (citation omitted); *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984) ("the Court agrees with Plaintiff that the case law is virtually unanimous in holding that one counsel can represent a stockholder bringing *both* an individual *and* a derivative action.") (emphasis in original); *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976) (noting that the distinction between a derivative and direct action is a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are "equally contingent upon the proof of the same nucleus of facts"); *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 (S.D.N.Y. 1976) (a party bringing suit in both an individual and derivative capacity can avoid a potential conflict of interest by showing that he can "fairly and adequately represent the interests of the shareholders . . . in enforcing the right of the corporation.").

are reached in this case, Rule 23 gives this court sufficient flexibility to take appropriate corrective measures at that time.

*Lamphere v. Brown University*, 71 F.R.D. 641, 650 (D.R.I. 1976) (emphasis added); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Bradburn Parent/Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing Company)*, 2004 U.S. Dist. LEXIS 16193, at *14 (E.D. Pa. Aug. 17, 2004).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant Plaintiffs' motion to appoint Milberg Weiss and Stull, Stull & Brody as Co-Lead Counsel, and Moulton & Gans, P.C. as Liaison Counsel.

Dated:  April 6, 2005

Respectfully submitted,

**MOULTON & GANS, P.C.**

By:____/s/ Nancy Freeman Gans_____
    Nancy Freeman Gans (BBO #184540)

33 Broad Street, Suite 1100
Boston, Massachusetts  02109-4216
(617) 369-7979

*Counsel for Plaintiffs Joan Cohen, Gene F. Osburn, Jean S.B. Simmonds and R.L. Simmonds and Proposed Liaison Counsel*

**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, NewYork  10119-0165
(212) 594-5300

*Counsel for Plaintiff Joan Cohen and Proposed Co-Lead Counsel*

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

*Counsel for Plaintiffs Gene F. Osburn, Jean S.B. Simmonds and R.L. Simmonds and Proposed Co-Lead Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiff Joan Cohen*

**WEISS & LURIE**
Joseph H. Weiss
Richard A. Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiffs Gene F. Osburn, Jean S.B. Simmonds and R.L. Simmonds*

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
280 King of Prussia Road
Radnor, Pennsylvania  19087
(610) 667-7706

*Counsel for Plaintiff Paul Slicker*

**GILMAN AND PASTOR, LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
(781) 231-7850

*Counsel for Plaintiff Paul Slicker*

## CERTIFICATE OF SERVICE

    I, Daniel P. Dietrich, hereby certify that I served a copy of the foregoing document upon counsel for all parties this 6th day of April, 2005.

/s/ Daniel P. Dietrich
Daniel P. Dietrich