# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: COLUMBIA ENTITIES LITIGATION | ) Civil Action No. 04cv11704 (REK)<br>)<br>) Consolidated Case Nos.:<br>) 04cv11750<br>) 04cv11760<br>) 04cv11953<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR APPOINTMENT OF CO-LEAD COUNSEL AND APPOINTMENT OF LIAISON COUNSEL

**TABLE OF CONTENTS**

                                                                                    Page

PRELIMINARY STATEMENT ................................................................................1

PROCEDURAL HISTORY......................................................................................5

ARGUMENT ..........................................................................................................6

POINT I

PLAINTIFFS' COUNSEL'S CONCURRENT REPRESENTATION OF
PLAINTIFFS IN THIS ACTION AND IN THE COLUMBIA MARKET-TIMING
LITIGATION PRESENTS NO ACTUAL OR POTENTIAL CONFLICT OF
INTEREST AND, AFTER FULL CONSULTATION, PLAINTIFFS HAVE
CONSENTED TO AND ENDORSE THIS REPRESENTATION.........................................6

      A.    The Funds Were Dropped As Defendants In All The MDL Timing
           Cases Because Of A Recognition By MDL Plaintiffs' Counsel and
           the MDL Court That Seeking Recovery From Fund Assets Would
           Impair, Not Benefit, The Interests Of The Class Members ........................6

      B.    The Market Timing Lead Plaintiff And Counsel Have Not Sued the
           Columbia Funds, and Have Committed Themselves, On The
           Record, To Drop The Timing Claims Against The Registrants If
           The Registrants Have No Assets Other Than Fund Assets.........................9

      C.    Plaintiffs' Counsel's Representation Of Their Clients Will Not Be
           Materially Limited By Their Responsibilities To The Plaintiffs In
           Either Of The Two Proceedings ...............................................................10

      D.    Even if a Potential Conflict Of Interest Exists, All of the Plaintiffs
           Have Consented to Representation After Full Consultation And
           Counsel Reasonably Believe the Representation Will Not Be
           Adversely Affected ..................................................................................11

POINT II

THERE ARE NO CONFLICTS OF INTEREST BETWEEN THE CLASS AND
DERIVATIVE CLAIMS IN THIS CASE.......................................................................12

POINT III

THIS COURT SHOULD APPOINT THE LAW FIRMS OF MILBERG WEISS
AND STULL STULL & BRODY AS CO-LEAD COUNSEL IN THIS ACTION...............16

CONCLUSION......................................................................................................17

i

## PRELIMINARY STATEMENT

Plaintiffs in the above-captioned action (the "Action") hereby renew their motion for an Order (attached hereto): (i) approving Plaintiffs' selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Stull Stull & Brody as co-lead counsel in the Action; and (ii) approving Plaintiffs' selection of Moulton & Gans, P.C. ("Moulton & Gans") as Liaison Counsel (collectively, "Plaintiffs' Counsel"). Plaintiffs submit that on the current record they have now satisfactorily addressed all of the issues raised by Defendants and addressed by this Court at the April 7, 2005 hearing.

For the reasons outlined during that hearing, this Court denied, without prejudice, the appointment of co-lead counsel and liaison counsel because of a concern raised by Defendants over Plaintiffs' Counsel's potential conflicts of interest regarding representation of Plaintiffs. This Court gave Plaintiffs until May 18, 2005 to file a consolidated amended complaint, an opening class certification motion and a renewed motion for appointment of co-lead counsel and liaison counsel. The parties stipulated to, and the Court has granted, an extension until June 9, 2005 to make the requisite filings.

At the April 7, 2005 hearing, Defendants and this Court questioned whether Plaintiffs' Counsel might be faced with conflicts of interest that could prevent them from being appointed lead counsel in this Action. *See* Transcript of April 7, 2005 Hearing (the "Transcript") at 10. In particular, Defendants and this Court raised two principal issues: (1) whether there is a conflict by Plaintiffs' Counsel's contemporaneous representation of the mutual funds in this Action, while, at the same time, purportedly suing the mutual funds in the multi-district market-timing litigation ("MDL" or "market-timing") in the District of Maryland; and (2) whether there is an inherent conflict of interest in filing one complaint in this case asserting both direct and derivative claims. *Id*.

As Plaintiffs now discuss, the record confirms that the concurrent representation involved does not present any actual, or even potential, conflict of interest. Moreover, even if some theoretical "conflict" were to exist, Plaintiffs' Counsel reasonably believe that representation of the market-timing plaintiffs will not be adversely affected by Counsel's representation of Plaintiffs in this Action (or vice versa) and, after full consultation, Plaintiffs have consented to this concurrent representation. Additionally, the record confirms that there is no conflict in this Action by bringing both direct and derivative claims in the same Complaint.

Together with this memorandum, Plaintiffs are concurrently filing several declarations which demonstrate the lack of any disabling conflicts. These include a Declaration of Clifford Goodstein (the "Goodstein Decl.") (attached hereto as Exhibit A), of Milberg Weiss, who is lead counsel for the court-appointed lead plaintiff in the Columbia sub-track in the market-timing litigation.[1] Attached to the Goodstein Decl. is the Corrected Notice of Parties Added and Parties Against Whom All Claims Are Dropped Pursuant to the Letter of the Honorable J. Frederick Motz Dated September 24, 2004 (the "Notice"). The Notice leaves no doubt that the Columbia Funds were dropped as defendants in the market-timing litigation. The contents of the Goodstein Decl. similarly indicate that none of the Columbia Funds was named as a defendant in the Columbia market-timing amended complaint and, therefore, plaintiffs in that case will not seek or accept any money from the Columbia Funds under any circumstances. Each of the Plaintiffs in this Action has also filed a declaration (attached hereto as Exhibits B through F) [2] consenting

---

[1] Milberg Weiss is also co-chair of the Plaintiffs' Steering Committee in the market-timing litigation.

[2] *See* Exhibit B (Declaration of Joan Cohen in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel (the "Cohen Decl.")); Exhibit C (Declaration of Gene F. Osburn in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel (the "Osburn Decl.")); Exhibit D

Continued on next page

to, and endorsing, this motion and confirming his or her full knowledge of the conflict issues raised by this Court, the history of pertinent activity in the market-timing litigation, and the simultaneous representation by their counsel of plaintiffs in the market-timing litigation and in the case at bar.  Thus, Plaintiffs' Counsel and Plaintiffs have complied with the provisions of Mass. R. Prof. C. 1.7 (2005) ("Rule 1.7") concerning consultation and consent, and any potential or perceived conflict has effectively been addressed.

In addition, Plaintiffs are concurrently filing the Declaration of Bruce Green in Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel (the "Green Decl.") (attached hereto as Exhibit G).[3]  Professor Green, a prominent expert in the field of legal ethics, has reviewed the current record.  Ex. G, Green Decl. at ¶¶ 13-32.  In his expert opinion, no disabling actual or potential conflict of interest exists.  *Id.* at ¶¶ 33-36.  Professor Green concludes that "the concurrent representation does not give rise to an impermissible conflict of interest," (*id.* at ¶ 1), and that, "[i]n my opinion . . . Defendants' and this Court's

---

(Declaration of Paula Slicker in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel (the "Slicker Decl.")); Exhibit E (Declaration of Jean S.B. Simmonds in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel (the "Jean S.B. Simmonds Decl.")); and Exhibit F (Declaration of R.L. Simmonds in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel (the "R.L. Simmonds Decl.")).  All Plaintiffs' declarations are being filed concurrently herewith.

[3] Professor Bruce A. Green is the Stein Professor at Fordham University School of Law.  He has served as a law clerk to Judge James L. Oakes of the U.S. Court of Appeals for the Second Circuit and Justice Thurgood Marshall of the U.S. Supreme Court.  He was also an Assistant United States Attorney for the Southern District of New York.  He has regularly taught courses in the area of legal ethics at Fordham, and speaks frequently at Continuing Legal Education programs on the subject of legal ethics.  He has also authored a variety of scholarly articles and other writings in the area of legal ethics, and testified on legal ethics issues in judicial proceedings and submitted expert opinions to courts in numerous cases.

concerns are adequately resolved by the submissions being made to the Court in response to the April 7, 2005 hearing." *Id.* at ¶ 33.

As discussed below, the record conclusively shows, first, that the Columbia Funds were not dropped as defendants from the market-timing litigation to enable Plaintiffs' Counsel to bring this case as a partial derivative action on behalf of the Columbia Funds. Rather, the amended complaints in the MDL actions with respect to *all* 17 mutual fund families involved in the MDL dropped the Funds as defendants because of a concern that suing the Funds would be adverse to the interests of persons represented on the class claims – the Fund shareholders.

Second, the record on this motion shows that the Columbia registrants were not sued in the market-timing case as a back door way of getting at Fund assets. Rather, they were sued because they are proper defendants under Section 11 of the Securities Act of 1933 and they appeared to have an identity and a role that was different from the Funds. The "[r]egistrants were named solely to the extent that they have a separate corporate existence from the funds themselves, and only for the purpose of seeking a recovery from assets aside from investor deposits held by the Registrants." Ex. A, Goodstein Decl. at ¶ 4. As to the registrants, the Goodstein Decl. explains that the lead plaintiff in the Columbia market-timing litigation will not seek any recovery from monies held by any of the registrants consisting of investor deposits (including securities, cash or other assets related or traceable thereto). *Id.* Therefore, the record is very clear that the market-timing plaintiffs are neither suing the Columbia Funds nor seeking recovery from any Fund assets.

Third, the record shows that, after full disclosure of all the relevant facts to the Plaintiffs in this Action, Plaintiffs have expressly consented to, and endorse, their continued representation by Plaintiffs' Counsel. Accordingly, Plaintiffs' renewed motion for the appointment of co-lead and liaison counsel should be granted.

## PROCEDURAL HISTORY

On September 10, 2004, Plaintiffs filed a motion for consolidation and a motion to appoint co-lead counsel and liaison counsel (the "Consolidation Motion" and "Lead Counsel Motion," respectively), and on September 24, 2004, counsel for certain of the Defendants filed an opposition to the Lead Counsel Motion.[4]   On March 3, 2005, Plaintiffs' Consolidation Motion was granted.

On April 6, 2005, Plaintiffs filed a reply memorandum in further support of the Lead Counsel Motion (the "Reply Memorandum").  The Reply Memorandum addressed the issues raised by the Defendants in their September 24, 2005 opposition.  On April 7, 2005, the Court held a hearing, and for the reasons outlined at the hearing, denied, without prejudice, Plaintiffs' Lead Counsel Motion.  The Court issued a written Order to that effect later that day.

Accordingly, along with the instant renewed motion to appoint co-lead and liaison counsel, Plaintiffs are filing concurrently herewith a consolidated amended complaint and their motion for class certification.

For the reasons stated below, Plaintiffs' renewed motion for appointment of co-lead and liaison counsel should be granted.

_____

[4] On February 15, 2005, Defendants submitted a letter to the Court attaching Judge O'Toole's January 13, 2005 decision in *Forsythe v. Sun Life Financial, Inc. et al*. (MFS), No. 04cv10584 (D. Mass.) as supplemental authority.  As Plaintiffs' Counsel explained at the April 7, 2005 hearing, and despite what Defendants contend, Judge O'Toole did not hold that there was a conflict by plaintiffs' counsel's contemporaneous representation in the *Forsythe* case and MFS market-timing case.  Transcript at 19-20.  Judge O'Toole found that there could be potential conflicts that might exist, and gave the plaintiffs an opportunity to submit further evidence that there was no conflict.  Plaintiffs in the instant case were given the same opportunity and are making similar submissions herewith.  Also, as was the case in *Forsythe,* Plaintiffs in the instant case were fully informed and consent to the representation by Plaintiffs' Counsel.  Judge O'Toole has not yet made a ruling in *Forsythe*.

## ARGUMENT

### POINT I

**PLAINTIFFS' COUNSEL'S CONCURRENT REPRESENTATION
OF PLAINTIFFS IN THIS ACTION AND IN THE COLUMBIA MARKET-TIMING
LITIGATION PRESENTS NO ACTUAL OR POTENTIAL
CONFLICT OF INTEREST AND, AFTER FULL CONSULTATION,
PLAINTIFFS HAVE CONSENTED TO AND ENDORSE THIS REPRESENTATION**

**A.      The Funds Were Dropped As Defendants In All The MDL Timing Cases
Because Of A Recognition By MDL Plaintiffs' Counsel and the MDL Court
That Seeking Recovery From Fund Assets Would Impair, Not Benefit,
The Interests Of The Class Members**

There should not be any concern that the reason Plaintiffs' Counsel are not seeking Fund

assets in the Columbia market-timing complaint is because they desire to bring derivative claims

on behalf of the Columbia Funds in this Action.  The declarations that have now been submitted

to this Court show that the facts support this conclusion.  As discussed below, the market-timing

lead plaintiff made the decision not to seek any recovery from Fund assets in order to *protect* the

class in the Columbia market-timing case, and did so without any regard to this case.

Furthermore, that position was consistent with the positions taken by plaintiffs in the 16 other

MDL cases not involving Columbia.  It was also consistent with the MDL Court's own

expressed view as to whether it made sense for the market-timing plaintiffs to be suing the

Funds.  As indicated above, counsel for the lead plaintiff in Columbia filed the Notice making

clear beyond any question that the Columbia Funds had been dropped as defendants in the

market-timing litigation.[5]

The Goodstein Decl. sets forth the reasons why the Fund assets would not be sought in

the market-timing litigation.  Numerous initial complaints had been filed against Columbia, some

---

[5] This Notice directly addresses the Court's point, Transcript at 21-26, that the current complaint
in the Columbia market-timing case would need to be amended to show the Funds are not named
as defendants.  The Notice is the functional equivalent of any such amendment.

of which named the Funds as defendants.  After those actions were consolidated under the leadership of the lead plaintiff, the MDL Court directed the lead plaintiff to file a consolidated amended complaint.  As stated in the Goodstein Decl., the lead plaintiff determined not to include the Columbia Funds as defendants in the amended complaint because suing the Funds would be adverse to the interests of the class members:

> The Registrants were named solely to the extent that they have a separate corporate existence from the funds themselves, and only for the purpose of seeking a recovery from assets aside from investor deposits held by the Registrants.  As to the Registrants, the lead plaintiff will not seek any recovery from monies held by any of the Registrants consisting of investor deposits (including securities, cash or other assets related or traceable thereto).

Ex. A, Goodstein Decl. at ¶ 4.

Even before the Funds were dropped as defendants in the market-timing cases, the MDL Court itself expressed a concern that it made no sense for the market-timing plaintiffs to be suing the Funds.  At a hearing, it stated:

> . . . are the plaintiffs in the investor classes really looking for the funds as the source of payment?  I understand the legal theory why the fund's *named as a defendant*, because of the prospectuses were put out by the fund.  And I understand that some injunctive relief may relate to the fund.
>
> To me, sitting here in the provinces, it doesn't make a lot of sense to me, and maybe I'm not understanding something, why one group of people who own mutual funds, people who, say, maybe bought and sold, should recover against people who still hold the funds.  I mean, that's like one average Joe being victimized by the conduct of third parties allegedly, and then being victimized again by having to compensate the plaintiffs who have already sold.
>
> Maybe I'm missing something.  But these are the kind of things we … want you to focus on.

Transcript of Court Hearing in *In re: Mutual Funds Investment Litigation*, MDL No. 1586

(D. Md. Apr. 2, 2004) at 16 ("MDL Hearing Transcript") (emphasis added).[6]

One of the numerous plaintiffs' counsel at the MDL hearing, David Bershad of Milberg

Weiss, agreed with the MDL Court that the issue of naming the Funds as defendants needed to

be addressed in the amended complaints:

> We, on the class side, are cognizant of the issue brought up – do
> we want to take money from the fund and give it to other people
> who are in the fund?  There are lots of issues that we can begin to
> address and we don't know the answers to, such as whether there is
> insurance, whether there may be individuals who should be doing
> something.  But we are going to address that and do it collegially
> with other counsel in the entire plaintiffs' camp.

MDL Hearing Transcript at 40.

Furthermore, the Funds that were dropped as defendants in the market-timing cases were

not only the Columbia Funds.  Rather, the lead plaintiffs in *all* the other mutual fund family

tracks in the MDL action arrived at the same conclusion that the Funds were inappropriate

defendants because a recovery from the Funds would simply take money from the class plaintiffs

themselves.

As Professor Green notes, the market-timing litigation spans 17 fund families, has

18 plaintiffs firms prosecuting the cases, and a four-judge panel overseeing the proceedings.

Therefore, "it is unlikely, if not impossible, that any of the particular parties before this Court or

their counsel has the ability to manipulate the potential multi-billion dollar MDL action to gain

an advantage in the one case before this Court."  *See* Ex. G, Green Decl. at ¶ 32; *see also In re*

---

[6] The MDL Court's comments are consistent with the recognition by other courts that a mutual
fund is not like a typical corporation, it is "'a mere shell,' a pool of assets consisting mostly of
portfolio securities that belongs to the individual investors holding shares in the fund."
*Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977).

*Dayco Corp. Deriv. Sec. Litig.*, 102 F.R.D. 624, 631-32 (D. Ohio 1984) (acknowledging that the presence of other counsel and the court's ability to review any settlement insures that the allegedly conflicted counsel will not take action to the detriment of the derivative suit).  Clearly the decision to drop the Funds as defendants in the MDL cases was made by numerous plaintiffs' counsel across the entire MDL proceeding, and had nothing to do with Plaintiffs' Counsel's desire to represent Plaintiffs on one derivative claim in this case.

The record is therefore overwhelming that the Columbia Funds were not dropped as defendants in the market-timing litigation because Plaintiffs' Counsel were seeking to clear a path for themselves to represent the Columbia Funds derivatively in this action (especially since all of the claims are pled as direct claims except one – the Investment Advisers Act claim – which is derivative by statute).  Rather, they were dropped because the plaintiffs and their counsel, as well as the MDL Court, believed that suing the Funds would be adverse to the interests of the MDL class members.

**B.**     **The Market Timing Lead Plaintiff And Counsel Have Not Sued the Columbia Funds, and Have Committed Themselves, On The Record, To Drop The Timing Claims Against The Registrants If The Registrants Have No Assets Other Than Fund Assets**

The market-timing case does not name any of the Columbia Funds as defendants, the Notice confirms that the Funds were dropped as defendants, and the record shows that the clear intent of the lead plaintiff and lead counsel in the market-timing litigation is to avoid seeking any recovery that would impair the Funds' financial condition.  It is also clear that the registrants were not sued as alter egos of the Funds or as an indirect way of recovering Fund assets.  Ex. A, Goodstein Decl. at ¶ 4.  Milberg Weiss has unequivocally confirmed that the lead plaintiff in the Columbia market-timing litigation will not seek any recovery from monies held by any of the Columbia registrants consisting of investor deposits.  *Id.*

The foregoing facts confirm that the market-timing litigation is not – in form or in substance – a suit against the Columbia Funds. Therefore, Plaintiffs' Counsel's derivative representation of the Columbia Funds in this Action would not be directly, or even indirectly, adverse to their concurrent representation of class plaintiff claims in the Columbia market-timing case, and no conflict of interest exists. *See* Ex. G, Green Decl. at ¶¶ 33, 36.

**C.    Plaintiffs' Counsel's Representation Of Their Clients Will Not Be Materially Limited By Their Responsibilities To The Plaintiffs In Either Of The Two Proceedings**

Plaintiffs' Counsel's representation of plaintiffs in the market-timing cases will not be materially limited by their responsibilities to the Plaintiffs in the present case, or vice versa. As stated by Professor Green:

> Plaintiffs in the MDL action and the instant litigation are investors in Columbia Funds. The Class definition in both cases is similar, although the MDL action covers a slightly longer time frame. The cases share some common defendants, although they are based on different legal theories and allege different improper activities by defendants. Because both actions seek a recovery on behalf of an almost identical class of investors, a recovery in either action will benefit essentially the same investors. Similarly, a recovery on behalf of the funds, in either case, will benefit all current investors. The cases are complementary in that they seek to recover all potential damages on various legal theories.

Ex. G, Green Decl. at ¶ 36.

In both the MDL action and the instant case, the proposed class includes both current and former shareholders. Consequently, Plaintiffs' Counsel have every incentive to seek a resolution of both cases in a way that is fair to both groups of shareholders. Of course, any result that is fair to current shareholders will also be fair to the Columbia Funds.

Because the class and derivative claims in both actions are consistent and complementary, Plaintiffs' Counsel's representation of plaintiffs in one proceeding will not be materially limited by their responsibilities to the plaintiffs in the other.

**D.    Even if a Potential Conflict Of Interest Exists, All of the Plaintiffs Have Consented to Representation After Full Consultation And Counsel Reasonably Believe the Representation Will Not Be Adversely Affected**

As Plaintiffs have demonstrated above, no disabling conflicts exist.  Furthermore, even if the Court were to conclude that a conflict exists, Rule 1.7 has been nevertheless satisfied because Plaintiffs have consented to representation after full consultation.

Rule 1.7(a) precludes a lawyer from undertaking or continuing representation directly adverse to a client without that client's consent.  In addition, under Rule 1.7(b), a lawyer may not represent a client "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation."  Here, all clients involved in this Action have consented to the concurrent representation after detailed discussions with counsel.  *See* Ex. B, Cohen Decl. at ¶ 8; Ex. C, Osburn Decl. at ¶ 8; Ex. D, Slicker Decl. at ¶ 8; Ex. E, Jean S.B. Simmonds Decl. at ¶ 8; Ex. F, R.L. Simmonds Decl. at ¶ 8.  Rule 1.7's requirements have thus been satisfied in that regard.

Furthermore, Plaintiffs' Counsel reasonably believe that the simultaneous representation involved will not adversely affect their relationship with either set of clients.  As shown above, there is a great consistency between the interests being represented by Plaintiffs' Counsel in the two proceedings, in light of the fact that the real beneficiaries of the derivative claims are the current shareholders who are class members in both litigations.  The objective of these litigations is to seek to return all shareholders (both current and former) and the Funds to the *status quo* they would have enjoyed absent the wrongdoing.  Plaintiffs' Counsel believe that a recovery can readily be structured to place the Funds and their current and former shareholders in that position.

11

The lead plaintiff and lead counsel in the Columbia market-timing litigation have committed themselves not to seek Fund assets either through a direct action against the Funds or indirectly by pursuing Fund assets held by the registrants. Therefore, Plaintiffs' Counsel reasonably believe that their activities in the market-timing case will not injure the Funds that they seek to represent derivatively in the case at bar. Nor do counsel perceive any respect in which their pursuit of a derivative recovery for the Funds in this Action would impair the interests of the class members in the market-timing cases.

Furthermore, as noted by Professor Green, the market-timing litigation includes many plaintiffs' firms not involved in this Action, and substantial oversight is provided by the four-judge panel overseeing the MDL proceedings. It is unlikely, if not impossible, that Plaintiffs' Counsel could manipulate those proceedings to gain an advantage in this case (*see* Ex. G, Green Decl. at ¶ 32) and Plaintiffs' Counsel have reasonably concluded that their representation of Plaintiffs in this Action will not adversely affect their representation of or relationship with the class members in the market-timing case.

## POINT II

### THERE ARE NO CONFLICTS OF INTEREST BETWEEN THE CLASS AND DERIVATIVE CLAIMS IN THIS CASE

At the April 7, 2005 hearing, Defendants and this Court also addressed the concern of whether there could be an internal conflict preventing Plaintiffs' Counsel from adequately prosecuting both the class and derivative claims in one complaint because "one recovery serves [as] a reduction for the other." Transcript at 18. However, this supposed conflict simply does not exist. The class and derivative claims here both seek to recover monies from the same wrongdoers – those entities and individuals who run the Funds and have fiduciary duties to protect the Funds and their shareholders. Plaintiffs have **not** sued the Funds in this case and

there is no contention that they have.  As such, the class and derivative claims are consistent and

complementary because they seek to return *all* shareholders – both current and former – to the

*status quo* they would have enjoyed absent the wrongdoing.

Moreover, even if it were true (which it is not) that Plaintiffs were suing the same

Defendants on whose behalf they were bringing the claims, "[i]t is well-settled that shareholders

have the right to bring direct and derivative actions simultaneously."[7]  Courts have held that

there is no *per se* conflict, and a single counsel *can* represent both class and derivative actions

when both are based upon proof of the same nucleus of facts and counsel can attack all fronts

with equal vigor.[8]  The court in *Bertozzi,* 420 F. Supp. at 1180, certified a class action upon

finding that the plaintiffs' success in prosecuting both class and derivative actions was "equally

contingent upon the proof of the same nucleus of facts" and that "they and their counsel can be

expected to attack all fronts with equal vigor."

---

[7] *In re Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978) (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964)); *Yamamoto v. Omiya*, 564 F.2d 1319, 1326 (9th Cir. 1977) (explicitly recognizing the right of a shareholder to bring both direct and derivative actions).

[8] *See Transocean*, 455 F. Supp. at 1014 ("the great weight of authority rejects a *per se* rule prohibiting such representation, and simultaneous prosecutions have been permitted where the asserted 'antagonism' between the primary and derivative actions is merely a 'surface duality'") (citation omitted); *In re Dayco*, 102 F.R.D. at 630 ("the Court agrees with Plaintiff that the case law is virtually unanimous in holding that one counsel can represent a stockholder bringing *both* an individual *and* a derivative action.") (emphasis in original); *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976) (noting that the distinction between a derivative and direct action is a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are "equally contingent upon the proof of the same nucleus of facts"); *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 (S.D.N.Y. 1976) (a party bringing suit in both an individual and derivative capacity can avoid a potential conflict of interest by showing that he can "fairly and adequately represent the interests of the shareholders . . . in enforcing the right of the corporation.").

In this Action, Plaintiffs will prove their class and derivative claims based on the "same nucleus of facts." Plaintiffs allege that Defendants embarked on a single course of conduct by which they enriched themselves at the expense of both the Funds and their shareholders. In demonstrating Defendants' wrongful conduct, Plaintiffs' Counsel will necessarily show the same nucleus of facts for both the class and derivative claims. Therefore, the interests of both current and former shareholders, as well as the Funds, are perfectly aligned against the common wrongdoers – the fiduciaries who run and oversee the Funds.

Furthermore, any discussion about a supposed conflict regarding the allocation of a recovery among different categories of class members is premature. Transcript at 18. As one court stated:

> "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7 Wright & Miller, [Federal Practice and Procedure: Civil], § 1768 at 639. . . . There is no conflict of interest among class members regarding [the] central issue [of liability] . . . . ***The potential conflict troubling the defendants can arise only at the remedy stage of litigation, and only if the basic question of the defendants' liability is first resolved in the plaintiffs' favor.*** . . . If the potential conflict . . . should materialize when and if remedy proceedings are reached in this case, Rule 23 gives this court sufficient flexibility to take appropriate corrective measures at that time.

*Lamphere v. Brown Univ.*, 71 F.R.D. 641, 650 (D.R.I. 1976) (emphasis added); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Bradburn Parent/Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing Company)*, 2004 U.S. Dist. LEXIS 16193, at *14 (E.D. Pa. Aug. 17, 2004).

Additionally, there is no conflict because a mutual fund is not like a typical corporation, and any damages that are awarded derivatively would ultimately belong to the shareholders of the fund. As explained in *Tannenbaum*, 552 F.2d at 405-06:

> The mutual fund industry is in many ways unique. [...] ***A mutual fund is a "mere shell," a pool of assets consisting mostly of***

> ***portfolio securities that belongs to the individual investors
> holding shares in the fund.*** The management of this asset pool is
> largely in the hands of an investment adviser, an independent
> entity which generally organizes the fund and provides it with
> investment advice, management services, and office space and
> staff. The adviser either selects or recommends the fund's
> investments and rate of portfolio turnover, and operates or
> supervises most of the other phases of the fund's business. The
> adviser's compensation for these services is a fee which is usually
> calculated as a percentage of the fund's net assets, and thus
> fluctuates with the value of the fund's portfolio.  Portfolio
> transactions are carried out by brokers selected by the adviser, who
> receive commissions at the regular rates therefor.  The sale of fund
> shares to new investors is generally the responsibility of a
> "principal underwriter" who is usually the adviser itself or a close
> affiliate. Actual sales are made by brokers or dealers selected by
> the underwriter, and the sales charge or "load" is divided between
> the selling broker or dealer and the underwriter.
>
> This management structure contrasts sharply with that of a typical
> corporation. […] Control of a mutual fund, however, lies largely in
> the hands of the investment adviser, an external business entity
> whose primary interest is undeniably the maximization of its own
> profits.

*Id*. (emphasis added).

As such, not only have courts routinely held that there is no *per se* conflict of interest, but

the argument that the class claims and derivative claims have differing interests, and recovery for

one can potentially reduce recovery for the other, is without merit based on the facts of this case,

as explained above, because the interests of class and derivative parties are perfectly aligned

against the common wrongdoers.  In addition, Plaintiffs seek the maximum recovery for the

maximum number of investors – past and current – by increasing the net assets of the Funds

through the derivative claims and recovering damages for the class from non-Fund entities on the

direct claims.  Having these alternative theories in one case led by Plaintiffs' Counsel allows the

class and derivative claims, based on the same nucleus of facts, to be effectively and efficiently

litigated.  It is in the best interest of the class and the Funds to be represented by Plaintiffs'

Counsel in this Action.

## POINT III

### THIS COURT SHOULD APPOINT THE LAW FIRMS OF MILBERG WEISS AND STULL STULL & BRODY AS CO-LEAD COUNSEL IN THIS ACTION

As demonstrated above, there are no conflicts of interest prohibiting Plaintiffs' Counsel

from representation in this Action.  Moreover, the Plaintiffs want to continue with these lawyers

as their counsel.  *See* Ex. B, Cohen Decl. at ¶ 8; Ex. C, Osburn Decl. at ¶ 8; Ex. D, Slicker Decl.

at ¶ 8; Ex. E, Jean S.B. Simmonds Decl. at ¶ 8; Ex. F, R.L. Simmonds Decl. at ¶ 8.  Thus, this

Court should appoint the law firms of Milberg Weiss and Stull Stull & Brody co-lead counsel of

the Action.  Milberg Weiss and Stull Stull & Brody have substantial experience prosecuting

shareholder and securities class and derivative actions, and have the resources necessary to

efficiently conduct this litigation.[9]  Both firms are well qualified to act as co-lead counsel by

virtue of their resources, experience and track record in the area of class action litigation.

Milberg Weiss has spearheaded some of the largest and most complex class actions in

history, such as *In re NASDAQ Market-Makers Antitrust Litig.*, Civ. No. 3996 (S.D.N.Y.), *In re*

*Initial Public Offering Securities Litigation,* Master File No. 21 MC 92 (S.D.N.Y.), and *In re*

*Raytheon Co. Securities Litigation*, 99-12142-PBS (D. Mass).  Stull Stull & Brody has been

recognized by numerous courts for the high quality of its legal representation in such cases as *In*

*re Ikon Office Solutions, Inc. Securities Litigation*, 2000 U.S. Dist. LEXIS 6510 (E.D. Pa. May 9,

2000), *In re Electro-Catheter Corp. Securities Litigation*, Civ. No. 87-41 (D.N.J.), and *Schaffer*

---

[9] The Milberg Weiss, Stull Stull & Brody and Moulton & Gans firm resumes were previously submitted with the Declaration of Michael R. Reese In Support Of Plaintiffs' Motion For Appointment Of Co-Lead Counsel And Appointment Of Liaison Counsel, filed on September 10, 2004.

*v. Timberland Co.*, 94-634-JD (D.N.H). Accordingly, the Court can rest assured that Milberg Weiss and Stull Stull & Brody will similarly be capable of harmonizing the efforts of all counsel involved in this litigation.

The law firm of Moulton & Gans, P.C. should be appointed as Liaison Counsel. Moulton & Gans, P.C. has significant experience, and was appointed special liaison counsel in *In re Raytheon Company Securities Litigation,* 99-12142-PBS (D. Mass). This appointment will promote judicial economy and is consistent with the recommendations of § 10.22 of the Manual for Complex Litigation (4th ed. 2004), which discusses the role of counsel in multiparty litigation.

## CONCLUSION

For the reasons detailed herein and in their prior submissions, Plaintiffs respectfully request this Court to: (i) appoint Milberg Weiss Bershad & Schulman LLP and Stull Stull & Brody as co-lead counsel in the Action; and (ii) approving Plaintiffs' selection of Moulton & Gans, P.C. as Liaison Counsel.

Dated:    June 9, 2005                              Respectfully submitted,

                                                    **MOULTON & GANS, P.C.**


                                                    By:_____/s/ Nancy Freeman Gans_____
                                                           Nancy Freeman Gans (BBO #184540)
                                                    33 Broad Street, Suite 1100
                                                    Boston, Massachusetts  02109-4216
                                                    (617) 369-7979

                                                    ***Counsel for Plaintiffs and Proposed Liaison Counsel***

17

**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, NewYork  10119-0165
(212) 594-5300

*Counsel for Plaintiffs  and Proposed Co-Lead
Counsel*

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

*Counsel for Plaintiffs and Proposed Co-Lead
Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiffs*

**WEISS & LURIE**
Joseph H. Weiss
Richard A. Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiffs*

18

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
280 King of Prussia Road
Radnor, Pennsylvania  19087
(610) 667-7706

*Counsel for Plaintiffs*

**GILMAN AND PASTOR, LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

*Counsel for Plaintiffs*


<u>**CERTIFICATE OF SERVICE**</u>

I, Daniel P. Dietrich, hereby certify that I served a copy of the foregoing document upon

counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record,

this 9th day of June, 2005.


_____/s/ Daniel P. Dietrich_____
Daniel P. Dietrich

19