# EXHIBIT G

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: COLUMBIA ENTITIES LITIGATION | Civil Action No. 04cv11704 (REK)<br><br>Consolidated Case Nos.:<br>04cv11750<br>04cv11760<br>04cv11953 |

**DECLARATION OF PROFESSOR BRUCE GREEN IN
SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR
APPOINTMENT OF CO-LEAD COUNSEL AND LIAISON COUNSEL**

I, Bruce A. Green, under penalties of perjury, declare as follows:

1.        I am the Stein Professor at Fordham University School of Law.  Milberg Weiss

Bershad & Schulman LLP ("Milberg Weiss") has retained me as an expert on legal ethics to render an

objective opinion on the conflict of interest questions raised by Defendants and addressed by the

Court at the April 7, 2005 hearing -- namely, whether there would be an impermissible conflict of

interest if Milberg Weiss and its co-counsel were to represent the plaintiffs in this case while

concurrently serving as co-counsel for plaintiffs bringing market-timing claims in related federal

multidistrict litigation against many of the same defendants.[1]  Based on my review of the material

submitted to this Court in connection with the application to serve as co-lead counsel, my opinion is

that the concurrent representation does not give rise to an impermissible conflict of interest.[2]

**<u>Qualifications</u>**

2.        A copy of my professional vita is attached.  Since 1987, I have been a member of the

full-time faculty of Fordham University School of Law, where I direct the Louis Stein Center for Law

and Ethics.  I previously served as a law clerk to Judge James L. Oakes of the U.S. Court of Appeals

for the Second Circuit, as a law clerk to Justice Thurgood Marshall of the U.S. Supreme Court, and as

an Assistant United States Attorney for the Southern District of New York.

---

[1] I have not been asked to address the Defendants' additional argument that there is a conflict of interest in filing one complaint having both class and derivative claims within it.  Milberg Weiss responds to this argument in Point II of its contemporaneously filed memorandum, which discusses relevant case law.

[2] My opinion in the instant action is essentially the same as the one I rendered in *Forsythe et al. v. Sun Life Financial Inc., et al.*, No. 04cv10584 (D. Mass) (GAO), regarding essentially the same conflict issues.

3.    I have regularly taught courses in the area of legal ethics at Fordham, I speak frequently at CLE programs on the subject of legal ethics, and I have authored a variety of scholarly articles and other writings in the area of legal ethics.

4.    I have engaged in various professional service relating to legal ethics. Nationally, I serve as a member of the Multistate Professional Responsibility Examination drafting committee, and have previously served as chair of the ABA Litigation Section's Committee on Ethics and Professionalism, as a member of the ABA Litigation Section's Task Force on Settlement Ethics, as reporter to the ABA Commission on Multijurisdictional Practice, and as chair of the Section on Professional Responsibility of the Association of American Law Schools. On the state and local level, I currently serve as a member and immediate past chair of the New York State Bar Association's Committee on Professional Ethics, as a member of the New York State Bar Association's Committee on Standards of Attorney Conduct, and as a member of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York. I previously served as a member of the Departmental Disciplinary Committee of the New York State Supreme Court, Appellate Division, First Department. However, I render opinions in my individual capacity and do not speak on behalf of any of these or other entities.

5.    I have previously testified on legal ethics issues in judicial proceedings and submitted expert opinions to courts both in New York, where I am admitted to practice law, and in other states. *E.g., Apple Corps Ltd. v. International Collectors Soc'y*, 15 F. Supp. 2d 456 (D.N.J. 1998); *In re M&F Worldwide Corp. Shareholders Litigation*, 799 A.2d 1164 (Del. Ch. 2002); *Rudolf Nureyev Dance Foundation v. Noureeva-Francois*, 94 Civ. 7701 (S.D.N.Y.); *Lewis v. Chwasky*, 02 CIV

1314 (S.D.N.Y.); *TCW/Camil Holding LLC v. Fox Horan & Camerini*, LLP, Civ. No. 03-1154-SLR

(D. Del.). I am being compensated at my customary rate to render an opinion in this case.

## Procedural Background and Relevant Facts

### Documents reviewed

6.      I have no first-hand knowledge of the relevant facts.  For purposes of rendering an

opinion, Plaintiffs' counsel have provided me the following materials:  (i) Plaintiffs' Motion For

Appointment of Co-Lead Counsel And Appointment Of Liaison Counsel, and the Memorandum of

Law in support of the motion, filed September 10, 2004; (ii) Plaintiffs' Motion For Consolidation of

Related Cases, and the Memorandum of Law in support of the motion, filed September 10, 2004;

(iii) the Columbia Funds and Trustee Defendants' Memorandum of Law in Opposition to the

Plaintiffs' Motion for Appointment of Co-Lead Counsel and Appointment of Liaison Counsel, filed

September 24, 2004; (iv) Defendants' February 15, 2005 letter to the Court; (v) the March 2, 2005

Court Order granting Plaintiffs' Motion for Consolidation; (vi) Plaintiffs' April 6, 2005 Reply

Memorandum in Support of Plaintiffs' Motion for Appointment of Co-Lead Counsel and

Appointment of Liaison Counsel, and accompanying exhibits; (vii) the Declaration of Clifford

Goodstein in Support of Plaintiffs' Motion for Appointment of Co-Lead Counsel and Liaison Counsel

dated April 6, 2005; (viii) the April 7, 2005 Court Order denying, without prejudice, Plaintiffs'

Motion for Appointment of Co-Lead Counsel and Appointment of Liaison Counsel; and (ix) the

transcript from the April 7, 2005 hearing.  Additionally, Plaintiffs' counsel have provided me the

declarations of each named Plaintiff in this case in Further Support of Plaintiffs' Renewed Motion for

Appointment of Co-Lead Counsel and Liaison Counsel, to be submitted to the Court along with this

3

Declaration. Finally, I have reviewed a copy of the Case Management Order No. 1 in the multidistrict market-timing action and the consolidated class action complaint in the Columbia market-timing case.

**Procedural background**

7.  I understand that the relevant procedural background to the question I have been asked to consider is as follows.

8.  On September 10, 2004, Plaintiffs in the instant case filed a motion for consolidation and a motion to appoint co-lead counsel and liaison counsel. Plaintiffs sought to consolidate their individual actions and appoint Milberg Weiss and Stull Stull & Brody as co-lead counsel.

9.  On September 24, 2004, counsel for certain of the Defendants filed an opposition to the motion to appoint co-lead counsel arguing that: (a) no lead plaintiffs have been identified as required by the Private Securities Litigation Reform Act of 1995; and (b) Plaintiffs' counsel had conflicts of interest that prevent them from representing Plaintiffs in this action.

10. On March 2, 2005, Plaintiffs' motion for consolidation was granted.

11. On April 6, 2005, Plaintiffs filed a reply memorandum in further support of the motion for appointment of co-lead and liaison counsel (the "Reply Memorandum"). The Reply Memorandum addressed the issues raised by the Defendants in their September 24, 2005 opposition.

12. On April 7, 2005, this Court held a hearing denying, without prejudice, Plaintiffs' motion for appointment of co-lead and liaison counsel. This Court gave Plaintiffs until May 18, 2005 to file a Consolidated Amended Complaint, an opening class certification motion and a renewed motion for appointment of co-lead counsel and liaison counsel. The parties stipulated to, and the Court has granted, an extension until June 9, 2005 to make the requisite filings. It is my understanding that these documents are being filed contemporaneously herewith.

4

**Relevant facts**

13.    For purposes of rendering an opinion, I have been asked to rely on the following facts, which are reflected in the material provided for my review.

14.    On March 2, 2005, the Court ordered that *Cohen v. FleetBoston Financial Corporation, et al.*, Civil Action No. 04-11704 (REK) (D. Mass.), *Osburn v. FleetBoston Financial Corporation, et al.*, Civil Action No. 04-11750 (REK) (D. Mass.), *Slicker v. FleetBoston Financial Corporation, et al.*, Civil Action No. 04-11760 (REK) (D. Mass.) and *Simmonds v. FleetBoston Financial Corporation, et al.*, Civil Action No. 04-11953 (REK) (D. Mass.) be consolidated. Plaintiffs are persons who held one or more shares of mutual funds belonging to the FleetBoston Financial Corporation,[3] which include the Columbia mutual funds (referred to collectively herein as the "Columbia Funds" or the "Funds"), who were charged excessive and improper fees and expenses by the investment advisor defendants.

15.    Plaintiffs bring claims under the Investment Advisers Act of 1940 (the "Investment Advisers Act"); under the Investment Company Act of 1940 (the "Investment Company Act"); for unjust enrichment; and for breaches of the Defendants' fiduciary duties to a class (the "Class") of all persons or entities who held one or more shares or other ownership units of Columbia Funds during the period August 2, 1999 to March 22, 2004, inclusive (the "Class Period"), and who were damaged thereby.

16.    Plaintiffs allege that Defendants used Columbia Fund investor assets to pay kickbacks to brokerages in exchange for the brokerages steering their clients into Columbia Funds.  This

---

[3] On April 1, 2004, FleetBoston Financial Corp. was acquired by Bank of America Corp.

practice was referred to as buying "shelf-space" at the brokerages. In addition, Defendants allegedly paid brokerages to push Columbia Funds through the use of directed brokerage – the practice of awarding a brokerage firm the business, and resulting commissions, of conducting transactions of the fund's underlying securities. The brokerages alleged to have received such payments included Salomon Smith Barney, Chase Investment Services Corp., UBS and Wachovia Securities. Plaintiffs allege that the practice of charging excessive fees and commissions created material insurmountable conflicts of interest for Columbia Funds' investment advisers, who had a duty to act in the best interests of fund investors, but were, in fact, primarily concerned with siphoning fees from Columbia Funds investors to induce brokers to increase artificially the amount of investment in Columbia Funds. The fees the investment advisor defendants collected for managing and advising the Columbia Funds were calculated as a percentage of the Funds' value and, therefore, increased as the assets invested in the Columbia Funds grew. Defendants thus benefited from the increase in Fund assets, but neither the Funds nor the Fund investors benefited from expanding the size of the Funds.

17.    Plaintiffs are moving to have Milberg Weiss and Stull Stull & Brody appointed as Co-Lead Counsel.

18.    Milberg Weiss is also lead counsel for the court-appointed lead plaintiff in the case alleging "market-timing" against Columbia in multidistrict litigation in the District of Maryland (the "MDL action").

19.    The MDL action covers market-timing cases, including class actions, derivative actions, and ERISA actions, for 17 different mutual fund families and dozens of other participants in the market-timing activities. Defendants in the action concerning the Columbia mutual fund family

include Columbia Management Group, Inc., Columbia Management Advisors, Inc., Columbia

Wanger Asset Management, L.P., Columbia Funds Distributors, Inc., Bank of America Corporation,

the Registrants of Columbia Funds shares, the trustees and/or directors of the Columbia Registrants,

clearing corporations, companies that participated in market-timing activities and certain of their

executives, and certain brokers.

20.    The MDL action alleges that Defendants participated in a pattern of trading practices

known as "market timing" or "late trading." Market timing is a practice whereby investors take

advantage of inefficiencies in the pricing of mutual fund shares by rapidly trading in and out on

multiple occasions within a short period of time. Through the execution of a significant number of

trades quickly, market timers profit by capitalizing on the differential between the price of the mutual

fund itself, and the value of the underlying securities that comprise the mutual fund. Late trading is a

variation on this scheme, in which certain investors are permitted to trade mutual fund shares at the

prior day's prices, in violation of federal law. Market timing causes significant monetary harm to

fund investors because market timers, by quickly trading in and out of the funds, dilute the investment

gains that would otherwise be realized by long-term investors and because market timers cause long-

term investors to disproportionately bear investment losses. In addition, market timers impose

additional transaction costs upon fund investors due to the huge inflows of cash resulting from their

rapid trading. As a result of the rapid trading by market timers, portfolio managers must invest

disproportionate amounts of fund assets in cash and other highly liquid assets, paying a significantly

lower rate of return than other assets. The MDL plaintiffs allege that although Columbia had policies

prohibiting market timing, it permitted market timing to occur. The MDL plaintiffs further allege that

Columbia encouraged and facilitated market timing in order to increase the assets of the funds and thereby increase management fees.

21.    The structure of the MDL action is set forth in Case Management Order No. 1 ("CMO No. 1"). The CMO No. 1 was the product of discussions and negotiations among all plaintiffs' counsel. The CMO No. 1 divided the 17 mutual fund families into four tracks; each track has a chair/administrative counsel for plaintiffs. Milberg Weiss (through partner David J. Bershad) is one of plaintiffs' co-chairs and chief administrative counsel for the MDL action. The duties of the co-chairs are (1) to serve as a contact point for defense counsel on track-wide administrative issues; (2) to organize monthly conference calls among plaintiffs in the track and other track-wide proceedings; and (3) to serve as the primary spokesperson in conferences and hearings on track-wide issues.

22.    Each of the four tracks contains a subtrack for each fund family assigned to that track. The Court appointed a lead plaintiff and lead counsel for each subtrack. Milberg Weiss is lead counsel for the lead plaintiff in the Columbia subtrack. The Columbia subtrack also includes a derivative case that has separate representation. The Columbia class action and derivative action are coordinated for pretrial purposes.

23.    The MDL action is overseen by a panel of four judges: the Honorable Catherine C. Blake, the Honorable Andre M. Davis, the Honorable J. Frederick Motz, and the Honorable Frederick Stamp (the "MDL Court").

24.    In many of the actions that were transferred to the MDL Court, the original complaints named the mutual funds, including the Columbia Funds, as defendants. The MDL Court, however, questioned whether any funds should be named defendants.

25.     As expressed by Judge Motz at a hearing on April 2, 2004, before the four judge MDL panel with all market-timing counsel participating:

> . . . are the plaintiffs in the investor classes really looking for the funds as the source of payment?  I understand the legal theory why the fund's named as a defendant, because of the prospectuses were put out by the fund.  And I understand that some injunctive relief may relate to the fund.
>
> To me, sitting here in the provinces, it doesn't make a lot of sense to me, and maybe I'm not understanding something, why one group of people who own mutual funds, people who, say, maybe bought and sold, should recover against people who still hold the funds.  I mean, that's like one average Joe being victimized by the conduct of third parties allegedly, and then being victimized again by having to compensate the plaintiffs who have already sold.
>
> Maybe I'm missing something.  But these are the kind of things we want you to focus on.

Transcript of Court Hearing in *In re: Mutual Funds Investment Litigation*, MDL No. 1586 (D. Md. Apr. 2, 2004) ("MDL Hearing Transcript") at 16.

26.     One of the numerous plaintiffs' counsel at the MDL hearing, David Bershad of Milberg Weiss, agreed with the MDL Court that the issue of naming the Funds as defendants needed to be addressed in the amended complaints:

> We, on the class side, are cognizant of the issue brought up – do we want to take money from the fund and give it to other people who are in the fund?  There are lots of issues that we can begin to address and we don't know the answers to, such as whether there is insurance, whether there may be individuals who should be doing something.  But we are going to address that and do it collegially with other counsel in the entire plaintiffs' camp.

MDL Hearing Transcript at 40.

27.     As MDL counsel explained at the April 2, 2004 Hearing, there were other reasons to name the Funds in the MDL complaints, including insurance considerations.

9

28.     A consolidated amended complaint was filed on September 29, 2004 in the MDL action and the Columbia Funds were not named as defendants. In fact, individual mutual funds were not named as defendants in any of the Amended Complaints filed in the MDL action. The MDL plaintiffs agreed that the Funds should not be named as defendants in the MDL action. The Funds were named as non-parties in the MDL action amended complaints and the entities that are the legal registrants for the funds and the issuers of the funds' shares (the "Registrants") were named as defendants.

29.     The Registrants were named as defendants to seek recovery from any assets they hold apart from investor deposits, and to ensure the fullest possible recovery for the injured investors based upon the various theories of liability, many of which stem from alleged Registrant misconduct.

30.     To the extent the Registrants may have monies beyond the Fund assets, recovery may be sought. But a recovery from the assets of the Funds is not being sought in the MDL action because, as the MDL Court recognized, doing so would be the same as seeking a recovery from the plaintiff shareholders. No recovery will be sought from the Funds in the MDL action.

31.     Clifford Goodstein, of Milberg Weiss, lead counsel for the lead plaintiff in the Columbia subtrack of the MDL action, has submitted a declaration in this case stating that that the lead plaintiff in the Columbia MDL action will not seek any recovery from monies held by any of the Columbia registrants consisting of investor deposits. Attached to the Goodstein Declaration is the Corrected Notice of Parties Added and Parties Against Whom All Claims Are Dropped Pursuant to the Letter of the Honorable J. Frederick Motz Dated September 24, 2004. In this Notice the Columbia Funds are dropped as defendants in the market-timing litigation. For purposes of this

declaration, I have been asked to assume that the amendments made to the market-timing complaint combined with the Notice have the legal effect in the market-timing litigation of precluding the class from recovering from the funds' assets.

32.     Because the MDL action is comprised of cases against 17 fund families, as well as numerous other defendants, has 18 plaintiffs firms working together to litigate and manage the cases, and has four judges to oversee the proceedings, it is unlikely, if not impossible, that any of the particular parties before this Court or their counsel has the ability to manipulate the potential multi-billion dollar MDL action to gain an advantage in the one case before this Court.

**Opinion**

33.     Defendants raised, and this Court addressed at the April 7, 2005 hearing, the concern that Plaintiffs' counsel could possibly have a conflict of interest arising out of their concurrent representation of plaintiffs in the market-timing cases in the multidistrict litigation in the District of Maryland.  In my opinion, for the reasons discussed below, Defendants' and this Court's concerns are adequately resolved by the submissions being made to the Court in response to the April 7, 2005 hearing.

34.     A law firm may not represent a party adversely against another current client without the consent of both clients.  *See, e.g.*, Restatement (Third) of the Law, The Law Governing Lawyers, § 128, Cmt. e (2000); Rule 1.7 of the Massachusetts Rules of Professional Conduct (1998).  The reason for this rule is that when a law firm's activities are directly adverse to a current client, the client will reasonably perceive that the law firm is acting disloyally, and the client's trust and confidence in the firm's lawyers will be eroded as a result.  *See generally* Charles W. Wolfram,

11

Modern Legal Ethics 350 (1986). As noted, Defendants and the Court raised a specific concern that in the market-timing cases, the law firms represent plaintiffs adversely against the mutual funds whom they seek to represent derivatively in this case. In my opinion, this concern is fully answered by the additional facts submitted to this Court. As a formal matter, the plaintiffs in the market-timing cases are not adverse to the Columbia mutual funds because the amended complaint in the market-timing cases makes the Funds a non-party. As a practical matter, the plaintiffs in the market-timing cases are not adverse either to the Columbia mutual funds or to their shareholders, given the representation made by Clifford Goodstein, lead counsel for the lead plaintiff in the market-timing litigation, that the plaintiffs in the market-timing cases are not in fact seeking to recover funds from the Columbia mutual funds, and given that, as I have been asked to assume, the amendments made to the market-timing complaint combined with the Notice have the legal effect in the market-timing litigation of precluding the class from recovering from the funds' assets. Finally, the harms against which conflict of interest rules protect are not implicated. Although the Columbia mutual funds would be represented derivatively, the funds' shareholders are the real interested parties and as co-lead counsel, the law firms would be consulting with representative shareholders. There is no indication that the shareholders perceive the law firms' role in the market-timing cases as adverse or disloyal to them, and there is no reason why they would. Thus, there is no reason for concern that the law firms' role in the MDL action would impair their relationship with the plaintiffs in the fee litigation before this Court.

35.    Plaintiffs' counsel in the MDL litigation – most of whom are not involved in the excessive-fees case – decided, in line with the MDL Court's observation, that it did not make sense,

12

and would be unfair, to seek to recover, in effect, from the current fund shareholders. This decision was unrelated to the proposed appointment of co-lead counsel in the instant case.

36.    There is no evident reason why the representation of one set of clients in the instant case would limit the representation of the clients in the market-timing litigation. Plaintiffs in the MDL action and the instant litigation are investors in Columbia Funds. The Class definition in both cases is similar, although the MDL action covers a slightly longer time frame. The cases share some common defendants, although they are based on different legal theories and allege different improper activities by defendants. Because both actions seek a recovery on behalf of an almost identical class of investors, a recovery in either action will benefit essentially the same investors. Similarly, a recovery on behalf of the funds, in either case, will benefit all current investors. The cases are complementary in that they seek to recover all potential damages on various legal theories.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this 8ᵗʰ day of June, 2005 at New York, NY.

_____

BRUCE A. GREEN

**BRUCE A. GREEN**
**Louis Stein Professor of Law**
**Fordham University School of Law**
**140 West 62nd Street**
**New York, NY 10023**
**(212) 636-6851; (212) 636-6899 (FAX)**
**bgreen@law.fordham.edu**

## Bar Admissions

New York State (since 1982)
U.S. District Courts for the Southern and Eastern Districts of New York
U.S. Court of Appeals for the Second Circuit
U.S. Supreme Court

## Education

**Columbia University School of Law**: J.D. 1981
       Honors: James Kent Scholar; Harlan Fiske Stone Scholar
       Associate Editor, *Columbia Law Review*

**Princeton University**: A.B. 1978, *summa cum laude*

## Current Legal Employment

**Fordham University School of Law**:
       Louis Stein Professor of Law, since 1997
       Professor, 1996-97; Associate Professor, 1987-96
       Director, Louis Stein Center for Law and Ethics, since 1997
       Director, Stein Center for Ethics and Public Interest Law, 1992-97
       Responsible for teaching courses in the areas of legal ethics, criminal law and criminal
procedure, and for overseeing the Stein Scholars Program

## Prior Full-time Legal Employment

**Office of the United States Attorney for the Southern District of New York**:
       October 1983 to August 1987, Assistant United States Attorney
       Deputy Chief Appellate Attorney, 1986-87; Chief Appellate Attorney, 1987

**U.S. Supreme Court**: Law clerk to Justice Thurgood Marshall, 1982-83

**U.S. Court of Appeals for the Second Circuit**: Law clerk to Judge James L. Oakes, 1981-82

## Other Legal Positions

**Departmental Disciplinary Committee, Appellate Division, First Department**: Member, 1997-2002

**New York City Conflicts of Interest Board**: Member, Nov. 1995 to March 2005

**Handschu Authority**: Civilian member, July 1994 to Nov. 1995

**Office of Investigations Officer (U.S. v. I.B.T.)**: Special Counsel (part-time), 1991

**Office of Independent Counsel Lawrence Walsh**, Associate Counsel (part-time), 1988-91

**New York State Commission on Government Integrity**: Consultant and special investigator, 1988-90

**Columbia University School of Law**: Adjunct Professor (part-time), 1990

**Office of the United States Attorney for the Southern District of New York**: Special Assistant United States Attorney (part-time), September 1987 to June 1988

**Fordham University School of Law**: Adjunct Assoc. Professor (part-time), 1985-87

## Professional Service

**American Bar Association**:
    Section of Litigation:
        Council member, 2004 to present
        Committee on Law Faculty Involvement: co-chair, 1998-2001, 2003 to present
        Civil Justice Institute: member, 2001-03
        Task Force on Ethical Guidelines for Settlement Negotiations: member, 2000-02
        Ethics 2000 Task Force: member, 1999-2000
        Committee on Ethics and Professionalism: co-chair, 1995-98
        Task Force on the Independent Counsel Act: reporter, 1997-99
        Rep. to Sec./Div. Committee on Professionalism and Ethics, 1996-2003
        Committee on Amicus Curiae Briefs: chair, 1991-95
    Commission on Multijurisdictional Practice: reporter, 2000-02
    Coordinating Group on Bioethics and the Law: member, 1997-2003
    Standing Committee on Professionalism: reporter, 2000-01
    Steering Committee for the Symposium on the Multijurisdictional Practice of Law: reporter, 1999-2000
        Task Force on the Attorney-Client Privilege: reporter, 2004 to present
        Task Force on Law Schools and the Profession: consultant, 1991-92

**Association of the Bar of the City of New York**:
> Delegate to NYS Bar Association, 2003 to present
> Committee on Professional and Judicial Ethics: member, 1994-97, 2003 to present
> Ethics 2000 Committee: member, 1999-2001
> Jt. Committee on the Legal Referral Service: chair, 1993-96; member, 1996-2000
> Committee on International Access to Justice: member,1999-2000
> Committee on Disaster Plan: member, 1996-97
> Marden Lecture Committee: member, 1991-94
> Criminal Law Committee: member, 1991-94
> Task Force on Lawyer Training: member, 1992-94
> Corrections Committee: member, 1988-91

**Association of American Law Schools:** Chair, Section of Professional Responsibility, 1999

**Criminal Law Bulletin**: Contributing editor, 1988-98

**Evan B. Donaldson Adoption Institute**: Ethics Advisory Committee: member, 1998-2001

**Federal Bar Council**:
> Second Circuit Courts Committee: member, 1994-97; chair, Subcommittee on Criminal Law and Ethics
> *Federal Bar Council News*: member of the Editorial Board, 1995 to present
> Inn of Court: master, 2000-02

**Fund for the City of New York:** Member of Advisory Committee for the New York Housing Court Online Preparation System (COPE), 1999

**National Conference of Bar Examiners:** Member of MPRE Drafting Committee, 2001 to present

**New York County Lawyers' Association**:
> Director, May 2004 to present
> Member of Justice Center advisory board, 2003 to present

**New York State Bar Association:**
> House of Delegates member, 2003 to present
> Committee on Professional Ethics: Chair, 1998-2001; vice chair, 1995-98; member, 1991 to present
> Committee on Standards of Attorney Conduct (formerly Special Committee to Review the Code of Professional Responsibility): member, 1997 to present
> Task Force on "Pay to Play" Concerns, member, 1998-2000

**New York State Task Force on Attorney Professionalism and Conduct:** Member, 1996-98

3

## **Articles in Law Journals**

Prosecutorial Neutrality, 2004 Wisconsin L. Rev. 837  (with Fred C. Zacharias)

Foreword, Colloquium, Deborah Rhode's *Access to Justice*, 73 Fordham L. Rev. 841 (2004)

Federal Court Authority to Regulate Lawyers: A Practice in Search of a Theory, 56 Vand. L. Rev. 1303 (2003) (with Fred C. Zacharias)

Prosecutorial Ethics as Usual, 2003 Illinois L. Rev. 1573

Criminal Neglect: Indigent Defense from an Ethics Perspective, 52 Emory Law Review 1170 (2003)

Regulating Federal Prosecutors' Ethics, 55 Vand. L. Rev. 381 (2002) (with Fred C. Zacharias)

Bar Association Ethics Committees: Are They Broken?, 30 Hofstra L. Rev. 731 (2002)

May Judges Attend Privately Funded Educational Programs?  Should Judicial Education Be Privatized?: Questions of Judicial Ethics and Policy, 29 Fordham Urb. L.J. 941 (2002)

John D. Feerick: The Dean of Ethics and Public Service, 70 Fordham L. Rev. 2165 (2002)

Judicial Rationalizations for Rationing Justice: How Sixth Amendment Doctrine Undermines Reform, 70 Fordham L. Rev. 1729 (2002)

Thoughts About Corporate Lawyers After Reading *The Cigarette Papers*: Has the "Wise Counselor" Given Way to the "Hired Gun"?, 51 DePaul L. Rev. 407 (2001)

Reflections on the Ethics of Legal Academics: Law Schools as MDPs; or, Should Law Professors Practice What They Teach?, 42 S. Tex. L. Rev. 301 (2001)

Public Declarations of Professionalism, 52 S. Car. L. Rev. 729 (2001)

The Disciplinary Restrictions on Multidisciplinary Practice: Their Derivation, Their Development, and Some Implications for the Core Values Debate, 84 Minn. L. Rev. 1115 (2000)

The Uniqueness of Federal Prosecutors, 88 Georgetown L.J. 207 (2000) (with Fred C. Zacharias)

Must Government Lawyers "Seek Justice" in Civil Litigation?, 9 Widener J. Pub. L. 235 (2000)

There But for Fortune: Real-Life vs. Fictional "Case Studies" in Legal Ethics, 64 Fordham L. Rev. 977 (2000)

4

Rationing Lawyers: Ethical and Professional Issues in the Delivery of Legal Services to Low-Income Clients, 67 Fordham L. Rev. 1713 (1999)

Why Should Prosecutors "Seek Justice"?, 26 Fordham Urb. L.J. 609 (1999)

The Criminal Regulation of Lawyers, 67 Fordham L. Rev. 327 (1998)

Lawyers as Nonlawyers in Child-Custody and Visitation Cases: Questions From a "Legal Ethics" Perspective, 73 Ind. L.J. 665 (1998)

Lawyer Discipline: Conscientious Noncompliance, Conscious Avoidance, and Prosecutorial Discretion, 66 Fordham L. Rev. 1307 (1998)

Less is More: Teaching Legal Ethics in Context, 39 Wm. & Mary L. Rev. 357 (1998)

Conflicts of Interest in Legal Representation: Should the Appearance of Impropriety Rule Be Eliminated in New Jersey--Or Revived Everywhere Else?, 28 Seton Hall L. Rev. 315 (1997)

The Role of Personal Values in Professional Decisionmaking, 11 Geo. J. of Legal Ethics 19 (1997)

Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71 (1996)

Whose Rules of Professional Conduct Should Govern Lawyers in Federal Court and How Should the Rules Be Created?, 64 George Washington L. Rev. 460 (1996)

Foreword: Children and the Ethical Practice of Law, in Ethical Issues in the Legal Representation of Children, 64 Fordham L. Rev. 1281 (1996) (with Bernardine Dohrn)

Contextualizing Professional Responsibility: A New Curriculum for a New Age, 58 Law & Contemp. Probs. 193 (1995) (with Mary Daly & Russell Pearce)

Policing Federal Prosecutors: Do Too Many Regulators Produce Too Little Enforcement?, 8 St. Thomas L. Rev. 69 (1995)

Of Laws and Men: An Essay on Justice Marshall's View of Criminal Procedure, 26 Ariz. St. L.J. 369 (1994) (with Daniel Richman)

Foreword, Ethical Issues in Representing Older Clients, 62 Fordham L. Rev. 961 (1994) (with Nancy Coleman)

Foreword, Urban Environmental Equity, 21 Fordham Urb. L.J. 425 (1994)

Lethal Fiction: The Meaning of "Counsel" in the Sixth Amendment, 78 Iowa L. Rev. 433 (1993) [reprinted in 6 Crim. Prac. L. Rev. 183 (1994)]

"The Whole Truth?": How Rules of Evidence Make Lawyers Deceitful, 25 Loyola of Los Angeles L. Rev. 699 (1992)

"Power, Not Reason": Justice Marshall's Valedictory and the Fourth Amendment in the Supreme Court's 1990-91 Term, 70 N.C.L. Rev. 373 (1992)

After the Fall: The Criminal Law Enforcement Response to the S&L Crisis, 59 Fordham L. Rev. S155 (1991)

Zealous Representation Bound: The Intersection of the Ethical Codes and the Criminal Law, 69 N.C.L. Rev. 687 (1991) [reprinted in 4 Crim. Prac. L. Rev. 323 (1992)]

"Hare and Hounds": The Fugitive Defendant's Constitutional Right to Be Pursued, 56 Brooklyn L. Rev. 439 (1990) [reprinted in 4 Crim. Prac. L. Rev. 67 (1992)]

The Good-Faith Exception to the Fruit of the Poisonous Tree Doctrine, 26 Crim. L. Bull. 509 (1990)

Doe v. Federal Grievance Committee: On the Interpretation of Ethical Rules,  55 Brooklyn L.Rev. 485 (1989)

"Through a Glass, Darkly": How the Court Views Motions to Disqualify Criminal Defense Lawyers, 89 Colum. L. Rev. 1201 (1989) [reprinted in 2 Crim. Prac. L. Rev. 551 (1990)]

Her Brother's Keeper: The Prosecutor's Responsibility When Criminal Defense Counsel Has a Conflict of Interest, 16 Am. J. Crim. L. 323 (1989)

"Package" Plea Bargaining and the Prosecutor's Duty of Good Faith, 25 Crim. L. Bull. 507 (1989)

Limits on a Prosecutor's Communications With Prospective Defense Witnesses, 25 Crim. L. Bull. 139 (1989)

A Prosecutor's Communications With Represented Defendants: What Are the Limits?, 24 Crim. L. Bull. 283 (1988)

The Ethical Prosecutor and the Adversary System, 24 Crim. L. Bull. 126 (1988)

Note, Court Appointment of Attorneys in Civil Cases: The Constitutionality of Uncompensated Legal Assistance, 81 Colum. L. Rev. 366 (1981)

Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Colum. L. Rev. 1053 (1980)

## Articles in Legal Periodicals

Articles in Federal Bar Council News: "Privileges in the Corporate Context," vol. 12, no. 1, p. 4 (2005); "Ethics Reform in New York," vol. 11, no. 2, p. 11 (2004); "MJP for Litigators," vol. 10, no. 4, p. 14 (2003); "Privately-Funded Seminars for Judges," vol. 9, no. 5, p. 1 (2002); "Multijurisdictional Issues," vol. 7, no. 4, p. 11 (2000); "Moral Ambiguity/Ambiguous Morals: Morgan Stanley and the $10,000 Payment," vol. 6, no. 4, p. 1 (1999); "When Prosecutors Accuse Criminal Defense Lawyers of Wrongdoing," vol. 5, no. 5, p. 1 (1998); "Prosecuting Lawyers," vol. 5, no. 4, p. 11 (1998); "A View From The 'Ethics' Front," vol. 5, no. 3, p. 7 (1998); "Professional Detachment," vol. 4, no. 4, p. 8 (1997); "The Philosophy of Our Ethical Rules," vol. 4, no. 3, p. 23 (1997); "The President vs. Mrs. Jones," vol. 4, no. 1, p. 11 (1997); "Should Judges Promote Professionalism?," vol. 3, no. 4, p. 4 (1996); "Bad Arguments," vol. 3, no. 1, p. 7 (1996); "The Sins of the Lawyer (and the Procedural Consequences)," vol. 2, no. 4, p. 9 (1995); "Attorney Discipline in the Second Circuit," vol. 2, no. 2, p. 11 (1995)

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," ABA Section of Litigation, Committee on Corporate Counsel Newsletter, vol. 19, no. 1, p. 1 (Fall 2004) [reprinted in ABA Section of Litigation, Professional Liability Litigation [Newsletter], vol. 3, no. 1, p. 1 (Winter 2005)

Client Confidences: Should Lawyers Be Allowed to Reveal Them to Prevent Death or Serious Bodily Harm?: Yes, New York Lawyer, Oct. 2001, p. 20

Adventures in the Mortgage Trade: A Case Study in Legal Ethics, 27 N.Y. Real Property Law Journal 49 (Spring, 1999) (with Joshua Stein) [also published in Commercial Real Estate Financing: What Borrowers and Lenders Need to Know 1999 vol. 2, p. 749 (PLI 1999)]

Lying Clients: An Age-Old Problem, 26 Litigation 19 (Fall 1999)

When Conflicts of Interest Arise Unexpectedly, Litigation Ethics (Spring/Summer 1998), p. 11

The "No-Contact" Rule in New York State--Some Less Contentious Questions, N.Y. Professional Responsibility Report (Aug. 1998), p.1

The Ten Most Common Ethical Violations, 24 Litigation 48 (Summer 1998) [reprinted in Trial (March 1999), p. 70]

Teaching Legal Ethics in Context, 70 N.Y.S.B.J. 6 (May/June 1998) (with Mary Daly)

Ethical Issues in Representing Children, 7 The Professional Lawyer 9 (1996)

7

Federal Prosecutors' Ethics: Who Should Draw the Lines?, 7 The Professional Lawyer 1 (1995)

Ethical Issues in Representing Older Clients, 5 The Professional Lawyer 18 (1994)

Crime and Punishment After the S&L Crisis, 46 Consumer Finance L.Q. Rep. 195 (1992)

Conflicts of Interest in Corporate Criminal Cases, 1 Corp. Crim. & Const'l L. Rptr. 98 (1990)

"Judge Kennedy Might Not Meet Expectations of Administration," Nat'l L.J., Dec. 21, 1987, p. 20

## **Other Legal Writings**

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," in ABA Section of Litigation, 2004 Annual Conference.

Report of the Commission on Multijurisdictional Practice (Aug. 2002)

"Representing Corporations Under Fire: Ethical Considerations – A Hypothetical," and "Representing Corporations Under Fire: Ethical Considerations," in MCLE Marathon 2002 521, 527 (PLI 2002)

Interim Report of the Commission on Multijurisdictional Practice (Nov. 2001)

"A Guide to Professionalism Commissions" report of the ABA Standing Committee on Professionalism (2001)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 2001 413 (PLI 2001) (with Mary Lu Bilek)

Editor, *Litigation Ethics: Course Materials for Continuing Legal Education* (ABA Section of Litigation 2000) (with John Q. Barrett)

"Assisting Clients with Multi-State and Interstate Legal Problems: The Need to Bring the Professional Regulation of Lawyers into the 21st Century" (report summarizing the proceedings of the Symposium on the Multijurisdictional Practice of Law) (June 2000)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 1999 311 (PLI 1999)

"The Duty to Report Ethical Misconduct," in ABA Section of Family Law, *1998 Annual Meeting* 17 (July 31-Aug. 3, 1998)

"The Ethics of Marketing Legal Services," in *Effective Marketing for Lawyers* (N.Y.S. Bar Ass'n 1996) (with Russell Pearce)

"Local Rules Limiting Attorney Speech in Criminal Proceedings" (Federal Bar Council, June 1996) (principal author)

"Establishing Ethical Standards for Federal Prosecutors and Defense Attorneys," 49 The Record of the Assn. of the Bar of the City of New York 21 (1994) (principal author)

*Tax Fraud and Money Laundering* (The John Marshall Publ. Co., 1993) (with Robert H. Hishon & Richard A. Westin)

Editor, *Government Ethics for the 1990's: The Collected Reports of the New York State Commission on Government Integrity* (Fordham Univ. Press, 1991)

Reporter to *Evidence in America: The Federal Rules in the United States* (1989-91 supp., Fed. R. Evid. 801, 802, and 804)

"Ex Parte Contacts With Employees of a Corporate Party in Civil Litigation," in ABA Section of Litigation, *Best Evidence Seminar* 41 (Apr. 19, 1991)

"Use of an Attorney's Statements Against His or Her Client," in ABA Section of Litigation, *Best Evidence Seminar* 35 (Mar. 9-10, 1990)


## Participation in Professional and Academic Programs   (since July 1999)

Presenter, Symposium: "Should There Be an Effort to Develop Uniform Statewide Attorney Disciplinary Rules?", NYCLA, May 13, 2005

Panelist, "The Efficacy of Unbundling Legal Services," Partners in Justice: A Colloquium on Developing Collaborations Among Courts, Law School Clinical Programs and the Practicing Bar, New York State Judicial Institute, May 9, 2005

Panelist, "You're Fired! Conflicts of Interest and Disqualification of Counsel," Federal Bar Council, April 26, 2005

Speaker, "Ethical Issues in Legal Services Practice," Legal Services of New York, March 15, 2005

Panelist, "Rising to the Challenge: How Should a Civil Practitioner Deal with Liars, Cheaters, Suicide Threateners, and Other Difficult Clients?," Fordham Univ. School of Law, March 14, 2005

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2004, PLI, Feb. 18, 2005

Speaker, "United States Regulation of Multijurisdictional Practice," Conference on Liabilities of Lawyers in Crossborder Transactions and Disputes, Center for International Legal Studies, Kitzbuhel, Austria, Jan. 25, 2005

Panelist, "New Developments in Ethical Considerations for the Business Attorney," in MCLE Marathon 2004, PLI, Dec. 16, 2004

Panelist, "Waivers That Work - Managing Conflicts Effectively," NYLJ & Stein Center, Dec. 6, 2004

Moderator, "Practical Problems in Litigation Ethics," Trial Evidence in the Courts: Problems and Solutions, ALI-ABA, Dec. 2, 2004

Panelist, "'Acceptable Lies?' - The Ethics of Negotiation, and Legal Duties of Disclosure," NYLJ & Stein Center, Dec. 1, 2004

Moderator, "Ethical and Professional Issues in Litigation," Marilyn Stein Bellet Conference on Law and Ethics, Hilton Head, SC, Nov. 13, 2004

Panelist, "Ethical Considerations for Corporate Investigations: Updates 2004," Association of the Bar of the City of New York, Sept. 14, 2004

Moderator, "Tattletales or Crimestoppers: Disclosure Ethics Under Model Rules 1.6 and 1.13," ABA Annual Meeting, Atlanta, GA, Aug. 7, 2004

Panelist, "Representing Clients with Diminished Capacity," NYSBA Legal Assistance Partnership Conference, Albany, NY, June 15, 2004

Panelist, "Avoiding Potholes: Discovery and Ethics on the Highway to Trial," ABA Section of Litigation Annual Meeting, Phoenix, AZ, May 6, 2004

Panelist, "Confronting Possible Client Fraud: Is 'Don't Ask, Don't Tell' an Ethically Acceptable Approach?," Brooklyn Bar Ass'n, Apr. 14, 2004

Panelist, "Ethical Issues in Pro Bono," Association of the Bar of the City of New York, Feb. 25, 2004

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2004, PLI, Feb. 24, 2004

10

Panelist, "Should New York Adopt the Model Rules of Professional Conduct?," NYSBA 2004 Annual Meeting, Jan. 28, 2004

Panelist, "Ethical Challenges in Employment Law," ABCNY, Jan. 16, 2004

Moderator, "Ethics in Action: The Role of Intergenerational Differences in Setting a Lawyer's Moral Compass," Northeast NALP, Jan. 15, 2003

Panelist, "The Attorney-Client Privilege and the Potential Abuse of Public and Private Power," AALS Annual Meeting, Atlanta, Ga., Jan. 5, 2004

Panelist, "Conflict of Interest Issues in Corporate Representation," PLI, Dec. 19, 2003

Panelist, "New Developments in Ethical Considerations for the Business Attorney," PLI, Dec. 18, 2003

Panelist, "Should Criminal Defense Lawyers Be Constrained by the Truth?: The Limits of Zealous Advocacy," Fordham Univ. School of Law, Nov. 25, 2003

Speaker, "Government Attorney Conduct from the Ethics Committees' Perspective," 2003 Ethics for Government Attorneys, Office of the NYS Attorney General, Nov. 14, 2003

Panelist, "Ethical Dilemmas Faced During the Defense of a Criminal Case," co-sponsored by the Legal Aid Society and the Stein Center, Fordham Univ. School of Law, Nov. 13, 2003

Panelist, "Ethics for Corporate Counsel," N.Y.S. Bar Ass'n Corporate Counsel Section, Oct. 27, 2003

Panelist, "Thorny Ethical Issues in Litigation," Federal Bar Council 2003 Fall Bench & Bar Retreat, CT, Oct. 18, 2003

Panelist, "Legal Ethics vs. Personal Morality: How to Resolve the Unresolvable, co-sponsored by the Legal Aid Society and the Stein Center, Fordham Univ. School of Law, Sept. 29, 2003

Commentator, conference on "Judging Judges' Ethics," Hofstra University School of Law, Sept. 14-15, 2003

Panelist, "Ethical Considerations for Corporate Investigation: Updates 2003," ABCNY, September 11, 2003

Panelist, panel on Ethics for program on "Real Estate Titles and Transfers, N.Y. State Bar Ass'n, June 19, 2003

11

Moderator, "Conflicts of Interest in Criminal Practice," ABA National Conference on Professional Responsibility, Chicago, IL, May 29, 2003

Co-panelist, "Ethical Considerations of Asset Protection," Estate Planners Day, Estate Planning Council of NYC, May 9, 2003

Panelist, "Plenary Session: Coming Soon to a State Rules Committee Near You: How Will Ethics 2000 Affect Lawyer Liability?," ABA National Legal Malpractice Conference, New Orleans, Apr. 24, 2003

Moderator, "Ethics for Litigators," Assoc. of the Bar of the City of New York, Apr. 14, 2003

Moderator, "Top Ten Reasons Why You Should Read the 2002 Model Rules of Professional Conduct," ABA Section of Litigation Annual Meeting, Houston, TX, April 12, 2003

Panelist, "Collaborations Between Lawyers and Social Workers: Avoiding Ethical Minefields," Fordham Univ. School of Law, April 7, 2003

Moderator, "Effect of Present Wartime Legislation on Practicing Attorneys: A Discussion of Future Implications," conference on American Democracy in Times of War, Benjamin N. Cardozo School of Law, March 24, 2003

Speaker, "Criminal Neglect: Non-diligent Criminal Defenders, Under-funded Public Defense Systems, and the Disciplinary Non-response," What Do Clients Want? Emory Conference on Ethics and Professionalism, Emory Univ. School of Law, March 14, 2003

Speaker, "Ethical Issues and the Practice of Public Interest Law," Brennan Center for Justice, March 6, 2003

Panelist, "The Ethics of Helping Clients Who Cannot Help Themselves," Fordham Univ. School of Law, March 3, 2003

Speaker, "Criminal Neglect: Non-Diligent Criminal Defenders, Under-funded Public Defender Systems, and the Disciplinary Non-response," Association for Practical and Professional Ethics annual meeting, Charlotte, N.C., Feb. 28, 2003

Panelist, "Benchmarks of Ethics Center Excellence: Funding Strength," Ethics Center Colloquium: Strategic Planning for Ethics Centers, Association for Practical and Professional Ethics, Charlotte, N.C., Feb. 27, 2003

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2003, PLI, Feb. 25, 2003

Moderator, panel on "Integrity in the Practice of Law," Conference on Integrity in the Law, Fordham Univ. School of Law, Feb. 7, 2003

Co-presenter, Asset Protection – Ethical Considerations, UJA Federation of NY, Feb. 4, 2003

Trainer, "Disciplinary Procedures and Overview of Issues Relevant to MELS' Practice," Legal Services for New York City, Feb. 3, 2003

Panelist, "New Developments in Ethical Considerations for the Business Attorney," PLI, December 19, 2002

Panelist, "Ethical Issues in Representing a Corporation Under Investigation," Fordham Univ. School of Law, November 19, 2002

Luncheon speaker, "Ethical Issues for Government Lawyers in Dealing with Witnesses," Professional Responsibility Officers' Conference, U.S. Department of Justice, Washington, D.C., November 13, 2002

Panelist, "Talking to the Media: Practical & Ethical Considerations Lawyers Need to Know about the Big, Bad World of TV & Radio," Association of the Bar of the City of New York, November 12, 2002

Moderator, "Moral Philosophy and the Practice of Justice," Federal Bar Council, Kerhonkson, NY, October 26, 2002

Panelist, "Representing the Corporation in Crisis," New York State Bar Association, Business Law Section Fall Meeting, St. Thomas, October 11, 2002

Panelist, "Seminars for Judges: Should Judges Attend Seminars Funded by Private Organizations, and if so, How Should Such Programs Be Funded?,"Association of the Bar of the City of New York, October 9, 2002

Speaker, ABA National Legal Malpractice Conference, Chicago, IL, Sept. 13, 2002

Panelist, "Keeping to the Straight and Narrow: Ethical Issues for Civil Litigators," N.Y. State Bar Ass'n, June 7, 2002

Panelist, "Teaching Professional Responsibility: 'Woodshedding' or Coaching the Witness and Impeaching the Honest Witness," plenary session of AALS Conference on Evidence, Alexandria, Va., June 1, 2002

13

Moderator, "Law Practice at the Crossroads: How Far Should We Go in Changing Rules Governing Cross-Border Practice and Bar Admission?," N.J. State Bar Ass'n annual meeting, May 22, 2002

Panelist, "The New York Lawyer Practicing Delaware Law" (program on "The Delaware-New York Nexus 2002"), N.Y. County Lawyers' Ass'n, May 3, 2002

Speaker, "Prosecutorial Ethics as Usual," conference on ABA Model Rules of Professional Conduct, University of Illinois School of Law, April 5, 2002

Moderator, "Ethical Issues for the Lawyer in Dealing with Mentally Ill Clients," Association of the Bar of the City of New York, March 23, 2002

Moderator, "Legal Issues Arising from Acts of Terrorism and Anti-Terrorist Efforts," U.S. Judicial Conference for the District of New Jersey, March 20, 2002

Co-panelist, "Ethical Issues in Transactional Practice," Fordham Law School, March 6, 2002

Trainer, "Selected Topics in Legal Ethics," Legal Services for New York City, March 5, 2002

Speaker, "Ethical Considerations," program on "Commercial Real Estate Finance," PLI, February 26, 2002

Panelist, "Legal Ethics in the Practice of Criminal Law," Association of the Bar of the City of New York, February 21, 2002

Panelist, "Ethics Issues in Multijurisdictional Practice," ABA Connection, February 20, 2002 and February 21, 2002 (teleconference)

Panelist, "Dialogue Regarding the Issue: Justice Monitors Attorney/Client Communications," Joint program of APRL and ABA Center for Professional Responsibility, ABA Midyear Meeting, Philadelphia, Jan. 31, 2002

Panelist, "Preparing and Presenting Experts: Practical and Ethical Issues," N.Y.S. Bar Ass'n annual meeting, Antitrust Law Section, Jan. 24, 2002

Speaker, "Ethical Issues and the Practice of Public Interest Law," Brennan Center for Justice at NYU School of Law, Dec. 11, 2001

Panelist, New Developments in Ethical Considerations for the Business Lawyer, MCLE Marathon 2001, PLI, Dec. 7, 2001

14

Speaker, "Ethics and Professionalism," program titled "Update 2001," N.Y.S. Bar Ass'n, Nov. 2, 2001

Panelist, "Ethics and Discovery," Federal Bar Council, Oct. 14, 2001

Co-presenter, "Ethics for Transactional Lawyers," Fordham Law School, Oct. 10, 2001

Speaker, 2001 Legal Ethics Conference: "Legal Ethics: What Needs Fixing?," Hofstra University School of Law, Sept. 10, 2001

Panelist, "Ethics and Criminal Procedure," Israeli Ministry of Justice (in conjunction with the Stein Center), Jerusalem, Israel, July 5, 2001

Panelist, ethics issues in real estate practice, "Real Estate Titles and Transfers," N.Y.S. Bar Ass'n, June 14, 2001

Co-chair and speaker, "Ethics and Professionalism," N.Y.S. Bar Ass'n, June 13, 2001

Panelist, "Ethical Issues in Welfare Advocacy," The Legal Aid Society, June 11, 2001

Panelist, "Ethics in Government," State of New York Office of the Attorney General, June 9, 2001

Panelist, "What Every New Attorney Must Know About Ethics, Part II," PLI, May 29, 2001

Panelist, "Training the Advocate," ABA Section of Litigation Annual Meeting, Phoenix, AZ, May 10, 2001

Presenter, ethics issues in commercial real estate finance, program on "Commercial Real Estate Finance," PLI, May 4, 2001

Panelist, program on Ethics in Litigation, New York County Lawyers' Assn., April 30, 2001

Presenter, Clifford Symposium on Tort Law and Social Policy ("Smoke Signals: The Changing Landscape of the Practice, Financing and Ethics of Civil Litigation in the Wake of the Tobacco Wars"), April 5-6, 2001, DePaul College of Law

Moderator, Ethical Issues in Settlement Negotiations, Walter F. George School of Law, Mercer University, March 9-10, 2001

Presenter, CLE program on ethics in criminal defense representation, Brooklyn Defender Services, Jan. 30, 2001

Panelist, Symposium on Unlawful Practice of Law: Toward a Definition of the "Practice of Law," NYSBA annual meeting, Jan. 25, 2001

Panelist, CLE program on legal ethics, PLI, Nov. 21, 2000

Panelist, CLE program on ethics in transactional representation, Fordham Univ. School of Law, Nov. 8, 2000

Panelist, CLE program on ethics in criminal advocacy, Fordham Univ. School of Law, Nov. 1, 2000

Panelist, CLE program on ethics in real estate transactions, Chicago Title, Oct. 30, 2000

Panelist, CLE program on witness preparation, Federal Bar Council, Oct. 25, 2000

Panelist, symposium on professionalism sponsored by S. Carolina Univ. School of Law, Savannah, Ga., Oct. 21, 2000

Panelist, CLE program on ethical issues for legal services lawyers, LSNY, Oct. 11, 2000

Presenter, symposium on ethics issues for law professors, S. Tex. College of Law, Oct. 6, 2000

Presenter, faculty workshop, ethics issues for law professors, Fordham Univ. School of Law, Sept. 28, 2000

Panelist, "Ethical Considerations in Asset Protection – Views from the Bench and Bar," ABA annual meeting, July 10, 2000

Panelist, "Lawyer vs. Client: Avoiding Ethical Pitfalls When the Attorney-Client Relationship Becomes Rocky," ABA annual meeting, July 9, 2000

Panelist, program on corporate internal investigations and cooperation, titled "I'm from the Government and I'm Here to Help You," ACCA, June 27, 2000

Panelist, program titled "Ethical Considerations for Criminal Practitioners," NYCLA, June 27, 2000

Speaker, "The Blurring Line Between Law & Business – Maintaining Ethical Standards," NYLJ General Counsel Conference, June 16, 2000

Panelist, panel on Ethics and the Newsgathering Process, for PLI program on "Newsgathering & Libel Litigation 2000," June 15, 2000

Member of planning committee, Partnerships Across Borders: A Global Forum on Access to Justice, ABCNY, Apr. 6-8, 2000.

Speaker, Symposium on "Prosecutorial Misconduct: Discretion, Remedies, and Ethics," Georgetown Law School, Mar. 30, 2000

Speaker, CLE program on legal ethics, Appellate Division, First Department, Mar. 27, 2000

Speaker, Symposium on "Legal Ethics for Government Lawyers: Straight Talk for Tough Times," Widener Univ. School of Law (Harrisburg), March 23, 2000

Organizer and participant, Symposium on the Multijurisdictional Practice of Law, Mar. 10-11, 2000

Speaker, CLE program on current topics in legal ethics, Fordham Law School, March 7, 2000

Panelist, "The Ethics, Tactics and the Law of Witness Preparation," Federal Bar Council annual winter meeting, Feb. 29, 2000

Panelist, "Lawyers Under Investigation: Are Prosecutors and Defense Lawyers Simply 'Doing Their Jobs'?", Federal Bar Counsel annual winter meeting, Feb. 28, 2000

Speaker, "The Future of the Legal Profession: A Symposium on Multidisciplinary Practice," Minnesota Law School, Feb. 26, 2000

Moderator, workshop program for deans and bar leaders, ABA Mid-Year Meeting, Feb. 11, 2000

Organizer and speaker, CLE program on ethics in litigation, Fordham Law School, Feb. 8, 2000

Invited guest, meeting of the Subcommittee on Attorney Conduct Rules, Committee on Rules of Practice and Procedure, Judicial Conference of the United States, Feb. 4, 2000

Organizer and introducer, program on "Ethics in Criminal Advocacy," AALS Annual Conference, Jan. 6, 2000

Speaker, CLE program organized by N.Y.C. Law Department, Dec, 20, 1999

Organizer and moderator, Summit on the Unmet Legal Needs of Children, ABA Children's Law Committee, Washington, D.C., Dec. 10-11, 1999

Speaker, CLE program organized by N.Y.C. Law Department, Nov. 30, 1999

Moderator, panel on prosecutorial ethics, symposium at American Univ. School of Law, Nov. 4, 1999

Speaker, CLE program on ethics issues in federal litigation, NYLJ, Sept. 30, 1999

Speaker, CLE program on legal ethics, ABCNY, Sept. 24, 1999

Participant, meeting of Multistate Professional Responsibility drafting committee, July 29-31, 1999

Speaker, program on "What's Changing in Prosecution," Committee on Law and Justice, National Academy of Science, July 15, 1999