## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | Civil Action No. 04cv11704 (REK) |
|  | ) |  |
| In re: COLUMBIA ENTITIES LITIGATION | ) | Consolidated Case Nos.: |
|  | ) | 04cv 11750 |
|  | ) | 04cv 11760 |
|  | ) | 04cv 11953 |
| _____ | ) |  |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 3

    A.    All of the Columbia Funds Functioned as Integral Components of One Unitary Organization.................................................................. 3

    B.    The Economics of All the Funds Are Intertwined and Wrongful Fees Charged to One Fund Impacted the Other Funds ............................... 4

    C.    Defendants Engaged in a Common Course of Wrongful Conduct That Injured All Shareholders.................................................................... 5

    D.    Plaintiffs Allege Wrongdoing That Directly Injured the Class Members ........................................................................................... 6

ARGUMENT ...................................................................................... 8

    I.    THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION ................... 8

    II.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED .............................. 9

        A.    The Class Is So Numerous That Joinder of All Members Is Impracticable....................................................................... 9

        B.    Questions Of Law And Fact Common To The Members Of The Class Exist ........................................................................... 10

        C.    The Claims of Plaintiffs Are Typical of The Claims of The Class........... 12

        D.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class ............................................................................. 15

    III.    THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(3) ARE SATISFIED ......... 19

        A.    Common Questions of Law and Fact Predominate ................................. 19

        B.    A Class Action is Superior to Numerous Individual Actions ................... 21

    IV.    PLAINTIFFS MAY BRING THESE CLAIMS ON BEHALF OF INVESTORS IN ALL THE COLUMBIA FUNDS ............................................. 24

    V.    PLAINTIFFS MAY PROPERLY SERVE AS CLASS REPRESENTATIVES TO ASSERT THE § 36(b) CLAIMS OF SHAREHOLDERS IN ALL COLUMBIA FUNDS.............................................. 33

A.    Supreme Court and First Circuit Precedent Support Plaintiffs' Individual Standing and Ability to Represent the Proposed Class Under § 36(b) .......................................................................... 34

B.    The Language of § 36(b) is Consistent With Class Certification ............ 35

VI.   THE CLAIMS AT ISSUE IN THIS MOTION ARE DIRECT IN NATURE ......................................................................................... 38

A.    Plaintiffs' § 36(b) Claim Is Direct ...................................... 38

B.    Plaintiffs' State Law and Non-§ 36(b) Federal Claims are Direct Claims Suitable for Class Treatment ..................................... 39

      1.    Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Massachusetts Law ................................ 39

      2.    Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Oregon Law ....................................... 40

CONCLUSION ............................................................................ 41

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alves v. Harvard Pilgrim Health Care, Inc.*,
　　204 F. Supp. 2d 198 (D. Mass. 2002) ........................................................................29, 34, 35

*Amchem Prods. v. Windsor*,
　　521 U.S. 591 (1997) ........................................................................................................21, 23

*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*,
　　794 F. Supp. 1424 (D. Ariz. 1992) ........................................................................................28

*Baby Neal v. Casey*,
　　43 F.3d 48 (3d Cir. 1994) .......................................................................................................11

*In re Baldwin-United Corp. Litig.*,
　　122 F.R.D. 424 (S.D.N.Y. 1986) ............................................................................................13

*In re Bank of Boston Corp. Sec. Litig.*,
　　762 F. Supp. 1525 (D. Mass. 1991) ........................................................................................12

*Batra v. Investors Research Corp.*,
　　1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991) ........................................................29

*Baum v. Investors Diversified Servs., Inc.*,
　　409 F.2d 872 (7th Cir. 1969) .............................................................................................6, 7

*Blackie v. Barrack*,
　　524 F.2d 891 (9th Cir. 1975) .................................................................................................20

*Blasberg v. Oxbow Power Corp.*,
　　934 F. Supp. 21 (D. Mass. 1996) ......................................................................................39, 40

*Boesenberg v. Chicago T. & T. Co.*,
　　128 F.2d 245 (7th Cir. 1942) .................................................................................................24

*Boulet v. Cellucci*,
   107 F. Supp. 2d 61 (D. Mass. 2000) ....................................................................12

*Brown v. Pro Football, Inc.*,
   146 F.R.D. 1 (D.D.C. 1992)................................................................................21

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ....................................................................22

*Caranci v. Blue Cross & Blue Shield*,
   194 F.R.D. 27 (D.R.I. 2000) ..............................................................................14

*Caranci v. Blue Cross & Blue Shield*,
   1999 U.S. Dist. LEXIS 14801 (D.R.I. Aug. 19, 1999)........................................15

*In re Carbon Black Antitrust Litig.*,
   2005 U.S. Dist. LEXIS 660 (D. Mass. Jan. 18, 2005) ................................... *passim*

*Collazo v. Calderon*,
   212 F.R.D. 437 (D.P.R. 2002) ............................................................................11

*Coscarart v. Major League Baseball*,
   1996 U.S. Dist. LEXIS 9797 (N.D. Cal. July 10, 1996)......................................37

*Cross v. Oneida Paper Prod. Co.*,
   117 F. Supp. 919 (D.N.J. 1954) .........................................................................37

*Curtis v. Commissioner, Me. Dep't of Human Servs.*,
   159 F.R.D. 339 (D. Me. 1994).....................................................................10, 11

*Daily Income Fund, Inc. v. Fox*,
   464 U.S. 523 (1984).............................................................................2, 34, 36

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
   2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000)......................2, 14, 25, 26

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  177 F.R.D. 54 (D. Mass. 1997)........................................................................9, 20

*In re Eaton Vance Corp. Sec. Litig.*,
  206 F. Supp. 2d 142 (D. Mass. 2002)....................................................................30

*In re Eaton Vance Corp. Sec. Litig.*,
  219 F.R.D. 38 (D. Mass. 2003)..............................................................................30

*In re Eaton Vance Corp. Sec. Litig*,
  220 F.R.D. 162 (D. Mass. 2004).....................................................................14, 30

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).................................................................................................8

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985)..................................................................................14

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ..............................................................2, 25, 27, 28

*Fitch v. Radnor Indus., Ltd.*,
  1990 U.S. Dist. LEXIS 13568 (E.D. Pa. Oct. 9, 1990)........................................21

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
  528 F. Supp. 1038 (S.D.N.Y. 1981)......................................................................40

*George Lussier Enters. v. Subaru of New Eng., Inc.*,
  2001 U.S. Dist. LEXIS 12054 (D.N.H. Aug. 3, 2001) .........................................22

*Goodman v. Lukens Steel Co.*,
  777 F.2d 113 (3d Cir. 1985)..................................................................................25

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)..........................................................................................24, 28

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)..................................................................20

*Guckenberger v. Boston Univ.*,
  957 F. Supp. 306 (D. Mass. 1997) .......................................................12

*Haas v. Pittsburgh Nat'l Bank*,
  526 F.2d 1083 (3d Cir. 1975)...........................................................26, 28

*Hicks v. Morgan Stanley & Co.*,
  2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) .....................25

*Hoxworth v. Blinder, Robinson & Co.*,
  980 F.2d 912 (3d Cir. 1992)..................................................................14

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90, 108 (1991)...........................................................34, 38, 39

*Key v. Gillette Co.*,
  782 F.2d 5 (1st Cir. 1986).....................................................................15

*Kinney v. Metro Global Media, Inc.*,
  2002 U.S. Dist. LEXIS 18628 (D.R.I. Aug. 22, 2002)............8, 9, 10, 11

*Kirby v. Cullinet Software, Inc.*,
  116 F.R.D. 303 (D. Mass. 1987)............................................................8

*Kitchens v. U.S. Shelter*,
  1984 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) ..........................27

*La Mar v. H&B Novelty & Loan Co.*,
  489 F.2d 461 (9th Cir. 1973) ................................................................29

*Lamphere v. Brown Univ.*,
  71 F.R.D. 641 (D.R.I. 1976) ...................................................................8

*In re Lilco Sec. Litig.*,
    111 F.R.D. 663 (E.D.N.Y. 1986) ............................................................................23

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    100 F.R.D. 468 (D. Mass. 1984) ........................................................................20, 21

*In re ML-Lee Acquisition II, L.P. Sec. Litig.*,
    848 F. Supp. 527 (D. Del. 1994) ..........................................................................2, 26

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) .............................................................................27

*McAdams v. Mass. Mut. Life Ins. Co.*,
    2002 U.S. Dist. LEXIS 9944 (D. Mass. May 15, 2002) ...........................9, 11, 13

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003) ...............................................................................19

*Mgmt. Television Sys., Inc. v. Nat'l Football League*,
    52 F.R.D. 162 (E.D. Pa. 1971) ..............................................................................37

*In re MobileMedia Sec. Litig.*,
    28 F. Supp. 2d 901 (D.N.J. 1998) ..........................................................................28

*Moore v. Comfed Sav. Bank*,
    908 F.2d 834 (11th Cir. 1990) ..........................................................................30, 32

*Motta v. Samuel Weiser, Inc.*,
    768 F.2d 481 (1st Cir. 1985) ..................................................................................37

*NAACP v. Lansing Bd. of Educ.*,
    429 F. Supp. 583 (W.D. Mich. 1976) ....................................................................37

*Newby v. Enron Corp.*,
    2004 U.S. Dist. LEXIS 8158 (S.D. Tex. Feb. 24, 2004) ........................................28

*O'Shea v. Littleton,*
   414 U.S. 488 (1974)........................................................................................24

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815, 831 (1999) ............................................................................25

*Payne v. Goodyear Tire & Rubber Co.,*
   216 F.R.D. 21 (D. Mass. 2003)....................................................................9

*Payton v. County of Kane,*
   308 F.3d 673 (7th Cir. 2002) ..............................................................28, 29

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   263 F. Supp. 2d 172 (D. Mass. 2003) .........................................................25

*In re Polymedica Corp. Sec. Litig.,*
   224 F.R.D. 27 (D. Mass. 2004).....................................................................23

*Prostic v. Xerox Corp.,*
   1991 U.S. Dist. LEXIS 15950 (D. Conn. July 19, 1991)............................35

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
   163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................2, 7

*In re Relafen Antitrust Litig.,*
   218 F.R.D. 337 (D. Mass. 2003).....................................................15, 18, 22

*Risinger v. Concannon,*
   201 F.R.D. 16 (D. Me. 2001).......................................................................35

*Roberts v. Heim,*
   670 F. Supp. 1466 (N.D. Cal. 1987) ...........................................................27

*Rodrigues v. Members Mortg. Co.,*
   2005 U.S. Dist. LEXIS 2159 (D. Mass. Feb. 3, 2005) ..............................10

*SEC v. Steadman*,
    798 F. Supp. 733 (D.D.C. 1991) ...................................................................40

*Schaffer v. Timberland Co.*,
    1996 U.S. Dist. LEXIS 5372 (D.N.H. Mar. 19, 1996) .........................................8

*Schur v. Friedman & Shaftan, P.C.*,
    123 F.R.D. 611 (N.D. Cal. 1988) ..................................................................27

*Shankroff v. Advest, Inc.*,
    112 F.R.D. 190 (S.D.N.Y. 1986) ...................................................................27

*Shelter Realty Corp. v. Allied Maint. Corp.*,
    75 F.R.D. 34 (S.D.N.Y. 1977) ......................................................................21

*Silva v. Nat'l Telewire Corp.*,
    2000 U.S. Dist. LEXIS 13986 (D.N.H. Sept. 22, 2000) ......................................19

*Sosna v. Iowa*, 419 U.S. 393 (1975) ...................................................................24

*Smilow v. Southwestern Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003) ....................................................................20, 21

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002) ........................................................................39

*Sutton v. Med. Serv. Ass'n*,
    1993 U.S. Dist. LEXIS 9763 (E.D. Pa. July 20, 1993) .......................................25

*Tedesco v. Mishkin*,
    689 F. Supp. 1327 (S.D.N.Y. 1988) ..............................................................27

*Tolan v. Computervision Corp.*,
    696 F. Supp. 771 (D. Mass. 1988) ................................................................12

*Wachtel v. Guardian Life Ins. Co.*,
    223 F.R.D. 196 (D.N.J. 2004) ................................................................20

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ................................................................1

*Woodward v. Online Info. Serv.*,
    191 F.R.D. 502 (E.D.N.C. 2000) ....................................................35, 36

*Yaffe v Powers*,
    454 F.2d 1362 (1st Cir. 1972) ..............................................................23

*Zinberg v. Wash. Bancorp., Inc.*,
    138 F.R.D. 397 (D.N.J. 1990) ..............................................................20

## STATE CASES

*Lee v. Mitchell*,
    953 P.2d 414 (Or. App. 1998) ..............................................................40

*Weld v. Glaxo Wellcome, Inc.*,
    746 N.E.2d 522 (Mass. 2001) ....................................................2, 15, 29

## DOCKETED CASES

*Cohen v. FleetBoston Financial Corporation, et al.*,
    Civil Action No. 04-11704 (REK) ........................................................16

*Osburn v. FleetBoston Financial Corporation, et al.*,
    Civil Action No. 04-11750 (REK) ........................................................16

*Simmonds v. FleetBoston Financial Corporation, et al.*,
    Civil Action No. 04-11953 (REK) ........................................................16

*Slicker v. FleetBoston Financial Corporation, et al.*,
    Civil Action No. 04-11760 (REK) ........................................................16

# FEDERAL STATUTES

15 U.S.C. § 80a-2(a)(32) (2005) ..................................................................7

15 U.S.C. § 80a-35(b) (2005) ...............................................................33, 38

Fed. R. Civ. P. 23.2 ...............................................................................37

S. Rep. No. 91-184, at 15 (1969) ..........................................................3, 6

Fed. R. Civ. P. 23(b)(3)......................................................................... *passim*

Plaintiffs in the above-captioned action (collectively, the "Plaintiffs"), respectfully submit this memorandum in support of their motion for certification of this action as a class action and their appointment as class representatives.

## PRELIMINARY STATEMENT

Plaintiffs seek certification of this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a class (the "Class") of all persons who held one or more shares of mutual funds belonging to the FleetBoston Financial Corporation,[1] which include the Columbia mutual funds (referred to collectively herein as the "Columbia Funds" or the "Funds"), during the period August 2, 1999 through March 22, 2004, inclusive.

The consolidated amended complaint (the "Complaint")[2] alleges violations of the Investment Company Act of 1940 (the "ICA"); the Investment Advisers Act of 1940 (the "IAA"); breaches of common law fiduciary duties, aiding and abetting breaches of fiduciary duties and unjust enrichment.[3]  As an action on behalf of investors who have been deceived and injured, it is similar to numerous investor class actions that have been routinely certified in federal courts.  *See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000). Plaintiffs satisfy the requirements of Rule 23.  Accordingly, Plaintiffs' Motion for Class Certification should be granted.

---

[1] On April 1, 2004, FleetBoston Financial Corporation merged with Bank of America Corporation.

[2]  The Complaint is being filed contemporaneously herewith.

[3]  Plaintiffs seek certification pursuant to Rule 23 of all claims in the Complaint save Count IV (Section 215 of the Investment Advisers Act for violation of Section 206 of that Act), which is brought as a derivative claim.

Plaintiffs may properly represent a class that includes the shareholders in all the Columbia Funds and not merely investors in the Funds owned by Plaintiffs. The great weight of authority holds that a class representative having a valid individual claim may sue on behalf of investors who purchased interests in entities that are different from the entities in which the Plaintiff had an interest, when the entities were similar and were commonly controlled and Plaintiffs and other members of the class were injured by a common course of conduct. Courts have specifically certified such classes of mutual fund investors. *See, e.g., In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000); *In re ML-Lee Acquisition II, L.P. Sec. Litig.*, 848 F. Supp. 527 (D. Del. 1994). In addition, many courts have reached the same result in analogous contexts. *See, e.g., Weld v. Glaxo Wellcome, Inc.*, 746 N.E.2d 522, 530 (Mass. 2001) (affirming the class certification order and allowing the plaintiff to represent a class against all defendant drug companies because the conduct affecting the plaintiff was identical to that affecting the class, and his legal theories were the same as those of the class); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (limited partnership investments); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (participants in ERISA benefits plans).

In particular, Plaintiffs may properly assert their claims under § 36(b) of the ICA on behalf of all investors holding shares in mutual funds. Although § 36(b) provides for an action by a security holder of an investment company "on behalf of such company," the investors, not the funds, have the direct right to bring that claim. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 526 (1984). Plaintiffs have the right of all litigants to bring those claims on behalf of other similarly-situated parties -- *i.e.*, the investors in the other funds who also have § 36(b) claims -- so long as the requirements of Rule 23 are satisfied.

The economics of all the Columbia Funds are intertwined, *e.g.*, the Funds share expenses attacked as wrongful in this case.  ¶¶ 73-74.[4]  The legislative history confirms that where a complex of funds is involved, § 36(b) requires the courts to evaluate the impact of defendants' wrongful conduct on the entire complex and not merely on the particular fund in which the plaintiff purchased his or her shares.  *See* S. Rep. No. 91-184, at 15 (1969) ("Senate Report").  That Congressional purpose supports a class certification that would encompass the interests of all the funds.

For the reasons set forth below, the proposed class should be certified.

### STATEMENT OF FACTS

**A.    All of the Columbia Funds Functioned as Integral Components of One Unitary Organization**

The individual Columbia Funds are open-ended management companies consisting solely of the capital invested by mutual fund shareholders.  ¶ 69.  As pools of investor assets, the Funds' registrants are managed and administered by a common body of officers and employees of Columbia.  ¶ 72.  The officers, directors, and employees are not unique to each fund, but overlap amongst the various Columbia Funds.  *Id.*  Thus, in substance, the Columbia Funds function as components of one unitary organization.  *Id.*

Defendants Columbia Management Advisor, Inc. and Liberty Wanger Asset Management, L.P. (formerly Wanger Asset Management, L.P. (WAM)), are registered as investment advisers and had ultimate responsibility for overseeing the day-to-day management for each of the Columbia Funds.  ¶ 25.  The Funds' registrants also had a board of directors comprised of the same individuals who were charged with overseeing numerous Columbia

---

[4] Paragraphs of the Complaint are cited as "¶ __."

Funds.  ¶¶ 29-51; *see also* the February 25, 2002 Columbia Growth Fund, Inc. Statement of

Additional Information ("SAI"), *available at* http://www.sec.gov/Archives/edgar/data/22105/

000095014902000354/f78940e485bpos.txt.

The Columbia Funds also have a common distributor, Columbia Funds Distributor,

which marketed and sold the Funds as the principal underwriter.  ¶ 26.  Information on the Funds

was distributed to potential investors through prospectuses (the "Prospectuses"), pursuant to

which the Funds were offered.  ¶¶ 139-40.  With respect to the statements and omissions relevant

to this litigation, the Prospectuses for the Funds contained substantially identical language.

¶¶ 141-43.

### B.    The Economics of All the Funds Are Intertwined and Wrongful Fees Charged to One Fund Impacted the Other Funds

The Funds have many economic interrelationships and share expenses with one another.

¶¶ 72-74.  For example, the May 1, 2001 Liberty Acorn Trust SAI, which includes the Liberty

Acorn Twenty Fund (n/k/a Columbia Acorn Select Fund)[5] describes how costs for research

services (alleged herein to be excessive) are commingled and shared by the various Funds:

> Research products or services furnished by brokers and dealers
> may be used in servicing ***any or all of the clients of the Advisor***
> and not all such research products or services are used in
> connection with the management of the Funds.

*See* Exhibit A of the Declaration Of Janine L. Pollack In Support of Plaintiffs' Motion For Class

Certification ("Pollack Decl.") (emphasis added); *see also* the SAI for the Columbia Growth

Fund, Inc., dated February 25, 2002, *available at* http://www.sec.gov/Archives/edgar/data/22105

/000095014902000354/f78940e485bpos.txt.

---

[5] In September 2003, the Columbia Management Group decided to rename all of the funds in its
fund family (including the Liberty Acorn Funds) using the Columbia brand and drop the Liberty
brand.  Liberty Acorn Twenty Fund was renamed to Columbia Acorn Select Fund.

Similarly, the Liberty Acorn Prospectus discloses the overlap in directors and accountants, stating:

> At any shareholders' meetings that may be held, shareholders of all Funds would vote together, irrespective of Fund, on the election of Trustees or the selection of independent accountants.

Pollack Decl. Ex. B (emphasis added); *see also* the SAI for the Liberty Acorn Trust, dated May 1, 2001, *available at* http://www.sec.gov/Archives/edgar/data/2110/000095013101501016/d485bpos.txt.

Thus, the Funds all participate jointly in paying the Distributors' overhead expenses related to marketing, promotional, and distribution activities. To the extent that promotional programs were aimed at generating sales of the Columbia Funds generally, each Fund participated in payments for expenses designed to promote sales of shares of the Funds generally and not merely sales of its own shares.

Therefore, in order to determine the amount owing to any single Fund as a result of the promotional programs, it will be necessary to perform an accounting of all Funds.

**C.    Defendants Engaged in a Common Course of Wrongful Conduct That Injured All Shareholders**

Columbia improperly used the assets of the Funds and Fund investors to pay brokerages to aggressively promote the Funds to investors through "shelf-space" revenue sharing programs, directed brokerage, improper "12b-1" fee payments, and unauthorized "soft dollar" commission arrangements. ¶¶ 2, 75-79, 124-38. These various fees and expenses, as well as the aggregate advisory fee paid to the Funds' advisor, were excessive and injured the Funds and its investors because those charges benefited only the adviser and its affiliates, not the Funds or their shareholders. ¶¶ 3, 79, 132, 135.

Defendants kept their shelf-space arrangements secret as the programs presented

unmanageable conflicts of interest, pitting the financial interest of the broker against that of its clients.  ¶¶ 12, 102-03.  The Funds' Prospectuses also failed to disclose the truth about Defendants' strategies for shelf-space plans, directed brokerage, 12b-1 fees, and soft dollars. ¶¶ 141-42, 146-53.  All of the Funds' Prospectuses were substantially the same in this regard and included the same false and misleading statements and omissions.  *Id*.  As a result of this deception, shareholders were misled into continuing to hold Fund shares without realizing that they were routinely paying fees and expenses that provided no benefit to them or the Funds.

Defendants' scheme impacted all the Funds.  The single course of conduct engaged in by Defendants was possible because the Funds were managed by a common investment adviser, a common distributor, and a common body of directors.  Defendants' practices constituted breaches of the fiduciary duties owed by Defendants to Plaintiffs, the Class, and the Funds.

### D.    Plaintiffs Allege Wrongdoing That Directly Injured the Class Members

A mutual fund investor enters into a service agreement with the investment company pursuant to which management and advisory services are provided.[6]  Thus, the purchaser's mutual fund investment is subject to continuing fees and expenses relating to those services.

Consistent with the foregoing, each of the Columbia Funds' Prospectuses and SAIs describes the fees and expenses relevant to this litigation as directly impacting the investors.  For example, to explain a Fund's fee structure, the Liberty Acorn Trust Prospectus has tables that "describe the fees and expenses *you may pay* when *you* buy, hold and sell shares of the Fund." *See* May 1, 2001 Liberty Acorn Trust Prospectus, Pollack Decl. Ex. C (emphasis added.)  One table includes "Management Fees" and "Distribution and Service (12b-1) Fees," which are at the

---

[6]  *See, e.g.*, *Baum v. Investors Diversified Servs., Inc.*, 409 F.2d 872, 874 (7th Cir. 1969) (a mutual fund share "is, in essence, a service contract between the investor and the investment company").

heart of this action.  *Id*.  Also, under the heading "DISTRIBUTION AND SERVICE FEES," (*i.e.* 12b-1 fees), it states that, "[o]ver time, these fees may reduce the return on *your* investment and may cost *you* more than paying other types of sales charges."  Pollack Decl. Ex. D (emphasis added).  Similar language is found in each of the Columbia Funds' Prospectuses and SAIs, and explicitly recognizes that mutual fund fees paid to investment advisers and their affiliates are paid by investors.  Such disclosures do not exist for traditional corporations, where contracts entered into by the corporation have only an indirect impact on the value of a shareholder's stock.  In the mutual funds context, the impact is *direct*.

With respect to the Funds' 12b-1 plans, the Liberty Acorn Trust Prospectus explains that "[t]he Fund has adopted a plan under Rule 12b-1 that permits it to pay the Fund's distributor, marketing and other fees to support the sale and distribution of Class A, B and C shares and certain services provided to you by your financial advisor."  May 1, 2001 Liberty Acorn Twenty Prospectus, Pollack Decl. Ex. D.  These expenses are deducted directly from the Fund, thus impacting the net asset value ("NAV") per share, the price at which the Columbia shareholders are entitled to redeem their shares.  Indeed, the NAV is the only way shareholders can sell their shares.  That redemption price is immediately impacted by each assessment of the fees and expenses that are complained of in this case.  *See* 15 U.S.C. § 80a-2(a)(32) (2005) (defining "redeemable security").  All those fees and expenses, once assessed, immediately reduce the amount Class members are entitled to receive for their shares if they opt to redeem them.

In addition, the injuries here were direct because the Class members were misled into continuing to hold their Columbia securities through Defendants' failure to adequately disclose the existence and nature of the revenue sharing programs and the lack of any benefit accruing to the shareholders of the funds from those programs.  The amount of the damage to the individual

holder would, at a minimum, be equal to the amount of the excess costs resulting from the wrongful programs, on a per share basis, for the duration of the holding period.

In light of the foregoing, it is evident that the Columbia Funds functioned as a unitary organization, the economics of the Funds are intertwined, and a substantial portion of the damages at issue in this litigation were inflicted directly upon the Funds' shareholders. Thus, given the common course of wrong doing by Defendants across all of the Columbia Funds, this is the quintessential situation for class certification.

## ARGUMENT

## I.    THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION

Investor actions are particularly appropriate for class treatment given the large number of shares involved and the typically small amount of individual damages relative to the costs of litigation. *See Kinney v. Metro Global Media, Inc.*, 2002 U.S. Dist. LEXIS 18628, at *18-19 (D.R.I. Aug. 22, 2002) (citing *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311 (D. Mass. 1987) (Wolf, J.)). By providing a single forum to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources.

In considering a class certification motion under Rule 23, the Court may not delve into the merits of the dispute. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Schaffer v. Timberland Co.*, 1996 U.S. Dist. LEXIS 5372, at *13-14 (D.N.H. Mar. 19, 1996) (same) (citing *Eisen*). Rather, the Court must accept as true the factual allegations of the complaint. *See Lamphere v. Brown Univ.*, 71 F.R.D. 641, 646 (D.R.I. 1976).

Due to the importance of the class action device, the requirements of Rule 23 "should be liberally construed in order not to undermine the policies underlying the class action rule."

*McAdams v. Mass. Mut. Life Ins. Co.*, 2002 U.S. Dist. LEXIS 9944, at *7 (D. Mass. May 15, 2002) (Freedman, J.), *aff'd*, 391 F.3d 278 (1st Cir. 2004); *see also Kinney,* 2002 U.S. Dist. LEXIS 18628, at *7 (noting that "suits on behalf of shareholders…are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end"). Furthermore, courts in this Circuit have declared that "[d]oubts should be resolved in favor of certification, particularly in early stages of the litigation." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *8 ("[W]hen a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class.") (citation omitted).

## II.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

Under Fed. R. Civ. P. 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each element of Rule 23(a) has been met in this case.

### A.    The Class Is So Numerous That Joinder of All Members Is Impracticable

For a class action to be certified, the proposed class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). For the purposes of Rule 23(a)(1), impracticability does not mean impossibility of joinder. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997) ("To meet [the numerosity] requirement, the class representatives need only show that it is difficult or inconvenient to join all the members of the class."); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *9 (explaining how the numerosity requirement "is not a difficult burden to satisfy . . . .") (citation omitted). In addition to

examining the number of class members, issues of judicial economy and "the ability of [class] members to institute individual suits" are considered in the numerosity analysis.  *Curtis v. Commissioner, Me. Dep't of Human Servs.*, 159 F.R.D. 339, 340 (D. Me. 1994) (finding that the existence of approximately 500 potential plaintiffs would make joinder impracticable).

Additionally, there is no fixed number of class members that either compels or precludes certification.  *See, e.g., id.* at 340 ("There is no numerical standard as to what size class satisfies the joinder impracticality requirement.  Instead, the Court must examine the facts and circumstances of the particular case to determine whether the numerosity requirement has been met.").  The exact size of the class need not be known as long as the number of class members is determined by more than "mere speculation."  *See In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *45 (D. Mass. Jan. 18, 2005) (Woodlock, J.) (finding that hundreds of purchasers throughout the country could not be practicably joined); *Rodrigues v. Members Mortg. Co.*, 2005 U.S. Dist. LEXIS 2159, at *9 (D. Mass. Feb. 3, 2005) (Saris, J.) (noting that a 40 person class is generally found to establish numerosity) (citation omitted); *see also Kinney*, 2002 U.S. Dist. LEXIS 18628, at *11 (noting that in class action certification in securities cases, "numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large").

As alleged in the Complaint, upon information and belief, Plaintiffs believe that there are many thousands of members in the proposed Class.  ¶ 164.  The names and addresses of Class members can be ascertained from the books and records maintained by Defendants.  Thus, numerosity is satisfied.

### B.    Questions Of Law And Fact Common To The Members Of The Class Exist

Rule 23(a)(2) requires that to maintain a class action, there must be questions of law or fact common to the class.  A common question is one that arises from "'[a] common nucleus of

operative fact [and] is usually enough to satisfy the commonality requirement.'" *McAdams*, 2002 U.S. Dist. LEXIS 9944, at *10 (citation omitted).  Rule 23(a)(2) does not require that every question of law or fact be common to every member of the class.  *See Kinney,* 2002 U.S. Dist. LEXIS 18628, at *13 (noting that Rule 23(a)(2) "does not require that the common questions of law or fact predominate over the questions affecting individual [class] members.  Instead, it requires merely that questions of law or fact common to the class exist."); *Curtis*, 159 F.R.D. at 341 (explaining that while Rule 23 does require that there be common questions of law or fact, it "does not require that all issues of law or fact involved in the dispute be common").

Courts in the First Circuit have held that the commonality requirement is satisfied if the named plaintiffs share "at least one question of law or fact common to the class."  *Collazo v. Calderon*, 212 F.R.D. 437, 442 (D.P.R. 2002); *see also In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *48 (noting that courts have found that commonality exists when there is at least one issue that affects a significant number of the putative class members) (citation omitted); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (noting that the commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class).  As such, the commonality requirement is "a 'low hurdle' easily surmounted," and often "easily met."  *McAdams*, 2002 U.S. Dist. LEXIS 9944, at *10-11 (internal quotations and citation omitted); *In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *48.

Furthermore, "[w]here a common question of law refers to standardized conduct by defendants toward members of the putative class, a common nucleus of operative fact is typically presented, and the commonality requirement is usually met."  *Collazo*, 212 F.R.D. at 442.  Here, Plaintiffs' claims and those of other Class members all arise from the same body of facts as they

were all injured by the same actions of the same group of Defendants in extracting excessive fees and allowing directed brokerage.  In addition, the claims of Plaintiffs and other Class members arise under identical legal theories.  *See Boulet v. Cellucci*, 107 F. Supp. 2d 61, 81 (D. Mass. 2000) (finding that the claims of the plaintiffs and the proposed class share a common legal theory).  Accordingly, commonality has been satisfied.

### C.    The Claims of Plaintiffs Are Typical of The Claims of The Class

Typicality requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3); *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997).  The typicality requirement is satisfied "when the [named] plaintiff's 'injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims' and 'when the plaintiff's claims and those of the class are based on the same legal theory.'"  *Id.*  (alteration in original) (citing *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)).

Typicality does not require the class representative's claims be identical to those of class members.  As courts in the First Circuit have held:

> Analysis under the typicality prerequisite involves a comparison of the claims of the putative plaintiffs with the claims of the class. The named plaintiffs' claims are typical of the class when the plaintiffs' injuries arise from the same events, practice or course of conduct of the defendant as do the injuries which form the basis of the class claims. Factual variations between the claims of the class and the class representatives do not, alone, render the named representatives' claims atypical.

*Tolan v. Computervision Corp.*, 696 F. Supp. 771, 777 (D. Mass. 1988); *see also In re Carbon*, 2005 U.S. Dist. LEXIS 660, at *54 ("There is nothing in Fed. R. Civ. P. 23(a)(3) which requires the named plaintiffs to be clones of each other or clones of other class members.") (citation omitted).  As such, factual differences will not defeat class certification where, as here, the

claims of Plaintiffs and of other Class members all arise from the same events or practices or course of conduct and are based on the same legal theory or theories. *See Carbon*, 2005 U.S. Dist. LEXIS 660, at *52 (noting that typicality usually is not precluded even if there are "pronounced factual differences where there is a strong similarity of legal theories") (citation omitted); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *13 (stating that typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (internal quotations and citation omitted). "The test, ultimately, is whether the class representative will promote the interests of the class as he protects his own." *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *13 (noting that the typicality requirement "is designed to ensure that the representative parties adequately represent the interest of all class members, particularly those not present for the litigation").

In the case at bar, Plaintiffs' claims are virtually identical to the other members of the Class. Plaintiffs allege that Defendants engaged in a course of conduct that affected all of the Columbia Funds and their shareholders. ¶¶ 3, 79, 132, 135. Defendants charged excessive fees and commissions to the investors in all the Columbia Funds and to the Funds themselves in order to improperly pay and induce brokers to steer investors into Columbia Funds. ¶¶ 2-5, 114, 133, 138. Defendants further failed to disclose these practices in substantially similar Prospectuses that covered the Funds. ¶¶ 141-142, 146-53. Accordingly, Plaintiffs and other members of the Class have been damaged in the same way by the same course of wrongful conduct by Defendants. In addition, the claims of all Class members derive from the same legal theories.

The typicality of Plaintiffs' claims is not affected by the fact that Plaintiffs do not own shares in every Columbia Fund. Although only one case in the First Circuit has touched upon

13

this issue in the context of mutual funds,[7] other circuits have provided support for the notion that

plaintiffs are not required to own shares in every mutual fund for which plaintiffs have brought a

claim.  For example, in *Dreyfus*, 2000 U.S. Dist. LEXIS 13469, at *8, the court stated, "Courts

have repeatedly held that on allegations such as these, class representatives need not have

invested in each security so long as the plaintiffs have alleged a single course of wrongful

conduct with regard to each security."  The court in *Dreyfus* went on to explain:

> Here, the claims of the named plaintiffs and prospective class
> members derive from the same course of events. The plaintiffs
> have alleged that both Funds made similar misrepresentations and
> omissions in the Registration Statements, Prospectuses, Statements
> of Additional Information and annual and semi-annual reports used
> to sell the Funds … indeed the claims of the named plaintiffs and
> prospective class members are based on the same legal theories …
> Put another way, plaintiffs' claims satisfy the typicality
> requirement because, by proving their claims, plaintiffs will
> necessarily prove the claims of all other class members.

*Id.* at *14.

In *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992), the court held

that although the proposed class representatives held only fifteen of the twenty-one class

securities, they could represent holders of all securities because such coverage "fully satisfies the

requirements of the Rule."  *See also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)

(explaining that the fact that the representatives had invested in only two of the three limited

partnerships did not make their claims atypical).

District courts in the First Circuit have endorsed the notion in other contexts.  *See, e.g.,*

*Caranci v. Blue Cross & Blue Shield*, 194 F.R.D. 27, 40 (D.R.I. 2000) (finding that plaintiffs

could bring claims on behalf of participants not only in their ERISA plan, but also on behalf of

---

[7] *See In re Eaton Vance Corp. Sec. Litig*, 220 F.R.D. 162 (D. Mass. 2004), discussed in more
detail on pp. 29-30, *supra*.

plaintiffs in other similarly situated ERISA plans to which they did not belong), *aff'g in part Caranci v. Blue Cross & Blue Shield*, 1999 U.S. Dist. LEXIS 14801, at *40 (D.R.I. Aug. 19, 1999). Additionally, the Massachusetts Supreme Court affirmed a finding of typicality in a case in which the plaintiff was not directly harmed by all defendants, but the conduct affecting plaintiff was identical to that affecting the class, and plaintiff's legal theories were the same as those of the class. *Weld*, 746 N.E.2d at 529-30 ("Whether Kelley can satisfy the rule 23(a) typicality requirement involves two related, but distinct inquiries: (1) whether the claims and legal theories of Kelley and the class are sufficiently related and (2) whether there is a link among the defendants sufficient to permit the class action to proceed against all defendants."). Accordingly, the typicality prong has been satisfied.

### D.     Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

Plaintiffs must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts have established a two prong test for this requirement: (1) "the moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members," and (2) "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343 (D. Mass. 2003). The requirement of fair and adequate representation in Rule 23(a)(4) is important in protecting the interests of the class as well as the absentee class members. *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986).

Both prongs of the "adequacy" test have been met here. As to the first prong, Plaintiffs' interests are co-extensive, and not in conflict, with the interests of the Class members. All Plaintiffs and Class members are similarly situated, and they have all been injured by the same wrongdoers.

As to the second prong, Plaintiffs' counsel are more than capable of prosecuting this

litigation.  On September 10, 2004, Plaintiffs filed a motion for consolidation and a motion to

appoint co-lead counsel and liaison counsel, and on September 24, 2004, counsel for certain of

the Defendants filed an opposition to the Lead Counsel Motion.  On March 2, 2005, this Court

granted consolidation.[8]  During a hearing held on April 7, 2005, the Court denied without

prejudice Plaintiffs' motion for appointment of co-lead counsel and liaison counsel because of a

concern raised by Defendants over Plaintiffs' Counsel's potential conflicts of interest regarding

the concurrent representation of Plaintiffs on certain derivative claims in this litigation and class

claims in the market-timing litigation in the MDL Court in Baltimore, Maryland.  As such,

simultaneously with the filing of this motion, Plaintiffs are filing a Renewed Motion For

Appointment of Co-Lead Counsel and Liaison Counsel (the "Renewed Motion"), which contains

a Declaration of Professor Bruce Green, a highly regarded ethics expert, explaining why there is

no disabling conflict of interest.  *See* Declaration of Professor Bruce Green in Support of

Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel ("Green

Decl."), attached as Ex. E to the Pollack Decl.  Plaintiffs themselves are also submitting

declarations consenting to and endorsing the Renewed Motion.[9]

---

[8] The cases consolidated are: *Cohen v. FleetBoston Financial Corporation, et al.*, Civil Action
No. 04-11704 (REK) (D. Mass.), *Osburn v. FleetBoston Financial Corporation, et al.*, Civil
Action No. 04-11750 (REK) (D. Mass.), *Slicker v. FleetBoston Financial Corporation, et al.*,
Civil Action No. 04-11760 (REK) (D. Mass.) and *Simmonds v. FleetBoston Financial
Corporation, et al.*, Civil Action No. 04-11953 (REK) (D. Mass.).

[9] In addition, as explained in the Renewed Motion, Plaintiffs' Counsel do not have a conflict by
bringing both class and derivative claims in this action.  Both claims here seek to recover monies
from the same wrongdoers – those entities and individuals who run the Funds and have fiduciary
duties to protect the Funds and their shareholders.  Plaintiffs have **not** sued the Funds in this case
and there is no contention that they have.  As such, the class and derivative claims are consistent
and complementary because they seek to return *all* shareholders – both current and former – to
the *status quo* they would have enjoyed absent the wrongdoing.

These materials collectively confirm that there is no disabling conflict by Plaintiffs'

Counsel here.  First, attached to the Renewed Motion is the Declaration of Clifford Goodstein

("Goodstein Decl."), counsel for the court-appointed lead plaintiff in the market-timing MDL

case: *In re Alger, Columbia, Janus, MFS, One Group, Pimco and Putnam (Columbia sub-track)*,

MDL 1586, District of Maryland Case No. 04md5863.  Pollack Decl. Ex. F.  As explained more

fully in the Goodstein Decl., the "Registrants were named solely to the extent that they have a

separate corporate existence from the funds themselves, and only for the purpose of seeking a

recovery from assets aside from investor deposits held by the Registrants.  As to the Registrants,

the lead plaintiff will not seek any recovery from monies held by any of the Registrants

consisting of investor deposits (including securities, cash or other assets related or traceable

thereto)."  Pollack Decl. Ex. F, Goodstein Decl. at ¶ 4.  Thus, as confirmed by the Corrected

Notice of Parties Added and Parties Against Whom All Claims Are Dropped Pursuant to the

Letter of the Honorable J. Frederick Motz Dated September 24, 2004 (the "Notice"), filed in the

market-timing case and attached to the Goodstein Decl., the Funds are not named as defendants

in the market-timing case and there is no conflict by virtue of Plaintiffs' Counsel's concurrent

representation of the single derivative claim here.

Second, even if a potential conflict of interest did exist (which it does not), all the

Plaintiffs have consented after detailed discussions with counsel.  *See* Declaration of Joan Cohen

in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and

Liaison Counsel at ¶¶ 4, 8; Declaration of Gene F. Osburn in Further Support of Plaintiffs'

Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel at ¶¶ 4, 8;

Declaration of Paula Slicker in Further Support of Plaintiffs' Renewed Motion for Appointment

of Co-Lead Counsel and Liaison Counsel at ¶¶ 4, 8; Declaration of Jean S.B. Simmonds in

Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and

Liaison Counsel at ¶¶ 4, 8; and Declaration of R.L. Simmonds in Further Support of Plaintiffs'

Renewed Motion for Appointment of Co-Lead Counsel and Liaison Counsel at ¶¶ 4, 8, attached

as Exhibits B through F, respectively, to the concurrently filed Renewed Motion.  As

demonstrated by the Plaintiffs' Declarations, they seek to have Milberg Weiss and Stull Stull &

Brody appointed co-lead counsel, and Moulton & Gans appointed as liaison counsel ("Plaintiffs'

Counsel").

Based upon the foregoing materials, Professor Green concludes that "concurrent

representation does not give rise to an impermissible conflict of interest."  Pollack Decl. Ex. E,

Green Decl. at ¶ 1.  He further explains:

> As a formal matter, the plaintiffs in the market-timing cases are not
> adverse to the Columbia mutual funds because the amended
> complaint in the market-timing cases makes the Funds a non-party.
> Likewise, as a substantive matter, the plaintiffs in the market-
> timing cases are not adverse either to the Columbia mutual funds
> or to their shareholders.  The submission of Clifford Goodstein,
> lead counsel for the lead plaintiff in the market-timing litigation,
> makes explicit that the plaintiffs in the market-timing cases are not
> in fact seeking to recover funds from the Columbia mutual funds.
> Finally, the harms against which conflict of interest rules protect
> are not implicated … There is no indication that the shareholders
> perceive the law firms' role in the market-timing cases as adverse
> or disloyal to them, and there is no reason why they would.

*Id.* at ¶ 34.  Accordingly, there is no conflict preventing the proposed co-lead counsel from

vigorously conducting the litigation on behalf of the class.

Moreover, Plaintiffs' proposed co-lead counsel have extensive experience in the

successful prosecution of class actions on behalf of injured investors.  *See Relafen*, 218 F.R.D. at

343 (noting that the firms acting as lead counsel have experience prosecuting numerous class

actions); *see also* Firm Resumes of Milberg Weiss Bershad & Schulman LLP, Stull Stull &

Brody and Moulton & Gans, P.C., which have been previously filed in this Court.[10]

Accordingly, the adequacy prong has been satisfied.

## III.     THE REQUIREMENTS OF FED. R. CIV. P. 23(B)(3) ARE SATISFIED

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule

23(b), which requires that the proposed class action meet any one of three conditions set forth in

that subsection.[11]  This action easily satisfies Rule 23(b)(3), which requires "that the questions of

law or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.     Common Questions of Law and Fact Predominate

As discussed above, there are a host of questions of law and fact common to the members

of the proposed Class.  These questions predominate over any possible individual questions

because the alleged wrongful conduct was the same with respect to all Class members.[12]

---

[10] Plaintiffs' Counsel satisfy the requirements of Rule 23(g) and should be appointed Class Counsel.  The firms will fairly and adequately represent the interests of the class as required by 23(g)(1)(B).  They are also clearly knowledgeable about the applicable law, experienced in handling class actions and have done significant work in vigorously prosecuting this action, thereby readily meeting all the considerations set forth in 23(g)(i)(C).

[11] While Plaintiffs seek class certification under Rule 23(b)(3), their claims under § 36(b) of the ICA also may be appropriately certified under Rule 23(b)(1)(B), which provides for certification when the prosecution of separate actions would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(B).  The action may also be appropriately certified under Rule 23(b)(1)(A), which provides for certification when the prosecution of separate actions creates a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. . . ."  Fed. R. Civ. P. 23(b)(1)(A).

[12] Courts have repeatedly recognized that the proper focus of the predominance test is on the defendants' conduct.  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003);

Continued on next page

There are no individual issues likely to be raised in the litigation of this class action that would defeat predominance. The fact that multiple mutual funds are involved does not defeat predominance. *See, e.g., Duhaime*, 177 F.R.D. 62 (certifying a class consisting of those who have or had an ownership interest in one or more of the approximately 3.8 million life insurance policies and/or annuities and/or mutual fund shares issued by John Hancock)*; see also Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 213 (D.N.J. 2004) ("The existence of different [health benefit] plans does not outweigh the predominance of the common questions.") (citation omitted).

Common issues also predominate because the Funds functioned as integral parts of a unitary organization and shared expenses. ¶¶ 73-74. Therefore the impact of charges to one Fund will be relevant to the claims of all Funds. Courts have held that individual issues of damages should not defeat certification. *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)"). Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 472 (D. Mass. 1984) ("[A] class action is maintainable even though the measure of damages is different for members of the class. That issue might be treated in a proceeding subsequent to the trial of the issue of liability.").[13] Here, damages involving excessive charges to

_____

*see also Silva v. Nat'l Telewire Corp.*, 2000 U.S. Dist. LEXIS 13986, at *11 (D.N.H. Sept. 22, 2000) (focusing on the standardized nature of the defendant's conduct when deciding common questions of law or fact). Here, Plaintiffs allege Defendants treated all of the Funds and shareholders virtually identically.

[13] *See also Zinberg v. Wash. Bancorp., Inc.*, 138 F.R.D. 397, 402 (D.N.J. 1990); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Blackie v. Barrack*, 524 F.2d 891, 908-10 (9th Cir.

Continued on next page

the Funds and the shareholders can easily be calculated using a simple, common formula.  *See Smilow*, 323 F.3d at 40-41; *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 5 (D.D.C. 1992); *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 38 (S.D.N.Y. 1977).

**B.    A Class Action is Superior to Numerous Individual Actions**

Class certification offers judicial efficiencies because it permits common claims and issues to be tried only once, with binding effect on all parties.  It also avoids the possibility of inconsistent adjudications and facilitates settlement by permitting agreements that potentially bind all claimants.

Here, the individual claims of many Class members are too small relative to the costs of litigation for each individual Class member to maintain a separate action.  For such injured persons, a class action is the only viable vehicle by which they can obtain a remedy.  The notion that such claims could be litigated individually is contrary to the philosophy of Rule 23.[14]

Rule 23(b)(3) lists four non-exclusive factors bearing on the superiority requirement.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 616 (1997).  These factors are:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

---

1975).

[14] *See Carbon,* 2005 U.S. Dist. LEXIS 660, at *84 (noting that the superiority of a class action is substantiated by the many relatively small purchasers that will be a part of the class); *M. Berenson Co.*, 100 F.R.D. at 471 ("The benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved.  Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.").  To deny class certification in cases such as this would be to "clos[e] the door of justice to all small claimants.  This is what we think the class suit practice was to prevent."  *Fitch v. Radnor Indus., Ltd.*, 1990 U.S. Dist. LEXIS 13568, at *19 (E.D. Pa. Oct. 9, 1990).

concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999). As discussed below, all of these factors weigh heavily in favor of certification here.

The first factor addresses whether the interest of class members in conducting separate lawsuits is so strong as to require denial of class certification. *See Relafen*, 221 F.R.D. at 218; *George Lussier Enters. v. Subaru of New Eng., Inc.*, 2001 U.S. Dist. LEXIS 12054, at *19-20 (D.N.H. Aug. 3, 2001). Considerations relevant to this inquiry include the degree of "cohesion" among class members, whether "the amounts at stake for individuals [are] so small that separate suits would be impracticable" and the extent to which "separate suits would impose [burdens] on the party opposing the class, or upon the court calendars . . . ." Fed. R. Civ. P. 23, advisory committee note to 1966 amendments.

Here, it is unlikely that Class members would prefer to litigate their individual claims because of the prohibitive expense involved. *See, e.g., Carbon,* 2005 U.S. Dist. LEXIS 660, at *84 (noting that "class actions are expensive endeavors and joining forces with other similarly situated plaintiffs is often the only way to effectuate a case"). If they had so desired, they would have brought individual actions. Further, if Class members wish to do so at a later stage, they will have the opportunity to opt out of the Class. Inconsistent or varying adjudications will thus be avoided and fairness and efficiency will be promoted by certification of the Class requested here.

The second factor requires the Court to consider the extent and nature of any litigation concerning the controversy already commenced by or against members of the class. Plaintiffs are unaware of any similar lawsuits brought by individuals against Columbia. This suggests there is little individual interest in prosecuting actions. Accordingly, this factor further indicates

22

the superiority of maintaining this suit as a class action.

The third superiority factor is the desirability of conducting the litigation in a particular forum. Defendants can hardly complain that this is an inconvenient forum as a number of Defendants, including Columbia Management Advisors, Inc., is headquartered in this District.

The fourth and final Rule 23(b)(3) factor is "the difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 616. The First Circuit in *Yaffe v. Powers* summarized the law construing this standard:

> [F]or a court to refuse to certify a class on the basis of speculation
> as to the merits of the cause or because of vaguely-perceived
> management problems is counter to the policy which originally led
> to the rule, and more especially, to its thoughtful revision, and also
> to discount too much the power of the court to deal with a class
> suit flexibly, in response to difficulties as they arise.

454 F.2d 1362, 1365 (1st Cir. 1972). Management of this case as a class action presents no unusual difficulties. Class actions of this size are common and present no significant management problems. *See In re Polymedica Corp. Sec. Litig.*, 224 F.R.D. 27, 38 (D. Mass. 2004); *In re Lilco Sec. Litig.*, 111 F.R.D. 663, 667 (E.D.N.Y. 1986).

Finally, although the certification is sought under Rule 23(b)(3), the Court may also view the proposed certification as properly falling under Rule 23(b)(1)(B). In this regard, the Advisory Committee Note to the 1966 Amendment of Rule 23 states that Rule 23(b)(1)(B) recognizes the appropriateness of class certification in the very situation presented here:

> Clause (B): This clause takes in situations where the judgment in a
> nonclass action by or against an individual member of the class, while not
> technically concluding the other members, might do so as a practical
> matter. The vice of an individual action would lie in the fact that the other
> members of the class, thus practically concluded, would have had no
> representation in the lawsuit. […]
>
> The same reasoning applies to an action which charges a breach of trust by
> an indenture trustee *or other fiduciary similarly affecting the members of a
> large class of security holders or other beneficiaries, and which requires*

> *an accounting or like measures to restore the subject of the trust.  See*
> *Boesenberg v. Chicago T. & T. Co.*, 128 F.2d 245 (7th Cir. 1942).
> (Emphasis added) (additional citation omitted).

Fed. R. Civ. P. 23, advisory committee note (emphasis added).  Precisely that situation exists in

the present case.  Plaintiffs seek to recover for breaches of fiduciary duty affecting a large

number of Funds and shareholders and requiring an accounting to restore the subject of the trust.

In sum, the litigation of this action as a class action is superior to other available methods

for the fair and efficient adjudication of this controversy.

## IV.     PLAINTIFFS MAY BRING THESE CLAIMS ON BEHALF OF INVESTORS IN ALL THE COLUMBIA FUNDS

Standing is a prerequisite in any action, including a class action, *see O'Shea v. Littleton*,

414 U.S. 488, 494 (1974), and a potential class representative must possess standing to assert an

individual claim.  *See Gratz v. Bollinger*, 539 U.S. 244, 285 n.5 (2003).  Once the plaintiff's

standing to assert his or her claim has been established, the plaintiff's ability to represent the

class depends solely on whether the requirements of Rule 23 are met.  Despite this, Plaintiffs

anticipate that Defendants will argue that Plaintiffs cannot represent investors in other Columbia

Funds in which Plaintiffs are not shareholders.  Defendants would be wrong in making such an

argument.  As stated by the Supreme Court in *Sosna v. Iowa*:

> A named plaintiff in a class action must show that the threat of injury in a
> case such as this is "real and immediate," not "conjectural" or
> "hypothetical." . . .  This conclusion does not automatically establish that
> appellant is entitled to litigate the interests of the class she seeks to
> represent, *but it does shift the focus of examination from the elements of*
> *justiciability to the ability of the named representative to "fairly and*
> *adequately protect the interests of the class."*  Rule 23(a).

419 U.S. 393, 402-03 (1975) (citations omitted) (emphasis added).  This was stated more

recently in *Fallick v. Nationwide Mutual Insurance Co.*:

> Threshold individual standing is a prerequisite for all actions.  A
> potential class representative must demonstrate individual standing

> vis-a-vis the defendant; he cannot acquire such standing merely by
> virtue of bringing a class action.  As this Court has made clear,
> however, "once an individual has alleged a distinct and palpable
> injury to himself he has standing to challenge a practice even if the
> injury is of a sort shared by a large class of possible litigants."
> Once his standing has been established, whether a plaintiff will be
> able to represent the putative class, including absent class
> members, depends solely on whether he is able to meet the
> additional criteria encompassed in Rule 23 of the Federal Rules of
> Civil Procedure.

162 F.3d 410, 423 (6th Cir. 1998) (citations omitted); *see also In re Pharm. Indus. Average*

*Wholesale Price Litig.,* 263 F. Supp. 2d 172, 194 (D. Mass. 2003) ("Class certification issues are

. . . 'logically antecedent' to Article III concerns . . . . Thus the issue about Rule 23 certification

should be treated first, 'mindful that [the Rule's] requirements must be interpreted in keeping

with Article III constraints . . . .") (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999));

*Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985) ("[C]ontrary to the defendants'

contentions, the issue here is one of compliance with the provisions of Rule 23, not one of

Article III standing.  Each of the named plaintiffs has presented claims of injury to himself and

has alleged facts which present a case or controversy under the Constitution."), *aff'd on other*

*grounds*, 482 U.S. 656 (1987); *accord Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS

11972, at *19-20 (S.D.N.Y. July 16, 2003).[15]

In *Dreyfus*, 2000 U.S. Dist. LEXIS 13469, at *8, the court certified plaintiffs who

invested in one fund to represent investors in another fund, stating:

> Courts have repeatedly held that on allegations such as these, class
> representatives need not have invested in each security so long as the
> plaintiffs have alleged a single course of wrongful conduct with regard to

---

[15] Even where courts have addressed this issue in terms of standing, the outcome has been the
same, permitting a plaintiff to represent other securities, ERISA plans, and mutual funds in
addition to his or her own.  *See, e.g., Sutton v. Med. Serv. Ass'n*, 1993 U.S. Dist. LEXIS 9763, at
*13 (E.D. Pa. July 20, 1993) (ERISA plans).

each security. Courts have not addressed this concern *vis a vis* the doctrine of standing but rather have examined such concerns pursuant to Rule 23(a)(3)'s typicality requirement.

*Id*. In *Dreyfus*, certification was supported by the same factors that exist in this case:

Here, the claims of the named plaintiffs and prospective class members derive from the same course of events. The plaintiffs have alleged that both Funds made similar misrepresentations and omissions in the Registration Statements, Prospectuses, Statements of Additional Information and annual and semi-annual reports used to sell the Funds. . . . And indeed the claims of the named plaintiffs and prospective class members are based on the same legal theories.

*Id*. at *14.

Similarly, in *ML-Lee Acquisition Fund*, the defendants argued that the proposed class representatives could not represent investors in a mutual fund that they did not own. The court rejected this contention due to the similarity of the related mutual funds and of the wrongdoing that impacted both funds at issue. 848 F. Supp. at 527.

Courts have held that where a plaintiff does not have standing to assert the same claims as a portion of the proposed class members, but the plaintiff's claim is closely related to the claims of those class members because it arose from defendants' violation of a single statute, the plaintiff could properly represent the proposed class. *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1089 (3d Cir. 1975).[16]

Analogous cases also confirm that Plaintiffs may represent purchasers of other Funds, in light of the similarity of the claims of all Class members against all Defendants and the close

---

[16] In *Haas*, in denying class certification, the district court held that a plaintiff who had standing to sue the defendant only on her consumer transaction claim did not have standing to bring an individual claim against the same defendant based on commercial transactions. The Third Circuit reversed the district court's decision and held that the plaintiff's individual claim was "closely related to the commercial transactions claim on which she lacks standing," and that it would therefore not be an abuse of discretion for the district court to certify the class. 526 F.2d at 1088-89.

interrelationship and juridical links of all the Funds with each other and Defendants. *See, e.g.,*
*Prudential*, 163 F.R.D. at 208 (limited partnership investments); *Maywalt v. Parker & Parsley*
*Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs who invested in three limited
partnerships could represent persons who had invested in two other limited partnerships, where,
as here, the complaint alleged that investors in all five limited partnerships were victims of a
single pattern of fraud by defendants).[17]

Fallick*, 162 F.3d 410, is directly on point.  There the plaintiff alleged that Nationwide
breached its fiduciary duties with respect to the ERISA plan of which he was a member and
other ERISA plans of which he was not a member.  The district court dismissed, on standing
grounds, the claims as to all ERISA plans other than the plaintiff's plan.  *Id.* at 411-12.  The
Sixth Circuit reversed, holding that the district court's reasoning was "fundamentally flawed"
because it confused the issue of a plaintiff's Article III standing with the Rule 23 issues relevant
to his ability to sue on behalf of a class.  *Id.* at 422.  The court concluded that "once a potential
ERISA class representative establishes his individual standing to sue his own ERISA-governed
plan, there is no additional constitutional standing requirement related to his suitability to
represent the putative class of members of other plans to which he does not belong."  *Id.* at 424.
The *Fallick* court also cited with approval authority holding that when a single defendant offers a
range of ERISA plans, an individual in one plan can represent a class of plaintiffs -- including

---

[17] *See also Tedesco v. Mishkin*, 689 F. Supp. 1327, 1335-36 (S.D.N.Y. 1988) (investors in
various companies and partnerships controlled by defendants could represent a class including
investors in other companies and partnerships); *Schur v. Friedman & Shaftan, P.C.*, 123 F.R.D.
611 (N.D. Cal. 1988) (purchasers of securities of one limited partnership may represent
purchasers of other partnerships); *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 193-94 (S.D.N.Y.
1986); *Roberts v. Heim*, 670 F. Supp. 1466, 1490-91 (N.D. Cal. 1987) (same); *Kitchens v. U.S.*
*Shelter*, 1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) (permitting named plaintiffs to
represent purchasers of interests in 12 separate limited partnerships, even though representatives
held interests in only three of the partnerships).

some belonging to other plans -- as long as "the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans." *Id.* at 422.

Similarly, many cases hold that a plaintiff who purchased one type of a corporation's securities may represent persons who purchased other types of the corporation's securities, when purchasers of both types of securities were subjected to a common course of wrongful conduct. *E.g., In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1461 (D. Ariz. 1992); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 n.7 (D.N.J. 1998).[18]

Alternatively, even if the Court were to reject Plaintiffs' standing argument as set forth above, Plaintiffs may bring this case as a class action under the "juridical link doctrine."[19]  The juridical link doctrine is properly applied where efficiency and expediency allow plaintiffs to join together to address ***common wrongs*** by a group of defendants.  "The doctrine is a powerful tool that can allow a plaintiff's lawyer to force many defendants (and what might otherwise be numerous class actions) into a single lawsuit at a substantially reduced cost." *Newby v. Enron Corp.*, 2004 U.S. Dist. LEXIS 8158, at *108 (S.D. Tex. Feb. 24, 2004); *see also Payton v. County of Kane*, 308 F.3d 673, 678-79 (7th Cir. 2002) ("if the plaintiffs as a group -- named and unnamed -- have suffered an identical injury at the hands of several parties related by way of a

---

[18] *Gratz*, 539 U.S. 244, also confirms that the proper focus is on the commonality of the claims asserted, rather than whether the plaintiff is identically situated with every other member of the Class.  In *Gratz*, plaintiff sought to represent applicants to the freshman class at the University of Michigan and applicants to transfer to the University.  *Id*. at 266 n.16.  The Court found that the class representative who did not fit both categories could bring an action on behalf of both the freshman and transfer applicants because the University applied the same admission standard to both groups.  *Id.* at 266.

[19] The "juridical link doctrine" has been described as allowing a plaintiff to bring a class claim against a defendant as to which he or she lacks standing if "all defendants are juridically related and a single disposition of the entire dispute would be expeditious."  *Haas*, 526 F.2d at 1096 (citation omitted).

conspiracy or concerted scheme, or otherwise 'juridically related in a manner that suggests a single resolution of the dispute would be expeditious,' the claim could go forward") (quoting *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir. 1973)).

In analogous situations, courts in the First Circuit, as well at the Massachusetts Supreme Court and courts in several other Circuits, have adopted the doctrine. For instance, in *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002) (Saris, J.), the juridical link doctrine was applied where two class representatives brought an ERISA class action against five defendants. Even though neither plaintiff was ever a member of an ERISA plan that the defendants sponsored, the court concluded that "plaintiffs' claims against [defendants] should not be dismissed for lack of standing. Because these defendants [were] wholly[-]owned affiliates of [the corporate defendant], in which plaintiffs were participants, and the copayment plan provisions [were] substantially the same, a single resolution of the dispute would be expeditious." *Id.* at 205. Where "the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans," the plaintiff could properly represent the proposed class. *Id.; see also Weld*, 746 N.E.2d at 529; *Payton,* 308 F.3d at 678-79. The extensive jurisprudence embracing the juridical links doctrine, especially in the standing analysis, cannot be ignored.

The juridical link doctrine is applicable here. All the Defendants and all the Funds are juridically linked with each other, making collective prosecution of this action the most efficient means for resolution of the dispute. As discussed in the Statement of Facts, *supra*, there are multiple links interconnecting all the Funds and all the Defendants.[20] While "[o]ther named

---

[20] The links shared by certain of the Funds include the fact that some of the Funds are registered by the same Columbia registrant. *See, e.g.*, the Columbia Growth Fund Inc. Prospectus, dated

Continued on next page

plaintiffs could be supplied to match with each named defendant […] it would be unwieldy to do so. […] The case is simpler and more economical with the class of plaintiffs and the named defendants." *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990).

Defendants may argue that class certification under the juridical link doctrine was rejected in *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162 (D. Mass. 2004).[21] In that case, the district court held that plaintiffs could not represent all four funds because they "failed to demonstrate that their claims are typical of that class." *Id.* at 169. Plaintiffs here do not have that same problem because, as explained on pages 12-15, *supra*, Plaintiffs have more than adequately shown how their claims are typical of the claims of all shareholders in all the Funds.[22]

In addition, the court in *Eaton Vance* recognized that the juridical link doctrine does apply in certain situations. *Id.* at 171. In *Eaton Vance*, the court explained that the two funds that plaintiffs did not purchase were "not sufficiently juridically linked to the other mutual funds" because the plaintiffs had not alleged that the four funds at issue had identical false and misleading statements in the prospectus and registration statements. *Id.* at 171. The facts in the instant case are much stronger than those in *Eaton Vance* and meet the standard in that case. First, Plaintiffs here have clearly alleged in the Complaint that each of the Columbia Fund prospectuses and SAIs issued during the Class Period contained substantially the same materially

---

February 2002 (describing the 15 different series that are registered under the Columbia Growth Fund Inc. during the relevant time period). At least one court has held that in such a situation, a plaintiff has standing to sue under ICA § 36(b) for the benefit of all the funds covered by the same registrant. *Batra v. Investors Research Corp.*, 1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991).

[21] *See also In re Eaton Vance Corp. Sec. Litig.*, 206 F. Supp. 2d 142 (D. Mass. 2002) and *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38 (D. Mass. 2003).

[22] *Eaton Vance* is on appeal to the First Circuit. In any event, this decision is against the clear weight of authority.

false and misleading statements, in that they omitted key information regarding, among other things, improper practices concerning revenue-sharing, directed brokerage, 12b-1 fees and Soft Dollars. ¶¶ 141-42, 146-53.

Additionally, the juridical links here are much more apparent than they were in *Eaton Vance*. As discussed in the Preliminary Statement, the economics of all the Columbia Funds are intertwined, *e.g.*, the Funds share expenses attacked as wrongful in this case. ¶¶ 72-74. The Funds are essentially pools of investor assets that are managed and administered by a common body of officers and employees of Columbia who administer the Columbia Funds generally. *Id*. The Columbia Funds have no independent will and are totally dominated by Columbia and the common body of Trustees established by Columbia. *Id*. Thus, in substance, the Columbia Funds function as components of one unitary organization. *Id*. Furthermore, all Columbia Funds share Columbia Management Investment Advisors as their investment adviser and share Columbia Fund Distributors as their principal underwriter and distributor. ¶ 73. Additionally, the Defendants pool together fees and expenses collected from the Columbia Fund investors, such that the Columbia Funds share expenses with one another. *Id*. [23]

---

[23] In relation to these shared expenses, the Complaint further alleges a common course of misconduct by Defendants against the entire Fund complex, through which Defendants improperly used pooled Fund assets. ¶ 73. In the SEC's investigation of the mutual fund industry, it found similar conduct improper as noted in its order against PA Fund Management LLC, PEA Capital LLC, and PA Distributors LLC ("PIMCO") and Franklin Advisers Inc. and Franklin/Templeton Investors ("Franklin Order"). In the Franklin order, the SEC states:

> Each time [Franklin-Templeton] directed a fund's brokerage commissions to obtain credit for the shelf space arrangements, they made no effort to ensure that these commissions came from the specific fund promoted by the broker-dealer in connection with a shelf space arrangement. Accordingly, Respondents made no efforts to ensure that the directed brokerage commissions from any given fund were used to promote the sale of that fund, as opposed to the sale of other funds. As a result, some funds may have been

Continued on next page

Accordingly,  the facts in *Eaton Vance* are easily distinguishable, and Plaintiffs in the instant action have demonstrated sufficient juridical links even under the *Eaton Vance* standard.

Indeed, the wrongdoing alleged in this case was only possible because the activities and resources of all the funds were linked together.  The Columbia Advisers' access to and use of the entire Fund complex's assets was what made their revenue sharing programs possible and significant in their impact.[24]  Additionally, one of the brokerages to which Columbia made revenue sharing payments to was Salomon Smith Barney, ¶ 60, a division and service mark of Citigroup Global Markets, Inc. ("CGMI").  In a March 23, 2005 SEC order against CGMI ("CGMI Order"), the SEC noted that:

> [T]he prospectuses and SAIs did not specifically disclose the magnitude of the revenue sharing payments that CGMI received from the fund complexes or that certain fund complexes had greater access to, or increased visibility in, CGMI's retail network.

Pollack Decl. Ex. H, CGMI Order at ¶ 13.

Under the juridical link doctrine, the Funds would be assured of efficient and consistent treatment.  *See Moore*, 908 F.2d at 838 (While "[o]ther named plaintiffs could be supplied to

_____

> improperly disadvantaged in that the assets of those funds were used for the benefit of other funds.  [Franklin/Templeton Distributors, Inc.] and [Franklin Advisers, Inc.] thus participated in a joint distribution arrangement whereby they improperly pooled and directed brokerage from the [Franklin/Templeton] Funds.

Pollack Decl. Ex. G, Franklin Order at ¶ 16.  Here, Plaintiffs were exposed to the same harms and disadvantages as were discussed in the Franklin and PIMCO Orders.

[24] Further emphasizing the juridical links present here, "[t]he amount of commissions that a broker-dealer earns through portfolio brokerage arrangements often is based on its total sales of all funds issued by that mutual fund complex."  Confirmation Requirements and Point of Sale Disclosure Requirements for Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation Requirement Amendments, and Amendments to the Registration Form for Mutual Funds, 69 Fed. Reg. 6438 (proposed Feb. 10, 2004) (to be codified at 17 C.F.R. pt. 239, 240 and 274).

match with each named defendant . . . it would be unwieldy to do so . . . . The case is simpler

and more economical with the class of plaintiffs and the named defendants").[25]

## V.    PLAINTIFFS MAY PROPERLY SERVE AS CLASS REPRESENTATIVES TO ASSERT THE § 36(b) CLAIMS OF SHAREHOLDERS IN ALL COLUMBIA FUNDS

Section 36(b) of the ICA gives a security holder of a registered investment company the

right to bring an action against an investment adviser and its affiliates "on behalf of such

company" for breach of fiduciary duty. *See* 15 U.S.C. § 80a-35(b) (2005).[26]  Plaintiffs bring

their individual § 36(b) claims on behalf of the investment companies in which they acquired

shares, and also seek to represent the investors in all the Funds with respect to their § 36(b)

claims on behalf of those Funds.

_____

[25] An investor holding a single fund within a family has a tangible interest in ensuring that the funds in the entire complex are handled consistently with applicable law, as the investor bargained for.  One of the identified benefits of having holdings in a fund family is the ability, without additional sales charges, to switch between funds within a family depending on an investor's then-current investment strategies.  As stated in the Prospectuses for the Columbia Funds:  "You or your financial advisor may acquire shares by exchanging shares you own in one fund for shares of the same class of the Fund at no additional cost."  *See, e.g.*, SAI for the Liberty Acorn Trust, May 1, 2001.  Pollack Decl. Ex. I.  Therefore, a typical customer in a fund has an inherent interest in the concept that all Funds available to the investor not charge excessive fees or pay excessive commissions, because part of the benefit of the bargain in holding a Fund within a particular fund family is the ability to change investment strategy without incurring additional sales charges.  In a tax-free account (*e.g.*, IRA), this ability to switch in and out of different funds within a family is an even more valuable bargained-for benefit because there are no tax consequences.  Further, wrongful commissions/excessive fees complained of in the Complaint are pooled, further enhancing the "juridical link" between the Columbia Funds.  ¶ 73 (pooling of fees and expenses).

[26] Section 36(b) states in relevant part:  "An action may be brought under this subsection by the [Securities and Exchange] Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person."  15 U.S.C. § 80a-35(b).

### A.    Supreme Court and First Circuit Precedent Support Plaintiffs' Individual Standing and Ability to Represent the Proposed Class Under § 36(b)

The Supreme Court has held that a plaintiff's right to sue under § 36(b) is not secondary, but rather a primary right, because mutual funds themselves have no cause of action under § 36(b). *Daily Income Fund*, 464 U.S. at 523. Even though an investor's recovery of damages under § 36(b) goes to the fund, only the individual investors (and the SEC) have the right to bring claims under that statute. *Id.* at 535 n.11 ("The legislative history of §36(b) makes clear that Congress intended the perhaps unique 'right of a corporation' established by §36(b) to be asserted by the company's security holders and not by the company itself."); *see also Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108 (1991) (holding that § 36(b) claims are "direct rather than derivative").

In addition to their individual claims, Plaintiffs also have the rights of any litigant under Rule 23 to bring claims for the benefit of other parties similarly situated who have been injured by the same wrongdoing. Here, those other parties are the shareholders of Funds in which Plaintiffs are not investors. Those persons also have claims under § 36(b) to obtain relief on behalf of their Funds for the same wrongdoing that was inflicted on the Funds in which Plaintiffs are shareholders. Therefore, Plaintiffs are entitled to serve as class representatives on behalf of those other shareholders for the purpose of asserting their claims under § 36(b).

For the reasons given in Point IV., *supra*, Plaintiffs' lack of any specific ownership in the other Funds does not preclude certification of the Class sought here. For example, in *Alves*, 204 F. Supp. 2d at 205, two class representatives brought an ERISA class action against five defendants. Even though neither plaintiff was ever a member of an ERISA plan that the defendants sponsored, the District of Massachusetts concluded that "plaintiffs' claims against [defendants] should not be dismissed for lack of standing." *Id.* at 205. The District Court held

34

that "as long as the 'the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans,'" an individual in one plan could represent those in another. *Id.*

Here, the § 36(b) claims of Plaintiffs are "closely related" to the § 36(b) claims of the Class members who hold shares in other Funds. Under *Haas*, *supra*, Plaintiffs are entitled to represent a class of investors in all the Columbia Funds.

### B.     The Language of § 36(b) is Consistent With Class Certification

Defendants may argue that class certification is precluded by the language of § 36(b), which states that an action under that Section may be brought "on behalf of such company." However, that language describes the individual claim that may be asserted by a mutual fund investor. Nothing in the language of § 36(b) states that the only form of action that may be brought under that Section is an individual claim, nor does § 36(b) anywhere suggest that a plaintiff would be deprived of the normal right of all litigants to assert a class claim as well as an individual claim if the requirements of Rule 23 are satisfied.

The fact that Plaintiffs assert their individual § 36(b) claims for the benefit of their Fund makes them no different from the many other class representatives who have individual claims only by virtue of their positions as trustee, guardian, or similar capacity. Such persons have routinely been certified as class representatives able to assert claims on behalf of others who were similarly situated. *See, e.g.*, *Risinger v. Concannon*, 201 F.R.D. 16 (D. Me. 2001) (parents on behalf of their disabled children); *Woodward v. Online Info. Serv.*, 191 F.R.D. 502 (E.D.N.C. 2000) (guardian of legally incompetent plaintiff); *Prostic v. Xerox Corp.*, 1991 U.S. Dist. LEXIS 15950 (D. Conn. July 19, 1991) (securities fraud class action brought by representative of the estate of deceased investor). "[T]here is nothing … that would preclude fiduciaries or trustees from serving as class representatives on behalf of their own beneficiaries as well as

35

others similarly situated, and many courts have so held." *Woodward*, 191 F.R.D. at 506 (quoting *Newberg on Class Actions*, § 3.34 (3d ed. 1992)).

Interpreting § 36(b) to have the intent of precluding class certification would conflict with the congressional intent of that Section.  As described by the Supreme Court in *Daily Income Fund,* 464 U.S. at 536-37, § 36(b) was enacted to strengthen the ability of mutual fund investors to protect their funds against overreaching by their advisors and affiliated companies.[27] Congress sought to enhance the investors' ability to sue, for example, by eliminating any requirement for a demand on the mutual fund's board of directors and by giving the investor, rather than the fund, the right to sue.  Clearly Congress was focusing on *expanding* investors' ability to protect their interests as fund shareholders.[28]  It was not attempting to preclude class treatment where that device would also serve the purposes giving rise to the statute.

Here Congress's purposes will clearly be served by allowing class certification.  Given the unitary nature of the entire complex of Columbia Funds, for all practical purposes the "company" referenced in § 36(b) is the entire family of Funds.  Among other things, all the

---

[27] The Congressional intent to strengthen the ability of investors to effectively redress overreaching by mutual fund advisors and their affiliates is clear in the legislative history of § 36(b).  The bill introducing § 36(b) was predicated on the SEC's findings in its 1966 Report on Investment Companies. *See* Senate Report.  The 1966 Report, entitled "Public Policy Implications of Investment Company Growth" (PPI) H.R. No. 2337, 89th Cong., 2d Sess., states: "It has been the Commission's experience in the administration of the Act that in general the unaffiliated directors have not been in a position to secure changes in the level of advisory fee rates in the mutual fund industry. *Id.* at 131.  The 1966 Report thus concludes:  "*In the Commission's view, Section 36 should be broadly construed so as to effectuate the remedial purposes of the Act.*"  *Id*. at 143 (emphasis added).

[28] The Senate Report left no doubt of the desirability of stockholder access to the courts under § 36(b), stating:  "Therefore your committee has adopted the basic principle that, in view of the potential conflicts of interest involved in the setting of these fees, there should be effective means for the courts to act where mutual fund shareholders or the SEC believe there has been a breach of fiduciary duty."  Senate Report at 2.

Funds share expenses. *See* pp. 4-5, *supra*. Therefore, a payment by any one Fund generally reflects expenses incurred by another fund, and *vice versa*. To provide relief to any Fund under § 36(b) in this matter, an accounting will have to take place with respect to *all* the Funds.

The legislative history specifically references the existence of fund complexes (such as the Columbia family of funds) and confirms that, in such a situation, § 36(b) requires the courts to evaluate the impact of defendants' wrongful conduct on the entire complex of funds. In discussing the addition of § 36(b) to the ICA, the Senate Report stated:

> In the event that court action is brought to enforce this fiduciary duty of the investment adviser as to compensation or payments received by him, it is intended that the court look at all the facts in connection with the determination and receipt of such compensation, including all services rendered to the fund or its shareholders and all compensation and payments received, in order to reach a decision as to whether the adviser has properly acted as a fiduciary in relation to such compensation. *In the case of fund complexes, this could, under certain circumstances, include consideration of services rendered by such investment advisers to other funds in such complex and compensation or payments made by such other funds for such services.*

Senate Report at 15.

The above quotation shows that Congress recognized that the existence of an interrelated complex of mutual funds could require the courts to examine the impact of the advisers' activity on the entire group in order to make an informed decision as to whether the adviser was breaching its fiduciary duties and obtaining excessive compensation for itself or its affiliates under § 36(b). The class certification proposed by Plaintiffs is the mechanism that will best accomplish this Congressional policy. It recognizes that the entire family of Funds is impacted by the issues raised, and that the interests of the entire family must therefore be represented if § 36(b) is to achieve its purpose.[29]

---

[29] Plaintiffs also have standing to assert their claims under § 36(b) of the ICA on behalf of all the

Continued on next page

## VI.    THE CLAIMS AT ISSUE IN THIS MOTION ARE DIRECT IN NATURE

### A.    Plaintiffs' § 36(b) Claim Is Direct

As discussed in Point V, *supra*, the Supreme Court held that § 36(b) claims are "direct

rather than derivative." *Kamen*, 500 U.S. at 108 (citing *Daily Income Fund*, 464 U.S. at 540).

Therefore, the direct nature of Plaintiffs' § 36(b) claims cannot reasonably be challenged here.[30]

---

Columbia Funds as members of an unincorporated association pursuant to Fed. R. Civ. P. 23.2. An unincorporated association is defined as a body of persons or entities acting together pursuant to a common purpose and/or enterprise. *See Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 486 (1st Cir. 1985); *Mgmt. Television Sys., Inc. v. Nat'l Football League*, 52 F.R.D. 162, 164 (E.D. Pa. 1971) (creating a defendant class of the clubs comprising the National Football League); *see also NAACP v. Lansing Bd. of Educ.*, 429 F. Supp. 583, 585 (W.D. Mich. 1976) (noting that plaintiff is an unincorporated association which sues on behalf of its membership who are members of the plaintiff class). The Columbia Registrants/Funds are an "unincorporated association" in that they are joined together under a common name (*e.g.* Columbia), trademarked, have common purposes and objectives, usually share the same office(s), the same directors/trustees and officers, and combine their bargaining power to better negotiate with custodians, transfer agents, third-party lenders, broker-dealers, and other service providers. *See Cross v. Oneida Paper Prod.* Co., 117 F. Supp. 919, 921 (D.N.J. 1954) (recognizing, for federal representative party purposes, that "members of a[n] . . . unincorporated association[] clearly have a joint or common right in its trade-mark"). Where, as here, "a group is 'commonly understood, referred to, and contributed to' under a given name, fairness dictates that such a group be deemed a legal entity." *Coscarart v. Major League Baseball*, 1996 U.S. Dist. LEXIS 9797, at *7 (N.D. Cal. July 10, 1996) (quotation omitted). As such, because each fund is a member of the same unincorporated association, Plaintiffs can bring their § 36(b) claim -- brought on behalf of a fund -- on behalf of all of the Funds that are members of that same association. *See* Fed. R. Civ. P. 23.2 (providing that an action can be "brought by or against the members of an unincorporated association as a class by naming certain members as representative parties…if it appears that the representative parties will fairly and adequately protect the interests of the association and its members"). Those requirements have been met here, as shown above.

[30] Indeed, the language of § 36(b) recognizes that the shareholders of the fund are the persons harmed by paying excessive fees. Section 36(b) states that investment advisers have a fiduciary duty "with respect to the receipt of compensation for services, or of payments of a material nature, *paid by* such registered investment company, *or by the security holders thereof*." 15 U.S.C. § 80a-35(b) (emphasis added.) If Congress understood that solely the fund, rather than its shareholders, was harmed by payments of excessive fees, it would have been anomalous to provide an express statutory recovery under § 36(b) for fees paid *by security holders* of the fund, rather than by the fund only.

Although recoveries under § 36(b) go to the Fund rather than directly to the investors, the SEC has recognized that "it is largely a legal fiction to state that recovery obtained by a Section 36(b) action is on behalf of the company rather than the security holders." *See* SEC Brief as Amicus Curae in Support of Affirmance in *Daily Income Fund v. Fox*, Pollack Decl. Ex. J, at p. 19 n.9. The Commission has further stated that, "while a recovery in a Section 36(b) suit would initially be paid to the investment company, the company would serve as a conduit for the benefit of holders of redeemable securities." *Id.* This statement by the agency whose expertise and initiative was the driving force in bringing about the enactment of § 36(b) confirms that the intent of that Section is to benefit mutual fund investors by providing them with a direct claim.

### B.    Plaintiffs' State Law and Non-§ 36(b) Federal Claims are Direct Claims Suitable for Class Treatment

The determination of whether the nature of a plaintiff's claim under the ICA is direct or derivative is a question of state law. *See Kamen*, 500 U.S. at 108 (explaining how the issue of whether a plaintiff's ICA claims are direct or derivative is a question of state law); *Strougo v. Bassini*, 282 F.3d 162, 168 (2d Cir. 2002) (collecting cases). The Columbia Funds are incorporated in Massachusetts and Oregon. As the analysis below shows, Plaintiffs' claims are direct under the laws of these states.

#### 1.    Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Massachusetts Law

Under Massachusetts law, "[w]hat differentiates a direct from a derivative suit is … the source of the claim of right itself. . . If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation, the suit is direct." *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996) (Keeton, J.). Here, Defendants -- the directors and investment advisers of the funds -- owe directly to the shareholders the fiduciary duty to disclose all material information regarding fund

management, and the directors have a duty to protect the interests of shareholders against those

of the investment advisers.  *See*, *e.g.*, *SEC v. Steadman*, 798 F. Supp. 733, 744 (D.D.C. 1991)

("As a registered investment adviser, SSC violated … its fiduciary duty to the Funds'

shareholders … by making material misrepresentations and omissions in the Funds

prospectuses."); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1047

(S.D.N.Y. 1981) ("[I]t is well settled that the investment adviser owes a duty of full disclosure to

the trustees and shareholders of the fund.").  Plaintiffs have also alleged that they were

fraudulently induced to hold their investments in Columbia Funds.  Such a claim is direct under

Massachusetts law.  *See Blasberg*, 934 F. Supp. at 26 (stating, in an analogous situation of a

fraudulently induced purchase, that "if a plaintiff alleges that she, as an individual investor, was

misled or defrauded in the purchase of her investment, this kind of claim is a 'direct' one").

>    2.    **Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under
>          Oregon Law**

Under Oregon law, Plaintiffs' claims are direct as Plaintiffs are seeking the recovery of

excessive fees paid by them.  In *Lee v. Mitchell*, 953 P.2d 414, 423-24 (Or. App. 1998), the court

holds that a plaintiff may bring a direct action against a corporation or third party involved with

the corporation when the defendant's actions violate a duty owed to the plaintiff as an individual

or when the plaintiff suffers harm distinct from the harm to the corporation.  As discussed above,

the plaintiff-shareholders in these actions have suffered the alleged harm directly, and they

would receive the benefit of a recovery.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for class certification, approve Plaintiffs as representatives of the Class, and appoint Plaintiffs' Counsel (as defined above) as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

Dated: June 9, 2005

Respectfully submitted,

**MOULTON & GANS, P.C.**

By: _____/s/ Nancy Freeman Gans_____
   Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts  02109-4216
(617) 369-7979

***Counsel for Plaintiffs and Proposed Liaison Counsel***

**MILBERG WEISS BERSHAD**
 **& SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, NewYork  10119-0165
(212) 594-5300

***Counsel for Plaintiffs and Proposed Co-Lead Counsel***

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

***Counsel for Plaintiffs and Proposed Co-Lead Counsel***

41

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiffs*

**WEISS & LURIE**
Joseph H. Weiss
Richard A. Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiffs*

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
280 King of Prussia Road
Radnor, Pennsylvania  19087
(610) 667-7706

*Counsel for Plaintiffs*

**GILMAN AND PASTOR, LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel P. Dietrich, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record, this 9th day of June, 2005.

_____/s/ Daniel P. Dietrich_____
Daniel P. Dietrich