UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE COLUMBIA ENTITIES LITIGATION ) | Civil Action No. 04-cv-11704-REK |
| ) | |
| This Document Relates To: ) | |
| ALL CASES ) | |
| ) | |

**THE INDEPENDENT TRUSTEE DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RENEWED
(AND ESSENTIALLY IDENTICAL) MOTION FOR APPOINTMENT
OF CO-LEAD COUNSEL AND APPOINTMENT OF LIAISON COUNSEL**

The Independent Trustee Defendants,[1] by their attorneys, respectfully submit this memorandum in opposition to Plaintiffs' renewed motion (which raises the identical arguments previously rejected by this Court but now with additional declarations) for the appointment of the law firms Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Stull, Stull & Brody ("Stull") as co-lead counsel and Moulton & Gans, P.C. ("Moulton") as liaison counsel.

**PRELIMINARY STATEMENT**

A.  **Plaintiffs' Contrived Distinction Between The Columbia
    Registrants And The Funds Those Registrants Issue.**

In the briefing of their original motion, and again in this renewed motion, the principal argument of Plaintiffs (or their counsel who are the real movants) is that the "Columbia Funds" were long ago dropped as defendants in the MDL Action so that, purportedly, no conflict exists in Plaintiffs' counsels' representation of the "Columbia Funds" derivatively in the instant action.

---

[1] The named Independent Trustees of the Columbia Funds Trusts Registrants are: Douglas A. Hacker, Janet Langford Kelly, Richard W. Lowry, William E. Mayer, Charles R. Nelson, John J. Neuhauser, Patrick J. Simpson, Thomas E. Stitzel, Thomas C. Theobald, Anne-Lee Verville, and Richard L. Woolworth. Salvatore Macera, while named as a defendant, is deceased. The named Independent Trustees of the Columbia Acorn Trust Registrant are: Margaret Eisen, Leo A. Guthart, Jerome Kahn, Jr., Steven Kaplan, David Kleinman, Allan Muchin, Robert R. Nason and John A. Wing.

This argument rests upon the contrived and legally incongruous parsing of the "Columbia Funds" into the Columbia Registrants (who remain as defendants in the MDL Action) and the individual mutual fund series issued by those Columbia Registrants. As this Court previously recognized, no such legal distinction exists.

The Columbia mutual fund family is comprised of multiple Columbia Registrants, each of which is a separate investment company registered under the Investment Company Act of 1940 (the "ICA"). Each Columbia Registrant takes the form of either a Massachusetts business trust or a corporation separately incorporated under Oregon law. Each Columbia Registrant is a separate legal entity that issues one or more "series," commonly referred to as a mutual fund. For example, the Columbia Acorn Fund is a series of Columbia Acorn Trust (the Registrant). The assets of each Columbia Registrant consist of the respective series (*i.e.*, mutual funds) of the Registrant.

**B.    Nothing At All Has Changed Since This Court's April 7, 2005 Ruling Denying Plaintiffs' Motion To Appoint Lead And Liaison Counsel.**

At the April 7, 2005 hearing, the Court denied this same motion based on the irrefutable conflict of interest that would result if Plaintiffs' counsel were permitted to represent the Columbia Funds derivatively in this case while <u>concurrently</u> suing the Columbia Funds in the multidistrict "market timing" class action pending in Maryland (the "MDL Action"). <u>Nothing at all has changed since this Court's April 7, 2005 ruling</u>. While Plaintiffs were given time by this Court to amend the pleadings in the MDL Action to drop the Columbia Registrants as defendants, and then renew their motion for appointment as co-lead/liaison counsel herein, they chose not do so.[2] Nor have Plaintiffs or their counsel proposed different counsel to represent

---

[2]    Notably, the September 24, 2004 Notice dismissing in the MDL Action only the individual Columbia fund series, and not the Columbia Registrants (which issue the fund series), was filed <u>before</u> Plaintiffs' original motion for appointment of counsel and was highlighted by

Plaintiffs' interests in this action.[3]

Instead, Plaintiffs are now repeating the identical arguments previously raised and rejected by this Court on April 7, 2005, but now supported by yet more declarations.[4] This tactic flies in the face of both the Court's prior ruling on the original motion and the Court's repeated and unequivocal admonitions to Plaintiffs' counsel on April 7th that the obvious conflict will not evaporate if Plaintiffs simply file more declarations or other documents. (*See* Tr. of April 7, 2005 Case Management Hearing, attached as Ex. A, at pp. 22, 23, 25 and 32.) Specifically, this Court instructed:

> THE COURT:  I said to you that additional documentation will not allay my concerns while I have a record before me in which there is a claim being made in this case, while also claims are being made in another case, as to which that puts counsel in a conflict of interest position. More documentation is not going to solve that problem.

---

Plaintiffs' counsel, unsuccessfully, at the April 7, 2005 hearing. Thus, it is unclear why Plaintiffs and their affiant, Green, represent to the Court that the September 24, 2004 Notice has now changed the landscape of the conflict issue in any manner. It has not.

[3]  Every law firm seeking to represent Plaintiffs here is also representing plaintiffs in cases asserting class claims against the Columbia Funds that have been transferred to the MDL. *See AB Med. Equip. Corp. v. Fleetboston Fin. Corp., et al.*, No. 04-cv-10355-PBS (D. Mass.) (Gilman & Pastor, LLP and Schiffrin & Barroway, LLP); *Caprio v. Columbia Acorn Fund, et al.*, No. 04-cv-10603-PBS (D. Mass) (Milberg Weiss, Moulton and Law Offices of Charles E. Piven); *Dukes v. Columbia Acorn Fund, et al.*, No. 04-cv-10315-PBS (D. Mass.) (Milberg Weiss and Moulton); *Ehrlich v. Columbia Acorn Fund, et al.*, No. 04-cv-10405-PBS (D. Mass) (Milberg Weiss and Moulton); *McKenna v. Columbia Acorn Fund, et al.*, No. 04-cv-1576-RMB (S.D.N.Y.) (Stull); *Simmonds v. Columbia Acorn Fund, et al.*, No. 04-cv-1879-RMB (S.D.N.Y.) (Stull and Weiss & Yourman). Milberg Weiss is a co-chair for the Plaintiffs' Steering Committee and Lead Class Counsel for the Columbia Subtrack in the MDL.

[4]  In their supporting memorandum, Plaintiffs represent that "on the current record they have now satisfactorily addressed all of the issues raised by Defendants and addressed by this Court at the April 7, 2005 hearing." (Pls.' Mem., pp. 1-2). This is absurd. In fact, Plaintiffs' renewed motion is similar in substance and content to the "Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Appointment of Co-Lead Counsel and Appointment of Liaison Counsel" filed on April 6, 2005. Those arguments were rejected by this Court on April 7th and should be rejected again for the same reasons.

(*Id.*, at p. 32; *see also id.*, at p. 22 ("And so if you're going to have a limitation of that claim, you've got to put it on the record in that case instead of defending on some other way of placing the limitation."), p. 23 ("[Y]ou don't amend the complaint by somebody's declaration."), p. 25 ("You don't amend a complaint by additional documentation. You amend a complaint by amending the complaint."), and p. 25 ("Additional documentation doesn't amend the complaint.").) Apparently Plaintiffs' law professor affiant, Bruce Green ("Green"), disagrees with the Court, as he attests that Plaintiffs' new affidavits should somehow resolve "this court's concerns." (Green Aff., ¶¶ 33-34.) But the legal conflict is for the court, not Green, to determine, and is not resolved simply by filing declarations.

Plaintiffs' continued refrain that the conflict evaporates by suing only the Columbia Registrants in the MDL Action (and not the series of mutual funds issued by the Columbia Registrants—which have no separate legal existence anyway) rings hollow. Judge O'Toole recognized the fallacy of this Registrant-Fund dichotomy in denying a similar motion for appointment made by the same Plaintiffs' counsel in *Forsythe v. Sun Life Fin. Inc.*, 2005 WL 81576 (D. Mass. Jan. 13, 2005).[5] As Judge O'Toole ruled, "The law firms' argument that the real defendants in the market timing action are the trusts [*i.e.* the Registrants] and not the funds themselves, misses the mark." *Id.* at *2. (A copy of the *Forsythe* decision is attached as Ex. B.)[6]

---

[5] Even Plaintiffs cannot keep their Registrant-Fund "distinction" straight in their pleadings. In the Consolidated Amended Class Action Complaint (the "Complaint"), Plaintiffs expressly define the Columbia Funds, on whose behalf they seek to act derivatively here, as follows: "Each of the Columbia Funds is an open-ended management investment company organized as a Massachusetts business trust" (*i.e.* a Registrant). (Am. Compl., at ¶ 71). So, Plaintiffs' own pleading squarely acknowledges the adverse concurrent representation of the Columbia Registrants by their counsel.

[6] In *Forsythe*, as here, four separate lawsuits were initially filed by different plaintiffs. Judge O'Toole consolidated three of the lawsuits, but declined to consolidate the fourth, captioned *Dumond v. Massachusetts Fin. Servs. Co.*, No. 04-cv-11458. The motion for the appointment of Milberg Weiss and Moulton as co-lead and liaison counsel accompanied the

Moreover, Plaintiffs' affiant, Green, acknowledges that the defendants in the MDL Action are, among others, "the entities that are the legal registrants for the funds <u>and the issuers of the funds' shares</u>." (Pls.' Mem., Ex. G, at ¶ 28 (emphasis added).)[7]

As Plaintiffs continue to emphasize, Judge Motz did state on April 4, 2004 that it did not make sense to have the Fund <u>entities</u> named as defendants in the MDL Action (because any recovery would go to the Funds). While Plaintiffs' counsel responded that they were "cognizant" of the anomaly of naming the Fund entities as defendants, counsel indicated they were hesitant to dismiss them because they were unsure "whether there is insurance" which the MDL plaintiffs could latch onto to further fund a settlement or any potential recovery. (*See* Pls.' Mem., at p. 8, (quoting David Bershad of Milberg Weiss).)[8] Plaintiffs' strategy, the disingenuous nature of which was acknowledged by Judge O'Toole in *Forsythe*, was to keep the legal entities who held the fund assets (*i.e.*, the Columbia Registrants) as named defendants in the MDL Action while "dismissing" the fund series of the Columbia Registrants which have no

---

motion to consolidate and was opposed not by the defendants, but by the *Dumond* plaintiffs and their counsel. The *Forsythe* plaintiffs have since renewed their motion for the appointment of counsel, but the defendants have not yet filed a response. Since the *Dumond* plaintiffs are not part of the consolidated suit, the renewed motion may be unopposed.

[7] In his Declaration, Green attests that he has "no first-hand knowledge of the relevant facts." (Pls.' Mem., Ex. G, at ¶ 6.) Rather, based on assumptions concededly provided by counsel, Green offers his "expert" opinion on issues of law. Such opinions are inadmissible because "[i]n our legal system, purely legal questions . . . [are] exclusively the domain of the judge." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997); *see also id.* at 100 ("Each courtroom comes equipped with a 'legal expert,' called a judge . . . .") (internal quotations and citation omitted). Accordingly, the Court should disregard Green's Declaration in its entirety as it adds nothing to the conflict analysis. If the Court is inclined to consider Green's Declaration, the Independent Trustee Defendants respectfully submit the Declaration of Professor Geoffrey C. Hazard, attached as Exhibit C. Professor Hazard opines that Plaintiffs' counsel have irreconcilable conflicts of interest in this case.

[8] Plaintiffs' affiant, Green, also highlights the "insurance considerations" which apparently prompted the MDL plaintiffs not to dismiss the Registrants. (Pls.' Mem., Ex. G, at ¶ 27.)

legal existence and were improperly named as defendants in the first place. But, nothing has changed – the Columbia Funds (and their Fund assets) remain as defendants in the MDL Action.

Indeed, if Plaintiffs are acting derivatively in this case it could only be through the Columbia Registrants who are being sued by Plaintiffs' counsel in the MDL Action. Plaintiffs cannot avoid the obvious conflict that arises in suing the Columbia Registrants in the MDL Action and representing them derivatively in this case by simply carving out the assets of the Registrants (*i.e.*, the Columbia mutual funds) and claiming those assets are different legal entities on whose behalf Plaintiffs' counsel may act in this case.

Finally, acknowledging that no legitimate legal dichotomy exists between the Columbia Registrants and the fund series, Plaintiffs' counsels' back-up argument at the April 7th hearing, and again now, is in the form of a "promise" that the MDL plaintiffs will limit recovery against the Columbia Registrants in the MDL Action to only "non-fund assets," whatever those are (the Columbia Registrants have no assets that do not belong to the Funds). (Ex. A, at p. 21; Pls.' Mem., at p. 9.)[9] Both Judge O'Toole in *Forsythe*, 2005 WL 81576 at *2, and this Court during the April 7th hearing (Ex. A, at p. 23), rejected this promise, which is entirely outside of and squarely in contradiction with the MDL pleadings which seek compensatory and punitive damages, along with broad equitable relief from "all defendants, jointly and severally." (MDL Compl., at p. 73.)

---

[9] In his affidavit, Green assumes that simply dropping the mutual fund series (but not the Columbia Registrants) as defendants in the MDL Action has "the legal effect in the market-timing litigation of precluding the class from recovering from the Funds' assets." (Green Aff. ¶ 31.) But, this Court ruled exactly the opposite on April 7, 2005, finding that dismissal of just the mutual fund series and promising limits on recoveries outside of the pleadings against the named Columbia Registrants had no "legal effect" on the obvious conflict. Indeed, simply dropping the fund series while keeping as defendants the Columbia Registrants accomplishes absolutely nothing for Plaintiffs. Since the individual mutual funds have no legal existence, they should not have been named in the first place.

# ARGUMENT

A.  **Plaintiffs' Counsel May Not Represent the Columbia Funds Derivatively Here While Concurrently Suing the Columbia Funds in the MDL Action.**

While Plaintiffs have dropped from their Complaint many of the derivative claims they previously asserted, they still expressly allege a derivative claim in Count V under Sections 206 and 215 of the Investment Advisers Act on behalf of the Columbia Funds. In the MDL Action, on the other hand, the same Plaintiffs' counsel are concurrently representing class plaintiffs <u>suing</u> the Columbia Funds directly. The result is that in the MDL Action, Plaintiffs' counsel seek to have the Columbia Funds <u>pay</u> a judgment while, in the instant case, they seek to <u>collect</u> a judgment for the Columbia Funds. This concurrent adverse representation creates an irreconcilable conflict of interest that not only precludes any of the law firms presently representing Plaintiffs from being appointed as lead or liaison counsel in this case, but also likely requires their disqualification either here or in the MDL.

Rule 1.7 of the Massachusetts Rules of Professional Conduct strictly mandates that:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representations will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Mass. Rule of Prof. Conduct 1.7. Under Rule 1.7, "a lawyer ordinarily may not act as advocate

against a person the lawyer represents in some other matter, even if it is wholly unrelated." *Id.*, Comment 3. The Massachusetts Supreme Judicial Court has held that a law firm is prohibited from adversely representing clients in separate lawsuits even where the suits <u>are unrelated</u> and there would be no prejudice to the clients. *See McCourt Co. v FPC Props., Inc.*, 386 Mass. 145, 146, 434 N.E.2d 1234, 1235 (1982) ("The undivided loyalty that a lawyer owes to his clients forbids him, without the clients' consent, from acting for client A in one action and at the same time against client A in another.").

Courts have uniformly recognized the inherent conflict that arises where the same counsel seek to simultaneously represent class and derivative plaintiffs in separate lawsuits. *Hawk Indus., Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 624 (S.D.N.Y. 1973) (holding that proposed law firm was "estopped from acting as co-lead counsel" in a class action based upon its simultaneous representation of derivative plaintiffs in separate state court suit); *Koenig v. Benson*, 117 F.R.D. 330, 334-35 (E.D.N.Y. 1987) (holding that a consolidated lawsuit could not proceed as a class action based in part upon the plaintiffs' counsels' simultaneous representation of derivative plaintiffs in a separate state court suit).[10] As the court stated in *Koenig*:

> [I]t is difficult to understand how an attorney can properly represent the interests of a corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in a class action against the corporation without compromising the independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests.

*Id.* at 334 (quoting *Stull v. Baker*, 410 F. Supp. 1326, 1336-37 (S.D.N.Y. 1976)).

Each Oregon corporation is a separate fund. However, each of these Oregon corporations

---

[10] The Stull law firm, which is one of the firms seeking to be appointed as co-lead counsel for Plaintiffs here, was one of the firms whose concurrent representation of derivative and class plaintiffs prompted the court's holding in *Koenig*.

is also an investment company registered under the ICA (*i.e.*, a "Registrant").[11] Similarly, the fund series issued by a Massachusetts business trust (*i.e.*, a "Registrant") are themselves not legal entities but are part of the trust. Thus, a fund of a trust cannot be a defendant unless the trust is a defendant.

B.  **The Same Conflict Prevents Plaintiffs' Counsel From Simultaneously Representing Both Class and Derivative Plaintiffs in This Case.**

Even accepting, *arguendo*, Plaintiffs' Registrant-Fund distinction, Plaintiffs' counsel remain conflicted because they are seeking to represent both class and derivative plaintiffs <u>in this very case</u>. Indeed, just as in the case of separate lawsuits, courts have recognized that an inherent conflict arises where counsel seeks to represent a party simultaneously asserting both class and derivative claims in the same lawsuit. *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y. 1972) (denying motion to certify class in combined class/derivative action and stating that "there is a substantial question as to whether the attorneys for the plaintiffs can represent them in the derivative suit and the class action without violating the Canon of Ethics"); *Diana v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1977 WL 1046, at *3 (S.D.N.Y. Oct. 5, 1977) (denying plaintiff's motion for leave to add class claims in a derivative action based in part on the conflict of interest that would result for plaintiff's attorney); *Deleo v. Swirsky*, 2002 WL 31017666, at *1-2 (N.D. Ill. Sep. 5, 2002) (denying motion to reinstate an individual plaintiff's attorney as counsel for derivative plaintiffs based upon the conflict of interest that would arise from the attorney's concurrent representation of direct and derivative

---

[11] For example, Defendants Columbia High Yield Fund, Columbia International Stock Fund and Columbia Mid Cap Growth Fund are funds issued by Oregon corporations with the same names that are Registrants under the ICA. These three Registrants were <u>not</u> dropped as defendants in the MDL Action by the November 24, 2004 Notice. (*See* Pls.' Memo., at Ex. A.) As Judge O'Toole recognized in *Forsythe*, the funds and the Registrants "are essentially the same for practical purposes, so any possible recovery would effectively come from the fund[s'] assets." 2005 WL 81576, at *2.

claims).

The conflict that would result if Plaintiffs' counsel are permitted to simultaneously represent both class and derivative interests in this lawsuit is not "theoretical" or a mere "surface duality" as Plaintiffs suggest.[12] (Pls.' Mem., at p. 13, n.8.) Nor, as Plaintiffs' argue, are "the interests of the class and derivative parties . . . perfectly aligned" in this case. (*Id.*, at p. 15.) To the contrary, there is a present and direct conflict of interest here because Plaintiffs' counsel are seeking to recover damages on behalf of a putative class consisting of <u>former shareholders</u> while concurrently seeking through the derivative claim the payment of damages to the Funds for the benefit of <u>current shareholders</u>. *Ruggiero*, 56 F.R.D. at 95; *Hawk Indus., Inc.*, 59 F.R.D. at 624; *Diana*, 1977 WL 1046, at *3; *Koenig*, 117 F.R.D. at 334-35; *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986); *Deleo*, 2002 WL 31017666, at *2. This inherent conflict is typically addressed through the appointment of separate counsel to represent the class and derivative claims. *See, e.g., Ruggiero*, 56 F.R.D. at 96 (limiting the conflicted attorneys' representation to derivative claims only and appointing separate lead counsel for the class claims). <u>In fact, this is exactly the structure followed in the MDL Action: Milberg Weiss was appointed as Lead Class Counsel for the Columbia Subtrack, but other law firms were appointed to represent the derivative claims on behalf of the Columbia Funds</u>. Why? Because of the obvious conflicts

---

[12] The cases cited by Plaintiffs for the proposition that there is no *per se* rule prohibiting concurrent representation of both class and derivative claims are inapposite. The existence of a conflict of interest was not even addressed by the court in *Yamamoto v. Omiya*, 564 F.2d 1319, 1325-26 (9th Cir. 1977). The court in *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976), assumed that the plaintiff was asserting only direct claims because he ignored the "substantial question" of a conflict of interest in his briefs. In each of the remaining cases, the courts recognized the potential conflict of interest and held that it could be addressed as necessary at a later stage in the proceedings. *See In re Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978); *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 630, 632 (S.D. Ohio 1984); *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976). Unlike in those cases, there are several <u>actual</u> conflicts in this case that must be addressed now.

which exist between class and derivative claims involving the same underlying conduct but benefiting different groups of shareholders.

The Court should address this actual conflict now and not, as Plaintiffs suggest, at a later stage of the litigation. *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 136 (S.D.N.Y. 1991) (holding that where a conflict is apparent, "early intervention" is "the more prudent, and, ultimately, the more efficient course"). The conflicts between competing class and derivative interests in this case will affect not only Plaintiffs' counsels' prosecution of the litigation, but may also impact any potential settlement negotiations. Indeed, courts have expressed precisely this concern in cases involving the firms seeking to be appointed as co-lead counsel here.

For example, in *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995), a derivative plaintiff objected to the settlement of a combined class and derivative action. Although it affirmed the district court's approval of the settlement, the Ninth Circuit stated:

> Weinstein also argues that the linked settlement is biased because Milberg Weiss had a conflict of interest in representing both the derivative plaintiffs and the securities plaintiffs. . . . Weinstein alleges that because of a conflict of interest, Milberg Weiss was willing to accept a lower derivative settlement so long as the class action produced a large recovery. . . . <u>We are concerned about the potential conflicts created by the linked settlement and by Milberg Weiss's dual representation of derivative and securities plaintiffs, but Weinstein failed to raise these issues at any time prior to his appeal. . . . A timely objection could have been properly evaluated *before* extensive settlement negotiations were concluded.</u>

*Id.* at 378 (internal footnotes and citations omitted) (underscoring added). In *Stull*, 410 F. Supp. 1326, the district court also struggled with this conflict, this time on the part of the Stull firm, at the settlement-approval stage of the litigation:

> I cannot say that plaintiffs' counsel were wrong in their assessment that the derivative claims could never survive a trial on the merits and, accordingly, I approve the dismissal of the derivative claims. . . . However, I cannot help wondering whether this dismissal would have been as willingly entered into if there were not a substantial settlement fund in the class action upon which the presently pending [attorney's] fee application could rest. <u>It is obviously preferable that the Court not be placed in the difficult position of having to

> determine, without the assistance of highly motivated advocates in adversary roles, whether the interests of the corporation are being sacrificed in favor of the class, or vice-versa.

*Id.* at 1337 (internal citation omitted) (emphasis added). The conflicts of interest in this case are real and immediate, and the Court should address them now by denying Plaintiffs' motion.

C.   **Plaintiffs' Counsel May Not Represent Two Different Classes Suing the Same Defendants.**

There is a third layer of conflict in this case: Plaintiffs' counsel are seeking to simultaneously represent two different classes (in the MDL Action and here) against the same defendants. Not surprisingly, courts have found such a situation gives rise to a conflict of interest. *See, In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 556-57 (S.D. Ohio 2005) (holding that the firm Schiffrin & Barroway, one of Plaintiffs' counsel here, had an "irreconcilable conflict of interest" where it represented class plaintiffs in two separate actions against the same defendant); *Sullivan v. Chase Inv. Servs.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) (holding that plaintiffs counsel had a conflict of interest based on their representation of class plaintiffs in another case against the same defendants and requiring counsel to withdraw from that case before permitting them to proceed as class counsel). These courts found that the possibility that the defendants' assets and insurance would be insufficient to satisfy judgments in both cases could "impair counsel's ability to vigorously pursue the interests of both classes," *In re Cardinal Health*, 225 F.R.D. at 557, and "influence litigation strategy." *Sullivan*, 79 F.R.D. at 258. This conflict is also expressly addressed in the Comment to Rule 1.7 which states:

> In general, the lawyer for a class should not simultaneously represent individuals, not within the class, or other classes, in actions against the defendant being sued by the class. Such simultaneous representation invites defendants to propose global settlements that require the class lawyer to trade off the interest of the class against the interests of other groups or individuals. Given the difficulty of obtaining class consent and the difficulty for the class action court of monitoring the details of the other settlements, such simultaneous representation should ordinarily be avoided.

Mass. Rule of Prof. Conduct 1.7, Comment 14A (emphasis added).

The Independent Trustee Defendants are being sued both here and in the MDL Action (as are the Adviser, Distributor and Interested Trustee Defendants). Moreover, the Plaintiff class in this case is different from that in the MDL. The Class Period alleged here is August 2, 1999 to March 22, 2004. (Am. Compl., at ¶ 163.) The Class Period alleged in the MDL Action is March 1, 1999 to January 16, 2004. (MDL Compl., at ¶ 72.) The alleged misconduct is different in the two suits. This suit arises out of the alleged payment of excessive fees, and the MDL Action arises from alleged market timing activity. Both cases seek damages. (Am. Compl., at p. 75; MDL Compl., at p. 73.) The interests of these two classes – who are in competition for payment – are radically different. How can Plaintiffs' counsel seriously argue that they do not have a conflict of interest? Plaintiffs' motion should be denied.

### D. The Consent of the Named Plaintiffs in This Case Does Not Cure The Conflict.

Plaintiffs understand that a potential conflict exists based upon Milberg Weiss's representation of the class plaintiffs in the MDL action but assert that the requirements of Rule 1.7 are nevertheless satisfied because <u>they</u> have consented to Milberg Weiss's continued representation of them here. (Pls.' Mem., at pp. 11-12 and Exs. B-F, at ¶ 8.)[13] The consent of the few named class and derivative Plaintiffs in this case, however, cannot cure their counsels' conflicts of interest.

There are three layers of conflict in this case: (1) the fact that Plaintiffs' counsel are seeking to represent the Columbia Funds derivatively in this case while concurrently suing them

---

[13] Plaintiffs' Declarations only address the conflicts of interest of Milberg Weiss. Plaintiffs have <u>not</u> consented to the conflicts of interest on the part of their remaining counsel, all of whom are representing class plaintiffs suing the Columbia Funds in the MDL Action and all of whom are seeking to represent both class and derivative interests here. (*See* n. 3, *supra*.)

in the MDL Action; (2) the fact that Plaintiffs' counsel are seeking to concurrently represent derivative and class interests in this case; and (3) the fact that Plaintiffs' counsel are seeking to represent two different classes against the same defendants. The first conflict is governed by Rule 1.7(a) which applies to situations where an attorney's representation of a client (*i.e.*, Plaintiffs) is directly adverse to another client (*i.e.*, the Columbia Funds). Mass. Rule of Prof. Conduct 1.7(a). A Rule 1.7(a) conflict requires the consent of <u>both clients</u> to be waived.[14] *See id.* ("<u>each</u> client consents after consultation") (emphasis added); *In re Dresser Indus., Inc.*, 972 F.2d 540, 545 (5th Cir. 1992) ("Unquestionably, the national standards of attorney conduct forbid a lawyer from bringing a suit against a current client without the consent of both clients."). Since Plaintiffs' counsel have not obtained the consent of <u>the Columbia Funds</u> to the concurrent adverse representation, the conflict has not been waived under Rule 1.7(a).

The latter two conflicts are governed by Rule 1.7(b) which applies where an attorney's representation of a client (*i.e.*, class Plaintiffs here) may be materially limited by the attorney's representation of another client (*i.e.*, derivative Plaintiffs here and class plaintiffs in the MDL Action). Mass. Rule of Prof. Conduct 1.7(b). Consent to an attorney's conflict of interest in a derivative suit must be obtained from <u>all</u> of the shareholders the attorney seeks to represent, <u>not just the named plaintiff</u>. *Deleo v. Swirsky*, 2002 WL 31017666, at *2 (N.D. Ill. Sep. 5, 2002) (barring attorney with conflict from representing derivative plaintiffs where consent was not obtained from all of the company's shareholders); *Guenther v. Pacific Telecom, Inc.*, 123 F.R.D. 341, 347 (D. Or. 1987) ("all similarly situated shareholders" must be given the opportunity to be adequately informed and consent to an attorney's conflict of interest in a derivative suit).

---

[14] Plaintiffs' affiant, Green, acknowledges that "[a] law firm may not represent a party adversely against another current client without the consent of <u>both clients</u>." (Pls.' Mem., Ex. G, at ¶ 34; emphasis added).

Similarly, in a class action, consent of only the named plaintiffs is legally insufficient to waive an attorney's conflict of interest. *Chateau de Ville Prod., Inc. v. Tams-Witmark Music Library, Inc.*, 474 F. Supp. 223, 227 (S.D.N.Y. 1979) (holding on a motion to disqualify in a class action prior to class certification that "since plaintiffs seek to proceed on behalf of a class, the consent of all would be required" to cure an attorney's conflict of interest); *Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 132-33 (D.D.C. 1994) ("Unidentified class members cannot waive a potential conflict of interest."). Accordingly, the consent of the named Plaintiffs alone is insufficient to cure their counsels' conflicts of interest.[15]

Furthermore, there is a substantial question as to whether consent, even if obtained from all of the named and unnamed Plaintiffs, can ever be effective to cure the attorney conflicts of interest here. In both derivative and class action cases, courts have held that the requirements of Federal Rules of Civil Procedure 23 and 23.1 require that they look beyond any consents to ensure that conflicts do not interfere with the adequacy of counsels' representation of their clients. *See Deleo*, 2002 WL 31017666, at *2 ("[W]hether adequate consents from all [derivative] shareholders can resolve a fairness and adequacy controversy like the one presented remains an issue . . . [Proposed plaintiffs' counsel] has not addressed this question."); *Guenther*, 123 F.R.D. at 347 ("Even if counsel could accomplish the formidable task of notifying all similarly situated shareholders and receive consent, that fact would not relieve this court of its

---

[15] Additionally, since Plaintiffs' counsel are attempting to represent multiple clients (*i.e.*, derivative and class Plaintiffs) in this case, an explanation of the implications of the common representation and the advantages and risks involved is required by Rule 1.7(b) before those clients can render valid consent. Mass. Rule of Prof. Conduct 1.7(b). Plaintiffs' Declarations do not reveal that <u>any</u> of the implications of the multiple representation in this case, such as the fact that a recovery from the Columbia Funds on the class claims would reduce the recovery for the derivative claims, have been disclosed to the named Plaintiffs. Thus, even if the named Plaintiffs could consent on behalf of those they seek to represent, their consent is ineffective under Rule 1.7(b).

obligation under Fed. R. Civ. Proc. 23.1 to determine the adequacy of representation."); *Chateau de Ville*, 474 F. Supp. at 227 ("Lastly, even if consent were acquired, it is doubtful whether it would suffice to cure the conflict since I do not believe it 'obvious that (the same counsel) can adequately represent the interest of each' of the multiple clients."); *Palumbo*, 157 F.R.D. at 133 ("In the class action context, the Court has an obligation to closely scrutinize the qualification of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented."); *see also In re Dresser Indus.*, 972 F.2d at 545 n. 11 ("We note that there is a limited utility to seeking the consent of the client in a class action. In class actions, the court must independently determine whether the lawyer for the class can fairly represent all of the members of the class, and a lawyer's conflicts . . . may forbid such representation.").

Finally, the form consents, obviously drafted by counsel, raise their own issues. Green attests that there "is no indication that the shareholders perceive the law firms' role in the market-timing cases as adverse or disloyal to them." (Green Aff. ¶ 34.) But the named plaintiffs' affidavits demonstrate that they <u>do not</u> understand that the Columbia Registrants, the only legal entities, remain as defendants in the MDL class action. Nor is there any indication that counsel explained to Plaintiffs the implications of their representation of former Columbia shareholders in the MDL class action while simultaneously proceeding derivatively on behalf of current Columbia shareholders here. There is no indication that the named plaintiffs understand that they are in competition for payment. Indeed, the form affidavits are most alarming for what they fail to say regarding the circumstances surrounding the consent issue.

The purported consents of just the named Plaintiffs in this case simply cannot cure the fundamental conflicts of interest on the part of their counsel.

## CONCLUSION

For all of the foregoing reasons, the Independent Trustee Defendants respectfully request that Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and Appointment of Liaison Counsel be denied *with prejudice*, and for such other relief as the Court deems appropriate.

Dated: August 5th, 2005

                                        Respectfully Submitted,

                                        THE INDEPENDENT
                                        TRUSTEE DEFENDANTS

                                        By: _____
                                            Timothy O. Egan (BBO# 637992)
                                        Peabody & Arnold LLP
                                        50 Rowes Wharf
                                        Boston, MA   02110
                                        Telephone: (617) 951-2100
                                        Facsimile: (617) 951-2125

                                        and

                                        Kenneth E. Rechtoris
                                        Todd E. Pentecost
                                        Bell, Boyd & Lloyd LLC
                                        70 West Madison Street, Suite 3100
                                        Chicago, IL   60602-4207
                                        Telephone: (312) 372-1121
                                        Facsimile: (312) 827-8000

                                        Attorneys for the Independent
                                        Trustee Defendants

## **CERTIFICATE OF SERVICE**

    I, Timothy O. Egan, hereby certify that a true copy of the above document was served upon the attorney of record for each other party not identified on the Notice of Electronic Filing as an electronic recipient by mail on August 5th, 2005.

                                        _____
                                            Timothy O. Egan