# EXHIBIT A

## Page 1

```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


JOAN COHEN, et al.,        )
           Plaintiffs,     )
                           )
vs.                        )    CA 04-11704-REK
                           )
                           )
COLUMBIA ACORN FUND, et al.,)
           Defendants.     )


BEFORE:  The Honorable Robert E. Keeton


              HEARING ON CASE MANAGEMENT



         John Joseph Moakley United States Courthouse
                       Courtroom No. 3
                      One Courthouse Way
                       Boston, MA 02210
                    Thursday, April 7, 2005
                          11:08 A.M.




                   Cheryl Dahlstrom, RPR, RMR
                     Official Court Reporter
         John Joseph Moakley United States Courthouse
                  One Courthouse Way, Room 3209
                       Boston, MA 02210
              Mechanical Steno - Transcript by Computer
```

## Page 2

```
APPEARANCES:

    MOULTON & GANS, PC
    By: Nancy F. Gans, Esq.
    33 Broad Street
    Suite 1100
    Boston, Massachusetts 02109
    - and -
    MILBERG WEISS
    By: Janine L. Pollack, Esq.
    One Pennsylvania Plaza
    New York, New York 10119
    - and -
    STULL, STULL & BRODY
    By: Bradley P. Dyer, Esq.
    6 East 45th Street
    New York, N.Y. 10017
    On Behalf of Plaintiffs Joan Cohen, Jean Osburn, Paula
    Slicker and Jean Simmonds.

    DECHERT LLP
    By: Frances S. Cohen, Esq., and
        Jeffrey Edwards, Esq.
    200 Clarendon Street
    27th Floor
    Boston, Massachusetts 02116-5021
    On Behalf of Corporate Defendants; Advisor Defendants;
    Fleet Boston Financial Corporation; Columbia Management
    Group; Columbia Management Advisors; Columbia Wanger
    Asset Management; and Columbia Funds Distributor.

    PEABODY & ARNOLD LLP
    By: Timothy O. Egan, Esq.
    30 Rowes Wharf
    Boston, Massachusetts 02110
    - and -
    BELL, BOYD & LLOYD LLC
    By: Kenneth E. Rechtoris, Esq.
    70 West Madison Street
    Suite 3100
    Chicago, Illinois 60602-4207
    On Behalf of the Independent Trustees of Columbia Acorn
    Trust and Columbia Funds Trust.
```

## Page 3

```
APPEARANCES: (Cont'd)

    ROPES & GRAY LLP
    By: Giselle J. Joffre, Esq.
    One International Place
    Boston, Massachusetts 02110
    On Behalf of the Columbia Funds.

    BY TELEPHONE: Jenny Kim, Esq.
    On Behalf of the Defendant Charles McQuade.
```

## Page 4

P R O C E E D I N G S

11:08:59  THE CLERK: This court is now in session. This is
11:09:01  Civil Case No. 04-11704-REK, In Re Columbia Entities
11:09:09  Litigation. Would the parties please rise and state your name
11:09:11  for the record.
11:09:16  MS. COHEN: Good morning, your Honor. Frances Cohen
11:09:17  and Jeff Edwards, from the law firm Dechert, for the Corporate
11:09:21  defendants, the Advisor defendants, Fleet Boston Financial
11:09:24  Corporation, Columbia Management Group, Columbia Management
11:09:28  Advisors, Columbia Wanger Asset Management and Columbia Funds
11:09:34  Distributor.
11:09:36  THE COURT: Thank you.
11:09:37  MR. RECHTORIS: Good morning, your Honor. Kevin
11:09:37  Rechtoris, R-E-C-H-T-O-R-I-S, of Bell, Boyd & Lloyd. I'm
11:09:43  counsel for the Independent Trustees of Columbia Acorn Trust
11:09:48  and Columbia Funds Trust.
11:09:50  MR. EGAN: Good morning, your Honor. Tim Egan,
11:09:51  Peabody & Arnold, local counsel for the same defendants.
11:09:56  MS. GANS: Nancy Freeman Gans, Moulton & Gans, for
11:09:59  the Plaintiffs Joan Cohen, Jean Osburn, Paula Slicker and Jean
11:10:07  Simmonds. I'm local counsel.
11:10:07  MS. POLLACK: Good morning, your Honor. Janine
11:10:09  Pollack from Milberg Weiss, also for those same plaintiffs.
11:10:14  MR. DYER: Bradley Dyer from Stull, Stull & Brody,
11:10:17  also on behalf of the plaintiffs.

**Page 5**

11:10:17  1    MS. JOFFRE: Good morning, your Honor. Giselle
11:10:22  2  Joffre from Ropes & Gray, representing the Columbia Funds.
11:10:27  3    THE COURT: Thank you. Now, we have one attorney on
11:10:29  4  the phone. Have you been able to hear the statement of the
11:10:34  5  appearances by those who are in the courtroom?
11:10:37  6    MS. KIM: Yes, your Honor, I have. I'm Jenny Kim on
11:10:40  7  behalf the individual defendant Charles McQuade. We're also
11:10:45  8  in the process of filing our appearance so we're not on file
11:10:48  9  yet. But we should get that within the next couple of days.
11:10:51 10  We're substituting in.
11:10:53 11    THE COURT: I've approved participation in this
11:10:56 12  conference with the understanding that the --
11:11:03 13    MS. KIM: We'll get our appearances on file.
11:11:06 14    THE COURT: Yes, the appearances in and clerk's
11:11:08 15  notification, receipt of approval of funds where that's
11:11:13 16  applicable --
11:11:15 17    MS. KIM: Okay.
11:11:16 18    THE COURT: -- will be filed --
11:11:17 19    MS. KIM: Thank you, your Honor.
11:11:20 20    THE COURT: -- forthwith.
11:11:22 21    All right. Now, I have a joint motion for extension
11:11:35 22  of time, Docket No. 11; and motion for leave to file a reply,
11:11:46 23  Docket No. 22. As I understand it, those motions are not
11:11:50 24  opposed. If anyone wishes to oppose, I'll hear you now.
11:11:56 25  Otherwise, those two are allowed.

**Page 6**

11:12:04  1    Now, Docket No. 6, the motion for appointment of
11:12:11  2  counsel, is opposed. And there are conflicting contentions in
11:12:23  3  the filings before me. And one issue as to which there is a
11:12:31  4  conflict is whether PSLRA applies to this case and makes it
11:12:46  5  necessary not to act on motions about appointment of counsel
11:12:54  6  today because of the provisions in the PSLRA that, "When a
11:13:05  7  case such as this is consolidated, a court should seek, as
11:13:12  8  soon as practicable after a motion is consolidated as ready,
11:13:16  9  to designate a lead plaintiff."
11:13:20 10    Now, is there either now filed or expected to be
11:13:28 11  filed a motion for a consolidation?
11:13:33 12    MS. POLLACK: Your Honor, I believe that that was
11:13:34 13  granted by the Court. I believe the cases are actually now
11:13:41 14  consolidated. Let's see if I can get the date of this order.
11:13:50 15  I believe it's March 2nd, is the date of the Court's order
11:13:59 16  which consolidated the cases.
11:14:01 17    THE COURT: Motion to consolidate was filed on
11:14:03 18  9/10/04.
11:14:07 19    MS. POLLACK: I have in front of me the order dated
11:14:09 20  March 2, 2005, in which the Court ordered that the
11:14:13 21  consolidation motion was granted.
11:14:33 22    THE COURT: All right. That is Docket No. 20, that
11:14:38 23  order is.
11:14:52 24    Now, do I have a contention before me that the
11:14:59 25  designation of lead counsel -- designation of lead plaintiff

**Page 7**

11:15:16  1  is necessary before we proceed to resolve some of the issues
11:15:22  2  that are presented in the motions before me today in which
11:15:25  3  you're asking the Court to do things without a choice by the
11:15:29  4  lead plaintiff?
11:15:35  5    MR. RECHTORIS: As I understand it, your Honor, the
11:15:37  6  -- yes. We would be addressing the -- our opposition to their
11:15:41  7  appointment as lead plaintiff's counsel which would affect, I
11:15:45  8  would think, if our opposition was upheld by the Court, you
11:15:49  9  know, who would be doing what going forward.
11:15:52 10    THE COURT: All right. I'll hear you on that. State
11:15:56 11  the basis for your contention. Is it in the statute?
11:16:01 12    MR. RECHTORIS: Do you want me standing or sitting,
11:16:03 13  by the way?
11:16:05 14    THE COURT: You may remain seated. I think it will
11:16:08 15  be easier for counsel who is on the phone to hear everything
11:16:12 16  if you remain seated and stay close to the microphone which is
11:16:15 17  before you on the tables.
11:16:17 18    MR. RECHTORIS: I will do my best. If you cannot
11:16:19 19  hear me, your Honor, please let me know.
11:16:21 20    THE COURT: All right. Are you able to hear now on
11:16:23 21  the phone?
11:16:24 22    MS. KIM: Yes, I am. Thank you, your Honor.
11:16:26 23    THE COURT: Thank you.
11:16:27 24    MR. RECHTORIS: Our opposition to the plaintiffs'
11:16:29 25  motion for appointment of lead plaintiff's counsel principally

**Page 8**

11:16:34  1  focuses on the conflict issue. Your Honor mentioned the PSLRA
11:16:42  2  ground which was raised in our motion, and that is basically
11:16:48  3  saying that, because the plaintiffs, in Paragraph 50 of their
11:16:54  4  complaints -- and there's four of them -- are alleging
11:16:57  5  violations of the Exchange Act, specifically Section 28(e) of
11:17:03  6  the 1934 Act, that PSLRA provisions should govern.
11:17:08  7    As your Honor knows, the PSLRA, in Section 77(z), is
11:17:13  8  a very comprehensive set of guidelines which would require the
11:17:19  9  Court to be actively involved in naming lead plaintiff. And
11:17:25 10  it provides a standard which essentially comes down to who had
11:17:30 11  had the largest financial stake.
11:17:33 12    No such certification has been submitted here.
11:17:36 13  Moreover, there's been no filing of a motion to appoint lead
11:17:39 14  plaintiff in the case. All we have is to appoint lead
11:17:42 15  plaintiff's counsel.
11:17:44 16    So the plaintiffs' response to that is that the
11:17:47 17  actual claims in the complaint do not have a 33 Act or an
11:17:54 18  Exchange Act cause of action but, rather, are under the ICA,
11:17:59 19  the Investment Company Act, of 1940.
11:18:02 20    And the answer to that is that the cases that apply
11:18:06 21  the PSLRA apply it broadly to class actions that involve
11:18:12 22  disputes concerning securities, securities class actions.
11:18:15 23  This is a class action that they have invoked Section 28(e) of
11:18:21 24  the Exchange Act, in Section 12(b)(1), which is at the heart
11:18:26 25  of this case, regarding marketing fees.

**9**

11:18:30  1    So if your Honor determines that the PSLRA provisions
11:18:35  2    should govern, then I think we're kind of out of step. We
11:18:39  3    need a motion for appointment of lead plaintiff, not lead
11:18:42  4    plaintiff's counsel. They have someone with the largest
11:18:45  5    financial stake. Your Honor becomes proactive in the process
11:18:49  6    of determining whether that's the appropriate plaintiff. And
11:18:52  7    then that plaintiff -- it's at that point, once the lead
11:18:57  8    plaintiff is appointed, chooses its counsel.
11:19:00  9         The second ground -- and I think this is important to
11:19:05 10    discuss because this is the conflict ground and is -- Judge
11:19:11 11    O'Toole of this circuit recently ruled in the Forsythe case,
11:19:16 12    which I sent a copy to your Honor. That case came down in
11:19:20 13    January of 2005 by Judge O'Toole, same law firms on the
11:19:24 14    plaintiffs' side, same type of case, excessive fee
11:19:28 15    allegations, same motion that's before you, appointment of
11:19:32 16    lead plaintiff.
11:19:33 17         There was an opposition within the plaintiffs' side
11:19:35 18    of the case and the same arguments -- I'm going to go through
11:19:38 19    them in a second. But the same arguments that were raised by
11:19:41 20    plaintiffs here were raised there as to why there wasn't a
11:19:44 21    conflict, and they were rejected by Judge O'Toole. It's
11:19:48 22    rarely -- rare instance when you have a case in the same
11:19:52 23    courtroom -- granted, this is not an appellate case. It's
11:19:57 24    instructive as a district court case -- but same players
11:20:01 25    involved, same type of complaint, same issues. I see no

**10**

11:20:04  1    reason to vary from that.
11:20:05  2         The conflict -- there's really two. But the
11:20:08  3    principal conflict, your Honor, is the contemporaneous
11:20:12  4    representation of mutual funds in this case, these four cases,
11:20:17  5    which are consolidated, derivatively, while at the same time,
11:20:23  6    contemporaneously, these law firms are suing the mutual fund
11:20:29  7    registrants in the MDL Market-Timing action that's pending
11:20:33  8    before Judge Motz and three other justices in district court
11:20:38  9    in Baltimore.
11:20:42 10         I got plaintiffs' reply last night. There's a point
11:20:46 11    raised in there that -- I just want to digress for a short
11:20:49 12    period here to explain the Columbia Mutual Fund family. The
11:20:55 13    Columbia Mutual Fund family is made up of registered
11:20:58 14    investment companies, registered under the Investment Company
11:21:04 15    Act of 1990, which we call the ICA.
11:21:07 16         For the Columbia family at least -- this may not be
11:21:10 17    true for others. But for Columbia, there's two types of
11:21:13 18    registered investment companies. There's a business trust.
11:21:16 19    An example of that would be Columbia Acorn Trust, which issues
11:21:20 20    the Acorn Funds, which are two of the funds that are owned by
11:21:23 21    the plaintiffs in this case. They own the Acorn Fund and
11:21:26 22    Acorn Select. The registered investment company is Columbia
11:21:31 23    Acorn Trust. The series are the funds.
11:21:34 24         The other type of registered investment company is an
11:21:37 25    incorporated fund. An example of that under Oregon law --

**11**

11:21:44  1    they're incorporated under Oregon law. The three relevant
11:21:48  2    ones for this case, because they are plaintiffs in this case
11:21:50  3    for which counsel seeks to act derivatively, are Columbia Mid
11:21:50  4    Cap Growth Fund, Inc., Columbia International Stock Fund,
11:21:59  5    Inc., and Columbia High Yield Fund, Inc.
11:22:02  6         If you take one of those -- let's say Columbia Mid
11:22:05  7    Cap Growth Fund, Inc. -- that is the registered investment
11:22:08  8    company. It issues stocks in the fund, the Mid Cap Growth
11:22:13  9    Fund. But -- and Judge O'Toole went through this analysis in
11:22:17 10    this complaint -- the assets are the same. The assets of the
11:22:21 11    trust or the assets of the incorporated mutual fund, which is
11:22:24 12    the registered investment company, are the funds. They are
11:22:28 13    the same.
11:22:28 14         And I saw last night at the hotel, when I read
11:22:32 15    plaintiffs' response, that they are trying to draw a dichotomy
11:22:36 16    between the trusts, or the registered investment companies,
11:22:40 17    which is either the trust or the incorporated fund, which they
11:22:44 18    are suing in a class action case in the MDL, and the funds
11:22:49 19    which are issued by the registered investment companies, which
11:22:54 20    they seek to represent derivatively in this case.
11:22:56 21         And Judge O'Toole rejected that just months ago when
11:23:00 22    he said, "The law firm's argument that the real defendants in
11:23:04 23    the Market-Timing" --
11:23:06 24         THE COURT: Where are you reading from now?
11:23:07 25         MR. RECHTORIS: I'm sorry. This is Judge O'Toole's

**12**

11:23:09  1    decision, which I --
11:23:11  2         THE COURT: Yes, I have it before me.
11:23:12  3         MR. RECHTORIS: Okay. I'm reading on Page 2,
11:23:15  4    Footnote 2. It's on the bottom of the right side of the page.
11:23:22  5         THE COURT: I guess we have differences.
11:23:25  6         MR. RECHTORIS: I have the Westlaw.
11:23:28  7         THE COURT: All right. Yes, I see it. All right.
11:23:30  8         MR. RECHTORIS: It starts, "The law firm's argument."
11:23:32  9         THE COURT: Yes.
11:23:33 10         MR. RECHTORIS: Okay. "The law firm's argument that
11:23:35 11    the real defendants in the Market-Timing action are the trusts
11:23:39 12    which hold the MFS funds, and not the funds themselves, misses
11:23:44 13    the mark. And at least in the case of the Massachusetts
11:23:48 14    Investor Growth Stock Fund, the fund and the trusts are
11:23:51 15    essentially the same for practical purposes."
11:23:55 16         And it rejects the argument -- it goes on. It
11:23:57 17    rejects the argument, same argument that they've raised here,
11:24:00 18    that, no, there's no conflict because we're representing the
11:24:03 19    funds here and the trusts there. The reason I laid out the
11:24:07 20    three incorporated funds of Columbia -- Columbia Mid Cap
11:24:11 21    Growth, the International Stock and the High Yield -- those
11:24:14 22    are the registered investment companies which are exactly the
11:24:16 23    same as the Massachusetts Investors Growth Stock Fund that was
11:24:21 24    at issue before Judge O'Toole.
11:24:24 25         So if you take the MDL complaint -- there's so much

### Page 13

```
11:24:29  1   paper in this case. What I'd like to do, with your Honor's
11:24:31  2   indulgence, is hand you up a copy of the MDL complaint and
11:24:37  3   then show you -- compare that to our complaint and show you
11:24:43  4   the differences or the similarities in the parties if that's
11:24:46  5   okay.
11:24:47  6        THE COURT: You may.
11:25:09  7        MR. RECHTORIS: The MDL complaint starts with the
11:25:10  8   caption on Page 1 of the first Columbia Acorn Fund. Columbia
11:25:17  9   Acorn Fund is one of the funds that the -- one of the
11:25:20 10   plaintiffs in the case before your Honor and they would be
11:25:24 11   acting on derivatively.
11:25:27 12        If you go to Paragraph 25 on Page 10, Defendant
11:25:37 13   Colorado Acorn Trust is identified as the registrant and
11:25:41 14   issuer of, again, the Acorn Funds. In the case that's before
11:25:46 15   your Honor, they are seeking -- the plaintiff, the plaintiffs'
11:25:49 16   counsel -- are seeking to act derivatively on behalf of Acorn
11:25:55 17   Funds, and they're suing them here.
11:25:57 18        If you go to a couple more pages, to Paragraph 35,
11:26:02 19   which starts in the penult to the paragraph on Page 12, these
11:26:08 20   are the Oregon incorporated funds. These are the registered
11:26:13 21   investment companies. The only thing they do is issue those
11:26:17 22   funds, High Yield, International Stock.
11:26:19 23        And then it goes over to Paragraph 37, Mid Cap
11:26:21 24   Growth. Those are also funds -- here they're suing them.
11:26:25 25   They're suing these registered investment companies,
```

### Page 14

```
11:26:30  1   incorporated funds. In Paragraphs 35, 36 and 37, in the MDL
11:26:36  2   they're defendants, but in the lawsuit before your Honor, the
11:26:40  3   funds, which are the only assets issued by those companies,
11:26:44  4   are plaintiffs that they want to proceed derivatively on
11:26:48  5   behalf of. So you have a concurrent adverse representation.
11:26:53  6        Then if you look at Page 73, your Honor, which is at
11:26:57  7   the very -- close to the very back, this is a prayer for
11:27:06  8   relief. If I could focus you on (b), they are asking for
11:27:11  9   recovery against all the defendants, which includes the
11:27:14 10   registrants -- which are the trusts and the Oregon
11:27:18 11   corporations -- jointly and severally for all damages in the
11:27:23 12   Market-Timing case, which goes on for punitives, compensatory,
11:27:27 13   disgorgement fees. They're seeking those damages against the
11:27:30 14   registrants for whom they seek to represent their funds in
11:27:34 15   this case.
11:27:34 16        I noticed last night -- I think your Honor got it --
11:27:38 17   the plaintiffs filed a declaration of Clifford Goodstein.
11:27:45 18        THE COURT: What is that?
11:27:47 19        MR. RECHTORIS: I got it last night. It's the
11:27:49 20   plaintiffs' filing. It's the declaration of Clifford
11:27:52 21   Goodstein. I can hand it to your Honor if you'd like.
11:28:14 22        THE COURT: All right, yes. I have it.
11:28:16 23        MR. RECHTORIS: This was in connection with
11:28:17 24   plaintiffs' reply memo that we talked about earlier, that I
11:28:20 25   got last night, where they were trying to draw the
```

### Page 15

```
11:28:24  1   distinction, to get around this conflict, between funds and
11:28:26  2   registrants. And in Paragraph 4 of Mr. Goodstein's affidavit,
11:28:30  3   to try and further this distinction and establishes no
11:28:34  4   conflict, Mr. Goodstein says that the registrants, which are
11:28:37  5   the defendants in the MDL case that we're talking about, were
11:28:41  6   only sued so -- you know, for the purpose of seeking a limited
11:28:46  7   recovery, a recovery limited to certain assets that are apart
11:28:50  8   from the funds. Sued in the MDL only for that purpose.
11:28:58  9        Well -- and that's why I bring this up now. You have
11:29:00 10   the MDL prayer for relief next to you. It does not, in any
11:29:05 11   way, shape or form, limit the recovery sought against the
11:29:08 12   registrants in any way. It seeks broad recovery. It does not
11:29:13 13   say to the extent that the trusts have any assets apart from
11:29:18 14   the mutual -- the fund assets, which they don't, in any event.
11:29:22 15   But it doesn't say, to the extent they do, that's all we'll
11:29:26 16   seek to recover. What was filed in September of last year was
11:29:29 17   a complaint against the registered investment companies which
11:29:33 18   sought everything.
11:29:36 19        So this affidavit is, at best, misleading. If what
11:29:41 20   they're saying is that they really won't recover anything more
11:29:44 21   or seek to recover anything more, I don't know how I could
11:29:48 22   hold them to that. But I wanted to point out to your Honor
11:29:50 23   that there is no limitation on the damages that are sought
11:29:53 24   from the mutual fund registrants in the MDL case, the same
11:29:57 25   people that they seek to represent derivatively in this case.
```

### Page 16

```
11:30:02  1        The Forsythe case, again, because I think it's so
11:30:09  2   instructive, rejects the arguments that have been made here.
11:30:12  3   I've read the reply memo that was filed by plaintiffs, the
11:30:16  4   same plaintiffs here, in the Forsythe case, and they raised
11:30:19  5   the same types of arguments. It reads somewhat the same.
11:30:23  6   Those arguments were rejected by Judge O'Toole.
11:30:27  7        I was a little bit taken aback when I read the
11:30:30  8   response because the plaintiffs' reply had some high-charged
11:30:35  9   rhetoric that I was fabricating this conflict and that it was
11:30:38 10   untrue. It's not fabricated. It's the same conflict that was
11:30:42 11   raised in the same suit, against the same lawyers down the
11:30:45 12   hall, before Judge O'Toole, in which Judge O'Toole granted and
11:30:51 13   held that there was a conflict.
11:30:54 14        That case, the Forsythe case, which I sent to your
11:31:00 15   Honor after it was decided in January, which is on point in
11:31:04 16   this area, was never discussed by plaintiffs in the reply.
11:31:08 17   And I find that interesting.
11:31:13 18        Your Honor's familiar with the law, Rule 1.7 and the
11:31:18 19   disciplinary rules. You cannot represent Client A in one case
11:31:24 20   and concurrently represent Client B in another. Concurrently,
11:31:29 21   you can't sue them in one case and defend them in another.
11:31:33 22   You can't be adverse to the same client. It doesn't come down
11:31:36 23   to whether the subject matters are related. It doesn't
11:31:39 24   matter. It doesn't come down to whether there's prejudice.
11:31:42 25   You just can't do it.
```

**17**

11:31:44  1  The second conflict, which is kind of a subset of
11:31:47  2  that, is the inherent conflict of filing one complaint which
11:31:52  3  is a hybrid. That's what we have here. We have a complaint
11:31:56  4  which has class claims and derivative claims within it. You
11:32:00  5  rarely see that. We don't see it, for example, in the MDL
11:32:03  6  derivative case or the MDL Market-Timing case. There you have
11:32:10  7  a class -- a class action complaint that has a separate
11:32:13  8  counsel and a derivative complaint that has a separate
11:32:16  9  counsel. There's a reason it was done that way in the MDL
11:32:21 10  Market-Timing. Here we have one complaint, class and
11:32:22 11  derivative.
11:32:23 12      We've given you these cases. We're not going to go
11:32:26 13  through them again. There is an inherent conflict. It's not
11:32:29 14  theoretical musing, as plaintiffs say in the reply memo. It
11:32:34 15  happens to be a case from District Court of Massachusetts, in
11:32:36 16  1993, Crawford vs. McGee, which says there's an inherent
11:32:42 17  conflict when you file one complaint that seeks class and
11:32:45 18  derivative relief because the class action, by definition,
11:32:48 19  will reduce the recovery that can be available for derivative
11:32:52 20  plans.
11:32:52 21      Why do you care? Because the class in this case is
11:32:55 22  over a four-year period. Someone who owned stock in 1999 when
11:32:59 23  this class period begins could have sold that stock -- sold
11:33:04 24  that stock in the year 2000. Their recovery is not identical
11:33:07 25  to the derivative recovery which is seeking presently to

**18**

11:33:11  1  recover money for the company. There's different interests at
11:33:14  2  work, and one recovery serves a reduction for the other. So
11:33:20  3  it puts the plaintiffs' counsel in an inherent conflict to do
11:33:25  4  it that way. That is the argument, your Honor.
11:33:28  5      THE COURT: All right. Opposition.
11:33:31  6      MS. POLLACK: Yes, your Honor. Let me start off by
11:33:34  7  just addressing the PSLRA argument. This is not a case under
11:33:41  8  the PSLRA, and its provisions do not apply here.
11:33:45  9      THE COURT: Why not?
11:33:46 10      MS. POLLACK: Because there are no 33 Act claims;
11:33:48 11  there are 34 Act claims. The only provision that defense can
11:33:53 12  find to try and invoke is the Exchange Act, which is Section
11:33:58 13  28(e). They mention that. 28(e) is not the claim. 28(e) is
11:34:01 14  something that defendants can raise to say that they actually
11:34:05 15  didn't do the things we say that they did. It's actually not
11:34:10 16  a claim. It's more in the nature of an affirmative defense.
11:34:14 17      There is no claim under Section 28(e). It just
11:34:16 18  doesn't exist. So the only provision they point to that could
11:34:21 19  possibly invoke the PSLRA is not even a claim. It really
11:34:28 20  depends on the claims you bring, not on the defenses you
11:34:31 21  raise. So it's not a PSLRA case.
11:34:35 22      Even though it wasn't addressed in a case in this
11:34:37 23  district, this very issue came up in a case in New Jersey, in
11:34:41 24  the District of New Jersey, in the same exact -- with the same
11:34:45 25  exact claims. And the judge there held that it was not a

**19**

11:34:49  1  PSLRA case. There are no claims under the PSLRA and,
11:34:54  2  therefore, its provisions cannot possibly be invoked.
11:34:58  3      Now, I know the defense says that it's applied
11:35:00  4  broadly, but it really goes by the statute. And the statute
11:35:03  5  says it applies to 33 and 34 Act claims, and we don't have
11:35:07  6  those here. So it doesn't apply.
11:35:10  7      So the bottom line of that all is that the
11:35:13  8  lead-plaintiff provisions don't apply. So there was no need
11:35:16  9  to do a lead-plaintiff procedure in this case, which is why we
11:35:20 10  did not do that. So I think that's pretty clear-cut. I don't
11:35:25 11  think that they are putting that forward as their primary
11:35:30 12  argument mainly because it's pretty clear that it doesn't
11:35:34 13  apply.
11:35:36 14      I'm going to move on to the conflict issue because I
11:35:39 15  think that that's sort of the main argument here. I want to
11:35:44 16  just start by addressing Judge O'Toole's decision. Judge
11:35:47 17  O'Toole in no way held there was a conflict. He did not hold
11:35:52 18  that. He said that it was possible that under certain factual
11:35:59 19  circumstances that there -- that it could be seen as a
11:36:02 20  conflict.
11:36:03 21      And what the judge said is, I'm going to allow you to
11:36:06 22  file an amended complaint, and I'm going to allow you to renew
11:36:10 23  your motion for lead counsel and address my concerns. He did
11:36:15 24  not hold there was a conflict.
11:36:19 25      Actually, your Honor, because I'm also counsel in

**20**

11:36:21  1  that case, as defense pointed out, we are going to be filing a
11:36:25  2  bunch of papers in that case probably tomorrow, and we are
11:36:29  3  going to address any of the judge's issues. And, in fact, one
11:36:33  4  of the things that I've done here by submitting the affidavit
11:36:35  5  of Cliff Goodstein is exactly what I'm going to do before
11:36:39  6  Judge O'Toole, which, I believe, will address his concerns.
11:36:43  7  When we --
11:36:44  8      THE COURT: Now, let me understand what you mean
11:36:46  9  there. Ordinarily, a complaint cannot be amended by an
11:36:48 10  affidavit that says we're not going to claim everything we
11:37:01 11  claimed in the complaint. You don't amend pleadings that way.
11:37:07 12  And aren't you, in effect, arguing, and will be arguing, to
11:37:13 13  Judge O'Toole that you can amend the complaint by filing an
11:37:16 14  affidavit?
11:37:17 15      MS. POLLACK: No, your Honor. The complaint is --
11:37:20 16  the affidavit relates to the Market-Timing cases, so it
11:37:25 17  doesn't really relate to the cases here. What it does is it
11:37:29 18  explains that in the Market-Timing cases nobody is going after
11:37:33 19  fund assets. Nobody -- in other words, nobody is suing the
11:37:37 20  funds. The nomenclature, the fact that the trust happens to
11:37:43 21  have the same name as the fund, is in certain circumstances
11:37:47 22  confusing, but it doesn't change the fact --
11:37:51 23      THE COURT: I don't find it confusing.
11:37:53 24      MS. POLLACK: Well, it's confusing for purposes of
11:37:55 25  this argument. But the fact of the matter is that --

**21**

11:37:59  1    THE COURT: Is it or is it not true that the same
11:38:04  2  assets are involved, and that if anything happens to any part
11:38:09  3  of those assets in one proceeding, that would mean that much
11:38:14  4  less available in the other proceeding?
11:38:18  5    MS. POLLACK: Your Honor, we are not -- in the
11:38:20  6  Market-Timing cases, no fund assets will be sought or taken as
11:38:25  7  recovery. If it turns out that there are no other assets in
11:38:29  8  the trust other than fund assets, they will not be taken out
11:38:34  9  of there.
11:38:35 10    And the reason I say that with such comfort is
11:38:37 11  because, in the MDL proceeding, the judge there, Judge Motz,
11:38:43 12  questioned the filing of the original complaints which named
11:38:49 13  the funds. And he said that doesn't really make sense with
11:38:53 14  the theory of your cases because that would be like suing the
11:38:58 15  funds but, yet, trying to represent the funds. And that
11:39:02 16  didn't make any sense within the context of that case.
11:39:05 17    Counsel for the plaintiffs in the MDL agreed with
11:39:09 18  that and did not name the funds as defendants in the amended
11:39:13 19  complaints. And that was long before these cases. That was
11:39:18 20  done because the judge in the Market-Timing case said, you
11:39:22 21  probably don't want to name the funds there, is that right?
11:39:24 22  And we said, that's right.
11:39:27 23    So, actually, this is not making an artificial
11:39:32 24  distinction, and it's also not trying to amend the complaints,
11:39:36 25  because even though it doesn't actually say so in the

**22**

11:39:40  1  complaints, the judge there stated on the record his
11:39:43  2  understanding that we were not going to sue the funds.
11:39:46  3    So the court there understands what's going on there,
11:39:49  4  which is, the funds are not being sued and no money is being
11:39:52  5  sought from the funds. That's why I'm saying with such
11:39:54  6  comfort here --
11:39:56  7    THE COURT: I'm not satisfied with proceeding in that
11:40:00  8  way. I'm going to want the record to be clear instead of my
11:40:04  9  understanding of the record to be stated as something
11:40:08 10  different from what the record itself says. If, on the
11:40:11 11  record, a broader claim is being made, then that's the way I
11:40:16 12  expect to treat it. And so if you're going to have a
11:40:21 13  limitation of that claim, you've got to put it on the record
11:40:25 14  in that case instead of defending on some other way of placing
11:40:32 15  the limitation.
11:40:33 16    MS. POLLACK: Your Honor, the attachment to the
11:40:36 17  declaration of Clifford Goodstein, okay, it states a notice of
11:40:40 18  parties added and parties against whom all claims are dropped.
11:40:44 19  That's an exhibit to the declaration of Mr. Goodstein. And
11:40:48 20  that was filed in the MDL proceeding, and it states very
11:40:52 21  clearly the parties --
11:40:54 22    THE COURT: Wait a minute. This is an exhibit to a
11:40:57 23  declaration by an affiant, right?
11:41:02 24    MS. POLLACK: I'm sorry, your Honor?
11:41:04 25    THE COURT: It's an exhibit to what?

**23**

11:41:05  1    MS. POLLACK: This is an exhibit to the declaration
11:41:07  2  of Clifford Goodstein, who is counsel in the MDL proceedings.
11:41:11  3    THE COURT: That's what's troubling me. That's not
11:41:13  4  the complaint, and you don't amend the complaint by somebody's
11:41:15  5  declaration.
11:41:17  6    MS. POLLACK: I think maybe I'm not explaining myself
11:41:20  7  well.
11:41:21  8    THE COURT: No. You're explaining yourself very
11:41:22  9  clearly and I understand it. But you're trying to say, in
11:41:25 10  effect, that you can limit the complaint by a declaration, and
11:41:29 11  I'm saying not before me. I'm going to require the record to
11:41:34 12  be clearer than that.
11:41:35 13    MS. POLLACK: I agree, your Honor.
11:41:37 14    THE COURT: That leaves an ambiguity in the record.
11:41:39 15  That is a recipe for confusion and litigation up and down,
11:41:44 16  back and forth, between this court and higher courts, with
11:41:47 17  nobody gaining anything from it except the lawyers if they're
11:41:51 18  going to get adequately paid for their time.
11:41:54 19    MS. POLLACK: Can I just make one --
11:41:56 20    THE COURT: I don't like that.
11:41:57 21    MS. POLLACK: I think I maybe might have not stated
11:42:00 22  it clearly. We filed yesterday the declaration of Clifford
11:42:05 23  Goodstein. Mr. Goodstein is lead counsel in the Market-Timing
11:42:11 24  cases. In those cases there was a notice filed, and that's
11:42:18 25  what I attached to his declaration. It's not something filed

**24**

11:42:21  1  in this case. It's something filed in the record in the
11:42:25  2  Market-Timing cases. And it makes it very clear. It lists
11:42:29  3  parties against whom all claims are dropped. And it states
11:42:33  4  that all of the funds were dropped.
11:42:35  5    So it's not -- I'm trying to explain to the Court
11:42:38  6  that it's not unclear on that record.
11:42:41  7    THE COURT: You've explained it, but you have not
11:42:42  8  satisfied my concern about the lack of clarity of the record
11:42:45  9  in this case.
11:42:46 10    MS. POLLACK: Well, your Honor, that's precisely why
11:42:48 11  we submitted the declaration of Mr. Goodstein, because that
11:42:52 12  makes the record clear in this case --
11:42:54 13    THE COURT: No, it doesn't.
11:42:55 14    MS. POLLACK: -- that the record is clear in that
11:42:56 15  case.
11:42:57 16    THE COURT: Nope. I'm not satisfied to that.
11:42:59 17    MS. POLLACK: Well, the problem is, your Honor, what
11:43:02 18  defense stated is that the complaint seems to be broader than
11:43:07 19  what we're saying now and what defense -- and what counsel is
11:43:11 20  saying in that case now. But this document that I'm holding
11:43:15 21  was filed in order to explain that -- it was filed in the MDL
11:43:19 22  case in order to explain that very issue. And it does explain
11:43:23 23  that very issue.
11:43:24 24    So I'm pointing you to something that was filed in
11:43:26 25  the MDL litigation correcting anything that they say is not

**Page 25**

11:43:30  1  clear on the complaints. That's what happened here.
11:43:33  2       THE COURT: That won't work, not here.
11:43:41  3       MS. POLLACK: Your Honor, we are more than happy to
11:43:45  4  submit additional documentation for anything that your Honor
11:43:48  5  feels is not clear.
11:43:52  6       THE COURT: You don't amend a complaint by additional
11:43:55  7  documentation. You amend a complaint by amending the
11:44:00  8  complaint.
11:44:01  9       MS. POLLACK: Your Honor, the judge in that case did
11:44:03 10  not feel that was necessary. Instead --
11:44:05 11       THE COURT: Well, it may not -- they may feel that
11:44:08 12  it's not necessary, but that doesn't satisfy me.
11:44:11 13       MS. POLLACK: Instead, he asked them to file what was
11:44:13 14  called Notice of Parties Added and Parties Against Whom All
11:44:16 15  Claims Are Dropped. And it says, "Pursuant to the letter of
11:44:20 16  the Honorable Frederick J. /PHOTS," dated September 24th. So
11:44:24 17  that Court is satisfied that the funds are not named as
11:44:31 18  defendants.
11:44:32 19       THE COURT: That Court may be but I am not.
11:44:34 20       MS. POLLACK: We would be more than happy to file
11:44:36 21  additional documentation.
11:44:37 22       THE COURT: That won't do it. Additional
11:44:39 23  documentation doesn't amend the complaint. Why is it you're
11:44:42 24  resisting amending the complaint? Why is it you're resisting
11:44:46 25  that?

**Page 26**

11:44:47  1       MS. POLLACK: Well, that's in another case, your
11:44:49  2  Honor.
11:44:53  3       THE COURT: Why is it you're resisting amending the
11:44:55  4  complaint in this case --
11:44:57  5       MS. POLLACK: We are not.
11:44:57  6       THE COURT: -- to make the claim in this case?
11:44:59  7       MS. POLLACK: We are not resisting that, your Honor.
11:45:01  8  We actually want to file --
11:45:02  9       THE COURT: Why don't you do it?
11:45:03 10       MS. POLLACK: We want to file an amended complaint
11:45:05 11  and we plan to.
11:45:06 12       THE COURT: Do it, and I'll hear arguments with
11:45:10 13  respect to whether that solves the problem before I decide
11:45:13 14  whether it does. I will not decide that question
11:45:17 15  hypothetically. I'll wait to see the documents.
11:45:22 16       MS. POLLACK: So I just want to make sure I
11:45:24 17  understand the Court's direction. Are we --
11:45:27 18       THE COURT: I am not giving you any directions. You
11:45:30 19  may handle your lawsuit the way you think it appropriate. But
11:45:34 20  I will decide whether the way you're handling it accomplishes
11:45:41 21  the objective that you're asking me to hold that it
11:45:48 22  accomplishes. Of course, I'll decide subject to a decision by
11:45:53 23  a higher court.
11:45:54 24       MS. POLLACK: Your Honor, we fully intend to file an
11:45:56 25  amended complaint in this case. The Court has now

**Page 27**

11:45:59  1  consolidated all four of the cases, so we would like to file a
11:46:03  2  consolidated amended complaint. That is actually part of what
11:46:07  3  we would like to do.
11:46:08  4       MR. RECHTORIS: Your Honor, may I address that? I'm
11:46:11  5  sorry.
11:46:14  6       THE COURT: Yes, you may.
11:46:14  7       MR. RECHTORIS: I think a point of clarification. As
11:46:17  8  I understand the use of the Clifford Goodstein affidavit that
11:46:22  9  plaintiffs have filed, it was to demonstrate that in the MDL
11:46:29 10  complaint, not the complaint that's before the Court here,
11:46:33 11  that plaintiffs were somehow restricting the amount of damages
11:46:39 12  that were going to be recovered against the registrants. And
11:46:44 13  the reason that they say that, although the MDL complaint
11:46:49 14  doesn't say that, is to get around a conflict with Milberg
11:46:55 15  Weiss also representing the plaintiffs in this case. What
11:46:57 16  they're saying through the Goodstein affidavit is, we're not
11:47:00 17  going to try and recover in the MDL any of the funds' assets,
11:47:04 18  so we should be able to represent the funds in the cases
11:47:07 19  before your Honor.
11:47:10 20       Now, you're right. The application of the principle
11:47:14 21  that an affidavit cannot amend the complaint applies to the
11:47:20 22  MDL complaint. They cannot, by filing an affidavit, say,
11:47:26 23  change the prayer for relief in the MDL complaint which seeks
11:47:30 24  the kitchen sink against the registrants and the funds. I
11:47:36 25  think that's the point your Honor was making.

**Page 28**

11:47:39  1       So where does that leave you? That leaves you --
11:47:41  2  regardless of whether they're going to file anything further
11:47:43  3  in this case because we're going to be at the same spot, it
11:47:48  4  leaves you with a conflict because they are suing the
11:47:52  5  registrants and the funds in the MDL case and seeking
11:47:58  6  punitive, compensatory and disgorgement. And they're seeking
11:48:01  7  to represent the funds in this case. And that is an absolute
11:48:08  8  conflict. Filing an amended complaint in this case is going
11:48:13  9  to change nothing because they're still going to represent the
11:48:16 10  funds.
11:48:17 11       And the last point, I am involved in the -- as
11:48:20 12  counsel is -- in the MDL Market-Timing litigation. What we
11:48:24 13  expected to see when they filed an amended complaint was not
11:48:28 14  just the dismissal of the funds. It was a dismissal of the
11:48:32 15  registrants, the incorporated funds and the trust. That's not
11:48:37 16  what happened. Instead, all they did was get rid of the
11:48:42 17  funds. That doesn't do us any good. We, the defendants, are
11:48:46 18  in the same place because the trust assets are the funds. So
11:48:50 19  they have given up nothing.
11:48:52 20       In that exhibit to the Goldstein affidavit -- if I've
11:48:55 21  got that name right -- that exhibit says nothing other than
11:48:57 22  they dropped the funds. They didn't drop the registrants,
11:49:01 23  which causes a conflict in this case. And that affidavit and
11:49:05 24  that exhibit to that affidavit say nothing about restricting
11:49:09 25  recovery in the MDL case. And I assure you, Judge Motz has no

### 29

```
11:49:14  1  understanding one way or the other as to what plaintiffs are
11:49:18  2  going to try and recover or their understanding as to what
11:49:21  3  they're going to recover against the trust outside the four
11:49:24  4  corners of that complaint. They may have dropped the funds.
11:49:27  5  They haven't dropped the trust. And they're seeking the
11:49:31  6  kitchen sink in recovery from them.
11:49:32  7       That's the state of the pleadings in the MDL, and
11:49:34  8  it's that state of the pleadings, which cannot be modified by
11:49:38  9  an affidavit, which causes an irreconcilable conflict of
11:49:43 10  interest with Milberg Weiss and the other attorneys going
11:49:47 11  forward in this case because they're seeking to represent
11:49:49 12  those people derivatively at the same time. No amendment in
11:49:54 13  this case is going to solve that.
11:49:56 14       MS. POLLACK: Your Honor, may I say something?
11:49:57 15       THE COURT: You may.
11:50:00 16       MS. POLLACK: Judge O'Toole actually instructed us to
11:50:06 17  file an amended complaint and to renew our motion for a lead
11:50:10 18  counsel and address any concerns that were raised. That's
11:50:14 19  what we are doing. We have filed an amended complaint, and
11:50:17 20  that's all we want to do here, your Honor, is to file the
11:50:20 21  amended complaint and then renew our motion for lead counsel,
11:50:25 22  if the Court has any concerns whatsoever, and we will address
11:50:28 23  them.
11:50:29 24       So even though defense is saying that we shouldn't be
11:50:32 25  able to file an amended complaint, that's exactly what Judge
```

### 30

```
11:50:36  1  O'Toole said to do, to file an amended complaint and then
11:50:40  2  renew our motion for lead counsel and address any of the
11:50:43  3  concerns that he raised.
11:50:45  4       THE COURT: Wait a minute. I didn't understand
11:50:47  5  defense counsel to be saying you couldn't seek leave to file
11:50:52  6  an amended complaint and, if the leave was granted, file it.
11:50:57  7  Is that what you're saying? You understand to be the --
11:51:00  8       MS. POLLACK: That's what I understood him to just be
11:51:02  9  saying.
11:51:03 10       THE COURT: I didn't understand that.
11:51:04 11       MR. RECHTORIS: On the present state of the pleadings
11:51:06 12  in the MDL and the pleadings here, I believe there is a
11:51:11 13  conflict which precludes them from representing the plaintiffs
11:51:15 14  in this complaint or an amended complaint. If they --
11:51:19 15       THE COURT: That's not saying you can't file an
11:51:22 16  amended complaint. It's saying that filing an amended
11:51:25 17  complaint, even if the Court allows it, will not solve the
11:51:28 18  problem of the conflict, correct?
11:51:30 19       MR. RECHTORIS: Right. They'd have to go back to the
11:51:33 20  MDL and do what everyone thought they were going to do in the
11:51:36 21  MDL, which is to dismiss the registrants.
11:51:39 22       THE COURT: When I consider whether there is a
11:51:42 23  conflict that makes it inappropriate for counsel to be making
11:51:48 24  contentions that are being made before me, while also making
11:51:53 25  contentions that are being made before some other court, I
```

### 31

```
11:51:56  1  look at it the whole situation, not -- and it doesn't solve
11:52:03  2  the problem for you to say, well, we want to file an amended
11:52:08  3  complaint in which we say we don't have a conflict. Well,
11:52:12  4  your saying you don't have a conflict doesn't solve the
11:52:15  5  problem. I still have to consider whether, in fact, you do,
11:52:18  6  in the real world, as distinguished from what you claim the
11:52:24  7  real world to be. I have to look at the contentions of both
11:52:29  8  parties about what the real situation is and make a decision
11:52:32  9  on that basis.
11:52:34 10       MS. POLLACK: I understand, your Honor. And the
11:52:35 11  reason that we submitted the declaration of Mr. Goodstein, who
11:52:39 12  was lead counsel in the Market-Timing case, was to explain to
11:52:45 13  the Court that it would not make sense with the theory of the
11:52:48 14  cases to sue the funds for investor assets. It would be like
11:52:53 15  taking money out of one pocket to put in the other. It just
11:52:57 16  wouldn't make any sense. And that is not what's going on
11:52:59 17  there. That's why we submitted this affidavit.
11:53:02 18       THE COURT: I understand why you submitted it.
11:53:04 19       MR. RECHTORIS: If that's not what's going on, they
11:53:06 20  should amend --
11:53:08 21       THE COURT: Why you submitted it, what you were
11:53:10 22  trying to accomplish, doesn't mean I think you should be
11:53:12 23  allowed to do that or that it accomplishes what you're trying
11:53:16 24  to accomplish.
11:53:17 25       MS. POLLACK: We would be more than happy, your
```

### 32

```
11:53:19  1  Honor, to submit additional documentation which would,
11:53:22  2  hopefully, allay the Court's concerns in any respect.
11:53:25  3       THE COURT: I said to you that additional
11:53:27  4  documentation will not allay my concerns while I have a record
11:53:34  5  before me in which there is a claim being made in this case,
11:53:38  6  while also claims are being made in another case, as to which
11:53:41  7  that puts counsel in a conflict of interest position. More
11:53:47  8  documentation is not going to solve that problem.
11:53:56  9       MS. POLLACK: I can only say, your Honor, that Judge
11:53:59 10  O'Toole gave us the ability to renew our motion for lead
11:54:01 11  counsel and address his concerns, and that's what we're asking
11:54:06 12  for here.
11:54:07 13       THE COURT: Well, I'm not precluding you from seeking
11:54:13 14  to file whatever motion you want to file, and I hear the
11:54:18 15  motion and the opposition. And whatever support either of you
11:54:22 16  can muster for your positions, I'll make a decision here. I
11:54:28 17  don't know whether my decision will involve exactly the same
11:54:32 18  problems that are involved in Judge O'Toole's case or not.
11:54:35 19  But, certainly, I will want to consider Judge O'Toole's
11:54:39 20  resolution of the matter because -- unless there is some
11:54:45 21  special reason that the cases are different, ordinarily, it's
11:54:50 22  desirable that two judges in the same court reach consistent
11:54:55 23  decisions. And after I consider what he has done, unless I
11:54:59 24  find some special reason to think it's not applicable in my
11:55:02 25  case, I very likely will follow his lead in deciding what
```

**33**

11:55:08  1  should be done in my case.
11:55:10  2           MS. POLLACK: Your Honor, in that regard, as I said,
11:55:13  3  Judge O'Toole gave us leave to renew our motion and to submit
11:55:18  4  additional materials to address his concerns.
11:55:21  5           Would it be acceptable to the Court if we put in
11:55:26  6  similar type materials that we're planning to put in to the
11:55:29  7  Court --
11:55:30  8           THE COURT: He has not told you, as I understand it,
11:55:33  9  that your attempt to address his concerns will succeed.
11:55:37 10           MS. POLLACK: No. That's true.
11:55:39 11           THE COURT: All right. Well, I tell you the same
11:55:40 12  thing. I'm not stopping you from filing a motion, and I'll
11:55:45 13  hear the opposition to it, and only then will I decide whether
11:55:49 14  what you're attempting succeeds.
11:55:57 15           I'm not even sure you need my leave to file the
11:56:01 16  motion. Filing a motion doesn't mean it will be granted. It
11:56:09 17  means it sets in operation a procedure for filings on both
11:56:18 18  sides and oral argument or whatever and then a decision. Now
11:56:33 19  --
11:56:33 20           MS. COHEN: Your Honor.
11:56:35 21           THE COURT: Yes.
11:56:35 22           MS. COHEN: On behalf of the Advisor defendants, Fran
11:56:39 23  Cohen. I just wanted to interject. I think Miss Pollack has
11:56:44 24  said she has some intention to file whatever she is filing in
11:56:48 25  front of Judge O'Toole in this courtroom, and I think from the

**34**

11:56:52  1  Advisor's perspective this is an extremely costly litigation,
11:56:56  2  as you can see from the array of lawyers. And if we could
11:56:59  3  have some kind of schedule around when this motion is going to
11:57:03  4  be heard, because we have not moved to dismiss the current
11:57:06  5  complaint pending the outcome of what is going on with the
11:57:09  6  lead plaintiff's motions.
11:57:11  7           It's a lawsuit that, obviously, the Advisor would
11:57:13  8  like to try to get closure on and feels is entitled to a
11:57:17  9  dismissal for reasons that we will present to this Court, but
11:57:21 10  this is a case management conference. And at the appropriate
11:57:24 11  time, I would like to present the -- some kind of schedule to
11:57:28 12  your Honor.
11:57:30 13           THE COURT: Well, do you want to present it now, or
11:57:30 14  --
11:59:26 15           MS. COHEN: I think, if Miss Pollack has a date when
11:59:30 16  she is filing the materials in front of Judge O'Toole, perhaps
11:59:34 17  then we could establish a briefing schedule and put that issue
11:59:36 18  to bed, and then we can address whether the lawsuit can be
11:59:40 19  disposed of and set a schedule for that.
11:59:44 20           THE COURT: You may respond.
11:59:46 21           MS. POLLACK: Your Honor, we would be more than happy
11:59:48 22  to set any schedule that defense would like. We're very
11:59:52 23  amenable to that.
11:59:52 24           THE COURT: Well, that's good right now.
11:59:56 25           MS. POLLACK: Again, we'd like to follow the

**35**

12:00:00  1  progression that we followed there, which is, we filed an
12:00:02  2  amended complaint, and then we were instructed to file a class
12:00:06  3  motion along with a renewed motion for lead counsel. And
12:00:08  4  that's what we would like to do here.
12:00:10  5           THE COURT: By what time?
12:00:14  6           MS. POLLACK: Well, we believe we could do the
12:00:18  7  amended complaint -- we probably could do it all at once, your
12:00:20  8  Honor, if that would make it easier, rather than doing it in a
12:00:24  9  staggered way. So we would be more than happy to do that. We
12:00:30 10  could do all of that within the course of a few weeks if that
12:00:36 11  would be acceptable.
12:00:36 12           THE COURT: Pick a date.
12:00:50 13           MS. POLLACK: I don't have a calendar in front of me,
12:00:52 14  your Honor. If today is April 7th, would mid-May be
12:00:56 15  acceptable?
12:00:58 16           THE COURT: Would what?
12:01:00 17           MS. POLLACK: Mid-May?
12:01:04 18           THE COURT: All right. The week in the middle of May
12:01:16 19  begins on Monday, May 16th. What date in that week would you
12:01:20 20  want to pick as a time?
12:01:22 21           MS. POLLACK: Would Wednesday, the 18th, be
12:01:24 22  acceptable?
12:01:24 23           THE COURT: All right, May 18th. How much time would
12:01:30 24  you like for responses?
12:01:34 25           MS. COHEN: I think the defendants had previously

**36**

12:01:36  1  agreed with the plaintiffs that 60 days would be a reasonable
12:01:40  2  time to respond. I think that would -- I'm old-fashioned
12:01:48  3  enough to regret pulling out electronics in court, but I have
12:01:56  4  my electronic calendar. I think that would take us to July
12:02:00  5  14th.
12:02:00  6           THE COURT: That's fine. July 14th is a Thursday.
12:02:12  7  Do you want a rebuttal filing?
12:02:18  8           MS. POLLACK: I just want to make sure I understand
12:02:18  9  what's going to be filed on July 14th from their side. Are we
12:02:22 10  talking about motions to dismiss?
12:02:26 11           MS. COHEN: Well, I think we, on our side, have a
12:02:28 12  similar lack of clarity about what is going to be filed. I
12:02:32 13  had referred to the 60 days as the period to file a motion to
12:02:36 14  dismiss because I believe that I had understood Miss Pollack
12:02:40 15  to be saying that she was going to be filing a consolidated
12:02:42 16  complaint and certain material addressing the lead counsel
12:02:46 17  issue on May 18th. If that's correct, then we would respond
12:02:50 18  with the motion to dismiss and an opposition regarding the
12:02:54 19  lead -- and the funds, I believe. We'd respond with an
12:02:58 20  opposition regarding the lead counsel issue.
12:03:00 21           MS. POLLACK: That's correct, your Honor. That's
12:03:02 22  exactly what I had envisioned. I just wanted to make sure I
12:03:06 23  understood. What we would want, then, is -- I think what we
12:03:12 24  had said was 45 days, then, for -- I think we had agreed on 45
12:03:16 25  days to oppose the motion to dismiss.

**37**

12:03:20  1      THE COURT: I think that's over a weekend. Why don't
12:03:24  2  we make it either 42 or 49.
12:03:28  3      MS. POLLACK: That's fine, your Honor.
12:03:30  4      THE COURT: All right. Seven weeks from July 14th, I
12:03:44  5  believe, brings us to September 1st, if I've correctly counted
12:03:50  6  weeks, which is a Thursday. All right.
12:04:06  7      Now, my suggestion, then, is that I set a conference
12:04:14  8  with you at which -- if oral argument is requested and I
12:04:24  9  conclude that it's appropriate to allow it instead of deciding
12:04:28 10  something on the papers that have been submitted, I would
12:04:38 11  suggest that we set the oral argument for -- that we set the
12:04:56 12  next case management conference, at which I might be hearing
12:05:00 13  oral argument, on September 21st, at 10:30. Any problem with
12:05:14 14  that for either side?
12:05:16 15     MS. COHEN: No, your Honor.
12:05:18 16     MS. POLLACK: That seems fine.
12:05:18 17     THE COURT: All right. All right. Now, is there
12:05:30 18  anything else that we can usefully do this morning?
12:05:36 19     MS. POLLACK: I don't think so, your Honor.
12:05:40 20     MS. COHEN: No. Your Honor, there is one
12:05:40 21  housekeeping matter on behalf of the Advisor, which is that
12:05:44 22  individual defendants, I do not believe, according to the
12:05:46 23  Advisor's records, have been served, and so I have not made
12:05:52 24  any response or any extension of time.
12:05:54 25     My understanding is the new complaint will be filed,

**38**

12:05:58  1  in any case, with possibly withdrawing the individual
12:06:02  2  defendants or possibly adding new ones. So my understanding
12:06:06  3  is that I will not do anything else on behalf of the
12:06:08  4  individual defendants.
12:06:10  5      THE COURT: That's appropriate. All right. All
12:06:14  6  right. Does counsel on the phone have any further request?
12:06:20  7      MS. KIM: No, I don't, your Honor. Thank you.
12:06:22  8      THE COURT: All right. Thank you. We'll be in
12:06:24  9  recess.
12:06:24 10  (Whereupon, at 12:04 p.m. the hearing concluded.)

**39**

CERTIFICATE

   I, Cheryl Dahlstrom, RPR, RMR, and Official Reporter
of the United States District Court, do hereby certify that
the foregoing transcript, from Page 1 to Page 38, constitutes,
to the best of my skill and ability, a true and accurate
transcription of my stenotype notes taken in the matter of
Civil Action No. 04-11704, Joan Cohen, et al vs. Columbia
Acorn Fund, et al.

*Cheryl Dahlstrom*
Cheryl Dahlstrom, RPR, RMR
Official Court Reporter