# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE COLUMBIA ENTITIES LITIGATION | ) )  ) | Civil Action No. 04-cv-11704-REK |
| This Document Relates To:<br>ALL CASES | ) ) ) | |

## DECLARATION OF GEOFFREY C. HAZARD, JR.

I, Geoffrey C. Hazard, Jr., under penalties of perjury, declare as follows:

1.     I have been engaged by counsel for Defendants for my opinion whether certain law firms would have an improper conflict of interest if appointed as counsel for Plaintiffs in this litigation. In my opinion there would be such a conflict.

2.     I am Trustee Professor of Law, University of Pennsylvania, Miller Professor of Law, University of California Hastings College of the Law, Director (executive director) Emeritus of the American Law Institute, and a member of the bars of Pennsylvania and California. I have studied, taught and practiced in the field of professional ethics for forty years. I have been accepted as a witness in matters of professional ethics in various courts throughout the country. A copy of my professional curriculum vitae is attached. I am being compensated on my usual basis.

3.     The principal issue is whether there is a conflict of interest on the part of counsel seeking  concurrently to represent (a) a class of shareholders in mutual funds issued by Defendants and in (b) a derivative action brought on behalf of those mutual funds, as explained below. A related issue is whether this obvious conflict can be avoided by an announcement by the designated representative in one of the suits that only limited relief will be sought in that litigation.

4.    In summary, concerning the principal issue, in my opinion counsel is involved in a conflict of interest in undertaking to represent both (a) a group of shareholders in a direct class suit against the fund entity of which they are shareholders, and (b) the fund entity in a derivative action against officials, trustees and advisers of the fund complex. Concerning the related issue, in my opinion, the conflict cannot be avoided by a limitation on the relief proposed by the class representative or his counsel.

5.    I have assumed the following facts based upon my review of the relevant pleadings and court filings on this issue:

(a)    In one action, styled *In re Mutual Funds Investment Litigation*, MDL Docket 1586 (the "Market Timing Litigation"), class plaintiffs contend defendants have improperly permitted some investors to gain advantage by "market timing" their trading in defendants' mutual funds, to the detriment of other investors. This practice, so it is alleged, results in benefit to the preferred traders but detriment to the other fund investors, whose share value is adversely affected by the special trading privileges.

(b)    The second lawsuit, styled *In re Columbia Entities Litigation*, No. 04-cv-11704-REK (the "Excessive Fees Litigation"), contains both direct and derivative claims alleging defendants participated in, or had knowledge of, the payment of "excessive" and "undisclosed" fees by the mutual funds to brokerages as "kickbacks" in exchange for the brokerages "steering their clients" into the funds.

(c)    Both the Market Timing Litigation and the Excessive Fees Litigation involve plaintiffs, who are aggrieved shareholders, with direct claims seeking money from defendants, including the funds, to compensate for their losses. In the Excessive Fees Litigation, there is also a derivative claim, brought by the funds as plaintiffs, against

officers, trustees and advisers of the funds, seeking money from those defendants to compensate the funds for the losses involved.

(d)    Milberg Weiss and other counsel have undertaken to represent the designated plaintiffs in both cases. The question has arisen whether there is conflict of interest on the part of counsel in doing so. In my opinion, there is a conflict of interest, such that the same firm should not undertake to represent plaintiffs in both proceedings, nor should counsel represent both class and derivative plaintiffs in the Excessive Fees Litigation.

6.    Under the rules of designation of parties, the law firm has an obvious conflict of interest. In connection with the class claims, the firm represents a party suing the fund, seeking recovery of compensatory damages to the members of the class of shareholders. In connection with the derivative claims, the same firm represents the fund itself in suing the officers, trustees and advisers of the fund. Representation of a client (the fund in the derivative proceeding) while also bringing suit against the same client (in the shareholders' class suit) is obviously improper. See Massachusetts Rules of Professional Conduct, Rule 1.7; American Bar Association Model Rules of Professional Conduct. Rule 1.7(a)(1).

7.    In my opinion the fact that the denomination of party may be a "fund" in the Excessive Fees Litigation and a "company" or "registrant" in the Market Timing Litigation is immaterial. Whether the investment vehicle is considered a trust or corporate entity (the form of the Registrant) or as a fund (effectively the assets of the Registrant) does not obscure the fact that the same investment and assets are involved.

8.    Moreover, the conflict of interest is real as well as formal.

(a)    In the class suit on behalf of the shareholders, the beneficiaries are those in

the designated class.  That class is a subset of shareholders defined in terms of an historical "class period" in the past during which the alleged wrongdoing occurred.  In contrast, in the derivative suit the benefit of recovery to the claimants will be the subject of shareholders who will own stock when (and if) final judgment or a settlement is achieved in that proceeding.

(b)      The membership in these two groups is not coextensive.  In all likelihood, the difference in membership will increase over time, with the turnover in the shareholders as the interval becomes longer between the class period and the final resolution of the derivative claims.

(c)      In terms of possible settlement, the two groups will almost certainly be in competition with each other.  In a settlement, a defendant typically offers a specified sum to terminate its liability to all claimants.  When the claimants have different substantive basis for their claims (because of the difference in the period which they are shareholders), the claimants are in competition for payment.  Since most all class actions are resolved by settlement, a direct conflict is virtually certain.

(d)      Similar competition would be involved if either case was determined by judgment rather than settlement.

9.      There is also a conflict in terms of expenses in the course of the litigation and cost in its eventual resolution, whether by settlement or by judgment.

(a)      In the class suit, the expenses of defending the case, and eventually paying any compensation to the class, are paid by the fund as such.  Those payments in turn are detriments to the group who are shareholders at the point when the payments are made.  By the same token, the payments are benefits to those who were shareholders in the

"class period." In effect, the payments move through the fund from one group of shareholders to the other.

(b)     The situation remains similar in substance with regard to the rights of indemnification that the officials of the funds may have. Typically, officers, directors and sometimes advisers have rights of indemnification with regard to derivative litigation, covering costs and expense in defending derivative litigation and obligations incurred by judgment or settlement. These rights of indemnification entail corresponding duties on the part of the fund to pay the indemnity, or to have paid for "D&O" (Directors and Officers) insurance covering the risk.

(c)     The cost of the indemnification comes out of the fund itself and thus is a detriment to the shareholders at the time the cost is paid. Correlatively, the proceeds of settlement or judgment are a benefit to shareholders at the point of final resolution. The "circulation" of liability through indemnity thereby has different financial effect on "class period" shareholders and subsequent shareholders. There is a corresponding conflict of interest for counsel seeking to represent both groups.

10.     In my opinion it makes no difference what party is designated as representative. The conflict is between the groups represented, by whomever they are represented.

11.     In my opinion the conflict is not resolved by a disclaimer as to relief being sought in one of the other of the suits. The plaintiff in both suits is a fiduciary who undertakes to fully and faithfully represent the beneficiaries. The representative is designated ad hoc, typically in cooperation with counsel for the plaintiff. Such a fiduciary in my opinion has no authority to foreswear seeking legally available claims, particularly when doing so is for the purpose of relieving counsel of an impermissible conflict of interest. Under elementary principles of trust

law, doing so would be a per se breach of trust.

  12. In any event, such a disclaimer would in my opinion be legally ineffective. Under Federal Rule of Civil Procedure 54(c), a judgment properly should award "the relief to which the party is . . . entitled, even if the party has not demanded such relief." In a class suit under Federal Rule of Civil Procedure 23, the court has broad authority concerning settlement and judgment, and under Rule 54(c) would not be limited to the amount demanded by plaintiff.

  I declare, under penalty of perjury, that the foregoing is true and correct. Executed this 26th day of July, 2005 at Philadelphia, Pennsylvania.


                _____

                GEOFFREY C. HAZARD, JR.

**CURRICULUM VITAE**

12/17/04

**GEOFFREY C. HAZARD, JR.**

Trustee Professor of Law, University of Pennsylvania Law School
Director Emeritus, American Law Institute

Address:   139 Rutgers Ave.          Tel:(610) 544-4550
           Swarthmore, PA 19081       Fax:(610) 544-5083


           University of Pennsylvania Law School
           3400 Chestnut St.          Tel:(215)898-7494
           Philadelphia, PA 19104     Fax:(215)573-2025

EDUCATION

Swarthmore College, B.A. 1953 (Phi Beta Kappa)
Columbia University, LL.B. 1954 (Columbia Law Review)

PROFESSIONAL APPOINTMENTS

Member, California State Bar, Pennsylvania Bar
Admitted to practice: Oregon, 1954; California, 1960;
Connecticut, 1982; Pennsylvania, 1994
Practiced in Oregon, 1954-57; Deputy Legislative Counsel, State
of Oregon, 1956-57; Executive Secretary, Oregon Legislative
Interim Committee on Judicial Administration, 1957-58
Executive Director, American Bar Foundation, 1964-70
Consultant, American Bar Association Special Committee on Code
      of Judicial Conduct, 1970-72
Reporter, American Bar Association Special Commission on
      Standards of Judicial Administration, 1971-77
Reporter, American Law Institute, Restatement of Judgments,
      Second, 1973-81
Reporter, American Bar Association Special Commission on
      Evaluation of Professional Standards, 1978-83
Reporter, Committee on Ethical Standards, National Association
of    Bond Counsel, 1983-84
Director, American Law Institute, 1984-1999

page   2
Geoffrey C. Hazard, Jr.

Reporter, American Law Institute and International Organization

    for Unification of Private Law, Principles of Transnational
    Civil Procedure, 1999-2004

Member and Consultant, Standing Committee on Rules of
    Practice and Procedure, Judicial Conference of the United
    States, 1994-

Member, Judicial Conference Ad Hoc Committee on Mass Torts,
1997-
    99

Member, American Bar Association Resource Team for High Profile
Trials 1996-1998

Member, American Bar Association Commission on Ethics 2000,
1997-2002

Member, Associazione Italiana fra gli Studiosi del Processo
Civile, 1998-

## ACADEMIC APPOINTMENTS

Trustee Professor of Law, University of Pennsylvania, 1994-
Professor of Law, Hastings College of the Law, University of
    California, 2005-
Professor of Law, Yale University, 1971-94; Sterling Professor
of      Law Emeritus 1994-
Associate Professor of Law, University of California,
    Berkeley, 1958-61; Professor of Law, 1961-64
Visiting Professor, University of Michigan, 1963
Professor of Law, University of Chicago, 1964-71
Visiting Professor, Stanford University, 1974
Acting Dean, Yale School of Organization and Management,
    1980-81; Associate Dean, 1979-80; Deputy Dean, 1981-82
Visiting Professor, Universite d'Aix-Marseille, 1982
Visiting Professor, Harvard University, 1983
Visiting Professor, University of Arizona, 1997-2001

## TEACHING SUBJECTS

Civil Procedure, Legal Ethics, Federal Jurisdiction

## BOARD MEMBERSHIPS

Board of Trustees, Supreme Court Historical Society, 1989-
Board of Directors, Avatar Holdings, Inc., 1980-94
Board of Directors, Smyth, Sanford & Gerard Professional

page   3
Geoffrey C. Hazard, Jr.

Liability, L.L.C. 1995-97
Member, Board of Directors, Friends of the Library of the Supreme         Court of Israel 1998-
Board of Governors, International Insolvency Institute, 2004-
PROFESSIONAL ACTIVITIES


Member, Administrative Conference of United States, 1972-78
Adviser, American Bar Association, Standing Committee on Ethics
        and Professional Responsibility, Subcommittee on Code
        of Judicial Conduct, 1988-89
Member, Board of Overseers, Institute for Civil Justice, RAND
Corp.,1985-90
Advisory Council, Trinity Church (New York) Center for Ethics
and   Corporate Policy, 1983-1990
Legal Advisory Committee, New York Stock Exchange,1989-92
Member, American Bar Association Committee on Professional
        Discipline, 1985-91
Member, American Bar Association, Committee on Lawyers'
        Responsibility for Client Protection, 1991-1994
Member, Pennsylvania Bar Ass'n, California State Bar, American
Bar Ass'n, American Law Institute, American Judicature Society,
National Legal Aid and Defender Ass'n, Fellows of American Bar
Foundation, American Academy of Arts and Sciences, American
Philosophical Society

PROFESSIONAL AWARDS

American Bar Foundation, Research Award, 1985
American Bar Foundation, William Keck Foundation Award,1997
Columbia University School of Law Association, Medal for
Excellence, 1999
American Judicature Society, Outstanding Contributions to
Promoting Effective Administration of Justice. 1999
Ceremony of Salute, Superior Court of Pennsylvania, 1999
Gold Medal, International Insolvency Institute, 2004

HONORARY DEGREES

        M.A., Yale University 1971
        LL.D., Gonzaga University, 1985
        LL.D., University of San Diego, 1985
        LL.D., Swarthmore College, 1988
        LL.D., Illinois Institute of Technology, 1990

page  4
Geoffrey C. Hazard, Jr.

LL.D., Nova University, 1992
LL.D., Republica Italiana (faculta di Urbino), 1998

BOOKS

RESEARCH IN CIVIL PROCEDURE (1963; Walter E. Meyer Research
        Institute of Law).
LAW IN A CHANGING AMERICA (1968; editor).
QUEST FOR JUSTICE (1973; editor, American Bar Association).
GOING TO LAW SCHOOL? (1974;editor, with Thomas Ehrlich).
CIVIL PROCEDURE (5th ed. 2001, with Fleming James, Jr. and John
        Leubsdorf).
ETHICS IN THE PRACTICE OF LAW (1978).

PLEADING & PROCEDURE, STATE & FEDERAL (8th ed. 1999; with
        D. W. Louisell, Colin Tait and Wm. Fletcher).
MANAGING COMPLEX LITIGATION:  A PRACTICAL GUIDE TO THE USE OF
        SPECIAL MASTERS (1983; with Wayne Brazil and Paul Rice).
THE LEGAL PROFESSION:  RESPONSIBILITY AND REGULATION (3d ed.
        1994; editor, with Deborah Rhode).
THE LAW OF LAWYERING:  A Handbook on the Model Rules of
        Professional Conduct (2d ed. 1990 with William Hodes).
PERSPECTIVES ON CIVIL PROCEDURE (1987; editor, with Jan Vetter).
BOARD GAMES: The Changing Shape of Corporate Power (1988; with
        Arthur Fleisher, Jr. and Miriam Z. Klipper).
THE LAW AND ETHICS OF LAWYERING (4th ed. 2005; with Susan
Koniak,                                     Roger Cramton and
George Cohen)
LA GUISTA CIVIL NEGLI STATI UNITI (1993; with Michele Taruffo)
AMERICAN CIVIL PROCEDURE:  AN INTRODUCTION (1993, with Michele
        Taruffo)
AMERICAN CIVIL PROCEDURE: AN INTRODUCTION (Japanese ed., Tanabe
Tr. 1997)
POKUS`ENI` SPRA `NI` CHI RAD (Prague, 1996; translation of
BOARD GAMES, with Arthur Fleisher, Jr. and Miriam Z.
Klipper)
PROFESSIONAL RESPONSIBILITY AND REGULATION (Foundation Press,
        2002) (with Deborah Rhode)
LEGAL ETHICS: A COMPARATIVE STUDY (Stan. U. Press.2004)(with
        Angelo Dondi)

REPORTS
(as reporter or draftsman)

Oregon Legislative Interim Commission on Judicial

page 5
Geoffrey C. Hazard, Jr.

Administration,
    Vol. I (Judicial Administration), Vol. II (Juvenile Code)
    (1958)
California Special Legislative Commission on the Insanity
    Defense, Report (1962).
American Bar Association, Code of Judicial Conduct (1972).
American Bar Association, Standards of Judicial Administration
    (3 vol., 1974-77).
Legal Services for the Average Citizen, Report of A.B.A.
    Consortium on Legal Services (1977).
American Law Institute, Restatement Second of Judgments (1982).
American Bar Association, Model Rules of Professional Conduct
    (1983).
National Association of Bond Lawyers, Function and Professional
    Responsibilities of Bond Counsel (1984).
American Law Institute and International Organization for
    Unification of Private Law, Principles of Transnactional
    Civil Procedure (2004).


ARTICLES

May v. Anderson:  Preamble to Family Law Chaos,
    45 Va. L. Rev. 379 (1959)

Oregon Administrative Procedure Act -- Status and Prospects,
    39 Ore. L. Rev. 97 (1960).

Indispensable Party:  The Historical Origin of a Procedural
    Phantom, 61 Colum. Law Rev. 1254 (1961).

Insanity as a Defense:  The Bifurcated Trial,
    49 Calif. L.Rev. 805 (1961) (with D. W. Louisell).

Death, the State, and the Insane:  Stay of Execution,
    9 U.C.L.A. Rev. 381 (1962) (with D. W. Louisell).

Early Evolution of the Common Law Writs:  A Sketch,
    6 Am. J. Legal Hist. 114 (1962).

An Historical and Critical Analysis of Interpleader,
    52 Calif. L. Rev. 706 (1963) (with Myron Moskovitz).

The Research Program of the American Bar Foundation,

page  6
Geoffrey C. Hazard, Jr.

51 <u>A.B.A.J.</u> 539 (1965).

Reflections on Four Studies of the Legal Profession, in
  <u>Law and Society, A Supplemental to Social Problems</u>
  (Summer, 1965).

After the Trial Court -- The Realities of Appellate Review,
  in Jones, Harry W., ed., <u>The Courts, the Public and the
  Law Explosion</u> (1965).

A General Theory of State-Court Jurisdiction,
  1965 <u>Sup. Ct. Rev.</u> 241.

Rationing Justice, 8 <u>J. Law & Econ.</u> 1 (1965).

Limitations on the Uses of Behavioral Science in the Law,
  19 <u>Case Western L. Rev.</u> 71 (1967).

The Ombudsman:  Quasi-Legal and Legal Representation in Public
  Assistance Administration, in Sherrard, ed., <u>Social
  Welfare and Urban Problems</u> (1968).

Challenges to Legal Education, in Sutherland, ed.
  <u>The Path of the Law from 1967</u> (1968), pp. 185-194.

Epilogue to the Criminal Justice Survey, 55 <u>A.B.A.J.</u> 1048
(1969).

Social Justice Through Civil Justice, 36 <u>U. Chi. L. Rev.</u> 699
(1969).

Law Reforming in the Anti-Poverty Effort, 37 <u>U. Chi. L. Rev.</u> 242
(1970).

Legal Problems Peculiar to the Poor, 26 <u>J. Social Issues</u> 47
(1970).

Securing Courtroom Decorum, 80 <u>Yale L. J.</u> 433 (1970)(book
review).

Res Nova in Res Judicata, 44 <u>So. Calif. L. Rev.</u> 1036 (1971).

Court Finance and Unitary Budgeting, 81 <u>Yale L. J.</u> 1286
  (1972)(with Martin B. McNamara and Irwin F. Sentilles,

page 7
Geoffrey C. Hazard, Jr.

III).

Attorneys' Responsibilities and Duties Under the Securities
    Laws, in Goldberg, Stuart C., ed., Expanding
    Responsibilities Under the Securities Laws (1973).

The Effect of the Class Action Device Upon the Substantive Law,
58 F.R.D 299 (1973).

Legal Services in the U.S.A., 2 Internat'l J.of Crim. and
    Pen. 43 (1974).

Chancery Procedure and the Seventh Amendment: Jury Trial of
    Issues in Equity Cases before 1791, 83 Yale L. J. 999
    (1974) (with Harold Chesnin).

Law School "Law" and Sociolegal Research,
    50 Denver L. J. 403 (1974).

Rethinking Legal Ethics, 26 Stan. L. Rev. 1227 (1974).

Conscience and Circumstance in Legal Ethics, in Hodges, ed.,
    Social Responsibility: Journalism, Law, Medicine
    (Wash. & Lee Univ., 1975).

Administration of Supporting Services in the Trial Court,
    1 Justice System Journal 3 (1975).

Representation in Rule-Making, in Schwartz, ed.,
    Law and the American Future (1975).

The Tennessee Administrative Procedure Act:  An Outsider's
    Perspective, 6 Memphis State U. L. Rev. 143 (1976).

Standards of Judicial Administration:  Appellate Courts,
    62 A.B.A.J. 1015 (1976).

The Jurisprudence of Juvenile Deviance, in Rosenheim, ed.,
    Pursuing Justice for the Child (1976).

Requisites of a Valid Judgment, 24 Practical Lawyer 35 (1978).

The Supreme Court as Legislature, 64 Cornell L. Rev. 1 (1978).

An Historical Perspective on the Lawyer-Client Privilege,
     66 Calif. L. Rev. 1061 (1978).

Talking to Your Lawyer, MBA, May 1978, 17.

The Legal and Ethical Position of the Code of Professional
     Ethics, V Social Responsibility: Journalism, Law, Medicine
     (Wash. & Lee Univ., 1979).

Interstate Venue, 64 Nw. L. Rev. 711 (1979).


Proposed Revision of the Rules of Legal Ethics in the United
     States, in Am. Bar Ass'n, American/Australian/New Zealand
     Law: Parallels and Contrasts (1980).


Guidelines for Claims of Privilege, United States v. Am. Tel.
     & Tel. Co., 86 F.R.D. 603 (1980) (with Paul Rice).

Rules of Legal Ethics: The Drafting Task, 36 The Record 77
     (1981).

Revisiting the Second Restatement of Judgments: Issue Preclu-
     sion and Related Problems, 66 Cornell L. Rev. 564
     (1981).

The Lawyer's Obligation to be Trustworthy When Dealing with
     Opposing Parties, 33 South Carolina L. Rev. 181 (1981).

How Far May a Lawyer Go in Assisting a Client in Legally
     Wrongful Conduct?, 35 U. of Miami L. Rev. 669 (1981).

Will the ABA Draft Model Rules of Professional Conduct Change
     the Concept of the Lawyer's Role?, Association of the Bar
     of the City of New York (Third Orison Marden Memorial
     Lecture,1981).

The Lawyer's Pro Bono Obligation, in ABA Proceedings of the
     Second National Conference on Legal Services and the
Public
     (1981).

Do Lawyers Really Need New Disciplinary Rules?,

                                            page  9
                                Geoffrey C. Hazard, Jr.

        53 Cleveland Bar J. 1 (1981).

Legal Ethics: Legal Rules and Professional Aspiration,
        30 Cleveland State L. Rev. 4 (1982).

Liability of Attorneys Involved in the Preparation of
        Disclosure Statements, in Fleischer, et al. eds.,
        Thirteenth Annual Institute on Securities Regulation
        (1982).

Arguing the Law: The Advocate's Duty and Opportunity,
        16 Georgia L. Rev. 821 (1982).


Judicial Management of the Pretrial Process in Massive Litiga-
        tion: Special Masters as Case Managers, 1982 Am. Bar
        Found. Res. J. 375 (with Paul R. Rice).

The Criminal Justice System: Overview, in Encyclopedia of
        Criminal Justice (1982).

Competing Aims in Legal Education, 59 No. Dakota L. Rev.
        533 (1983).


Why Lawyers Should be Allowed to Advertise: A Market Analysis
        of Legal Services, 58 N.Y.U.L. Rev. 1084 (1983), (with
        Russell Pearce and Jeffrey Stempel) republished in
Italian,                                    Perche Agli
Avvocati Dovrebbe Essere Consentito L'Uso Della   Pubblicita, 32
Rivista Di Diritto Civile 277 (1986).

Preclusion as to Issues of Law:  The Legal System's Interest,
        70 Iowa L. Rev. 81 (1984).

A Question of Scale, Harvard Law School Bulletin, Winter, 1984
        (review of Bok report on legal education).

The Technical Expert in Procedure: U.S. National Report, in
        Nicklisch, ed., Der Technische Sachverstandige im Prozess,
        VII.Internationaler Kongress fur Prozessrecht, p. 207
        (1984).

Legal Ethics, in Gillers, ed., Looking At Law School (1984,

Geoffrey C. Hazard, Jr.

3d ed. 1990).

Rectification of Client Fraud: Death and Revival of a
        Professional Norm, 33 Emory L.J. 271 (1984).

Reflections on the Substance of Finality, 70 Cornell L.
        Rev. 642 (1985).

Curriculum Structure and Faculty Structure, 35 J. Legal Ed,
        326 (1985).

The Position of the Supreme Court in the Contemporary
        Constitutional System of the United States, in Lombardi,
        Constituzione e Giustizia Constituzionale nel Diritto
Comparato (Centro Italiano per lo Sviluppo della  Ricerca,
1985).

Ethical Considerations in Withdrawal, Expulsion, and Retirement
        [from a Firm], in Berger, ed., Withdrawal, Retirement &
        Disputes, Am. Bar Ass'n Section of Economics of Law
        Practice (1986).

Court Delay: Toward New Premises, 5 Civil Justice Q. 236
        (1986), republished in Italian, Costo e Durata del
Processo                              in Italia e in
U.S.A., 32 Rivista di Diritto Civile 271    (1986).

Quis custodiet ipsos custodes?, 95 Yale L.J. 1523 (1986)
        (book review).

Principles in Legislation, 41 The Record 685 (1986) (Cardozo
        Lecture).

Rising Above Principle, 135 U.Penn.L.Rev. 153 (1986)
        (Roberts Lecture).

A Lawyer's Privilege Against Self-Incrimination in Professional
        Disciplinary Proceedings, 96 Yale L.J. 1060 (1987) (with
        Cameron Beard).

Triangular Lawyer Relationships: An Exploratory Analysis,
        1 Georgetown J. Legal Ethics 15 (1987).

Permissive Affirmative Action for the Benefit of Blacks, 1987

Geoffrey C. Hazard, Jr.

U.Illinois L.Rev. 379 (David C. Baum Memorial
Lecture).

Professional Ethics, Rules and Conduct, in Conference Papers,
     ALI-ABA Arden House III National Conference on the
     Continuing Education of the Bar (November 13, 1987),
     reprinted 34 CLE Journal and Register 5 (1988).

The Public Nature of Private Adjudication, 6 Yale L. & Pol'y
     Rev. 42 (1988) (with Paul D. Scott).

Communitarian Ethics and Legal Justification, 59 U. of Colo. L.
     Rev. 721 (1988).

Forms of Action Under The Federal Rules of Civil Procedure,
     63 Notre Dame L. Rev. 628 (1988).

Four Portraits of Law Practice, 57 UMKC L. Rev. 1 (1988).

Ethics and Politics in the Corporate World, 6 Yale J. on
     Regulation 155 (1989) (book review).


Discovery Vices and Trans-Substantive Virtues in the Federal
     Rules of Civil Procedure, 137 U. Penn. L. Rev. 2237
(1989).

Authority in the Dock, 69 Boston U. L. Rev. 469 (1989).

My Station as a Lawyer, 6 Georgia State U. L. Rev. 1 (1989).

Per un approcio manageriale al problema dei ritardi
     nell'amministrazione della guistizia, 43 Rivista
     Trimestrial di Diritto e Procedura Civile, No. 4, p. 960
     (Dicembre 1989), translated by Dttr. Angelo Dondi.

After Professional Virtue, 1989 Supreme Court Rev., 213.

Law and Business Ethics, in Reitzel, et al. Contemporary
     Business Law (4th ed. 1990).

The Role of the Legal System in Response to Public Risk, Fall
     1990 Daedalus, 229.

page 12
Geoffrey C. Hazard, Jr.

Ethical Opportunity in the Practice of Law, 27 San Diego L.Rev.
        127 (1990).

It Smacks of Elitism, Am. Law Inst. Remarks and Addresses, May
        15-18, 1990.

The Future of Legal Ethics, 100 Yale L.J. 1239 (1991).

Il processo con giuria come modello processuale," 45 Rivista
Trimestrial di Diritto e Procedura Civile,
        No. 2, p. 479(Giugno, 1991), translated by Dttr. Angelo
Dondi.

Swimwear for the Ethics Goldfish Bowl, 26 Int'l Soc'y of
        Barristers Quarterly 297 (1991).

Equality in Civil Litigation, In Kojima, ed., America no
        Daishihou Shisutemu ("Grand Justice System: American
        Style"), Chiou University Institute of Comparative Law
        (1992).


L'avvocato e l'etica professionale: gli aspetti giuridici, Il
        Foro Italiano, June, 1992, V, 215, translated by Dttr.
        Angelo Dondi

Justice Marshall in the Medium of Civil Procedure: Portrait of a
        Master, 80 Georgetown L.J. 2063 (1992).

Doing the Right Thing, 70 Washington U.L.Q. 691 (1992).

Alvin B. Rubin: Man of the Law, 52 Louisiana L. Rev. 1481
        (1992).

Lawyers and Client Fraud: They Still Don't Get It,
        6 Georgetown J. of Legal Ethics 701 (1993).

Sources of Delays, Motions to Disqualify Could be Handled
        Promptly Through ADR, July 1993 Alternatives to the High
        Cost of Litigation (Center for Public Resources).

The Role of the Legal System in Responses to Public Risk, in E.
        Burger, ed., Risk (U. Michigan Press 1993).

page 13
Geoffrey C. Hazard, Jr.

Dimensions of Ethical Responsibility: Relevant Others, 54 U. Pittsburgh L. Rev. 965 (1993).

Lawyer Liability in Third Party Situations:  The Meaning of the Kaye Scholer Case, 26 U. Akron L. Rev. 395.

Reflections on Judge Weinstein's Ethical Dilemmas in Mass Tort Litigation, 88 Northwestern U. L. Rev. 569 (1994).

The American Law Institute: What it is and What it Does, Centro do Studi e Ricerche di Diritto Comparato e Straniero, Saggi, Conferenze e Seminari, (1994).

Azioni di Responsabilita Verso gli Amministratori di Societa Commerciali nel Diritto Statunitense, 39 Rivista delle Societa 441 (1994).

Conflict of Interest in Estate Planning for Husband and Wife, 20 The Probate Lawyer 1 (1994).

Equality and Selectivity in American Civil Litigation, in T. Kojima, T. Atsumi, H. Hokama, and M. Shimuzu, eds., The Grand Design of America's Justice System, Institute of Comparative Law in Japan (1995).

Law, Morals, and Ethics, 19 So. Illinois U.L.J. 447 (1995).

La Nozione di "Substantial Evidence" nel Processo Civile Statunitense, 1-1996 Rivista Trimestrale di Diritto e Procedura Civil 251 (1996).

Conflict of Interest in the Classic Professions, in R. Spece, D. Shimm and A. Buchanan, Conflicts of Interest in Clinical Practice and Research (1996).

The Settlement Black Box, 75 Boston Univ. Law Review. 1257 (1996).

The Client Fraud Problem: A Justinian Quartet, 1 J. Institute for      Study of Legal Ethics 43 (1996)

page 14
Geoffrey C. Hazard, Jr.

The Privity Requirement Reconsidered, 37 So. Texas L. Rev. 967
      (1996).

Commentary: Policy Implications [of Lawyers Problems with
Alcohol], 10 J. Law and Health 79 (1995-96).
Un Codice di Etica Professionale per gli Avvocati Italiani?
      Rivista Trimestrale di Diritto e Procedura Civile, Anno L
      Fasc. 4-1996.

An Examination Before and Behind the "Entire Controversy"
      Doctrine, 28 Rutgers L.J. 7 (1996).

A Lawyer's Moral and Ethical Discretion, 8 Researching Law No.2
      (1997).

Transnational Rules of Civil Procedure, 30 Cornell Int'l. L.F.
      495 (1997, with M. Taruffo).

State Supreme Court Regulation of Professional Ethics, 72 Notre
      Dame L. Rev. 1177 (1997).

Protecting the Environment: Finding the Balance Between *Delaney*
and Free Play, 18 U. Penna. J. Of Int'l Economic Law 487
(with H. Kunreuther, 1997).
Ethical Dilemmas of Corporate Counsel, 46 Emory L.J. 1011, 1053
(1997).

Professional Legal Education and Citizen Education, 25 J.
Japanese Institute of Int'l Bus. Law 1181 (1997) (in
Japanese, translation by Professor Koichi Miki).

Harmonization of Procedural Law, 44 J. Of Civil Procedure 70
(Japanese Ass'n of the Law of Civil Procedure) (translated
into Japanese by Professor Koichi Miki).

Non-Silences of Professor Hazard on "The Silences of the
Restatement": A Response to Professor Menkel-Meadow." 10
Georgetown L. Legal Ethics 1997).

Per L'Indipendenza Professionale Dell'Avvocatura, 1997 Rivista
Trimestrale di Diritto e Procedura Civile 407.

Discovery and the Role of the Judge in Civil Law Jurisdictions,

page 15
Geoffrey C. Hazard, Jr.

73 Notre Dame L. Rev. 1017 (1998).

The American Law Institute is Alive and Well, 26 Hofstra L. Rev. 661 (1998).

From Whom No Secrets are Hid, 76 Texas L.Rev. 1665 (1998).

The Duty or Option of Silence, 23 Law & Social Inquiry 139 (1998).

Reflections on Self-Study [of the American Law Institute], 23 Law & Social Inquiry 641 (1998).

The County Courthouse No Longer Looms Over the Community, 51 SMU L. Rev. 1559 (1998).

Foreward, Symposium, The Legal Profession: The Impact of law and Legal Theory, 67 Fordham L. Rev. 239 (1998).

Substance, Procedure and Practice in Comparative Law, in T. Shiibashi, ed., Toward Comparative Law in the 21st Century (Chuo Univ. Press 1998).

Preliminary Draft of the ALI Transnational Rules of Civil Procedure, 33 Texas Int'l L.J. 489 (1998)
    •

An Historical Analysis of the Binding Effect of Class Suits, 146 U. Penna L. Rev. 1849 (1998) (with John L. Gedid and Stephen Sowle)


The Underlying Causes of Withdrawal and Expulsion of Partners from Law Firms,55 Washington and Lee Rev. 1073 (1998)

Individual Justice in a Bureaucratic World, 7 Tulane J. of Int'l and Comparative Law 73 (1999)

From Whom No Secrets are Hid [Segretezza e Ricerca della verita nel Processo Civile], Rivista Trimestrale di Diritto e Procedura Civile,
Anno LIII Fasc. 2 - 1999

Responsibility, Professional and Otherwise, 31 Connecticut L.

page 16
Geoffrey C. Hazard, Jr.

Rev 1139 (1999)

Regulation of Banking in the United States, in F. Riolo and D.
Maschiandaro, Il Governe delle Banche in Italia (Fondazione
Rosselli, Rome 1999).

Abuse of Procedural Rights: A Summary View of the Common Law
Systems, and Abuse of Procedural Rights: Regional Report for the
United States, in M. Taruffo, ed. Abuse of Procedural Rights:
Comparative Standards of Procedural Fairness(1999).

Under Shelter of Confidentiality, 50 Case Western Law Rev. 1
(1999).

Tribute to Harvey Perlman, 78 Nebraska L.Rev. 744 (1999).

Litigio civil sin fronteras: armonizacion y unificacion del
derecho procesal, Derecho PUC (Revista de la Facultad de Derecho
del la Pontoficia Universidad Catolica del Peru), No. 52, 583
(Abril 1999)

The Future of the Legal Profession, in American Bar Association,
Common Law, Common Values, Common Rights 357-365 (2000)

The Futures Problem, 148 U.Penn.L.Rev. 1901 (2000).

Foreword: The Future of the Profession, 84 Minn.L.Rev. 1083
(2000).

The Future of the Legal Profession, in American Bar Ass'n,
Common Law, Common Values, Common Rights, 357-363 (2000).

Globalization, National States, and the Rule of Law, in Jose
Ciprut, ed., Of Fears and Foes: Security and Insecurity in an
Evolving Global Political Economy (2000).

Law Practice and the Limits of Moral Philosophy, in Deborah
Rhode, ed., Ethics in Practice (2000).

Tribute in Memory of Herbert Wechsler, 100 Columbia L. Rev. 1362
(2000).

Changing Structure in the Practice of Law, 62 Louisiana
L.Rev.167 (2000).

page 17
Geoffrey C. Hazard, Jr.

Equality and Affiliation as Bases for Ethical Responsibility, 61
Louisiana L.Rev.173 (2000).

Environmental Contracts in the United States (with Eric Orts),
in E. Orts and K. Dekelelaere, Environmental Contracts:
Comparative Approaches to Regulatory Innovation in the United
States and Europe (Kluwer 2001)

Transnational Rules of Civil Procedure: A Challenge to Judges
and Lawyers, 68 Estratto Studi Urbinati, Nuova Serie A-N. 51,3
247 (1999/2000)

Introduction to the Principles and Rules of Transnational Civil
Procedure, 33 N.Y.U. J. of International Law and Politics 769
(with M. Taruffo. R. Sturner and A. Gidi (2001)

Conflicts of Interest in Representation of Public Agencies in
Civil Matters, 9 Widener J. Public Law 211 (2000).

Globalization, National States and the Rule of Law, in J.
Ciprut, ed., Of Fears and Foes: Security and Insecurity in an
Evolving Global Political Economy at 209 (2001)

Whistleblowing is a Non-issue, Legal Intelligencer (of
Philadelphia), Feb. 25, 2002, p. 9.

Law and Justice in the Twenty-First Century, 70 Fordham L. Rev.
1739 (2002)

Fundamentals of Civil Procedure, 6 Uniform Law Review 753 (Revue
de Droit Uniforme) (2001-4)

Class Certification Based on Merits of the Claims, 69 Tennessee
L. Rev. 1 (2001)

The Changing Professional Environment and the Ideal of General
Practice, 30 Hofstra Law Review 759 (2002)

A Short Historical Sketch of the Legal Profession, ZZPInt
(Zeitschrift fur Zivilprozess International) 6 Band 2001, 205-
238 (with Angelo Dondi)

Principios fundamentales del Proceso Civil

page 18
Geoffrey C. Hazard, Jr.

Transnacional, 54 Derecho PUC 253 (Revista de la
Facultad de Derecho de la Pontificia Universdad
Catolica del Peru)(2001)(with M. Taruffo, R. Sturner
and A. Gidi)

Judicial Redress for Historical Crimes: Procedure, 5
International Law FORUM 36(2003)

Seeking Justice, Preserving Liberty, 54 Hastings L.J. 695 (2003)

Modeling Class Counsel, 81 Nebraska L. Rev. 1397 (2003)

International Civil Procedure and Transnational Civil Procedure:
The Impact of Regional Economic Integration—An Overview, 8
Uniform Law Review 437 (2003-1/2)

Lawyer as Wise Counselor, 49 Loyola Law Rev. 215 (2003)

The ALI/UNIDROIT Project, in M. Andenas, N. Andrews and R.
Nazzini, eds., The Future of Transnational Civil Litigation
(2004)

Constitutional Law and Professional Regulation: Reflections on
Sarbanes-Oxley, King County (Washington) Bar Bulletin, August
2004

A New Player in the Boardroom: The Emergence of the Independent
Directors' Counsel, 59 The Business Lawyer 1389 (with Edward
Rock)

Humanity and the Law, 16 Yale J. Law and the Humanities 79
(2004)..

"Announcement" by Federal Judicial Nominees, 32 Hofstra L. Rev.
1281 (2004)

Various Newspaper Articles, National Law Journal, 1987-2001