## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE COLUMBIA ENTITIES LITIGATION | ) ) ) | Civil Action No. 04-cv-11704-REK |
| This Document Relates To:<br>ALL CASES | ) ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## INDEPENDENT TRUSTEE DEFENDANTS' MOTION TO DISMISS

The Independent Trustee Defendants, by their attorneys, respectfully submit this memorandum of law in support of their motion to dismiss Counts I, II, III, VII and VIII of the Consolidated Amended Complaint (the "Complaint" or "Compl.").

### THE PARTIES

#### A.    The Investment Adviser And Distributor Defendants

Defendant Columbia Management Group is the parent of both Defendant Columbia Management Advisors, Inc., the investment adviser for the 75 nominally named Columbia mutual funds, and Defendant Columbia Wanger Asset Management, L.P., the investment adviser for the six nominally named Columbia Acorn mutual funds (the "Investment Adviser Defendants"). Defendant Columbia Funds Distributor, Inc. serves as the principal distributor of the Columbia and Columbia Acorn mutual funds.

#### B.    The Columbia Mutual Fund Family

The Columbia mutual fund family is comprised of multiple Columbia Registrants, each of which is a separate investment company registered under the Investment Company Act of 1940 (the "ICA"). Each Columbia Registrant takes the form of either a Massachusetts business trust or a corporation organized under Oregon law. Each Columbia Registrant is a separate legal entity that issues one or more "series," commonly referred to as a mutual fund. For example, the

Columbia Acorn Fund is a series of Columbia Acorn Trust (the Registrant). The assets of each Columbia Registrant consist of the respective series (*i.e.,* mutual funds) of the Registrant.

The six Columbia Acorn mutual funds named as nominal defendants in the Complaint are *series* issued by registrant Columbia Acorn Trust ("CAT"). The remaining 75 Columbia mutual funds named as nominal defendants are *series* issued by registrants collectively referred to as the Columbia Funds Trusts ("CFT").[1]

### C.    The Independent Trustee Defendants

CAT and CFT (the Registrants) have separate, non-overlapping boards of trustees. The Independent Trustee Defendants are the functional equivalent of "outside directors" who, as a matter of law, are deemed to be "disinterested" under the ICA. *See* 15 U.S.C. §§ 80a-2(a)(19) and 80a-2(a)(3). As a consequence, demand is necessary prior to the assertion of the derivative claims purportedly brought on behalf of the Columbia fund entities.

Defendants Douglas A. Hacker, Janet Langford Kelly, Richard W. Lowry, William E. Mayer, John J. Neuhauser, Thomas E. Stitzel, Thomas C. Theobald, Anne-Lee Verville, Charles R. Nelson, Patrick J. Simpson and Richard L. Woolworth are independent trustees of each of the CFT registrants.[2] Defendants Margaret M. Eisen, Leo A. Guthart, Jerome Kahn, Jr., Steven Kaplan, David C. Kleinman, Allan B. Muchin, Robert E. Nason and John A. Wing are independent trustees of CAT.[3]

---

[1]    Attached as Exhibit A is a chart identifying the nominally named mutual funds issued by a Columbia Registrant organized as a Massachusetts business trust and the mutual funds issued by a Columbia Registrant separately incorporated under Oregon law.

[2]    Salvatore Macera is also a named defendant. Macera retired from the Board of Trustees of CFT on June 18, 2003 and is now deceased.

[3]    There are currently a total of ten trustees of CAT. Defendants Ralph Wanger and Charles P. McQuaid are "interested" trustees under the ICA (*i.e.* they are affiliated with an Investment

### D.   **Plaintiffs**

Plaintiffs Joan Cohen and Gene F. Osburn are alleged to be shareholders in the Columbia Acorn Select Fund issued by CAT. (Compl., at ¶¶ 18, 19.) Plaintiffs Jean S.B. Simmonds, R.L. Simmonds and Paula Slicker are alleged to be shareholders in the Columbia Acorn Fund series issued by CAT. (*Id.*, at ¶¶ 20-21.) Plaintiffs do not own shares of <u>any</u> mutual fund issued by any of the CFT registrants, nor do they own shares of the four other named mutual fund series issued by CAT. Nevertheless, Plaintiffs seek to sue on behalf of themselves and a putative class of investors "who purchased, redeemed or held shares or like interests" in <u>all</u> of the 81 nominally named mutual funds established by CFT and CAT between August 2, 1999 and March 22, 2004. (*Id.*, at ¶¶ 1, 163.)

### SUMMARY OF PLAINTIFFS' ALLEGATIONS

The Complaint alleges that the Independent Trustee Defendants breached statutory and common law fiduciary duties by "participating in, approving, and/or recklessly or negligently" allowing the Investment Adviser Defendants to use fund assets to "improperly" pay certain purportedly "undisclosed" and "excessive" fees to brokerages as "kickbacks" to "induce brokerage firms to steer more investors into Columbia mutual funds." (Compl., at ¶¶ 1-3, 32-51, 104-13, 171-77.) The fees at issue include: (1) Rule 12b-1 marketing fees; (2) "soft dollar" payments; and, (3) "excessive" or "directed" brokerage commissions.

### A.   **Rule 12b-1 Fees**

Rule 12b-1 was promulgated by the Securities and Exchange Commission (the "SEC") pursuant to the ICA to permit a mutual fund to pay, from its fund assets, for the distribution and marketing of its shares pursuant to a Plan approved by the fund's trustees. *See* 17 C.F.R.

---

Adviser Defendant), and are thus represented by separate counsel. Defendant Joseph R. Palombo is no longer a trustee of CFT.

§ 270.12b-1. Rule 12b-1 was enacted because the SEC acknowledged that the marketing of mutual funds was beneficial to, and properly an expense of, fund shareholders. A fund may implement or continue a Rule 12b-1 Plan if the trustees conclude "in the exercise of reasonable business judgment" that "there is a reasonable likelihood that the plan will benefit the company and its shareholders." *Id.*

Plaintiffs allege that the Independent Trustee Defendants authorized the Investment Adviser Defendants to collect "millions of dollars" of marketing and distribution fees pursuant to Rule 12b-1 Plans, and conclude that these fees were "highly improper" because there was "no reasonable likelihood" that the fees would benefit the Funds and their shareholders. (Compl., at ¶¶ 128-29.) Nowhere in the Complaint do Plaintiffs properly describe the services provided in return for these fees, or how those fees are or were disproportionate to fees charged by other mutual fund complexes for similar services. Plaintiffs further allege, in conclusory form, that the payment of the marketing fees harmed the Funds through "reduced liquidity and fund performance," and that any "economies of scale" created by the growth of the Funds were not passed on to shareholders. (*Id.*, at ¶¶ 130-31.)

At bottom, through this lawsuit, Plaintiffs are challenging the propriety of charging Rule 12b-1 fees because, in their opinion, the fees are not commensurate with the services performed. But the SEC has created Rule 12b-1 pursuant to the ICA which expressly allows the very fees placed at issue in the Complaint, and vests in the business judgment of the Trustees the determination of their appropriateness.

### B.    Soft Dollar Payments

The term "soft dollars" refers to payments made by the Investment Adviser Defendants to brokers, in excess of the actual transaction costs, for certain research-related services. There is also nothing unlawful about the payment of "soft dollars." *Krantz v. Fidelity Mgmt. & Research*

*Co.*, 98 F. Supp. 2d 150, 156 (D. Mass. 2000) ("'[S]oft dollar' arrangements are permitted by securities law.")  Indeed, Section 28(e) of the Securities Exchange Act creates a "safe harbor" that permits fund managers to pay brokers fees, in addition to the execution price of a trade, for research services. *See* 15 U.S.C. § 78bb(e).  Plaintiffs allege that the Independent Trustee Defendants permitted the Investment Adviser Defendants to use "soft dollar" monies to purchase "items such as computer hardware and software." (Compl., at ¶ 137.)  According to Plaintiffs, the cost of these items was not covered by the Section 28(e) safe harbor and "properly should have been borne by the Investment Adviser Defendants." (*Id.*)

### C.    **"Excessive" Or "Directed" Brokerage Commissions**

Plaintiffs allege that the Independent Trustee Defendants allowed the Investment Adviser Defendants to direct "brokerage business to firms that favored Columbia Funds" and to pay brokers "excessive commissions" to "steer their clients to Columbia Funds." (*Id.*, at ¶ 133.) Plaintiffs claim that these "directed" and "excessive" commissions were not made pursuant to Rule 12b-1 Plans, and created an "undisclosed conflict of interest" on the part of the brokers. (*See, e.g., id.*, at ¶ 4 ("material insurmountable conflicts of interest for the brokers").)  During the putative class period, directed brokerage was a legal practice.  SEC Rel. Nos. 17599 and 11662, 46 Fed. Reg. 16012 (Mar. 10, 1981).

### SUMMARY OF GROUNDS FOR DISMISSAL

Counts I, II, III, VII and VIII alleged against the Independent Trustee Defendants (lumped together with other defendants who have entirely different duties, prerogatives and responsibilities) should be dismissed for numerous reasons.

First, in a very obvious attempt to avoid the Massachusetts universal demand requirement, Plaintiffs purport to bring their claims alleging the misuse of mutual fund assets on behalf of a putative class.  However, as a matter of law, such claims are derivative in nature.

*Lapidus v. Hecht*, 232 F.3d 679, 682-83 (9th Cir. 2000) (Massachusetts law).  As a consequence, Plaintiffs were required to comply with the demand requirements of Federal Rule of Civil Procedure 23.1 and state law.  Under the Massachusetts universal demand statute, which applies to the named funds issued by Columbia Registrants organized as Massachusetts business trusts (*see* Ex. A), Plaintiffs were <u>required</u> to make a pre-suit demand upon the trustees.  Mass. Gen. Laws ch. 156D, § 7.42 (2005).  <u>It is undisputed they did not do so</u>.  Under Oregon law, which applies to the named funds issued by Columbia registrants incorporated under Oregon law (*Id.*), Plaintiffs were required to either make a pre-suit demand or establish demand futility.  *Baillie v. Columbia Gold Mining Co.*, 166 P. 965, 971 (Or. 1917).  They have done neither.

Second, the four named plaintiffs lack Article III standing for each claim they purport to bring against the Independent Trustee Defendants.  Put simply, plaintiffs cannot bring class <u>or</u> derivative claims regarding mutual funds they have never owned (*i.e.,* all but two of CAT's funds).

Third, under recent case authority, it is now established that there is no private right of action under Sections 34(b) (Count I) and 36(a) (Count II) of the ICA.  Indeed, plaintiffs' attempts to "imply" a private right of action through spinning legislative intent has been flatly rejected in recent cases involving mutual fund disputes.  *See Jacobs v. Bremner*, 2005 WL 1719307, at *3-5 (N.D. Ill. July 20, 2005) and *Dull v. Arch*, 2005 WL 1799270, at *2-3 (N.D. Ill. July 27, 2005) (both citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611 (2005).

Fourth, the purported class claim under Section 36(b) of the ICA asserted in Count III is legally defective for myriad reasons.  By its terms, Section 36(b) allows only *derivative* claims, not the instant *class* claims.  Moreover, the Independent Trustee Defendants are neither recipients of management fees nor affiliated with the Columbia Investment Advisors, as required

to fall within the narrow scope of that statute. Additionally, Section 36(b) is not a disclosure statute, and hence has no application to the conduct challenged in the Complaint.

Finally, Plaintiffs' common law claims for breach of fiduciary duty and unjust enrichment (Counts VII and VIII) are barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(1), and otherwise fail to state a cause of action.

## ARGUMENT

### I. COUNTS I, II, III, VII AND VIII ARE CLEARLY DERIVATIVE IN NATURE AND ACCORDINGLY SHOULD BE DISMISSED

#### A. Plaintiffs' Claims Are Derivative

To avoid the Massachusetts universal demand requirement, Plaintiffs purport to bring their claims against the Independent Trustee Defendants on behalf of a putative class of investors. Plaintiffs' claims, however, are derivative in nature and may not be maintained on behalf of a class.

The determination of whether a claim is direct (and thus may be maintained on behalf of a class) or derivative is governed by the law of the state of incorporation, *Lapidus*, 232 F.3d at 682, and may be made by the Court based on the face of the Complaint. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 259 (S.D.N.Y. 2003). CAT and Columbia Funds Trusts I-XI are Massachusetts business trusts (as Plaintiffs admit (*See* Compl., at ¶ 71)), and the remaining CFT registrants are Oregon corporations. (*See* Ex. A.) Thus, Massachusetts and Oregon law govern this inquiry.[4]

Under both Massachusetts and Oregon law, a claim is direct only where the shareholder alleges an injury distinct from that suffered by shareholders generally, or the alleged wrong

---

[4] Courts apply Massachusetts' corporations law in suits against Massachusetts business trusts. *See, e.g., Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 489 n.2 (N.D. Ill. 1999).

involves a contractual right of shareholders, such as the right to vote. *Lapidus*, 232 F.3d at 683 (Massachusetts law); *Green*, 186 F.R.D. at 489-90 (same); *Rohrbaugh v. Investment Co. Inst.*, 2002 WL 31100821, at *6-7 (D.D.C. July 2, 2002) (same); *Loewen v. Galligan*, 882 P.2d 104, 111-12 (Or. Ct. App. 1994); *Wilcox v. Stiles*, 873 P.2d 1102, 1107 (Or. Ct. App. 1994). A claim for diminution in the value of shareholder investments as a result of a reduction in corporate assets is derivative in nature and may not be pursued in a direct shareholder action. *Bartlett v. New York, New Haven & Hartford R.R. Co.*, 221 Mass. 530, 531, 109 N.E.2d 452, 453 (1915); *Jackson v. Stuhlfire*, 28 Mass. App. Ct. 924, 925, 547 N.E.2d 1146, 1148 (1990); *Lapidus*, 232 F.3d at 683; *Green*, 186 F.R.D. at 490; *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996); *Lowen*, 882 P.2d at 111; *Lewis v. Chiles*, 719 F.2d 1044, 1048-49 (9th Cir. 1983) (Oregon law).

The basis of Plaintiffs' Complaint is that "undisclosed" and "excessive" fees were allegedly paid to brokerages from <u>funds assets</u>. Plaintiffs allege that "Columbia Management and the other defendants 'paid to play' with monies siphoned from <u>the Funds</u>"; that the Independent Trustee Defendants failed "to prevent the Investment Adviser Defendants from skimming <u>Columbia Funds assets</u>"; that "millions of dollars in <u>Columbia Funds assets</u> were transferred through fees payable from <u>Columbia Funds assets</u> to the Investment Adviser Defendants"; and that "the Investment Adviser Defendants were using so-called 12b-1 fees, directed brokerage, and excessive commissions to improperly siphon assets from <u>the Funds</u>." (Compl., at ¶¶ 82, 108, 111, 113 (emphasis added).) As a matter of law, claims for fees and costs incurred by mutual funds are necessarily derivative. *See, e.g., Strougo v. Bassini*, 282 F.3d 162, 174 (2d Cir. 2002) (holding that claims involving "[u]nderwriter fees, advisory fees, and other transactions costs . . . [are] precisely the type of injury to the corporation that can be

redressed . . . only through a [derivative] suit"); *see also Green*, 186 F.R.D. at 489-90; *In re Merrill Lynch & Co.*, 272 F. Supp. 2d at 259-61; *Rohrbaugh*, 2002 WL 31100821, at *6-7.

### B.    Plaintiffs Fail To Allege Demand Or Demand Futility

Rule 23.1 requires that "[t]he complaint . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. Proc. 23.1.[5] Rule 23.1 is "vigorously enforced" in the First Circuit. *Grossman v. Johnson*, 674 F.2d 115, 123 (1st Cir. 1982); *Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977). Whether demand may be excused as futile is governed by the law of the state where the fund is organized or incorporated. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991).

### 1.    Massachusetts Law Requires Demand In All Derivative Cases

In November 2003, the Massachusetts legislature enacted a <u>universal</u> demand statute which became effective on July 1, 2004, and thus applies in this case. *See* Mass. Gen. Laws ch. 156D, § 7.42 ("No shareholder may commence a derivative proceeding until . . . a written demand has been made upon the corporation to take suitable action. . . ."); *Demoulas v. Demoulas Super Mkts., Inc.*, 2004 WL 1895052, at *1 (Mass. Sup. Ct. Aug. 2, 2004); *ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005).[6]

The Complaint makes no allegation that Plaintiffs made a pre-suit demand upon the trustees. Since Massachusetts law <u>universally</u> requires a pre-suit demand, Plaintiffs' claims on

---

[5]    A pre-suit demand is not required for Plaintiffs' claims under Section 36(b) of the ICA. *Daily Income Fund v. Fox*, 464 U.S. 523, 542 (1984). Plaintiffs' Section 36(b) claims should be dismissed for the reasons discussed in Section IV of this memorandum.

[6]    The original complaints in this action were all filed after July 1, 2004: *Cohen*, No. 04-11704, filed August 2, 2004; *Osburn*, No. 04-11750, filed August 10, 2004; *Simmonds*, No. 04-11953, filed September 8, 2004; *Slicker*, No. 04-11760, filed August 11, 2004.

behalf of all the mutual funds issued by CAT (including the two mutual funds owned by the named Plaintiffs) and Columbia Funds Trusts I-XI must be dismissed.

### 2. Plaintiffs Fail To Allege Demand Futility Under Oregon Law

While the applicable Oregon statute does not require universal demand, it tracks Rule 23.1 in requiring a derivative plaintiff to either make demand or allege adequate grounds for excusing demand. Or. Rev. Stat. § 60.261(2) (2003). The Oregon Supreme Court requires a strict showing to excuse demand. A derivative plaintiff must "name the directors, show that they themselves are the guilty parties . . . or show such relationship to the guilty parties by blood, marriage, or business associations, or such other facts, as justify the conclusion that they will refuse to do their duty." *Baillie*, 166 P. at 971; *see also Sears v. Orchards Water Co.*, 236 P. 502, 503 (Or. 1925).

Plaintiffs have not adequately alleged why demand should be deemed futile as to those CFT registrants incorporated under Oregon law. Here, Plaintiffs simply allege in conclusory fashion that the all of the Trustees, apparently as a homogenous group, were "captive and controlled by the Investment Advisor Defendants" because they were often "employees or former employees . . . who served for indefinite terms at the pleasure of the Investment Adviser Defendants." (Compl., at ¶¶ 108, 170.)

This general allegation of "control" is insufficient to excuse demand. *Grossman*, 674 F.2d at 124 ("[A] majority of disinterested directors [under the ICA] negatives general allegations of control-by-the- adviser . . . ."); *In re Kaufman Mutual Fund Actions*, 479 F.2d 257, 264 (1st Cir. 1973) (same); *In re Stratus Computer, Inc. Sec. Litig.* 1992 WL 73555, at *9-10 (D. Mass Mar. 27, 1992) (demand not excused where plaintiffs alleged directors had business relationships with company insiders, participated in insider trading, and had knowledge of wrongful conduct); *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984) ("The shorthand shibboleth

of 'dominated and controlled directors' is insufficient."), *overruled in part on other grounds by*

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

Similarly, Plaintiffs' allegations regarding the receipt of trustees' fees, (Compl., at

¶¶ 175, 194, 197), are legally insufficient to render a trustee "interested" and excuse demand.  As

one court stated:

> [R]eceipt of director's fees does not suggest a conflict of interest.  If it did, every
> director who receives a director's fees would be biased.  Such a rule would
> eviscerate the rationale for *ever* making a demand and would strip Rule 23.1 of all
> meaning.  We refuse to assume that all directors who receive such fees have a
> conflict of interest.

*In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 271 (S.D.N.Y. 1986) (emphasis in

original); *see also Wexler v. Equitable Capital Mgmt. Corp.*, 1994 WL 48807, at *5 (S.D.N.Y.

Feb. 17, 1994) (holding allegation that disinterested directors "received compensation from the

company . . . insufficient to excuse shareholder demand"); *Grobow v. Perot*, 539 A.2d 180, 188

(Del. 1988) (holding that allegation that directors are paid for their services does not establish

financial interest), *overruled in part on other grounds by Brehm*, 746 A.2d 244; *Decker v.*

*Clausen*, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (rejecting allegation that directors'

receipt of "substantial salaries" excused demand).

Nor are allegations that the trustees may be sued for their conduct sufficient to excuse

demand.   *Grossman*, 674 F.2d at 124 ("Bare allegations of 'wrongful participation' or

'acquiescence' are not enough in this circuit."); *Heit*, 567 F.2d at 1162 ("Merely naming

disinterested directors as defendants does not allow the prosecutor of a derivative suit to avoid

his duty to make a demand on them."); *In re Stratus Computer*, 1992 WL 73555, at *10 and n.5

(conclusory allegations of director misconduct insufficient to excuse demand); *In re E. F.*

*Hutton*, 634 F. Supp. at 271; *ALI Principles of Corporate Governance*, § 1.23 comments

(director is not interested in considering a transaction that could result in his termination).

Nowhere does the Complaint detail specifically how any trustees, much less a *majority* of them, is interested. Plaintiffs fail to identify which trustees were allegedly interested, explain how each trustee was interested, or explain why certain trustees (and not others) were interested. Scattershot pleading like that employed here is insufficient as a matter of law. *Baillie*, 166 P. at 971; *see also Grossman*, 674 F.2d at 124 ("A proper excuse of control or domination calls for particularized allegations and specific facts . . . ."); *In re Kaufmann Mutual Fund Actions*, 479 F.2d at 263 (under Rule 23.1, "the 'particularity' must appear in the pleading itself; the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can establish a case").

### C.    Plaintiffs Lack Standing To Assert Derivative Claims On Behalf of Funds In Which They Are Not Shareholders

Rule 23.1 requires a derivative plaintiff to allege that he or she was a shareholder "at the time of the transaction of which the plaintiff complains," *i.e.,* that the plaintiff's ownership interest was contemporaneous with the misconduct alleged. Fed. R. Civ. Proc. 23.1. The plaintiff also must maintain his or her shareholder status throughout the pendency of the lawsuit. *See Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 767 (7th Cir. 1979); *Brambles USA, Inc. v. Blocker*, 731 F. Supp. 643, 648 (D. Del. 1990). Similarly, the right of action created by Section 36(b) of the ICA is expressly restricted to claims brought by "a security holder of such registered investment company on behalf of such company." 15 U.S.C. § 80a-35 (emphasis added).

These requirements are more than rules of pleading alone; they ensure that a derivative plaintiff has suffered an injury and has an interest in the outcome of the case. *Ensign Corp., S.A. v. Interlogic Trace, Inc.*, 1990 WL 213085, at *2 (S.D.N.Y. Dec. 19, 1990); *Pullman-Peabody Co. v. Jay Mfg. Co.*, 662 F. Supp. 32, 35-36 (D.N.J. 1986). It is the indirect injury sustained by a

shareholder by reason of his or her ownership interest in a corporation which confers standing upon a shareholder. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994).

Based upon the foregoing principles, numerous courts have held that a plaintiff who does not own shares in a mutual fund does not have standing to bring a derivative suit on behalf of the fund. *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732-37 (3d Cir. 1970); *In re Value Line Special Situations Fund Litig.*, 1974 WL 412, at *8-9 (S.D.N.Y. June 13, 1974); *Herman v. Steadman*, 50 F.R.D. 488, 489-90 (S.D.N.Y. 1970); *Weiner v. Winters*, 50 F.R.D. 306, 310-11 (S.D.N.Y. 1970); *Verrey v. Ellsworth*, 303 F. Supp. 497, 500 (S.D.N.Y. 1969). In this case, Plaintiffs allegedly own shares in only <u>two</u> of the mutual funds issued by only <u>one</u> Columbia registrant – CAT.

## II.    PLAINTIFFS DO NOT HAVE STANDING TO BRING CLASS CLAIMS ON BEHALF OF THE 79 NOMINALLY NAMED MUTUAL FUNDS THEY DO NOT OWN

Even assuming, *arguendo*, that the claims asserted in the Complaint are direct and not derivative in nature, the named Plaintiffs still must show that they have Article III standing for <u>each</u> claim they purport to bring. *See Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996); *Blum v. Yaretsky,* 457 U.S. 991, 999 (1982). The requirements of Article III are "inflexible and without exception," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998), and cannot be set aside "for the sake of convenience and efficiency." *Raines v. Byrd*, 521 U.S. 811, 820 (1997). In securities class actions, courts have taken special care to ensure that standing requirements are strictly met. *See, e.g., In re Bank of Boston Corp. Sec. Litig.,* 762 F. Supp. 1525, 1531 (D. Mass. 1991) ("Strict standing requirements are particularly important in the area of securities litigation to curb the risks of vexatious litigation and abuse of discovery.").

With respect to this Complaint, Plaintiffs lack standing to bring claims with respect to mutual funds that they never owned (all but two funds). *See Nenni v. Dean Witter Reynolds,*

*Inc.*, 1999 U.S. Dist. LEXIS 23351, at *5-6 (D. Mass. Sep. 29, 1999) (holding that the named plaintiff in a class action had standing only with respect to mutual funds he owned); *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 40-41 (D. Mass. 2003) (holding that there was no "requisite case or controversy" between class plaintiffs and funds they did not own); *Williams v. Bank One Corp.*, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003); *see also Kauffman*, 434 F.2d at 734. Moreover, virtually all of Plaintiffs' claims in this case are rooted in alleged misstatements and omissions in fund prospectuses regarding fees charged to funds. (Compl., at ¶¶ 139-153.) Plaintiffs have no standing to sue on account of alleged deficiencies in prospectuses for mutual funds that they never owned. *See Ramos v. Patrician Equities Corp.*, 765 F. Supp., 1196, 1199-1200 (S.D.N.Y. 1991).

Importantly, Article III standing requirements <u>cannot</u> be satisfied by statutory class certification procedures under Rule 23. *See Lewis*, 518 U.S. at 357 ("'That a suit may be a class action . . . adds nothing to the question of standing . . . .'") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). Class actions are not "somehow liberated from Article III jurisdictional requirements." *Central Wesleyan v. W.R. Grace & Co.,* 6 F.3d 177, 188 (4th Cir. 1993). Indeed, "class certification and Article III standing are separate and distinct issues," and the "proper approach" is to consider Article III standing first "regardless of whether the named plaintiff's injury is similar to that of the unnamed plaintiffs." *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169-71 (D. Mass. 2004) ("[T]he 'juridical links doctrine' is not relevant to the issue of standing." (internal quotations and citation omitted)); *see also Adair v. Sorenson*, 134 F.R.D. 13, 16 and n.3 (D. Mass. 1991) (stating that the issue of standing must be overcome before a court considers class certification, and that standing is assessed based on the standing of the named plaintiff and not the unidentified class members); *Nenni*, 1999 U.S.

Dist. LEXIS 23351, at *5-6 ("[A] named plaintiff cannot acquire standing [by bringing a class action] on behalf of others who would have had standing had they been named plaintiffs.").

The four named Plaintiffs allegedly own shares of only two mutual funds issued by CAT (Columbia Acorn Select Fund and Columbia Acorn Fund), and none of the mutual funds issued by any of the CFT registrants. (Compl., at ¶¶ 18-21.) Even assuming Plaintiffs' allegations of the misuse of fund assets could somehow be brought on behalf of a class, Plaintiffs suffered no loss or injury by reason of any alleged misuse of assets belonging to the 79 funds in which they own no interest, and therefore do not have standing to sue in connection with these 79 funds.

## III.   NO PRIVATE RIGHTS OF ACTION EXIST UNDER SECTIONS 34(b) AND 36(a) OF THE ICA

In Counts I and II, Plaintiffs allege that the Independent Trustee Defendants violated Sections 34(b) and 36(a) of the ICA.  15 U.S.C. §§ 80a-33(b), 80a-35(a).  Section 36(a) authorizes the SEC to bring an action for "breach of fiduciary duty involving personal misconduct" with respect to investment companies.  15 U.S.C. § 80a-35(a).  Section 36(a) does not grant any express right of action to private civil litigants.  *Id.*  Section 34(b) makes it unlawful for any person to make a false or misleading statement or omission in certain filings and records but, like Section 36(a), grants no express private right of action.  *See* 15 U.S.C. § 80a-33(b).  Therefore, for Plaintiffs to have an actionable claim under either of these sections, the Court must conclude that an implied private right of action exists.  Recent case authority has uniformly rejected such a finding.

The Supreme Court has held that in deciding whether an implied right of action exists, "what must ultimately be determined is whether Congress intended to create the private remedy asserted." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979) (holding that no implied private right of action for damages exists under Section 206 of the Investment

Advisers Act). In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court explained:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . . Statutory intent on this latter point is determinative. . . . Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Id.* at 286-87 (internal citations omitted); *accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-86 (2002) (no private right of action in absence of clear and convincing congressional intent evidenced in text and structure of statute).

Applying these principles, the Second Circuit has rejected the existence of private rights of action under several sections of the ICA. *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 436 (2d Cir. 2002) (no private right of action exists under Sections 26(f) and 27(i) of the ICA). Because "[n]o provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i)," the *Olmsted* Court held "we must presume that Congress did not intend one." *Id.* at 432.[7] The First Circuit also has noted that cases implying private rights prior to the "clarifying decisions" of *Sandoval* and *Gonzaga* lack "continued vitality." *Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81, 84 and 86 n.4 (1st Cir. 2004).

Applying the Second Circuit's rationale in *Olmsted*, the United States District Courts for the Central District of California and Eastern District of New York have recently held that there is no private right of action under Section 36(a). *Mutchka v. Harris*, 2005 WL 1414304, at *4-5 (C.D. Cal. June 8, 2005); *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, 2005 WL 195520, at *4

---

[7]  The plaintiffs in other mutual fund cases have argued that, simultaneously with its decision in *Olmsted*, the Second Circuit recognized an implied right of action under Section 36(a) in *Strougo*, 282 F.3d 162. This is clearly wrong. In *Strougo*, the Second Circuit reversed the dismissal of plaintiff's Section 36(a) claim without considering whether a private right of action exists under Section 36(a).

(E.D.N.Y. Jan. 21, 2005).[8]  Similarly, numerous courts have refused to find the existence of an

implied private right of action under Section 34(b).  *See, e.g., In re Merrill Lynch & Co.*, 272

F. Supp. 2d at 255-59; *In re Van Wagoner Funds, Inc.*, 2004 WL 2623972, at \*11-12 (N.D. Cal.

2004); *White v. Heartland High-Yield Mun. Bond Fund*, 237 F. Supp. 2d 982, 987-88 (E.D. Wis.

2002); *Dorchester Investors v. Peak Int'l Ltd.*, 134 F. Supp. 2d 569, 581 (S.D.N.Y. 2001).[9]

Moreover, in two recent opinions issued in mutual fund disputes, courts relied on the

Supreme Court's recent decision in *Exxon Mobil Corp.*, 125 S. Ct. 2611, 2625, in ruling that

statements of legislative intent were irrelevant to their determinations that a private right of

action did not exist under Section 36(a) of the ICA.  *Jacobs*, 2005 WL 1719307, at \*4-5 (*Exxon

Mobil* "teaches that even affirmative statements of specific intent in congressional committee

reports are impotent in the face of unambiguous statutory language" and "After *Exxon Mobil*,

---

[8]  On April 12, 2005, the court in *Chamberlain* vacated its earlier decision after a joint motion
by both parties as a precondition to settlement.  However, the court stated that granting the
motion to vacate did "not constitute a reconsideration of the merits of the case or a negation
of the substance of the previously issued Order; rather, the Motion is granted simply in order
to permit the parties to proceed to settlement."  *Chamberlain v. Aberdeen Asset Mgmt., Ltd.*,
2005 WL 1378757, at \*1 (E.D.N.Y. Apr. 12, 2005).

[9]  Prior to *Olmsted*, a number of courts had found implied rights of action under Section 36(a)
and other sections of the ICA.  In *Olmsted*, however, the Second Circuit observed that these
decisions are inconsistent with the analysis now mandated by the Supreme Court.  *Olmsted*,
283 F.3d at 434 ("Past decisions reflecting judicial willingness to 'make effective [statutory]
purpose' in the context of implied rights of action belong to an 'ancien regime.'" (quoting
*Sandoval*, 532 U.S. at 287)).  *Chamberlain* held that because *Olmsted* found the previous
Section 36(a) cases to be part of the *ancien regime*, "this Court is no longer bound to follow
[them]."  *Chamberlain*, 2005 WL 195520, at \*4; *see also meVC Draper Fisher Jurvetson
Fund I, Inc. v. Millennium Partners, L.P.*, 260 F. Supp. 2d 616, 621-25 (S.D.N.Y. 2003)
(after examining Section 12(d)(1)(A) of the ICA in light of *Olmsted*, holding that no private
right of action exists despite previous decisions to the contrary).  Last year, the First Circuit
vacated a district court decision on the ground that the statute at issue (the Medicaid Act) did
not confer a private right of action.  *See Long Term Care Pharm. Alliance v. Ferguson*, 362
F.3d 50, 58-59 (1st Cir. 2004) (reversing its own 1996 decision and observing that "[i]f
*Gonzaga* had existed prior to [the 1996 decision], the panel could not have come to the same
result").

there is simply no room to imply a private right of action under Section 36(a)."); *Dull,* 2005 WL 1799270, at *3 (Because the language of Section 36(a) "is unambiguous, the Court need not look to the legislative history.").

In *Olmsted, Mutchka, Chamberlain,* and *In re Merrill Lynch & Co.,* the courts found it compelling that Congress had created an express right of action to challenge excessive management fees in Section 36(b) of the ICA. This is particularly compelling because Sections 36(b) and 36(a) are different subparts of the same statutory section. When Congress amended Section 36 in 1970, it created two subsections relating to the fiduciary duties of investment advisers. *See* Amendments to Investment Company Act of 1940, Pub. L. No. 91-547, 84 Stat. 1413 (1970). Section 36(b) expressly grants mutual fund shareholders the right to bring a derivative action in federal court to recover excessive fees charged to an investment company by its investment adviser. 15 U.S.C. § 80a-35(b). By contrast, in Section 36(a), Congress expressly stated that the SEC may bring the claim. 15 U.S.C. § 80a-35(a). The fact that Congress simultaneously enacted a different fiduciary duty provision granting an express private right of action under subsection (b) – without extending the same remedy to subsection (a) within the very same statutory section – confirms that Congress did not intend a private remedy for Section 36(a). Put simply, "if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)." *Chamberlain,* 2005 WL 195520, at *3. Similarly, "Congress had the opportunity to create a private cause of action under Section 34(b) in 1970 when it amended Section 36(b) to include such a right, but chose to forego such an addition." *In re Merrill Lynch & Co.,* 272 F. Supp. 2d at 258; *see also BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but

omits it in another." (internal quotations omitted)).  It is now clear that no private right of action exists under Sections 34(b) of 36(a) of the ICA.[10]

## IV.    PLAINTIFFS HAVE NOT STATED A VALID CLAIM UNDER SECTION 36(b)

### A.    Section 36(b) Does Not Apply to the Independent Trustee Defendants

In Count III, Plaintiffs purport to assert class claims against the Independent Trustee Defendants under Section 36(b) of the ICA.  Section 36(b) provides, in relevant part, that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser."  15 U.S.C. § 80a-35(b) (emphasis added).  Section 36(b)(3) further states that "[n]o such action shall be brought or maintained against any person other than the recipient of such compensation or payments." *Id.*

The text of Section 36(b) therefore allows actions only against recipients of fees paid to an investment adviser or its affiliates.  Thus, persons and entities not affiliated with investment advisers are not proper defendants in Section 36(b) actions. *See Daily Income Fund*, 464 U.S. at

---

[10]    The plaintiffs in other mutual fund cases have claimed that the Supreme Court's recent decision in *Jackson v. Birmingham Bd. of Educ.*, 125 S. Ct. 1497 (2005) somehow supports implied rights of action under Sections 34(b) and 36(a).  This is not the case.  In *Jackson*, the Supreme Court started with the premise that Title IX contained a private right of action for claims of sexual discrimination and then determined that claims of retaliation fell within the pre-existing right.  The Court stated:

We reach this result based on the statute's text.  In step with *Sandoval*, we hold that Title IX's private right of action encompasses suits for retaliation, because retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex.

*Id.* at 1508.  Thus, *Jackson* does not support the conclusion that legislative intent can trump or supplement the unambiguous language of a statute.

535 (Section 36(b) allows an action to be brought "against the adviser and other affiliated parties") (emphasis added); *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) (Section 36(b) "provides a private cause of action to a mutual fund investor, against the fund's investment adviser, for breach of fiduciary duty in respect of such compensation paid to the investment adviser") (emphasis added) (internal quotations omitted). As a matter of law, the Independent Trustee Defendants are neither "investment advisers" nor "affiliates" of investment advisers. *See Migdal*, 248 F.3d at 329 ("'Disinterested' directors are, *inter alia*, those directors who are not 'affiliated' with the fund's investment adviser.") (citing 15 U.S.C. §§ 80a-2(a)(19) & 80-2(a)(3)).

Moreover, the Complaint does not allege (nor could it) that any of the Trustee Defendants were paid fees for "performing the functions of an investment adviser" or in lieu of investment advisory fees paid directly to the adviser. *See* 15 U.S.C. § 80a-35(c);[11] *Green v. Fund Asset Mgmt., L.P.*, 147 F. Supp. 2d 318, 329-30 (D.N.J. 2001) (dismissing Section 36(b) claims against fund officers because such officers were not "recipients of compensation or payments" under the statute, even though officers received regular salary, *aff'd*, 286 F.3d 682 (3d Cir. 2002); *Jerozal v. Cash Reserve Mgmt., Inc.*, 1982 WL 1363, at *6 (S.D.N.Y. Aug. 10, 1982) (individual fund directors not liable under Section 36(b) in that they had not "received any portion of the advisory fees or payments" made to the investment advisor); *Cohen v. Fund Asset Mgmt., Inc.*, 1980 WL 1488, at *2-3 (S.D.N.Y. Mar. 31, 1980) (dismissing Section 36(b) claims against fund directors as they were not "recipients" of payment).

---

[11] *See also* S. Rep. No. 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4910-11 ("This provision affords a remedy if the investment adviser should try to evade liability by arranging for payments to be made not to the adviser itself but to an affiliated person of the adviser.").

The Independent Trustee Defendants did not allegedly "receive" any excess fees, whether for "investment advisory services" or otherwise. Accordingly, Count III should be dismissed.

## B.    Section 36(b) Does Not Provide a Remedy for Disclosure Claims

The gravaman of Plaintiffs' Complaint is that Defendants failed to disclose the fees at issue to funds investors. The Complaint repeatedly alleges that "Defendants purposefully omitted to disclose any of the improper excessive fees and commissions passed on to Plaintiffs and the other members of the class." (Compl., at ¶¶ 12, 16, 102-03, 117-23, 133, 139-53.) The principal captions in the Complaint relating to each of the fees at issue state "Material Omissions." (*Id.*, at ¶¶ 146, 148, 150, 152.) Plaintiffs highlight that the alleged "material omissions" are the very basis for <u>each</u> of their claims. (*Id.*, at ¶ 1; *see also id.*, at ¶ 102 ("Defendants Concealed Their Practices from Investors.").)

But Section 36(b) is concerned with <u>excessive fees</u>, not lack of disclosure, as the text of the statute makes clear:

> For purposes of [Section 36(b)], the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect <u>to receipt of compensation for services</u> . . . .

15 U.S.C. §80a-35(b) (emphasis added). Congress made clear that Section 36(b) was limited in scope and in purpose:

> [Section 36(b)] ... should not be taken as reflecting any finding by the committee that the present level of management fees is too high. <u>Its sole purpose is to specify the fiduciary duty of the investment adviser with respect to compensation</u>, and provide a mechanism for court enforcement of this duty.

S. Rep. No. 91-184, 1970 U.S.C.C.A.N. at 6 (emphasis added).

Consistent with the statute and the legislative intent underlying it, cases interpreting Section 36(b) have uniformly recognized its narrow scope. *See, e.g., Migdal*, 248 F. 3d at 328 ("Section 36(b) is sharply focused on the question of whether the fees themselves were

excessive."); *Mutchka*, 2005 WL 1414303, at * 3 ("Section 36(b) is limited in scope and only is meant to provide a cause of action against investment advisors who charge <u>excessive</u> fees.") (emphasis in original).  While the instant Complaint cites the *Gartenberg* case, (Compl., at ¶ 195), this is a failure to disclose case outside the narrow ambit of Section 36(b).

### C.    Plaintiffs Fail To State A Claim Under Section 36(b) of the ICA

In order to state a claim under Section 36(b), Plaintiffs are required to plead <u>facts</u> showing that the challenged fees are "'so disproportionately large that [they] bear no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.'" *Migdal*, 248 F.3d at 326 (quoting *Gartenberg v. Merrill Lynch Asset Mgmt. Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)); *see also Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 143 (3d Cir. 2002).  While Plaintiffs quote this very language from *Gartenberg* in the Complaint, (Compl., at ¶ 195), they fail to plead facts which, if proved, would demonstrate that the challenged fees were in fact so disproportionately large that they bore no reasonable relationship to the service rendered. *Migdal*, 248 F.3d at 326-28.[12]

As to the Rule 12b-1 fees, Plaintiffs simply allege that the fees did not benefit the Funds because any economies of scale created by the growth of the Funds ostensibly were not passed on to the shareholders, and that increased Fund size resulted in reduced liquidity and

---

[12]    Numerous district courts have granted motions to dismiss Section 36(b) claims on the same basis. *See, e.g., Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004) (dismissing Section 36(b) excessive fee claim where complaint contained no factual allegations "as to the *actual* fee negotiations or management and distribution services rendered by *these* defendants") (emphasis in original); *Levy v. Alliance Capital Mgmt. L.P.*, 1998 WL 744005, at *2-4 (S.D.N.Y. Oct. 26, 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999) (granting motion to dismiss a Section 36(b) claim because plaintiff "must allege facts that, if true, would support a claim that the fees at issue are excessive"); *Olesh v. Dreyfus Corp.*, 1995 WL 500491, at *19, 21 (E.D.N.Y. Aug. 8, 1995) (granting motion to dismiss Section 36(b) claim for failing to allege that the fee is so disproportionately large that it bears no reasonable relationship to the services rendered).

performance. (Compl., at ¶¶ 128-31.)  These allegations, however, do not challenge the 12b-1 fees with regard to the services rendered, but rather <u>the propriety of the fees themselves</u>.  Such allegations are not only insufficient to state a claim under Section 36(b), but are also overcome by the fact that 12b-1 fees are expressly permitted by Section 12 of the ICA and Rule 12b-1 itself.  *See* 15 U.S.C. § 80a-12(b); 17 C.F.R. § 270.12b-1.  As to the soft dollar and brokerage commission fees, Plaintiffs do not allege <u>any</u> facts regarding the services rendered or the fees charged by other mutual fund complexes.

Furthermore, Plaintiffs' soft dollar and brokerage commission claims are not cognizable under Section 36(b) because they do not allege that these fees were paid to the Investment Adviser Defendants or their affiliates.  Rather, Plaintiffs allege that the both types of fees were paid <u>by</u> the Investment Adviser Defendants <u>to third-party brokers</u>.  (Compl., at ¶¶ 2, 4, 12, 75-101, 114-115, 133-38.)  Indeed, the Complaint bizarrely focuses on conflicts of interest between brokers and their clients arising from receipt of these fees.  (*See id.*, at ¶ 4 ("material insurmountable conflicts of interest for brokers"), ¶ 102 ("pitting the financial interest of the broker against that of its clients"), ¶¶ 103, 133, 138.)  Put simply, "Section 36(b) is limited to cases where there was excessive compensation" paid to an investment adviser or its affiliates and does not create a "claim for general breach of fiduciary duty."  *Migdal*, 248 F.3d at 329; *Jacobs*, 2005 WL 1719307 at *7.  Accordingly, Plaintiffs fail to state a claim under Section 36(b).

## V.    PLAINTIFFS' COMMON LAW BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED

In addition to the reasons discussed in Sections I and II, *supra*, Counts VI and VIII should be dismissed because they both are violative of SLUSA and fail to state legally cognizable claims against the Independent Trustee Defendants.

### A.    SLUSA Preempts Plaintiffs' State Law Claims

Plaintiffs' various state-law claims should be dismissed under SLUSA, which prohibits not only the pursuit of securities fraud class action claims based on state law in state court, but also the pursuit of such claims in federal court. 15 U.S.C. § 78bb(f)(1). A claim comes within SLUSA's preemptive scope if it: (1) is brought as part of a "covered class action"; (2) purports to be based on state law; (3) accuses defendant of a misrepresentation or omission of a material fact (or the use of a manipulative or deceptive device); and (4) alleges that the conduct described in criterion (3) was "in connection with the purchase or sale" of a "covered security." *Id.*

In determining whether SLUSA applies, the prima facie elements for pleading a particular state-law cause of action are irrelevant. *See Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005); *Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 234-35 (D.N.J. 2000). Courts instead look behind labels to examine whether the "operative allegations" or the "gravamen" of the complaint hinge on a theory of misrepresentation or omission. *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002); *Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp. 2d 706, 709-10 (S.D.N.Y. 2003). The state-law claims asserted here have been held to be barred by SLUSA. *See Prager*, 124 F. Supp. 2d at 230 and 235 (breach of fiduciary duty, unjust enrichment); *Rowinski*, 398 F.3d at 297 and 305 (unjust enrichment).

Here, the first and second SLUSA elements indisputedly are met by the allegations in the Complaint. The questions, therefore, are: whether the state-law causes of action are premised on allegations of "misrepresentation or omission of a material fact" (or the use of a manipulative or deceptive device); and whether this conduct was "in connection with" the "purchase or sale" of the mutual fund shares.

### 1.    Plaintiffs' Claims are Premised Upon Deceptive Conduct

The state-law claims incorporate by reference paragraphs 1 through 177 of the Complaint. (Compl., at ¶¶ 221, 225). These allegations of "material omissions," "wrongfully obscuring" the value of benefits, and "failing to disclose" allegedly excessive fees and commissions fall squarely within SLUSA's requirement that Plaintiffs allege deceptive conduct. *See* 15 U.S.C. § 78bb(f)(1); *Kircher v. Putnam Funds Trust*, 403 F. 3d. 478 (7th Cir. 2005); *Rowinski*, 398 F.3d at 300 ("SLUSA preempts any covered class action 'alleging' a material misrepresentation or omission . . . ."); *Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*, 335 F.3d 800 803 (8th Cir. 2003) ("Because [the plaintiff's] negligence claim is essentially a securities fraud claim, SLUSA governs."), *cert. denied*, 540 U.S. 1162 (2004). Indeed, in paragraph one of the Complaint, Plaintiffs describe the "Nature of the Action" as follows:

> As a result of their material omissions and/or other conduct detailed below, Defendants are liable . . . for unjust enrichment; and for breaches of their fiduciary duties to a class . . . .

(Compl. ¶ 1).

Ridiculously, Plaintiffs attempt to avoid SLUSA simply by declaring, in one sentence in these counts, that they do not incorporate any allegations of "deception, misrepresentation or omission." (Compl., at ¶¶ 221, 225.) But courts have long rejected such artful pleading devices. *Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002) ("[I]f it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up."), *aff'd*, 353 F.3d 765 (9th Cir. 2003); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2002) (rebuffing the plaintiff's attempt to plead around SLUSA by "excis[ing] the allegations that the defendant engaged in fraudulent conduct" from breach of contract and unjust enrichment counts). Moreover, when state-law claims such as breach of fiduciary duty "become part of a

larger deception," as alleged here, the "allegations are sufficient to trigger SLUSA." *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 638-39 (S.D. Tex. 2003).

### 2.    The Conduct Alleged Was "In Connection With" the "Purchase or Sale" of the Mutual Fund Shares

Plaintiffs further attempt to avoid SLUSA by bringing their state-law claims on behalf of a class of purported holders of Columbia mutual funds. (Compl., at ¶¶ 1, 163)  However, many courts have held that holders (in addition to purchasers) fall "squarely" within SLUSA. *See Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (7th Cir. 2005) (finding state-law holders' claims to be connected to plaintiffs' own purchases of securities and thus preempted by SLUSA); *Rowinski*, 398 F. 3d at 303 (holding that claims brought on behalf of both holders and purchasers were "squarely preempted under SLUSA"); *Prof'l Mgmt. Assocs.*, 335 F.3d at 803 (finding class of persons who "brought and held" shares to be "squarely within SLUSA's parameters").  That is because SLUSA preempts both purchaser and holder claims.

Moreover, Plaintiffs' class definition broadly includes "all persons who held one or more shares or ownership units of Columbia Funds, during the period August 2, 1999 to March 22, 2004, inclusive." (Compl., at ¶¶ 1, 163).  By definition, many of these individuals purchased their shares, or participated in dividend reinvestment, during that 4 ½ year period triggering SLUSA. *Kircher*, 403 F.3d at 482; *Rowinski*, 398 F.3d at 303; *Deutschman v. Beneficial Corp.*, 761 F. Supp. 1080, 1087 (D. Del. 1991).  Finally, the Supreme Court has held that the "in connection with" requirement is satisfied where the purchases or sales merely "coincide" with the alleged fraud. *SEC v. Zandford*, 535 U.S. 813, 820, 822 (2002); *see also, Rowinski*, 398 F.3d at 301 ("courts applying SLUSA generally have adhered to a broad interpretation of the 'in connection' element").  Thus, the state-law claims here satisfy all of the elements for SLUSA preemption and, accordingly, must be dismissed.

**B.     Plaintiffs Fail To State Viable State Law**
**Claims Against the Independent Trustee Defendants**

The particularity requirement of Rule 9(b) "extends to averments of fraud or mistake, whatever may be the theory of legal duty—statutory, tort, contractual, or fiduciary." *In re Stratus Computer*, 1992 WL 73555, at *7 (D. Mass. Mar. 27, 1992). Plaintiffs' breach of fiduciary duty claims sound in fraud in that they allege that the Independent Trustee Defendants "knowingly and recklessly" permitted the Investment Adviser Defendants to engage in the alleged wrongful conduct. (Compl. ¶¶ 4, 41-43, 48, 76-78, 101 and 103.) Plaintiffs therefore must comply with Rule 9(b).

The Complaint here references the Independent Trustee Defendants in collective terms and does not specify which of the Independent Trustee Defendants performed specific acts that might constitute a breach of fiduciary duty. Such "[v]ague allegations of participation [and] knowledge" are insufficient to meet the requirements of Rule 9(b). *Id.* at *7-8. These pleading requirements are critical because, *inter alia*, both Massachusetts and Oregon have codified the Business Judgment Rule. Under the Business Judgment Rule, a director who performs his duties "in good faith and in a manner he reasonably believes to be in the best interests of the corporation," and with "such care as an ordinarily prudent person in a like position would use under similar circumstances," is entitled to a complete defense to any claim brought against him. Mass. Gen. Laws ch. 156B, § 65 (2005); Or. Rev. Stat. § 60.357 (2003). The Rule imposes a presumption of validity on director actions, and thus the <u>initial burden</u> rests with Plaintiffs to demonstrate that the directors were not in fact independent or disinterested but, rather, acted improperly. *Harhen v. Brown*, 431 Mass. 838, 844-47, 730 N.E.2d 859, 865-67 (2000); *Baillie*, 166 P. at 970-71.

C.    **The Independent Trustee Defendants Do Not**
      **Owe Fiduciary Duties To Plaintiff Shareholders**

It is clear that the Independent Trustee Defendants have no fiduciary relationship with Plaintiffs that is implicated by the allegations of the Complaint. The fiduciary duty on which Plaintiffs base their claims is owed to the registered investment companies, not the individual shareholders. *Cigal v. Leader Dev. Corp.*, 408 Mass. 212, 219, 557 N.E.2d 1119, 1123 (1990); *Jernberg v. Mann*, 358 F.3d 131, 136 (1st Cir. 2004) (directors "do not occupy a [ ] trust relationship toward individual stockholders") (citing *Goodwin v. Agassiz*, 283 Mass. 358, 186 N.E. 659 (1933)); *Loewen*, 882 P.2d at 228-30.[13] The Independent Trustee Defendants are not fiduciaries of Plaintiffs, *Jernberg*, 358 F.3d at 136, and without such a fiduciary relationship, Plaintiffs cannot allege a claim for breach of fiduciary duty.[14] Any such duties are owed to the entity and must be enforced derivatively. *Id.* at 137; *see also Blasberg*, 934 F. Supp. at 26 (a direct action requires that a duty be owed "directly to the plaintiff independent of the plaintiff's status as a shareholder").

D.    **Plaintiffs' Unjust Enrichment Claim is Properly Dismissed**

In order to bring an unjust enrichment claim, plaintiffs must show "the absence of a remedy provided by law." *Micromuse, Inc. v. Micromuse PLC*, 304 F. Supp. 2d 202, 209 n.8 (D.

---

[13]    Under Massachusetts' choice of law rules, the law of the state of incorporation governs matters relating to the internal affairs of a business entity, including the fiduciary duties of directors. *Harrison v. Netcentric Corp.*, 433 Mass. 465, 470, 744 N.E.2d 622, 628 (2001).

[14]    The *Jernberg* court stated that, under Massachusetts law, "[a] director or officer of a corporation does not occupy a fiduciary relation to individual stockholders" because "their fiduciary obligations arise from and are bounded by the corporation relationship." *Jernberg*, 358 F.3d at 135 (Emphasis added). The court further held: "directors and officers . . . do not occupy a [ ] trust relationship toward individual stockholders in the corporation" as the Massachusetts Supreme Judicial Court has "stated quite specifically that the same duty of trust and strict good faith owed by directors and officers to the corporation itself did not extend from them to the individual stockholders." *Id.* at 137 (citing *Goodwin*, 283 Mass. at 360) (emphasis in original).

Mass. 2004); *One Wheeler Road Assocs. V. Foxboro Co.*, 843 F. Supp. 792, 799 (D. Mass. 1994). Plaintiffs cannot grasp onto this claim simply because they failed to plead correctly other claims that may (if properly pleaded) provide an adequate remedy at law.   For example, derivative claims may exist against some parties under the law. Plaintiffs' failure and refusal to plead those claims, and to comply with the legal requirements attendant thereto, does not somehow establish the basis for an unjust enrichment claim.

**CONCLUSION**

For all of the foregoing reasons, the Independent Trustee Defendants respectfully request that the Court dismiss Counts I, II, III VII and VIII of the Consolidated Amended Complaint as against the Independent Trustee Defendants *with prejudice*, and for such other relief as the Court deems appropriate.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), the Independent Trustee Defendants respectfully request oral argument on their motion.

Dated:  August 5th, 2005

Respectfully Submitted,

THE INDEPENDENT
TRUSTEE DEFENDANTS

By: _____
Timothy O. Egan (BBO# 637992)
Peabody & Arnold LLP
50 Rowes Wharf
Boston, MA   02110
Telephone:  (617) 951-2100
Facsimile:  (617) 951-2125

and

Kenneth E. Rechtoris
Daniel J. Hayes
Todd E. Pentecost
Bell, Boyd & Lloyd LLC
70 West Madison Street, Suite 3100
Chicago, IL   60602-4207
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

Attorneys for the Independent
Trustee Defendants

## CERTIFICATE OF SERVICE

I, Timothy O. Egan, hereby certify that a true copy of the above document was served upon the attorney of record for each other party not identified on the Notice of Electronic Filing as an electronic recipient by mail on August 5th, 2005.

_____
Timothy O. Egan