UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE COLUMBIA ENTITIES LITIGATION ) | Civil Action No. 04-cv-11704-REK |
| ) | |
| This Document Relates To: ) | Judge Robert E. Keeton |
| ALL CASES ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF THE
<u>INDEPENDENT TRUSTEE DEFENDANTS' MOTION TO DISMISS</u>**

The Independent Trustee Defendants, by their attorneys, respectfully submit this reply memorandum in support of their motion to dismiss Counts I, II, III, VII and VIII of the Consolidated Amended Complaint (the "Complaint" or "Compl.").

**PRELIMINARY STATEMENT**

Plaintiffs have filed an Opposition to Defendants' Motions to Dismiss (the "Opposition" or "Opp.") and two memoranda directed to class certification and discovery issues.[1] In these documents, Plaintiffs effectively concede that the only *potentially* viable legal claim in their Complaint arises under Section 36(b) of the Investment Company Act of 1940 (the "ICA").[2] Indeed, the recent excessive fees cases cited and relied upon by Plaintiffs (which were brought by some of the same Plaintiffs' counsel and involve virtually identical allegations as here against

---

[1] On October 11, 2005, Plaintiffs filed a "Memorandum of Law in Support of Motion for Entry of Plaintiffs' Proposed Schedule for Class Certification and Commencement of Discovery" (the "Class Certification Memorandum"), and on October 25, 2005, Plaintiffs filed "Plaintiffs' Opposition to Defendants' Motion for Stay of Class and Other Discovery" (the "Opposition to Stay").

[2] Although, as discussed *infra* at pages 4-9, any Section 36(b) claim must be brought derivatively (not as a direct claim) and only against the recipient of allegedly excessive fees (not the Independent Trustee Defendants). Virtually every case cited by *Plaintiffs* in their memoranda involve situations where either mutual fund trustees were *not* named as defendants or the Section 36(b) claim *against the trustees* was dismissed for failure to state a claim. *See, e.g., AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *6-7 (S.D.N.Y. Oct. 19, 2005) ("*Alliance*") (cited in Opposition to Stay at pp. 6, 9).

other mutual fund families) uniformly reject *each and every one* of the claims Plaintiffs have alleged here *against the Independent Trustees Defendants*.

For example, in *In re Eaton Vance Mutual Funds Fee Litigation*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005) ("*Eaton Vance*"), cited by Plaintiffs, the court held that: (1) the plaintiffs' claims for the "misuse of [funds] assets to provide excessive compensation to brokers, improper 12b-1 plans, and soft dollar compensation to brokers" alleged only indirect injuries that must be asserted derivatively, *id.* at 233-36; (2) the mutual funds trustees could not be sued under Section 36(b) because they were not the recipients of the allegedly excessive fees, *id.* at 238; (3) there are no implied private rights of action under Sections 34(b) and 36(a) of the ICA, *id.* at 229-33; and (4) the plaintiffs' state law claims were preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(b), 78bb(f)(1). *Id.* at 240-42.

Similarly, in *In re Dreyfus Mutual Funds Fee Litigation*, No. 04-0128 (W.D. Pa. Sep. 28, 2005) ("*Dreyfus*"), highlighted throughout Plaintiffs' papers, the court held that: (1) the plaintiffs' Section 36(b) claim against the mutual fund trustees was "not legally cognizable" because, as here, there were no allegations that the trustees' salaries "were used as a way to divert, disguise, or launder advisory compensation," *id.* at pp. 18-21; (2) there are no implied private rights of action under Sections 34(b) and 36(a) of the ICA, *id.* at pp. 8-14; and (3) the plaintiffs' state law claims were preempted by SLUSA. *Id.* at pp. 27-31.

Plaintiffs also highlight the recent decision in *Alliance*, 2005 WL 2677753, where the court *dismissed* the Section 36(b) claim against the mutual fund trustees, rejecting the argument (as made here) that the trustees' "compensation" could be characterized as the receipt of advisory commissions. *Id.* at *6. The *Alliance* court further held that the "[p]laintiffs may not pursue Section 36(b) claims on behalf of the funds in which they do not own shares," *id.* at *10, and that

the plaintiffs' alleged injuries were indirect and must be brought derivatively. *Id.* at *4.

Likewise, in Plaintiffs' case *In re Franklin Mutual Funds Excessive Fee Litigation*, 2005 WL 2175950 (D.N.J., Sep. 9, 2005) ("*Franklin*"), the court rejected the very arguments that Plaintiffs make here and held that: (1) standing is "not a mere hurdle that can be cleared with the assistance of Rule 23" and cannot "be acquired through the back door of a class action," *id.* at *6; (2) "a § 36(b) action is undeniably derivative" and not direct in nature, *id.* at *13; (3) "all of plaintiffs' alleged injuries [were] derivative" and not direct in nature, *id.* at *8-10; (4) no implied private rights of action exist under Sections 34(b) and 36(a) of the ICA, *id.* at *10-13; and (5) the plaintiffs' state law claims were preempted under SLUSA. *Id.* at *16-19.

Finally, in Plaintiffs' lead case *In re Lord Abbett Mutual Funds Fee Litigation*, 2005 WL 2090517 (D.N.J. Aug. 30, 2005) ("*Lord Abbett*"), the court held that: (1) the alleged injury of "payment of excessive distribution and advisory fees out of fund assets" was derivative in nature; (2) state law claims of breach of fiduciary duty and unjust enrichment were preempted under SLUSA; and (3) no implied private rights of action exist under Sections 34(b) and 36(a) of the ICA. *Id.* (page reference unavailable).

Accordingly, the Court need go no further than **Plaintiffs' own cases** in dismissing all of their claims against the Independent Trustee Defendants. Indeed, Plaintiffs' Complaint is merely a "cut and pasted" copy of the complaints filed by many of the same Plaintiffs' counsel in the *Eaton Vance*, *Dreyfus*, *Alliance*, *Franklin* and *Lord Abbett* cases. Accordingly, the Independent Trustee Defendants should be dismissed **with prejudice** from this lawsuit.

## ARGUMENT

**I. PLAINTIFFS' CLAIM UNDER SECTION 36(b) OF THE ICA AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS FAILS AS A MATTER OF LAW**

**A. The Independent Trustee Defendants Are Not The <u>Alleged Recipients Of The Purportedly Excessive Fees</u>**

Plaintiffs' statement, without case citation, that "[i]t is irrelevant who the recipient of the improper fee is" (Pls.' Opp. at p. 28) is plainly wrong, and was again rejected in the recently decided *Alliance* case, 2005 WL 2677753, at *6-7, highlighted by Plaintiffs in their Opposition to Stay. As Plaintiffs' own cases emphasize, Section 36(b) addresses a "narrow area of concern" specifically focused on the ***recipient*** of fees paid to an investment adviser or its affiliates for advisory services. *See Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 805 (S.D.N.Y. 1997); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 (1984). The case law is legion in rejecting Section 36(b) claims against defendants that are neither the alleged recipients of the purportedly excessive fees nor "affiliates" of the adviser. *See Eaton Vance*, 380 F. Supp. 2d at 238; *Lieber v. Invesco Funds Group, Inc.*, 371 F. Supp. 2d 852, 855-56 (S.D. Tex. 2005); *Zucker v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 848-49 (S.D. Tex. 2005); *Green v. Fund Asset Mgmt., L.P.*, 147 F. Supp. 2d 318, 329-30 (D.N.J. 2005), *aff'd*, 286 F.3d 682 (3d Cir. 2002); *Jerozal v. Cash Reserve Mgmt., Inc.*, 1982 WL 1363, at *6 (S.D.N.Y. Aug. 10, 1982); *Cohen v. Fund Asset Mgmt., Inc.*, 1980 WL 1488, at *2-3 (S.D.N.Y. Mar. 31, 1980).

There are no cases to the contrary. Indeed, with one exception, none of the cases cited by Plaintiffs in opposing the dismissal of their Section 36(b) claim ***even named the mutual fund trustees as defendants***. *See Wicks v. Putnam Inv. Mgmt., LLC*, 2005 WL 705360 (D. Mass. Mar. 28, 2005); *Jones v. Harris Assocs., L.P.*, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005); *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76 (2d Cir. 1985); *Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861 (2d Cir. 1990); *Strigliabotti v. Franklin Res., Inc.*, 2005 WL 645529 (N.D. Cal.

Mar. 7, 2005); *Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 WL 190307 (S.D.N.Y. Aug. 26, 2004); *In re Mut. Funds Inv. Litig., In re Janus Subtrack*, 384 F. Supp. 2d 845 (D. Md. 2005).

The one exception where trustees were named as defendants is the *1977* case of *Halligan v. Standard & Poor's/Intercapital, Inc.*, 434 F. Supp. 1082 (E.D.N.Y. 1977), which nonetheless supports dismissal of the Independent Trustee Defendants under the instant allegations. In *Halligan*, the court cryptically ruled in a paragraph that the conclusory allegation that "[a]ll the defendants" had received advisory-related fees or compensation would survive dismissal. *Id.* at 1084. But, the *Halligan* court emphatically rejected the very argument that Plaintiffs make here to extend Section 36(b) liability to the Independent Trustee Defendants:

> Nevertheless, plaintiff is incorrect in arguing that liability under § 36(b) extends to all who receive compensation or payments for any activities involving the investment advisory contract.[3] In designing § 36(b) to combat excessive fees for investment advisers, Congress allowed shareholders of investment companies to track down those who received the excessive fees and to sue them to recover the excess. . . . The section must be ***narrowly*** read to mean that only those who receive money paid by the investment company ***for investment advisory services*** may be held liable for breach of their fiduciary duty with respect to such payments.

*Id.* at 1085 (emphasis added). Plaintiffs make no attempt in the Complaint to allege that the investment adviser attempted to evade liability by arranging for advisory fee payments to be made through an "affiliated person." *See Alliance,* 2005 WL 2677753, at *7. Indeed, as a matter of law, an independent trustee by definition is not an "affiliate" of an investment adviser. *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F. 3d 321, 329 (4th Cir. 2001) (citing 15 U.S.C. §§ 80a-2(a)(19) & 80-2(a)(3)).

Rather, in their Opposition, Plaintiffs posit the tenuous and circular argument that

---

[3] This is exactly what Plaintiffs are arguing in support of their Section 36(b) claim against the Independent Trustee Defendants – that the trustees' review and approval of the advisory contract should impose liability under Section 36(b). Once again, Plaintiffs' own case citations reject their arguments.

because the Independent Trustee Defendants received a salary for discharging their duties (which includes approving the advisory contract), they were, *ipso facto*, the recipients of "excessive" compensation for "advisory services." (Pls. Opp. at pp. 25-28.) This is patently absurd and would turn Section 36(b) on its head. This would mean that because mutual fund trustees are paid, they could be sued as a "fiduciary" under Section 36(b) for virtually any conduct which even tangentially related to the adviser or an advisory fee. Not surprisingly, Plaintiffs fail to cite a single case which supports their grossly expansive interpretation of Section 36(b). Plaintiffs do, however, cite case authority which ***squarely rejects*** their own argument. Indeed, in both *Dreyfus* and *Alliance*, the courts expressly rejected the argument that the mutual fund trustees indirectly received advisory compensation through their "high salaries" because the "[p]laintiffs' complaint contain[ed] no allegations that the [d]irectors' salaries were used as a way to divert, disguise, or launder advisory compensation." *Dreyfus*, at pp. 18-21; *Alliance* at *6, 7. Plaintiffs' Complaint here is similarly deficient in this regard.

***This is not a close call.*** All of the case precedent uniformly rejects, as a matter of law, Plaintiffs' attempt to allege a Section 36(b) claim against the Independent Trustee Defendants. Put simply, Section 36(b) is a "narrow federal remedy" that does not cover the general breach of fiduciary duty claims alleged here.[4] *See Migdal*, 248 F. 3d at 329; *Green v. Nuveen Advisory Corp.*, 295 F. 3d 738, 743-44 (7th Cir. 2002); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1024-25

---

[4] Plaintiffs cite *Fogel v. Chestnutt*, 533 F.2d 731 (2d Cir. 1975) ("*Fogel I*") in support of their assertion that "[t]he courts have broadly interpreted § 36(b) to apply whenever a designated recipient under § 36(b) receives a benefit from a breach of fiduciary duty." (Pls.' Opp. at pp. 22-23.) Yet, as clarified in the Second Circuit's opinion in the second appeal in that case ("*Fogel II*"), the *Fogel I* plaintiffs were suing under ***Section 36(a)*** of the ICA, not Section 36(b). 668 F.2d 100, 112 (2d Cir. 1981) ("The present action is not one 'for breach of fiduciary duty in respect of . . . compensation or payments . . . to which § 36(b) applies. It is rather for breach of the fiduciary duty to make a full disclosure to the independent directors . . . .'") As discussed *infra* at pages 10-11, the Supreme Court has since clarified the law so that it is now clear that an implied private right of action does not exist under Section 36(a).

(C.D. Cal. 2005); *Benak v. Alliance Cap. Mgmt L.P.*, 2004 WL 1459294 (D.N.J. Feb. 9, 2004).

### B. Section 36(b) Claims May Only Be Brought Derivatively

In their Opposition, Plaintiffs state that "[t]he Supreme Court has held that a § 36(b) claim is direct," citing *Daily Income Co. v. Fox*, 464 U.S. 523 (1984). (Pls.' Opp. at pp. 6-7.) Plaintiffs also argue that because mutual funds are a unique "pooling of investor assets," any injury to the funds "directly" injures investors. (*Id.*) As their own case authority instructs, however, Plaintiffs are wrong on both counts.[5]

The Supreme Court holding in the *Fox* case is simply that a suit brought under Section 36(b) is not a derivative action *for purposes of Rule 23.1*. 464 U.S. at 542. That is, there is no Rule 23.1 demand requirement for the "unique" and "unusual cause of action created by § 36(b)." *Id.* at 535-36. Rather, under Section 36(b), Congress provided the SEC and security holders with the right to bring suit "on behalf of" the funds. But, the right being enforced remains a "right of the corporation" enforced, as it was in *Fox* and *Kamen*, **derivatively**. *Id.* at 535 n. 11. As stated by the Supreme Court in *Fox*:

> The "on behalf" language in § 36(b) indicates only that the right asserted by a shareholder suing under the statute is a "right of the corporation"—a proposition confirmed by other aspects of the action: The fiduciary duty imposed on advisers by § 36(b) is owed to the company itself as well as its shareholders and any recovery obtained in a § 36(b) action will go to the company rather than the plaintiff. . . . *In this respect, a §36(b) action is undeniably "derivative" in the broad sense of that word.*

*Id.* (emphasis added) (internal citation omitted); *cf. Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002) ("Congress explicitly provided in §36(b) of the ICA for a private right of *derivative action* for investors in regulated investment companies alleging that the investment

---

[5] In fact, most of the cases cited in the Opposition, including the Supreme Court cases, involve Section 36(b) claims brought ***derivatively***. See *Fox*, 464 U.S. 523; *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991); *Fogel*, 533 F. 2d 731; *Halligan*, 434 F. Supp. 1082; *Jones*, 2005 WL 831301; *Pfeiffer*, 2004 WL 1903075; *Meyer*, 895 F. 2d 861.

advisers breached certain fiduciary duties.") (emphasis added).

The case of *Franklin*, 2005 WL 2175950, relied upon by Plaintiffs, is directly on point. Rejecting arguments similar to those made by Plaintiffs here, the *Franklin* court held as follows:

> To the extent that *Fox* distinguished a derivative claim under § 36(b) from a typical derivative claim, the Court did so to explain why Fed.R.Civ.P. 23.1 is inapplicable to § 36(b) actions. Thus, given the plain language of § 36(b) and the Supreme Court's elucidation of that provision in *Fox*, **only derivative claims may be maintained under § 36(b)**. . . . Plaintiffs argue that *Fox* stands for the proposition that "a plaintiff's right to sue under § 36(b) is primary because mutual funds themselves have no claim under § 36(b)" . . . Plaintiffs, however, misconstrue *Fox*. Although shareholders do have a right to sue under § 36(b), and funds do not, that does not constrain or shed light on the nature of the claims that a shareholder may bring under § 36(b). **As stated in Fox, a § 36(b) action is undeniably derivative**.

2005 WL 2175950, at *13 (internal citations omitted and emphasis added); s*ee also Lord Abbett*, 2005 WL 2090517 ("To the extent that *Fox* distinguished a derivative claim under Section 36(b) from a typical derivative claim, the Court did so merely to explain why Rule 23.1 is inapplicable to Section 36(b) actions. . . . Plaintiffs' Section 36(b) claim must be pleaded as a derivative (not a direct) claim.") (page reference unavailable).[6]

The *Franklin* court similarly rejected Plaintiffs' argument that their "injuries are direct because mutual funds have a unique structure." *Id.* at *8-9. Rather, the court held "that all of plaintiffs' alleged injuries are derivative," reasoning that "[b]ecause the excessive fees and charges reduced the net asset value of the funds and, in turn, reduced the net asset per share value, the plaintiffs did not sustain an injury distinct from that suffered by the funds." *Id.* at *9.

---

[6] In the MDL market timing litigation, Judge Motz did ***not*** rule on whether a Section 36(b) claim could be brought directly through a class action. Judge Motz stated as follows: "A Section 36(b) claim has also been asserted in the parallel derivative actions, and there is a dispute among the different groups of plaintiffs as to which of them has the right to pursue the claim. ***That dispute will be resolved at a later stage of this litigation***." *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 867 n.22 (emphasis added).

Finally, Plaintiffs' citation to *Strigliabotti*, 2005 WL 645529, is unavailing. (Pls.' Opp. at p. 7.) *Strigliabotti* does not cite any applicable case law in reaching its holding that a direct action may proceed based on the "unique structure of mutual funds." Moreover, the court's reasoning in *Strigliabotti* is directly at odds with the overwhelming majority of the courts who have addressed this issue. *See, e.g., Hogan v. Baker*, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005). Indeed, another California district court, applying Massachusetts law, ruled after *Strigliabotti* that Plaintiffs' "unique structure of mutual funds" argument was unconvincing and should be rejected. *Mutchka*, 373 F. Supp. 2d at 1027-28.

### C.    Plaintiffs Fail To Plead Facts Showing That The Disputed Fees Were Disproportionate To The Services Rendered

In order to state a claim under Section 36(b), Plaintiffs are required to allege "specific facts that would provide a factual basis for an allegation that the fees were 'so disproportionately large' that they bore 'no reasonable relationship' to the services rendered and could not have been the product of arm's-length bargaining." *Eaton Vance*, 380 F. Supp. 2d at 237 (quoting *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)). Like the complaint in *Eaton Vance*, Plaintiffs' Complaint contains no allegations regarding the services rendered; instead, it asserts in conclusory fashion that the disputed fees were excessive merely because they were used for "improper purposes." At least two other courts have held that these allegations are legally insufficient to state a claim under Section 36(b). *Eaton Vance*, 380 F. Supp. 2d at 237-38; *In re Davis Selected Mut. Funds Litig.*, 2005 WL 2509732, at *3 (S.D.N.Y. Oct. 11, 2005) ("*Davis*").

To escape their obvious pleading deficiencies, Plaintiffs now argue in revisionist form that their case is really about economies of scale rather than (as pled in the Complaint) Rule 12b-1 fees, soft dollars and brokerage commissions. Plaintiffs recast their claims in order to fit

within the reasoning of the courts in *Wicks* and *Jones*. (Pls.' Opp. at pp. 8-14.) Yet, Plaintiffs' Complaint is nothing like those in *Wicks* and *Jones*. Indeed, those cases alleged that the ***advisory fees***, not Rule 12b-1 fees, soft dollars and brokerage commissions, were excessive. *Wicks*, 2005 WL 831301, at *1; *Jones*, 2005 WL 705360, at *1. Also, unlike here, the complaints in those cases specifically alleged that the advisory fees were excessive because the mutual funds were paying many times more for identical advisory services than other investors, such as institutional accounts. *Wicks*, 2005 WL 831301, at *1; *Jones*, 2005 WL 705360, at *1. Plaintiffs cannot use their legal memoranda to recast the allegations of their Complaint.

## II. IT IS NOW WELL ESTABLISHED THAT THERE ARE NO IMPLIED PRIVATE RIGHTS OF ACTION UNDER SECTIONS 34(b) AND 36(a) OF THE ICA

Not one court has found an implied private right of action to exist under either Section 34(b) or 36(a) of the ICA since the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001). To the contrary, ***every single court*** to consider these issues after *Sandoval* (including those who have considered the same allegations made in this case against other mutual fund families) has rejected the pre-*Sandoval* decisions cited by Plaintiffs in the Opposition as belonging to an *ancien regime* that is no longer good law. *See Eaton Vance*, 380 F. Supp. 2d at 230-34; *Franklin*, 2005 WL 2175950, at *10-13; *Lord Abbett*, 2005 WL 2090517 (page reference unavailable); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 868-870; *Mutchka*, 373 F. Supp. 2d at 1025-27; *Davis*, 2005 WL 2509732, at *2.

Plaintiffs' argument "that the Supreme Court's recent decision in *Jackson v. Birmingham Board of Education*, 125 S. Ct. 1497 (2005), undercuts *Sandoval* and supports their position" was squarely rejected by Judge Motz in the MDL market timing litigation. *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 868 n. 24. Judge Motz correctly observed that the Supreme Court in *Jackson* merely interpreted the ***pre-existing*** private right of action under Title IX to include

claims for retaliation and that *Jackson* accordingly "does not alter the Court's emphasis on statutory text." *Id.* Similarly, Plaintiffs' argument that the Second Circuit held that an implied private right of action exists under Section 36(a) in *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), has been specifically rejected by several district courts within that circuit. *Chamberlain*, 2005 WL 195520, at *4 (lists the district court's opinion in *Strougo* "as one of the cases representing the *ancien regime*"); *Eaton Vance*, 380 F. Supp. 2d at 232 (observing that the *Strougo* opinion merely assumed that an implied private right of action existed under Section 36(a) without discussion).

This Court should join every other court to address these issues after *Sandoval* and find that no implied private rights of action exist under Sections 34(b) and 36(a) of the ICA.

### III. PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY RULE 23.1, PREEMPTED BY SLUSA AND OTHERWISE FAIL TO STATE CLAIMS AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS

#### A. Plaintiffs' Claims Are Derivative In Nature And Should Be Dismissed For Failure To Comply With The Demand Requirements Of Federal And State Law

As several courts have already held, Plaintiffs' claims do not allege an injury distinct from that suffered by shareholders generally, and therefore they are derivative in nature under state law. *Eaton Vance*, 380 F. Supp. 2d at 233-36; *Davis*, 2005 WL 2509732, at *4; *Franklin*, 2005 WL 2175950, at *8-10. As the court explained in *Eaton Vance*:

> [The plaintiffs] assert that the defendants improperly managed the Eaton Vance Funds, using assets and fees paid to the Funds improperly. In general, a complaint alleging mismanagement or wrongdoing on the part of corporate officers or directors normally states a claim of wrong to the corporation: the action, therefore, is properly derivative. . . . *Moreover, the injury asserted – the misuse of Eaton Vance Funds' assets to provide excessive compensation to brokers, improper 12b-1 plans, and soft dollar compensation to brokers – is an injury to the Eaton Vance Funds that adversely affects the plaintiffs only indirectly through their status as investors in the Eaton Vance Funds. The plaintiffs are damaged indirectly because the assets of the Funds are reduced.*

380 F. Supp. 2d at 235 (internal quotations and citation omitted) (emphasis added). Plaintiffs are alleging exactly the same indirect injury in the instant Complaint.

Plaintiffs attempt to avoid this conclusion by citing the "unique structure of mutual funds" reasoning set forth in *Strigliabotti*. But, that reasoning is directly at odds with the overwhelming majority of the Courts who have addressed this issue. *See, e.g., Hogan*, 2005 WL 1949476, at *4. Plaintiffs also cite *Strougo*, 282 F.3d 162, to argue that a claim for dilution in the "net equity value" of mutual fund shares is direct. (Pls.' Opp. at pp. 53-54.) However, the Complaint here alleges that Plaintiffs were injured by the use of fund assets to pay the purportedly excessive fees, (*see, e.g.,* Compl. ¶¶ 82, 108, 111, 113), injuries held to be derivative in nature in *Strougo*. 282 F.3d at 174 ("Underwriter fees, advisory fees and other transaction costs incurred by a corporation decrease share price primarily because they deplete the corporation's assets, precisely the type of injury to the corporation that can be redressed . . . only through a suit brought on behalf of the corporation.").

Plaintiffs' argument that their claims are direct because they involve their "contractual rights" as shareholders also misses the mark. The phrase "contractual right of shareholders" in the case law refers to a right created by and connected with a plaintiff's ***status as a shareholder, such as the right to vote his or her shares***. *See Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (Massachusetts law); *Loewen v. Galligan*, 882 P.2d 104, 111-12 (Or. Ct. App. 1994). This case does not involve any of Plaintiffs' ***shareholder*** rights. Accordingly, *Baum v. Investors Diversified Servs., Inc.*, 409 F.2d 872 (7th Cir. 1969) and the Massachusetts statutes cited by Plaintiffs simply have no bearing on whether their claims are direct or derivative in nature.[7]

---

[7] Additionally, it must be noted that even if Mass. Gen. Laws Ch. 182, § 5A had any relevance to this inquiry, it is not the business trusts that are providing the investment

Finally, Plaintiffs' argument that a direct action is necessary because any derivative recovery "would go solely to the Funds" thereby benefiting current shareholders rather than "those who were Fund shareholders during the wrongdoing," (Pls.' Opp. at p. 58 n.46), is irrelevant as that is true in *all* derivative actions. The legal analysis of the courts focuses on the type of injury alleged – direct or indirect – without regard to whether former shareholders, as opposed to current shareholders, would potentially benefit from any potential recovery. *See, e.g., Eaton Vance*, 380 F. Supp. 2d at 233-36; *Davis*, 2005 WL 2509732, at *4; *Franklin*, 2005 WL 2175950, at *8-10.

Since Plaintiffs' claims are derivative in nature, they must comply with the demand requirements of Rule 23.1 and state law. Plaintiffs' arguments for why the Massachusetts universal demand statute should not apply in this case are frivolous. **Plaintiffs' own case**, *ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163 (D. Mass. 2005), rejects their argument that the universal demand statute only applies to corporations and not business trusts. 369 F. Supp. 2d at 171. *ING* is in accord with other case law applying Massachusetts corporations law to business trusts. *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 489 n.2 (N.D. Ill. 1999). *ING* also refutes Plaintiffs' argument that the Massachusetts common law of demand futility survived the enactment of the universal demand statute. 369 F. Supp. 2d at 170. As stated by Judge Tauro in *ING*, since the effective date of the statute (i.e., July 1, 2004), demand is required in *all* derivative cases – "***There are no exceptions***." *Id.* (emphasis added).

Although Oregon law does not require universal demand (as to the 15 funds named in the Complaint that are incorporated under Oregon law), Plaintiffs' Complaint fails to allege adequate reasons for excusing demand as futile. As set forth in the Independent Trustee Defendants'

---

advisory services, but rather the investment advisers. Investment advisers perform services pursuant to investment advisory *contracts* and thus are not "employees" of the trusts.

opening brief, each of the allegations cited by Plaintiffs in their Opposition has been held to be insufficient to excuse demand as a matter of law. (*See* Indep. Trustee Defs.' Memo. in Support of Mot. to Dismiss at pp. 10-12.) Plaintiffs' *Alliance* case also rejects their demand futility allegations as legally insufficient. 2005 WL 2677753 at *7, 8. While Plaintiffs insist that their allegations must not be taken "in isolation," but must be considered together, (Pls.' Opp. at p. 74), they fail to address the numerous cases cited by Defendants in which the courts found that ***all*** of their allegations, taken together, were insufficient to excuse demand. *See, e.g., Grossman v. Johnson*, 674 F.2d 115, 124 (1st Cir. 1982); *In re Stratus Computer, Inc. Sec. Litig.*, 1992 WL 73555, at *9-10 (D. Mass. Mar. 27, 1992). At bottom, the courts have routinely rejected as legally insufficient the identical demand futility allegations made here by Plaintiffs.

### B. Plaintiffs' Excessive Fees Allegations Are Preempted By SLUSA

To quote Plaintiffs' case of *Franklin*, "even assuming *arguendo* that plaintiffs' claims are properly pleaded as direct claims, they still must be dismissed, only this time as preempted under [SLUSA]." 2005 WL 2175950, at *16. Plaintiffs' Complaint alleges claims similar to those at issue in *Franklin*, wherein "[p]laintiffs' state law claims alleged that defendants engaged in a fraudulent scheme, the purpose of which was to push investors into mutual funds in order to increase fees and other charges, thereby injuring shareholders." *Id.* at *18. "[T]he only way for this scheme to succeed ***was for investors to purchase securities*** (shares of the defendant mutual funds) . . . [and] [t]hus, defendants' fraudulent scheme necessarily 'coincided' with the purchase of securities." *Id.,* (citing *Rowinski v. Salomon Smith Barney*, 398 F. 3d 294, 302 (3d Cir. 2005)) (emphasis added).

Similarly, in Plaintiffs' case *Dreyfus*, the court ruled that the excessive fees allegations ***coincided*** with the purchase or sale of securities and thus were preempted. *Id.* at p. 30. As is the

case here, the *Dreyfus* case reasoned that "[t]he whole purpose and effect of the alleged schemes was to boost sales of the Dreyfus funds in order to increase commissions, fees, and charges." *Id.* "Without a sale of a security, the scheme would have been an exercise in futility." *Id.* The Court in the *Lord Abbett* case reached the same conclusion. 2005 WL 2090517 (page reference unavailable) (internal citation omitted and emphasis added); *see also Eaton Vance*, 380 F. Supp. 2d at 241.

Both the *Dreyfus* and *Franklin* courts squarely rejected as a "name game" Plaintiffs' principal argument that the Complaint restricts its class definition to "holders" of securities. *See Dreyfus*, at p. 29; *Franklin*, 2005 WL 2175950, at *18. "[T]he fact that a plaintiff calls its case a 'holder class action' does not make it so." *Dreyfus*, at p. 29; *see also Franklin*, 2005 WL 2175950, at *18. These cases make it clear that SLUSA preemption applies even where, as here, "the plaintiff forswears damages from the purchase and seeks only 'holding damages.'" *Eaton Vance*, 380 F. Supp. at 241 (internal quotations and citation omitted); *accord Lord Abbett*, 2005 WL 2090517 (page reference unavailable).

Plaintiffs' Complaint alleges that the Columbia prospectuses failed to disclose information regarding the funds' revenue sharing, directed brokerage, 12b-1 fees and soft dollars which affected investors when they decided whether to invest in the Columbia funds. (Compl. ¶¶ 1-2, 4, 75-78, 80-84, 114, 133, 137-53.) Plaintiffs' claim Defendants "duped" investors to buy their funds and Plaintiffs seek recovery of, *inter alia*, all unlawfully obtained fees and charges incurred in connection with the purchase of securities. (*Id.* at pp. 75-76.) Thus, it is crystal clear that Plaintiffs' state law claims, even if direct in nature, are preempted by SLUSA. *See Atencio v. Smith Barney, Citigroup, Inc.*, 2005 WL 267556, at *6 (S.D.N.Y. Feb. 2, 2005); *Kircher v. Putnam Funds Trust*, 403 F. 3d 478, 484 (7th Cir. 2005).

C. **Plaintiffs Fail To State A Claim Against The Independent Trustees**

Plaintiffs' Opposition fails to address the fundamental proposition of state law cited in the Independent Trustee Defendants' opening brief that "[a] director . . . of a corporation does not occupy a fiduciary relation to individual stockholders." *Jernberg v. Mann*, 358 F.3d 131, 135 (1st Cir. 2004) (Massachusetts law); *accord Loewen v. Galligan*, 882 P.2d 104, 228-30 (Or. Ct. App. 1994). Rather, Plaintiffs cite various statements by the SEC that mutual fund directors have general obligations to shareholders. Plaintiffs cannot plead a state law fiduciary duty claim by referring to SEC speeches and reports, or even the ICA. As a matter of Massachusetts and Oregon law, since mutual fund trustees do not owe any fiduciary duties directly to shareholders, Plaintiffs cannot state a claim for common law breach of fiduciary duty.[8] *Jernberg*, 358 F.3d at 135; *Loewen*, 882 P.2d at 228-30.

Likewise, Plaintiffs cannot state a claim for unjust enrichment by simply concluding that Defendants have "retained a benefit" belonging to shareholders. (Pls.' Opp. at p. 89.) To bring this equitable claim, Plaintiffs must show "the absence of a remedy provided at law." *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 2004 WL 344425, at *3 n.6 (D. Mass. Feb. 24, 2004). Plaintiffs' Complaint demonstrates the existence of adequate remedies at law. Indeed, Plaintiffs concede that their unjust enrichment claim is squarely based "on Defendants' breaches of fiduciary duty," or in other words, claims at law. (Pls.' Opp. at p. 89 n.69.) Thus, plaintiffs'

---

[8] Plaintiffs argue that Rule 9(b) does not apply to their breach of fiduciary duty claim because they "have expressly disclaimed allegations of fraud or deception in the state claims." (Pls.' Opp. at p. 85 n.67.) As with SLUSA, Plaintiffs' labels are irrelevant and if the breach of fiduciary duty "derives from conduct that is fraudulent," Rule 9(b) applies. *In re Stratus Computer*, 1992 WL 73555, at *7 (D. Mass. Mar. 27, 1992). Both Plaintiffs' Complaint and their Opposition base their fiduciary duty claim on supposed breaches of purported duties of "good faith, loyalty, fair dealing, due care and candor." (Pls.' Opp. at p. 85.) A breach of such alleged duties sounds in fraud. Accordingly, Rule 9(b) applies and is another basis for the dismissal of Plaintiffs' breach of fiduciary duty claim.

claim for unjust enrichment should be dismissed.

IV. **PLAINTIFFS LACK ARTICLE III STANDING TO BRING VIRTUALLY ALL OF THEIR CLAIMS**

Under Article III, Plaintiffs must demonstrate that they have standing for each claim they purport to bring. *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982). Plaintiffs ignore *Lewis* and *Blum* and erroneously argue that they may assert claims on behalf of the 79 mutual funds they do not own under the class certification provisions of Rule 23. (Pls.' Opp. at pp. 31-35.) Rule 23, however, does not and cannot confer constitutional standing under Article III. *See Lewis*, 518 U.S. at 358 n.6 (constitutional standing under Article III is "separate from certification of the class"); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (distinguishing class certification under Rule 23 from constitutional standing under Article III); *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) ("[T]his Court cannot put aside the requirements of Article III simply because a plaintiff decides to file a motion seeking to represent a class."); *Adair v. Sorenson*, 134 F.R.D. 13, 16 n.3 (D. Mass. 1991) (cases addressing issue of "typicality" under Rule 23 do not address standing); 28 U.S.C. § 2072(b) (rules shall not abridge, enlarge or modify any substantive right); Fed. R. Civ. Proc. 82 (rules "shall not be construed to extend . . . the jurisdiction of the United States district courts").

Plaintiffs' *Alliance* case squarely holds that "[p]laintiffs may not pursue Section 36(b) claims on behalf of the Funds in which they do not own shares." 2005 WL 2677753, at *10. Plaintiffs' other cases principally address ***statutory standing*** under Rule 23 rather than constitutional standing under Article III. (Pls.' Opp. at pp. 31-35.) Those few cases that do address Article III, such as *Dreyfus*, do not contain any analysis and cannot be reconciled with the Supreme Court's holdings in *Lewis* and *Blum* or this Court's application of the principles

announced in those cases. *See Nenni v. Dean Witter Reynolds, Inc.*, 1999 U.S. Dist. LEXIS 23351, at *5-6 (D. Mass. Sep. 29, 1999) (holding that the named plaintiff in a class action had standing only with respect to mutual funds he owned); *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 40-41 (D. Mass. 2003) (holding that there was no "requisite case or controversy" between class plaintiffs and funds they did not own).[9]

Plaintiffs cannot use the so-called "juridical link" analysis to establish standing because that doctrine is applicable only to class certification, not Article III standing. *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. at 169-71 ("[T]he 'juridical links doctrine' is not relevant to the issues of standing." (internal quotations and citation omitted)); *Franklin* 2005 WL 217590, at *7 ("The juridical link doctrine has no bearing on standing; rather its place lies in a Rule 23 analysis.").

Plaintiffs' argument that they have standing because "[t]he Columbia Funds constitute an unincorporated association," (Pls.' Opp. at p. 48),[10] also fails because it is "a settled principle of Massachusetts law that an unincorporated association is not a separate entity and cannot be a

---

[9] Plaintiffs strongly criticize this Court's opinion in *Nenni* suggesting that it was wrongly decided because "no court has cited to *Nenni* with approval." (Pls.' Opp. at p. 35 n.29.) Contrary to Plaintiffs' self-serving argument, however, this Court in *Nenni* did not "improperly view[] the issue of whether plaintiff could bring an action on behalf of other funds as a standing issue, rather than one of typicality." (*Id.*) Rather, this Court properly held that a named plaintiff "must share the same injury with the others he or she represents in order to have standing as a class representative," which is *not* the case when the named plaintiff is not an owner of shares in the same mutual funds as those he or she seeks to represent. *Nenni*, 1999 U.S. Dist. LEXIS 23351, at *6. Indeed, other courts in cases Plaintiffs cite relied on this exact reasoning in holding that the named plaintiffs lacked Article III standing as to the mutual funds in which they owned no shares. *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. at 41; *Alliance*, 2005 WL 2677753, at *10.

[10] Plaintiffs assert their "unincorporated association" standing argument only in connection with their express derivative claim against the Investment Adviser Defendants under the Investment Advisers Act in Count V. However, as discussed both herein and in the Independent Trustee Defendants' opening brief, all of Plaintiffs' claims are derivative.

party to litigation." *Curley v. N. Am. Man Boy Love Ass'n*, 2003 WL 21696547, at *4 (D. Mass. Mar. 31, 2003); *see also McCormack v. Labor Relations Comm'n*, 358 Mass. 682, 685 (1971) (an unincorporated association "is not a separate entity and cannot be made a party defendant"). Further, the ICA only permits suits on behalf of "investment companies," not "unincorporated associations." Even if an unincorporated association could bring suit, the Complaint further fails to allege that the Columbia mutual funds constitute such an association. *See, e.g., Testa v. Janssen*, 482 F. Supp. 1195, 1200 (W.D. Pa. 1980) (holding that a common trade name is not a basis to recognize separate legal entities as unincorporated associations).

Finally, Plaintiffs' suggestion that they have an "ongoing financial interest" in the outcome of this litigation as to funds they do not own, (Pls.' Opp. at pp. 45-47), is plainly incorrect. Plaintiffs did not and could not suffer an injury resulting from any decrease in the net asset value of mutual funds ***they do not own***. Similarly, Plaintiffs' argument that "efficient and consistent treatment" (*id.* at p. 45) warrants disregard of constitutional standing principles is foreclosed by the Supreme Court's Article III case law. *Raines v. Byrd* 521 U.S. 811, 820 (1997) (standing inquiry should not be set aside "for the sake of convenience and efficiency"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (The requirements of Article III are "inflexible and without exception."). The bottom line is that Plaintiffs do not have standing to assert any claims concerning the 79 Columbia mutual funds they do not own.

## CONCLUSION

Notwithstanding the volume of briefing on the motions to dismiss, the present state of the law on Plaintiffs' legal theories is straightforward. There are no implied private rights of action under Sections 34(b) and 36(a) of the ICA requiring dismissal of Counts I and II of the Complaint. Plaintiffs' alleged injuries are derivative, and not direct, in nature, requiring dismissal of Counts I, II, III, VII and VIII which are pled as class (or direct) claims. Moreover,

the Section 36(b) claim (Count III), regardless of the form of injury, does not apply in this case to the Independent Trustee Defendants. Finally, the common law claims in Counts VII and VIII must be dismissed for the additional reasons that they are preempted by SLUSA and are legally insufficient. Accordingly, all of Plaintiffs' claims against the Independent Trustee Defendants should be dismissed *with prejudice*.

Dated: October 28, 2005

        Respectfully Submitted,

        THE INDEPENDENT TRUSTEE DEFENDANTS

        By: /s/Timothy O. Egan
           Timothy O. Egan (BBO# 637992)
           Peabody & Arnold LLP
           50 Rowes Wharf
           Boston, MA 02110
           Telephone: (617) 951-2100
           Facsimile: (617) 951-2125

           Kenneth E. Rechtoris
           Daniel J. Hayes
           Todd E. Pentecost
           Bell, Boyd & Lloyd LLC
           70 West Madison Street, Suite 3100
           Chicago, IL 60602-4207
           Telephone: (312) 372-1121
           Facsimile: (312) 827-8000

           Attorneys for the Independent
           Trustee Defendants

## CERTIFICATE OF SERVICE

I, Timothy O. Egan, hereby certify that a true copy of the above document was served upon the attorney of record for each other party not identified on the Notice of Electronic Filing as an electronic recipient by mail on October 28, 2005.

        /s/Timothy O. Egan
        Timothy O. Egan