# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: COLUMBIA ENTITIES LITIGATION | ) Civil Action No. 04cv11704 (REK)<br>)<br>) Consolidated Case Nos.:<br>) 04cv 11750<br>) 04cv 11760<br>) 04cv 11953<br>) |

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR RENEWED MOTION FOR APPOINTMENT OF
## CO-LEAD COUNSEL AND APPOINTMENT OF LIAISON COUNSEL

**MOULTON & GANS, P.C.**
Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
(617) 369-7979

*Counsel for Plaintiffs and Proposed Liaison Counsel*

**MILBERG WEISS BERSHAD
 & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, New York 10119-0165
(212) 594-5300

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York 10017
(212) 687-7230

*Counsel for Plaintiffs and Proposed Co-Lead Counsel*

Plaintiffs in the above-captioned action (collectively, the "Plaintiffs"), by their counsel, hereby submit the following Reply Memorandum of Law ("Reply Memorandum") in further support of their Renewed Motion For Appointment of Co-Lead Counsel and Appointment of Liaison Counsel (the "Renewed Motion"). Plaintiffs file this Reply Memorandum to address certain inaccuracies by the Independent Trustees in their Opposition to Plaintiffs' Renewed Motion For Appointment of Co-Lead Counsel and Appointment of Liaison Counsel ("Trustee Opposition") and the Declaration of their purported expert, Geoffrey C. Hazard, Jr. (the "Hazard Decl.").

## **PRELIMINARY STATEMENT**

In their Renewed Motion, Plaintiffs submitted a host of evidence, conclusively demonstrating that no actual conflict of interest exists here. First, Plaintiffs submitted the declaration of the lead counsel for the court-appointed lead plaintiff in the *Columbia* sub-track of the market-timing litigation (the "MDL Action") stating that the Columbia Funds have been dropped from the MDL Action and that plaintiffs in that case will not seek or accept any money from the Columbia Funds. Second, Plaintiffs filed an expert declaration from a legal ethicist Professor Bruce Green (the "Green Decl."), who concludes that no disabling actual conflict of interest exists from the concurrent representation of the Plaintiffs in this action and the MDL action. Notwithstanding these submissions, even if this Court concluded (which it should not) that such a conflict did exist, Plaintiffs in this action have waived such a conflict. All of the Plaintiffs filed declarations which confirm their knowledge of the conflict issues, the relevant activity in the MDL action and the dual representation by their counsel in the MDL action and this case, thus addressing any potential or perceived conflicts and waiving the conflicts after full

consultation. Plaintiffs believe that these submissions fully satisfy the Court's concerns regarding the conflicts issues.

Despite these submissions, the Trustee Defendants, the only party opposing Plaintiffs' Renewed Motion, have submitted an opposition replete with unmeritorious arguments.[1] First, the Trustee Defendants fail to identify any actual, present conflict in this case and instead choose to base their arguments on speculation that a conflict may exist. Yet, as Plaintiffs' legal ethics expert has concluded in his declaration, no actual conflict exists in this case. Unable to argue with the substance of Professor Green's declaration, the Trustee Defendants instead suggest that the Court should not consider the declaration based on Professor Green's ability to offer his opinions (*i.e.*, his knowledge of the facts of the case). However, such arguments at most go to weight, not admissibility. Moreover, unlike these Defendants' own purported expert--who has his facts entirely wrong--there is no suggestion that Professor Green included any erroneous facts in his declaration. As such, Professor Green's conclusions are admissible and authoritative evidence of the lack of any actual conflict in the representation of Plaintiffs in this case and the MDL case.

Second, while the Trustee Defendants are now forced to concede that their primary intra-case conflict argument does not apply where, as here, the class claims are not asserted against the company (*i.e.*, the Funds in this case) that the counsel purports to represent derivatively, the Trustee Defendants now argue that Plaintiffs' counsel may not represent two differing groups if they are suing the same defendants because there could possibly be insufficient assets to satisfy

---

[1] While there are additional defendants in this action, only the Trustee Defendants contest the Renewed Motion. In addition, in *Forsythe v. Sun Life Financial. Inc.* (MFS), No. 04cv10584 (D. Mass.), pending before Judge O'Toole, a case similar to this one in which conflict issues have also been raised, plaintiffs' pending renewed motion for the appointment of lead counsel has not been opposed by ***any*** defendant. The court in that case has not yet rendered an opinion on this conflict issue.

2

both sets of claims. However, the derivative claim seeks recission -- the only remedy available -- and, thus, there is no competition for collecting compensatory damages between the derivative and class claims. Even if there were such competition, this argument is far too speculative to create an actual conflict of interest at this time, particularly given that there is no suggestion whatsoever that the Defendants are insolvent or otherwise unable to satisfy judgments for both sets of claims. Finally, the Trustee Defendants argue that the consent of the named Plaintiffs in this case does not cure the conflict for a variety of reasons, all of which lack any support as the Trustee Defendants rely on authority which is clearly distinguishable from the facts present here.

For the reasons set forth herein and in Plaintiffs' previously filed papers, it is respectfully requested that this Court approve Plaintiffs' selection of: (i) Milberg Weiss Bershad & Schulman LLP and Stull Stull & Brody as Plaintiffs' co-lead counsel in the Action; and (ii) Plaintiffs' selection of Moulton & Gans, P.C. as Plaintiffs' Liaison Counsel.

## ARGUMENT

**I.   THE MATERIAL PLAINTIFFS SUBMITTED WITH THEIR RENEWED MOTION DEMONSTRATES THAT THERE ARE NO ACTUAL CONFLICTS CAUSED BY THE DUAL REPRESENTATION BY PLAINTIFFS' COUNSEL OF PLAINTIFFS IN THIS CASE AND PLAINTIFFS IN THE MDL ACTION**

In their Renewed Motion, Plaintiffs submitted several declarations, conclusively demonstrating that the dual representation by Plaintiffs' counsel of Plaintiffs in this case and Plaintiffs in the MDL Action does not result in any actual conflict, and even if this Court concluded (which it should not) that such a conflict did exist, Plaintiffs in this action have waived the conflict.[2] First, Plaintiffs submitted the Declaration of Clifford Goodstein (the

---

[2] While Plaintiffs did previously submit the Goodstein declaration, as the Trustee Defendants note in their opposition papers, Plaintiffs' counsel now also submit the declarations from the Plaintiffs waiving any conflict after consultation, as well as the declaration of ethics expert Professor Green with their Renewed Motion, which, as discussed below, further reinforce the absence of any conflict issues in this case.

3

"Goodstein Decl.") of Milberg Weiss, who is lead counsel for the court-appointed lead plaintiff in the *Columbia* sub-track in the MDL Action.[3] See Exh. A to Renewed Motion. The Corrected Notice of Parties Added and Parties Against Whom All Claims Are Dropped Pursuant to the Letter of the Honorable J. Frederick Motz Dated September 24, 2004 (the "Notice") attached to the Goodstein Decl. indicates that counsel in the MDL Action had dropped the Columbia Funds from the MDL Action, meaning that plaintiffs in that case will not seek or accept any money from the Columbia Funds under any circumstances. Furthermore, the Goodstein Decl. unequivocally confirms that the Columbia MDL lead plaintiff will not seek any recovery from the monies consisting of investor deposits held by any of the Columbia Registrants. Goodstein Decl. at ¶ 4.

The reason Plaintiffs' counsel are not seeking Fund assets in the Columbia MDL Action is not because they wish to bring derivative claims on behalf of the Columbia Funds in this action. Instead, the Columbia MDL lead plaintiff decided not to seek any recovery from Fund assets to protect the class in the Columbia MDL Action, and made this decision without any regard to this case. The MDL lead plaintiff concluded that the Funds were inappropriate defendants because a recovery from the Funds would simply take money away from the class plaintiffs. The lead plaintiffs in all of the other mutual fund family tracks in the MDL Action also dropped the Funds as defendants. Each of these lead plaintiffs' groups thus addressed the MDL court's concern that the Funds should not be named as defendants:

> . . . are the plaintiffs in the investor classes really looking for the funds as the source of payment? I understand the legal theory why the fund's *named as a defendant*, because of the prospectuses were put out by the fund. And I understand that some injunctive relief may relate to the fund.

---

[3] Milberg Weiss is also co-chair of the Plaintiffs' Steering Committee in the MDL Action.

4

> To me, sitting here in the provinces, it doesn't make a lot of sense to me, and maybe I'm not understanding something, why one group of people who own mutual funds, people who, say, maybe bought and sold, should recover against people who still hold the funds. I mean, that's like one average Joe being victimized by the conduct of third parties allegedly, and then being victimized again by having to compensate the plaintiffs who have already sold.
>
> Maybe I'm missing something. But these are the kind of things we … want you to focus on.

Transcript of Court Hearing in *In re: Mutual Funds Investment Litigation*, MDL No. 1586 (D. Md. Apr. 2, 2004) at 16 ("MDL Hearing Transcript") (emphasis added).[4]

Similarly, despite the Trustee Defendants' arguments to the contrary (Trustee Opp. at 5-6), allowing the Registrants to remain as defendants only to the extent that they have a separate corporate existence with assets that do not belong to the Funds does not cause a conflict between Plaintiffs' representation in the two cases. This is so because if the Registrants have a separate corporate existence, recovery from the Registrants would not be the recovery of investor assets from the Funds themselves, but from the assets of the Registrants that are separate from the Funds. Without the recovery of Fund assets from the Registrants in the MDL Action, there can be no conflict as a result of Plaintiffs' counsel's dual representation.[5]

---

[4] The MDL Court's comments are consistent with the recognition by other courts that a mutual fund is not like a typical corporation. Instead, it is "'a mere shell,' a pool of assets consisting mostly of portfolio securities that belongs to the individual investors holding shares in the fund." *Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977).

[5] In the recent investor class opinion in the *In re Janus Subtrack* of the MDL Action, Judge Motz dismissed the Registrants as defendants in that action upon his conclusion that the Registrants had no assets other than those of the investors. *In re Mutual Funds Investment Litigation* (*In re Janus Subtrack*), MDL-1586, No. 04-MD-15863, 2005 U.S. Dist. LEXIS 18083 at *6, n.3 (D. Md. Aug. 25, 2005)("Investor Class Op.")(the "MDL Janus Decision"). The MDL Janus Decision stated: "[m]oreover, defendants assert (and plaintiffs have alleged no facts suggesting the contrary) that [the Registrants] have no assets separate and apart from those they hold for shareholders. Therefore, as plaintiffs concede, no relief against [the Registrants] would be appropriate because a recovery would simply impose on present shareholders of the funds (entirely innocent parties) liability for a payment to shareholders of the funds during the class

5

Here, the Trustee Defendants' arguments that a conflict exists are focused on the speculation that, despite Plaintiffs' declarations to the contrary, Plaintiffs will keep the Registrants as Defendants in the MDL Action even if the Registrants are shown to have only Fund assets. Yet mere speculation is not sufficient to disqualify an attorney. Instead, the Trustee Defendants must show that an actual conflict exists, which they have failed to do in this case. *See Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 145 (4th Cir. 1992) (holding that disqualification due to attorney's conflict cannot rest on "mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.").

Second, Plaintiffs filed the Declaration of prominent legal ethics expert Professor Bruce Green, who has opined that no disabling actual conflict of interest exists from the concurrent representation of the Plaintiffs in this action and the MDL action. *See* Green Decl., Ex. G to Renewed Motion, at ¶¶ 33-36. Professor Green also stated that Plaintiffs' counsel's representation of plaintiffs in the MDL Action will not be materially limited by their responsibilities to the Plaintiffs in the present case, or vice versa:

> Plaintiffs in the MDL action and the instant litigation are investors in Columbia Funds. The Class definition in both cases is similar, although the MDL action covers a slightly longer time frame. The cases share some common defendants, although they are based on different legal theories and allege different improper activities by defendants. Because both actions seek a recovery on behalf of an almost identical class of investors, a recovery in either action will benefit essentially the same investors. Similarly, a recovery on behalf of the funds, in either case, will benefit all current investors. The cases are complementary in that they seek to recover all potential damages on various legal theories.

---

period. Accordingly, plaintiffs' claims against [the Registrants] will be dismissed." Investor Class Op. at *6, n.3. Judge Motz further stated in the MDL Janus Decision that he will issue short memoranda in the other cases to which he is assigned (which include the *MFS* and *Columbia* sub-tracks) consistently applying the rulings he made in the MDL Janus Decision. *Id.*

6

Green Decl. at ¶ 36. Professor Green further explained in his opinion that "[d]efendants' and this Court's concerns are adequately resolved by the submissions being made to the Court in response to the April 7, 2005 hearing." *Id.* at ¶ 33.

Professor Green's declaration is of critical importance here because the issue of whether a conflict exists in this case is an inherently factual inquiry and Professor Green, based on assumptions regarding the facts of this case, has opined that no such conflict exists given the submissions to the Court. While the Trustee Defendants quibble over the form of Professor Green's testimony, they fail to attack its substance.[6] Since the Trustee Defendants fail to offer any reason why Plaintiffs' expert's conclusions are invalid, Plaintiffs' expert's conclusions are admissible and authoritative evidence of the lack of any conflict here.

Finally, each of the Plaintiffs in this action has also filed a declaration confirming his or her full knowledge of the conflict issues raised by this Court, the history of pertinent activity in the market-timing litigation, and the simultaneous representation by their counsel of plaintiffs in the market-timing litigation and in the case at bar. *See* Exhs. B-F to Renewed Motion. Moreover, Plaintiffs' counsel reasonably believe that such a simultaneous representation will not adversely affect their relationship with either set of clients because the objective of both

---

[6] In their opposition, the Trustee Defendants claim that since Professor Green has "no first hand knowledge of the relevant facts," and that his opinion is based on "assumptions" provided by Plaintiffs' counsel, his opinion is inadmissible. Trustee Opp. at 5, n.7. The Trustee Defendants are wrong, as first hand knowledge of the facts is not a prerequisite to an expert opinion. In fact, expert opinions are always based on "assumptions," since experts (non-parties to a litigation) will never have "first hand knowledge of the relevant facts." There is no suggestion that Professor Green's assumptions are in any way erroneous. Defendants' arguments, therefore, at best, go to weight, not admissibility. *See, e.g.*, *Primrose Operating Co. v. National American. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)("as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.") By contrast, the declaration of Geoffrey C. Hazard, the Trustee Defendants' expert, should not be considered by this Court because it, unlike Professor Green's opinion, is based on *incorrect* facts and assumptions. *See* Section IV, *infra*.

7

litigations is to return all Fund shareholders to the *status quo* the shareholders would have enjoyed absent Defendants' wrongdoing. These facts demonstrate that, even if the Court were to conclude that a conflict exists here (which it should not), the provisions of Mass. R. Prof. C. 1.7 have been satisfied because Plaintiffs have waived the conflict after full consultation and Plaintiffs' counsel reasonably believe that their simultaneous representation of both sets of clients will not adversely affect either client relationship.

In their opposition papers, the Trustee Defendants provide no convincing reason why the evidence Plaintiffs submitted with their Renewed Motion does not demonstrate the absence of a conflict and instead cite to inapposite case law in an attempt to argue that a conflict exists here. The Trustee Defendants cite one 23-year-old case in support of their general argument that a law firm is prohibited from adversely representing clients in separate lawsuits. Trustee Opp. at 8 (citing *McCourt Co. v. FPC Props., Inc.*, 386 Mass. 145 (1982)). However, *McCourt* is distinguishable from the situation present here. The *McCourt* decision involved a non-derivative action in which the court ruled that a law firm could not adversely represent clients in separate lawsuits when the client is not merely a ***nominal party*** in one of the actions. In this action, however, the Columbia Funds are indeed merely named as a nominal party. Moreover, in *Booth Creek Ski Holdings, Inc. v. ASU International, L.L.C.*, 2003 Mass. Super. LEXIS 132, at *7 (Super. Ct. May 12, 2003), the court analyzed the rule announced in *McCourt* and stated that it was intended to "prevent a lawyer from taking a new case in which he is then asked to ***oppose*** a party to whom he had a ***preexisting*** attorney-client relationship." (Emphasis added.) Here, Plaintiffs' counsel have not had a preexisting attorney-client relationship with the Columbia Funds which could disqualify Plaintiffs' counsel from this action inasmuch as the Funds are not the clients. Rather, the shareholders are the clients with whom Plaintiffs' counsel have the

8

attorney-client relationship and the Funds are the nominal defendants on whose behalf the derivative claim is brought. *McCourt* is therefore inapplicable here and highlights the Trustee Defendants' misunderstanding of the facts of this case.

## II. THERE IS NO ACTUAL CONFLICT WHICH PREVENTS PLAINTIFFS' COUNSEL FROM SIMULTANEOUSLY REPRESENTING BOTH CLASS AND DERIVATIVE PLAINTIFFS WITHIN THIS CASE

The Trustee Defendants assert that Plaintiffs' counsel may not represent both class and derivative Plaintiffs within the same case because "courts have recognized that an inherent conflict arises where counsel seeks to represent a party simultaneously asserting both class and derivative claims in the same lawsuit." Trustee Opp. at 9. Citing three New York District Court cases from 1973, 1976 and 1987, the Trustee Defendants state that "Courts have ***uniformly*** recognized the inherent conflict that arises where the same counsel seek to simultaneously represent class and derivative plaintiffs in separate lawsuits." *Id*. at 8 (emphasis added). Notably absent from the Trustee Defendants' argument are decisions by other courts which held that the same counsel may simultaneously represent class and derivative plaintiffs. For example, in *Keyser v. Commonwealth National Financial Corp.*, 120 F.R.D. 489, 492 (M.D. Pa. 1988), the court rejected a *per se* rule prohibiting shareholders from simultaneously bringing both direct and derivative actions. The court stated:

> ***The better reasoned and predominant rule of law is to look behind the "surface duality" of these two types of actions and allow them to proceed together unless an actual conflict emerges***. Specifically, this court finds merit in the following passage from *In re Dayco Corp. Derivative Securities Litigation*:
>
> In both *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 94-95 (S.D.N.Y. 1972) and *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623-24 (S.D.N.Y. 1973), the Courts held that stockholders pursuing individual claims could not also serve as representatives of a class of derivative plaintiffs. These decisions plainly relied on the theoretical distinction between individual and

9

> derivative stockholder suits. That distinction is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are "equally contingent upon the proof of the same nucleus of facts." *Bertozzi*, 420 F. Supp. at 1180. Typically, both such suits will attack some sort of alleged misconduct by corporate management, and diligent counsel can hardly be expected not "to attack all fronts with equal vigor." Id. *See also*, Henn & Alexander at 1045-47. For these reasons, the Court joins Judge Frankel in ***rejecting a per se rule against counsel representing both an individual and derivative plaintiff***. Henn & Alexander at 1078 (footnote omitted).

*Id.* (citation omitted) (emphasis added). As a result, it is not *per se* improper for Plaintiffs' counsel to represent both class and derivative Plaintiffs here.

Forced to acknowledge that there is no conflict where, as here, the class claims are not asserted against the entity (*i.e.*, the Funds in this case) that the counsel purports to represent derivatively, and all the claims are instead asserted against the same defendants, the Trustee Defendants argue that Plaintiffs' counsel may not represent two differing groups even if they are suing the same defendants because there may be insufficient assets to satisfy both sets of claims. Trustee Opp. at 12-13. This argument fails for multiple independent reasons. First, the only remedy available on the derivative claim is for recission. Accordingly, there is no competition for compensatory damages between the derivative and class claims. Second, even if there were such competing interests, this argument is far too speculative to create an actual conflict of interest at this time, particularly given that there is no suggestion whatsoever that the defendants are insolvent or otherwise unable to satisfy judgments for both sets of claims.[7] In fact, there is no question that the defendants in this action have many millions of dollars and are far from insolvent. In the cases cited by the Trustee Defendants holding that Plaintiffs' counsel may not represent class plaintiffs in two separate actions, the possibility that there could be insufficient

---

[7] Any monetary damages to be awarded on this claim would be incidental to the recissionary relief and there is no suggestion of insufficient assets such that any incidental monetary damages on this claim could not be paid.

10

assets and insurance to satisfy judgments was the main consideration in each case. Accordingly, this theoretical and speculative contention cannot form the basis for a finding of any actual conflict of interest. *See Shaffer,* 966 F.2d at 145 (holding that disqualification due to attorney's conflict cannot rest on "mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.").[8]

The Trustee Defendants also argue that there is a conflict because Plaintiffs' counsel is simultaneously seeking damages on behalf of current and former shareholders. Trustee Opp. at 10. However, in virtually every class action that is brought involving shareholders, damages are sought on behalf of both current and former shareholders and no conflict of interest is implicated. *See, e.g., Greene v. Emersons, Ltd.*, 86 F.R.D. 47, 61 (S.D.N.Y. 1980) ("While differing interests among class members may ultimately surface, the greater weight of recent authority militates against denying class certification" in cases involving purchasers who retained stock during the class period and those who sold during the class period); c*f. Welling v. Alexy (In re Cirrus Logic Sec.)*, 155 F.R.D. 654, 663 (N.D. Cal. 1994) (in response to defendants' argument that a current shareholder is not economically motivated to maximize the damages paid out to former shareholders because it may adversely affect her investment, the court stated, "most courts addressing the issue have found that the current equity holder's self interest in personal recovery adequately outweighs any concern that she might have regarding the impact an award of damages would have on the company.").

---

[8] The Trustee Defendants make this same speculative argument with respect to the dual representation by Plaintiffs' counsel in this case and the MDL Action, claiming there may be insufficient funds to satisfy a judgment in both cases. Trustee Opp. at 12-13. For the same reasons as stated above with respect to the simultaneous class and derivative representation, this speculative argument must fail.

**III.   IN THE EVENT THIS COURT FINDS AN ACTUAL CONFLICT HERE (WHICH IT SHOULD NOT), THE NAMED PLAINTIFFS HAVE CURED THE CONFLICT THROUGH THEIR WAIVER**

While the Trustee Defendants argue that there are three layers of conflict in this case that hinder the named Plaintiffs from waiving the conflict, the main focus of their argument centers on the alleged conflict which could potentially exist between this action and the MDL Action.[9] Yet, as described in detail above, after a full consultation regarding these precise conflict issues, Plaintiffs in this case have consented to the simultaneous representation by Plaintiffs' counsel of them and the plaintiffs in the MDL Action by waiving any conflict. The Trustee Defendants' remaining arguments concerning additional "layers" of conflict, *i.e.*, Plaintiffs' counsel seeking to concurrently represent derivative and class interests in this case and Plaintiffs' counsel seeking to represent current and former shareholders in this case are also without merit, as described above.

The Trustee Defendants cite two cases for the proposition that consent to an attorney's conflict of interest in a derivative suit must be obtained from all shareholders. Trustee Opp. at 14 (citing *DeLeo v. Swirsky*, 2002 U.S. Dist. LEXIS 16957, at *6 (N.D. Ill. Sep. 3, 2002)) and *Guenther v. Pacific Telecom, Inc.*, 123 F.R.D. 341, 347 (D. Or. 1987)). First, these two anomalous cases are not binding on this Court. Second neither case explicitly holds that waivers

---

[9] The Trustee Defendants argue that the affidavits of the Named Plaintiffs do not cure the conflicts presented because the "affidavits demonstrate that they ***do not*** understand that the Columbia Registrants, the only legal entities, remain as defendants in the MDL class action." Trustee Opp. at 16. First, there is nothing in the affidavits to suggest such a lack of understanding. To the contrary, the affiants state they do, in fact, understand the issues. Second, as explained herein, Plaintiffs' counsel in the MDL Action has unequivocally confirmed that the lead plaintiff in the Columbia MDL Action will not seek any recovery from monies held by any of the Columbia Registrants consisting of investor deposits, and so any money that may be recovered from the Registrants (if they were even to remain in the case, which is doubtful, given the recent MDL Janus Decisions) would be separate from Fund assets. The Trustee Defendants do not raise any issue with the contents of the affidavits as they relate to alleged conflicts within this action.

from every single shareholder would be required.  In fact, such waivers would be impossible to obtain absent a proxy solicitation.  Third, the cases cited by the Trustee Defendants do not apply to the facts of this case.  In both *Swirsky* and *Pacific Telecom*, the named plaintiff at issue had differing interests than other members of the class which rendered consent by only them inadequate.  Clearly, these unusual situations do not exist here.[10]

The Trustee Defendants similarly cite to two cases in support of their argument that, in a class action, more than the consent of the named plaintiffs is required to waive an attorney's conflict of interest.  However, the Trustee Defendants again cite authority where the underlying facts are not even remotely similar to the facts here.  In *Chateau De Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*, 474 F. Supp. 223, 226 (S.D.N.Y. 1979), the issue involving disqualification was very narrow and different than that presented here, namely, "whether counsel for plaintiffs and a potential class may simultaneously represent one of defendant's co-conspirators in an antitrust action."  In addition, only one of five named plaintiffs submitted an affidavit concerning the conflict of interest present.  Similarly at odds with the facts of this case is *Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129 (D.D.C. 1994).  In *Palumbo*, the

---

[10] In *Swirsky*, 2002 U.S. Dist. LEXIS 16957, a court had already disqualified plaintiff DeLeo as one of the named plaintiffs in a derivative suit brought in Illinois on behalf of the shareholders of EAI corporation because of DeLeo's conflicting interests in another lawsuit DeLeo had filed in New York on his own behalf.  *DeLeo v. Swirsky*, 2002 U.S. Dist. LEXIS 8493 at *21-26.  In this earlier *Swirsky* opinion, the court also disqualified DeLeo's attorney Golden from representing the EAI shareholders because he represented DeLeo and his conflicting interests in both the New York and Illinois lawsuits. Id. at *27.   This is not the situation here and the case is inapposite.  *Pacific Telecom* involved a named plaintiff with a large personal interest which was greatly out of proportion with that of the remaining class members.  In addition, in *Pacific Telecom*, the law firm was disqualified due to a conflict of interest involving its failure to name a particular director defendant because that defendant was represented by the law firm in other matters.  123 F.R.D. at 347.  These facts are not present here.

13

plaintiffs' counsel was disqualified from the litigation because of his position as a former director of one of defendant's affiliates. These facts are not present here.

Finally, the Trustee Defendants suggest that even if satisfactory consent were obtained from Plaintiffs (which has been done), there are situations where consent may never be effective to cure attorney conflicts. The instant action is not such a situation. The Trustee Defendants attempt to bolster their argument by selectively picking quotes from the cases distinguished above. However, as explained above, each of the cases involved actual issues of conflict that are simply not present here.

### IV. THE TRUSTEE DEFENDANTS' PURPORTED EXPERT DECLARATION CONTAINS NUMEROUS INACCURACIES AND SHOULD BE DISREGARDED OR STRICKEN

The Hazard Declaration contains numerous inaccuracies and suppositions. Accordingly, it should be stricken or disregarded. For example, Hazard wrongly states that his assumptions include that "[b]oth the Market Timing Litigation and the Excessive Fees Litigation involve plaintiffs, who are aggrieved shareholders, with direct claims seeking money from defendants, including the funds, to compensate for their losses." Hazard Decl. at 2 (Exh. C to Trustee Opp.). This is flat out wrong. In the instant (excessive fees) litigation, the Columbia Funds are only named as nominal defendants and, as such, Plaintiffs do not personally seek any damages from them and the Registrants/Trusts are not named at all.

Hazard also wrongly states that Plaintiffs are seeking compensatory damages on the derivative claim. Hazard Decl. at 2-3. However, under §§ 206 and 215 of the Investment Advisers Act (the derivative claim brought in this action), Plaintiffs' only remedy is rescission, not monetary compensatory damages. Hazard also incorrectly states that the derivative claim in this action is "brought by the funds as plaintiffs, against officers, trustees and advisers of the funds." Hazard Decl. at 2-3. This is erroneous. In the derivative Investment Advisers Act

14

claim, the plaintiffs are shareholders and the funds are nominal defendants. The fact that the funds are not Plaintiffs' counsel's clients also defeats the Trustee's argument that Plaintiffs' counsel did not satisfy Massachusetts Professional Conduct Rule 1.7(a) because they did not get the consent of the Columbia Funds to the concurrent adverse representation. *See* Trustee Opp. at 14. Moreover, the Investment Advisers Act claim is brought only against the Investment Adviser Defendants, not the officers or trustees of the Funds, as Hazard erroneously states. Hazard's fundamental and rampant errors in his Declaration render it unreliable and inadmissible. Given these and other erroneous assumptions by the Trustee Defendants' purported expert, the expert's affidavit should be stricken from the record or, at a minimum, given no weight.

## CONCLUSION

For the reasons detailed herein and in their prior submissions, Plaintiffs respectfully request this Court to: (i) approve Plaintiffs' selection of Milberg Weiss Bershad & Schulman LLP and Stull Stull & Brody as Plaintiffs' co-lead counsel in the Action; and (ii) approve Plaintiffs' selection of Moulton & Gans, P.C. as Liaison Counsel.

Dated: October 31, 2005                    Respectfully submitted,

**MOULTON & GANS, P.C.**

By:____/s/ Nancy Freeman Gans_____
          Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts 02109-4216
(617) 369-7979

*Counsel for Plaintiffs and Proposed Liaison Counsel*

15

**MILBERG WEISS BERSHAD  
 & SCHULMAN LLP**  
Jerome M. Congress  
Janine L. Pollack  
Kim E. Miller  
Michael R. Reese  
One Pennsylvania Plaza  
New York, New York  10119-0165  
(212) 594-5300  

**STULL, STULL & BRODY**  
Jules Brody  
Mark Levine  
Aaron Brody  
6 East 45th Street  
New York, New York  10017  
(212) 687-7230  

*Counsel for Plaintiffs and Proposed Co-Lead Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**  
Charles J. Piven  
Marshall N. Perkins  
The World Trade Center – Baltimore  
Suite 2525  
401 East Pratt Street  
Baltimore, Maryland  21202  
(410) 332-0030  

**WEISS & LURIE**  
Joseph H. Weiss  
Richard A. Acocelli  
551 Fifth Avenue, Suite 1600  
New York, New York  10176  
(212) 682-3025  

**SCHIFFRIN & BARROWAY, LLP**  
Marc A. Topaz  
Richard A. Maniskas  
280 King of Prussia Road  
Radnor, Pennsylvania  19087  
(610) 667-7706  

16

**GILMAN AND PASTOR, LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
(781) 231-7850

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Janine L. Pollack, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record, this 31st day of October, 2005.

/s/ Janine L. Pollack