UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04cv11704(REK)

In Re:  COLUMBIA ENTITIES LITIGATION

Consolidated Case Nos.:
04cv11750
04cv11760
04cv11953

**CORRECTED COPY**
**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED**
**CLASS ACTION COMPLAINT**

Frances S. Cohen (BBO #542811)
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116-5021
Phone:  (617) 728-7100
Fax:     (617) 426-6567

Michael S. Doluisio
Nory Miller
DECHERT LLP
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103-2793
Phone:  (215) 994-4000
Fax:  (215) 994-2222

Brian T. O'Connor (BBO #546767)
Giselle J. Joffre (BBO #658047)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Richard J. Rosensweig (BBO#639547)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110
(617) 482-1776

OF COUNSEL:
Phil C. Neal ARDC #2023369
Mark A. Rabinowitz ARDC 3122026
Dao L. Boyle ARDC #6269407
Jenny S. Kim ARDC #6277785
NEAL, GERBER & EISENGERG LLP
Two North LaSalle Street, Suite 2200
Chicago, IL 60602
(312) 269-8000

*Counsel for FleetBoston Financial
Corporation, a/k/a Bank of America
Corporation, Columbia Management
Group, Inc., Columbia Management
Advisers, Inc., Columbia Wanger
Asset Management, L.P. and Columbia
Funds Distributor, Inc., J. Kevin
Connaughton, P. Zachary Egan,
Kevin S. Jacobs, Kenneth A. Kalina,
Bruce H. Lauer, Jean Loewenberg,
Robert A. Mohn, Louis J. Mendes, Todd
Narter, Christopher Olson, Jon H. Park,
Vincent P. Pietropaolo, Joseph Turo, and*

*Counsel for Defendants Columbia
Funds Trusts and Columbia Funds,
excluding Columbia Acorn Trust
and Columbia Acorn Funds*

*Counsel for Defendant Charles P.
McQuaid and Ralph Wanger*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iv

I.  COUNTS I AND II SHOULD BE DISMISSED BECAUSE NO PRIVATE
    RIGHT OF ACTION EXISTS UNDER SECTION 36(A) OR 34(B) OF THE
    INVESTMENT COMPANY ACT ............................................................................... 2

    A.  There Is No Private Right Of Action Under Section 34(b) ................................... 3

    B.  There Is No Private Right Of Action Under Section 36(a) ................................... 5

        1.  Plaintiffs' Arguments Regarding Section 36(a)'s Text And
            Structure Fail ............................................................................................ 6

        2.  Plaintiffs' Reliance on Strougo Fails .......................................................... 7

        3.  Plaintiffs Cannot Rely On Legislative History ........................................... 8

        4.  Jackson Does Not Support Finding An Implied Private Right Of
            Action .......................................................................................................... 10

II.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 36(B) OF THE
     ICA ................................................................................................................................. 11

    A.  Plaintiffs Must Plead Facts Showing That The Advisory Fees Were
        Disproportionate To The Services Provided ........................................................ 12

    B.  Plaintiffs Fail To Plead Facts Showing That The Advisory Fees Were
        Disproportionate To The Services Provided ........................................................ 13

    C.  Plaintiffs Reliance On Wicks And Jones Is Misplaced ....................................... 16

    D.  Plaintiffs' Allegations Regarding 12b-1 Fees, Excessive Commissions
        And Soft Dollars Fail To State A Section 36(b) Claim ....................................... 18

        1.  Plaintiffs Cannot Assert A Claim Based Upon The 12b-1 Fees ............. 18

        2.  Plaintiffs Fail To Make Allegations Showing That The 12b-1 Fees
            Were Excessive ........................................................................................... 19

    E.  Allegations Regarding Excessive Commissions And Soft Dollars Fail To
        State A Section 36(b) Claim ............................................................................... 20

    F.  The Complaint Fails To State A Claim Against The Individual Defendants ...... 22

    G.  The Section 36(b) Claim Fails Because Plaintiffs Do Not Seek To Recover
        On Behalf Of The Funds ...................................................................................... 24

III.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER SECTION 48(A) ....... 25

    A.  There Is No Private Right Of Action Under Section 48(a) ................................. 25

    B.  Plaintiffs Fail To Allege A Primary Violation Of The ICA And Thus Their
        Section 48(a) Claim Fails .................................................................................... 25

# TABLE OF CONTENTS
(continued)

Page

|  |  |  |  |
|---|---|---|---|
|  | C. | Plaintiffs Fail To Allege Facts Supporting Their Allegations Of Control | 26 |
| IV. |  | PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 215 OF THE IAA | 27 |
| V. |  | PLAINTIFFS' LITANY OF ARGUMENTS FAILS TO ESTABLISH A BASIS FOR STANDING BEYOND THE FUNDS PLAINTIFFS OWNED AND PLAINTIFFS MAY ONLY SUE DERIVATIVELY ON BEHALF OF THOSE FUNDS | 29 |
|  | A. | Direct Standing | 30 |
|  |  | 1. Prior Decisions By This Court And Others Cannot Be Distinguished | 30 |
|  |  | 2. The Supreme Court Has Not Endorsed Plaintiffs' Standing Arguments. | 30 |
|  |  | 3. Article III Requirements Cannot Be Overridden By The So-Called "Juridical Link" Doctrine. | 31 |
|  | B. | Standing To Sue On A Fund's Behalf – Section 36(b) And Rule 23.1 | 33 |
|  |  | 1. Section 36(b) Claims Must Be Asserted On A Fund's Behalf | 33 |
|  |  | 2. Neither The Constitution Nor Section 36(B) Permits 36(B) Claims On Behalf Of The 79 Funds In Which Plaintiffs Did Not Invest | 34 |
|  |  | 3. Neither The Constitution Nor Rule 23.1 Permits Section 215 Or Other Claims On Behalf Of The 79 Funds In Which Plaintiffs Did Not Invest | 36 |
|  |  | 4. Plaintiffs Cannot Bootstrap Rules 23.1 And 23.2 To Gain Statutory Standing Congress Did Not Provide Or Intend | 37 |
| VI. |  | INCLUSION OF SHAREHOLDERS ALLEGEDLY MISLED INTO PURCHASING REQUIRES DISMISSAL UNDER SLUSA | 38 |
|  | A. | The "Holder" Class Here Necessarily Includes Purchasers | 39 |
|  | B. | The Allegations Here Include Misrepresentations, Omissions and Manipulative Schemes Involving the Purchase and Sale of Securities | 42 |
|  |  | 1. Share Value And Purchase | 42 |
|  |  | 2. Damages | 43 |
|  |  | 3. Sister Courts | 44 |
| VII. |  | NOTHING PRESENTED SUPPORTS THE STATE LAW, SECTION 34(B), 36(A) OR 48(A) COUNTS AS DIRECT CLAIMS AND NO DEFENSE IS OFFERED FOR FAILING TO MAKE A PRESUIT DEMAND FOR THE SECTION 215 COUNT. | 46 |

**TABLE OF CONTENTS**
(continued)

Page

A.    The Cases Plaintiffs Cite Do Not Supports Their Argument That All These Counts Are Properly Asserted As Direct Claims.................................................. 46

B.    The ICA's Recognition that Investors May Be Adversely Affected Has No Bearing On This Question ................................................................................... 48

C.    Plaintiffs' Stretched Analogies And False Policy Arguments Are Unavailing.................................................................................................................... 49

D.    Plaintiffs Offer No Defense For Failing To Make A Presuit Demand ................ 51

VIII.  PLAINTIFFS DO NOT STATE COGNIZABLE CLAIMS UNDER STATE LAW .......................................................................................................................... 51

CONCLUSION........................................................................................................................ 53

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Sandoval,*
    532 U.S. 275 (2001).............................................................................. *passim*

*In re AllianceBernstein Mutual Fund Excessive Fee Litigation,*
    No. 04-4885, 2005 WL 2677753 (S.D.N.Y. October 19, 2005)............................12, 15, 23

*Alves v. Harvard Pilgrim Health Care, Inc.,*
    204 F. Supp. 2d 198 (D. Mass. 2002), *aff'd on other grounds,* 316 F.3d 290 (1st
    Cir. 2003) ........................................................................................................32

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)...........................................................................................31

*Batra v. Investors Research Corp.,*
    1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991)....................................35, 36

*Baum v. Investors Diversified Servs., Inc.,*
    409 F.2d 872 (7th Cir. 1969) ...........................................................................50

*Bonano v. East Caribbean Airline Corp.,*
    365 F.3d 81 (1st Cir. 2004).............................................................................3, 4, 7

*Burks v. Lasker,*
    441 U.S. 471 (1979)...........................................................................................49

*Cape Ann Investors v. Lepone,*
    296 F. Supp. 2d 4 (D. Mass. 2003) ...................................................................40

*Central Bank v. First Interstate Bank of Denver,*
    511 U.S. 164 (1994)...........................................................................................9

*Chamberlain v. Aberdeen Asset Mgmt. Ltd.,*
    No. 02cv5870, 2005 WL 195529 (E.D.N.Y. Jan. 21, 2005)...................................2

*Clark v. Nevis Capital Mgmt., LLC,*
    No. 04-2702, 2005 WL 488641 (S.D.N.Y. March 2, 2005) ...............................27

*Dabit v. Merrill Lynch Pierce Fenner & Smith,*
    395 F.3d 25 (2d Cir.) *cert. granted,* 2005 U.S. LEXIS 5414 (September 27, 2005)
    ........................................................................................................40, 41, 43

iv

*Daily Income Fund, Inc. v. Fox,*
    464 U.S. 523 (1984)..................................................................................*passim*

*In re Davis Selected Mutual Funds Litigation,*
    No. 04-4186, 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. October 11, 2005)..............*passim*

*Deutschman v. Beneficial Corp.,*
    761 F. Supp. 1080 (D. Del. 1991)......................................................................39

*Dorchester Investors v. Peak Int'l Ltd.,*
    134 F. Supp. 2d 569 (S.D.N.Y. 2001)..............................................................2, 5

*Dowling v. Narragansett Capital Corp.,*
    735 F. Supp. 1105 (D.R.I. 1990)........................................................................26

*In re Dreyfus Mutual Funds Fee Litig.,*
    No. 2:04-00128 slip op. (W.D. Pa. Sept. 30, 2005)...................................*passim*

*Dull v. Arch,*
    No. 05-140, 2005 U.S. Dist. LEXIS 14988 (N.D. Ill. July 27, 2005).......................2, 8, 10

*In re Eaton Vance Corp. Securities Litig.,*
    220 F.R.D. 162 (D. Mass. 2004)....................................................................30, 32

*In re Eaton Vance Mutual Funds Fee Litig.,*
    380 F. Supp. 2d 222 (S.D.N.Y. 2005).................................................................*passim*

*Exxon Mobil Corp. v. Allapattah Services Inc.,*
    125 S. Ct. 2611 (2005).....................................................................................8, 9

*Fogel v. Chestnutt,*
    533 F.2d 731 (2d Cir. 1975)...............................................................................20

*Fogel v. Chestnutt,*
    668 F.2d 100 (2nd Cir. 1981)..............................................................................21

*In re Franklin Mutual Funds Excessive Fee Litigation,*
    No. 04-982, 2005 U.S. Dist. LEXIS 20106 (D.N.J. September 9, 2005).................*passim*

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,*
    528 U.S. 167 (2000)..........................................................................................29

*Garcia v. United States,*
    469 U.S. 70 (1985)................................................................................................8

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
694 F.2d 923 (2nd Cir. 1982) ................................................................. *passim*

*GFL Advantage Fund Ltd. v. Colkitt,*
272 F.3d 189 (3d Cir. 2001)......................................................................28

*Gonzaga University v. Doe,*
536 U.S. 273 (2002).................................................................................5, 6

*Green v. Ameritrade, Inc.,*
279 F.3d 590 (8th Cir. 2002) ...................................................................39

*Green v. Fund Asset Management,*
147 F. Supp. 2d 318 (D.N.J. 2001) ..........................................................23

*Green v. Fund Asset Management L.P.,*
286 F.3d 682 (3d Cir. 2002).................................................................14, 21

*Green v. Nuveen Advisory Corp,*
295 F.3d 738 (7th Cir. 2002) ...................................................................14

*Halligan v. Standard & Poor's/Intercapital,*
434 F. Supp. 1082 (E.D.N.Y. 1977) .........................................................23

*Hamilton v. Allen,*
No. 05-110, 2005 WL 2660356 (E.D. Pa. October 14, 2005) ...............2, 10, 28

*Hawes v. Oakland,*
104 U.S. 450 (1908)..................................................................................34

*ING Principal Protection Funds Derivative Litig.,*
369 F. Supp. 2d 163 (D. Mass. 2005) .......................................................19

*Jackson v. Birmingham Board of Education,*
125 S. Ct. 1497 (2005).........................................................................10, 11

*Jacobs v. Bremner,*
378 F. Supp. 2d 865 (2005) ................................................................. *passim*

*Kamen v. Kemper Financial Services, Inc.,*
500 U.S. 90 (1991).............................................................................46, 49

*Kauffman v. The Dreyfus Fund, Inc.,*
434 F.2d 727 (3d Cir. 1970)......................................................................34

*King v. Douglass,*
   973 F. Supp. 707 (S.D. Tex 1996) ............................................................15, 21

*Kircher v. Putnam Funds Trust,*
   403 F.3d 478 (7th Cir. 2005) ...................................................................41, 50

*Krantz v. Prudential Investments Finds Management, LLC,*
   305 F.3d 140 (3d Cir. 2002)............................................................................13

*La Mar v. H & B Novelty & Loan Co.,*
   489 F.2d 461 (9th Cir. 1973) ..........................................................................32

*Lalondriz v. USA Networks, Inc.,*
   68 F. Supp. 910 (S.D.N.Y. 1986) ...................................................................39

*In re Lord Abbett Mutual Funds Fee Litig.,*
   395 F. Supp. 2d 471 (D.N.J. 2005) ........................................................ *passim*

*McConnell v. FEC,*
   540 U.S. 93 (2003)...........................................................................................31

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.,*
   272 F. Supp. 2d 243 (S.D.N.Y. 2003)......................................................2, 5, 25

*Meyer v. Oppenheimer,*
   764 F.2d 76 (2d Cir. 1985)...............................................................................18

*Meyer v. Oppenheimer,*
   895 F.2d 861 (2d Cir. 1990).............................................................................18

*Migdal v. Rowe Price-Fleming International Inc.,*
   248 F.3d 321 (4th Cir. 2001) ...........................................................................13

*Mills v. Electric Auto-Lite Co.,*
   396 U.S. 375 (1970).........................................................................................28

*In re ML-Lee Acquisition Fund II, L.P.,*
   848 F. Supp. 527 (D.Del. 1994).......................................................................26

*Mutchka v. Harris,*
   373 F. Supp. 2d 1021 (C.D. Cal. 2005) ....................................................2, 11, 24

*In re Mutual Funds Investment Litigation, (In re Janus Subtrack),*
   2005 U.S. Dist. LEXIS 19083 (2005)..........................................................3, 11

*Nenni v. Dean Witter Reynolds, Inc.,*
    1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999) ................................30

*Norman v. Salomon Smith Barney Inc.,*
    350 F. Supp. 2d 382 (S.D.N.Y. 2004)................................................................39

*In re Nuveen Fund Litig.,*
    No. 94-360, 1996 U.S. Dist. LEXIS 8071 (N.D. Ill. June 11, 1996)............................4, 15

*Olmsted v. Pruco Life Insurance Company of New Jersey,*
    283 F.3d at 433 (2001)................................................................. *passim*

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999).......................................................................31

*Pfeiffer v. Bjurman, Barry & Assoc.,*
    No. 03-9741, 2004 WL 1903075 (S.D.N.Y. Aug. 26, 2004)................................17, 18, 21

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    339 F. Supp. 2d 165 (D.Mass. 2004) .....................................................7

*Pinter v. Dahl,*
    486 U.S. 622 (1988).......................................................................49

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    292 F.3d 1334 (11th Cir. 2002) ........................................................39

*Rowinski v. Salomon Smith Barney Inc.,*
    398 F.3d 294 (3d Cir. 2005)............................................................39

*SEC v. Capital Gains Research Bureau, Inc.,*
    375 U.S. 180 (1963).......................................................................28

*Sosna v. Iowa,*
    419 U.S. 393 (1975).......................................................................30

*Stegall v. Ladner,*
    No. 05- 0062, 2005 WL 2709127 (D. Mass. Oct. 14, 2005) ..................... *passim*

*Stragliabotti v. Franklin Resources, Inc.,*
    No. 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ...............................17

*Strougo v. Bassini,*
    282 F.3d 162 (2d Cir. 2002)...........................................................7, 47

*Symmons v. O'Keefe,*
    419 Mass. 288 (1995) ...................................................................................53

*Transamerica Mortgage Advisers, Inc. v. Lewis,*
    444 U.S. 11 (1979)......................................................................................28

*In re Van Wagoner Funds, Inc. Sec. Litig.,*
    No. 02-03383, 2004 WL 2623972 (N.D. Cal. July 27, 2004) .........................2, 5

*Wellington Int'l Commerce Corp. v. Retelny,*
    727 F. Supp. 843 (S.D.N.Y. 1989) ..............................................................27

*White v. Heartland High-Yield Municipal Bond Fund,*
    237 F. Supp. 2d 982 (E.D. Wis. 2002)........................................................2, 5

*Wicks v. Putnam,*
    No. 04-10988, 2005 U.S. Dist. LEXIS 4892 (D. Mass. March 28, 2005)...................16, 17

*Yameen v. Eaton Vance Distributors, Inc.,*
    No. 03-12437 2005 WL 2709116 (D. Mass. October 14, 2005) ............................2, 11, 19

## FEDERAL STATUTES AND LEGISLATIVE MATERIALS

Fed. R. Civ. P. 23.1 .................................................................................. passim

Fed. R. Civ. P. 23.2 .................................................................................. passim

Securities Litigation Uniform Standards Act, 112 Stat. 3227, 15 U.S.C. § 78bb(f)..........38, 40, 43

15 U.S.C. §80a-2(a)(9).............................................................................25, 26

15 U.S.C. §80a-35(b).........................................................................22, 33, 34

15 U.S.C. §801-35(a) ...................................................................................6

Fed. R. Civ. P. 23.2 Advisory Committee Notes..........................................................37

The Columbia defendants submit this reply memorandum in further support of their motion to dismiss the Consolidated Amended Class Action Complaint ("Compl.").[1]

Plaintiffs' ninety page opposition to defendants' motion to dismiss does not cure their failure to state -- in their seventy-eight page complaint -- a legally cognizable theory under which this Court could grant relief for their grievances regarding purportedly wrongful distribution practices such as "revenue sharing", "directed brokerage", "12b-1 payments" and "soft dollars". Not surprisingly, plaintiffs have not asserted claims under the Securities Act of 1933, or the Securities Exchange Act of 1934; undoubtedly plaintiffs' claims could not withstand the heightened pleading standards required under those statutes. Instead, plaintiffs allege various theories in a vain effort to force-fit their claims within the requirements of either the 1940 Investment Company Act (the "ICA"), the Investment Advisers' Act (the "IAA"), or state law. For the reasons set forth below, each of these theories fails.

In Parts I through IV, below, defendants address plaintiffs' failure to state a claim under the ICA and the IAA. In Part V, the defendants discuss plaintiffs' lack of standing. In Part VI, defendants reply to plaintiffs' arguments regarding the preemption of the state law claims under SLUSA. In Part VII, defendants respond to plaintiffs' claims regarding their assertion of certain claims as direct, rather than derivative claims. Finally, in Part VIII, defendants reply to plaintiffs' assertions that they have stated cognizable claims under state law.

---

[1]    The following defendants join this memorandum: Bank of America Corporation, Columbia Management Group, Inc., Fleet Boston Financial Corporation, Columbia Management Advisors, Inc., Columbia Wanger Asset Management, Inc., Columbia Funds Distributor, Inc., Columbia Funds Trust, Columbia Funds, and Columbia Acorn Funds, and Ralph Wanger and Charles P. McQuaid. Individual defendants, J. Kevin Connaughton, P. Zachary Egan, Kevin S. Jacobs, Kenneth A. Kalina, Bruce H. Lauer, Jean Loewenberg, Robert A. Mohn, Louis J. Mendes, Todd Narter, Christopher Olson, Jon H. Park, Vincent P. Pietropaolo, Joseph Turo, and Leah J. Zell, have now been served, and join the motion to dismiss.

I.    **COUNTS I AND II SHOULD BE DISMISSED BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER SECTION 36(a) OR 34(b) OF THE INVESTMENT COMPANY ACT**

Prior to defendants' filing of their motion to dismiss on August 8, 2005, five courts had held that there is no implied private right of action under Section 34(b) in light of the Supreme Court's 2001 decision in *Alexander v. Sandoval*. *See Alexander v. Sandoval*, 532 U.S. 275 (2001); Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defendants' Mem.") at 21-22 (citing *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222, 224-233 (S.D.N.Y. Aug. 1, 2005) ("*Eaton Vance*"); *In re Van Wagoner Funds, Inc. Sec. Litig.*, No. 02-03383, 2004 WL 2623972, at *11-12 (N.D. Cal. July 27, 2004); *In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003); *White v. Heartland High-Yield Municipal Bond Fund*, 237 F. Supp. 2d 982, 986-88 (E.D. Wis. 2002); *Dorchester Investors v. Peak Int'l Ltd.*, 134 F. Supp. 2d 569, 581 (S.D.N.Y. 2001)).

Five courts had also held that there is no private right of action under Section 36(a). *See* Defendants' Mem. at 24 (citing *Eaton Vance*, 380 F. Supp. at 224-233; *Dull v. Arch*, No. 05-140, 2005 U.S. Dist. LEXIS 14988, *8 (N.D. Ill. July 27, 2005); *Jacobs v. Bremner*, 378 F. Supp. 2d 865 (2005); *Mutchka v. Harris*, 373 F. Supp. 2d 1021 (C.D. Cal. 2005); *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, No. 02cv5870, 2005 WL 195529, *4 (E.D.N.Y. Jan. 21, 2005)).

In just the few months since defendants filed their motion, eight additional courts have addressed the question. Each has applied *Sandoval* and held that there is no private right of action under either Section 34(b) or 36(a). *See Stegall v. Ladner*, No. 05- 0062, 2005 WL 2709127, at *7-*12 (D. Mass. Oct. 14, 2005) (36(a)); *Yameen v. Eaton Vance Distributors, Inc.*, No. 03-12437 2005 WL 2709116, at *2 n.1 (D. Mass. October 14, 2005) (36(a)); *Hamilton v. Allen*, No. 05-110, 2005 WL 2660356 (E.D. Pa. October 14, 2005) (36(a)); *In re Davis Selected Mutual Fund Litig.*, No. 04-4186, 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. Oct. 11, 2005) (34(b)

and 36(a)); *In re Dreyfus Mutual Funds Fee Litig.*, No. 04-0128, *slip op.* (W.D. Pa. Sept. 28, 2005) (34(b) and 36(a)) ("*Dreyfus*"); *In re Franklin Mutual Funds Excessive Fee Litig.*, No. 04-982, 2005 U.S. Dist. LEXIS 20106 (D.N.J. Sept. 9, 2005) (34(b) and 36(a)); *In re Lord Abbett Mutual Funds Fee Litig.*, No. 04-00559, 2005 WL 2090517 (D.N.J. Aug. 30, 2005) (34(b) and 36(a)); *In re Mutual Funds Investment Litig.*, MDL-1586, No. 04-15863, 2005 U.S. Dist. LEXIS 19083 (D. Md. Aug. 25, 2005) (34(b) and 36(a)).

Plaintiffs make almost no attempt to distinguish any of these cases. Instead, plaintiffs rely on outdated reasoning and numerous arguments that were expressly rejected in the cases cited above.[2] For the reasons set forth in defendants' initial memorandum and below, this Court should follow these recent decisions and find that there is no implied private right of action under either Section 34(b) or Section 36(a).

## A.     There Is No Private Right Of Action Under Section 34(b).

As the First Circuit has held, rights creating language is missing where a statute is "the kind of general ban which carries with it no implication of an intent to confer rights on a particular class of persons." *Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81, 85 (1st Cir. 2004).[3] Section 34(b) is just that kind of statute. Section 34(b) makes no mention of investors. Instead, it "focuses exclusively on the person regulated, and not the persons benefited." *Dreyfus*, *slip op.* at 12. As such, it fails to contain any rights creating language.

---

[2]     Four of the eight cases decided after defendants filed their motion to dismiss involved the same plaintiffs' attorneys who brought this case. In each of those cases, plaintiffs' arguments were flatly rejected. *See Davis*, 2005 U.S. Dist. LEXIS. 23202; *In re Dreyfus Mutual Funds Fee Litigation*, slip op. (W.D. Pa. Sept. 30, 2005); *Franklin*, 2005 U.S. Dist. LEXIS. 20106; *Mutual Funds*, 2005 U.S. Dist. LEXIS 19083.

[3]     Plaintiffs' attempt to distinguish *Bonano* is unavailing. Although *Bonano* concerned a different statute than those at issue here, it embraced *Sandoval's* approach to determining whether there is a private right of action.

Moreover, Section 34(b) does not provide for a private remedy -- an issue plaintiffs appear to ignore altogether. Indeed, Congress's decision to provide an express private right of action under Section 36(b) and for SEC enforcement under Section 42 strongly suggests that implying a private right of action "would be wrong." *Bonano*, 365 F.3d at 85. *See also Sandoval*, 532 U.S. at 289-90; *Olmsted v. Pruco Life Insurance Company of New Jersey*, 283 F.3d 433 (2001).

In an attempt to avoid the clear language and structure of the statute, plaintiffs argue, first, that Section 34(b) contains rights creating language because it cross-references Section 31(a). Section 31(a), however, merely provides that the SEC has a duty to establish appropriate holding periods for various records for the protection of investors. This cross-reference does not demonstrate that Section 34(b) is unmistakably focused on investors. *See Sandoval*, 532 U.S. at 288 (for implied right of action to arise, statute must use "rights-creating" language with an "unmistakable focus on the benefited class"). Nor does it demonstrate an intent to create a private remedy. Not surprisingly, therefore, the *Dreyfus* court recently rejected this precise argument. *Dreyfus*, *slip op.* at 13.

Next, plaintiffs argue that Section 8 of the ICA states that the purpose of having a registration statement is "for the protection of investors." However, as one court recently held, "a cross-reference to another statute that happens to mention the phrase 'for the protection of investors' is not enough to transform an unambiguous 'person regulated' section into a 'person benefit[ed]' section." *Dreyfus*, *slip op.* at 13, . Once again, plaintiffs' argument fails.

Finally, plaintiffs rely on a single case in which a court found a private right of action under 34(b) – *In re Nuveen Fund Litig.*, No. 94-360, 1996 U.S. Dist. LEXIS 8071 (N.D. Ill. June 11, 1996). *See* Plaintiffs' Opposition to Motion to Dismiss ("Plaintiffs' Opp.") at 61. But

*Nuveen* pre-dates *Sandoval* and was specifically identified by the Second Circuit as an example of the now-discredited "*ancien regime.*" *Olmsted*, 283 F.3d at 434 n.4. Moreover, *Nuveen's* reasoning is flatly contradicted by the myriad cases decided after *Sandoval* which have found no such private right of action under Section 34(b). *See Davis*, 2005 U.S. Dist. LEXIS 23203; *Dreyfus, slip. op.*; *Franklin*, 2005 U.S. Dist. LEXIS 20106; *Lord Abbett*, 2005 WL 2090517; *Eaton Vance*, 380 F. Supp. 2d 222; *Van Wagoner*, 2004 WL 2623972, at *11-12; *Merrill Lynch*, 272 F. Supp. 2d 243; *White*, 237 F. Supp. 2d at 986-88; *Dorchester*, 134 F. Supp. 2d at 581.[4]

For all of these reasons and those discussed in defendants' opening memorandum, Count I should be dismissed with prejudice.

### B.    There Is No Private Right Of Action Under Section 36(a).

As set forth in defendants' opening memorandum, plaintiffs have failed to establish that a private right of action should be implied under Section 36(a). Section 36(a) does not contain any rights creating language. *See* Defendants' Mem. at 22-23. Nor does it provide for a private remedy. To the contrary, it expressly provides for enforcement by the SEC. *Id.* at 23. Count II should therefore be dismissed.

In response to defendants' motion, plaintiffs raise a host of arguments. As discussed below, none of plaintiffs' arguments is persuasive. In fact, each of their arguments has been rejected in recent cases holding that there is no private right of action under Section 36(a).

---

[4]    Plaintiffs also argue that Congressional intent to create a private right of action can be gleaned from Section 34(b)'s prohibition on reports that are "materially misleading." Plaintiffs claim that this phrase "only makes sense in the context of protecting investors" and thus implies the rationale of the statute was to protect investors. Plaintiffs' Opp. at 60. However, such an attenuated connection is hardly the "unmistakable focus on the benefited class" required under Supreme Court precedent. *Gonzaga University v. Doe*, 536 U.S. 273, 284 (2002) (emphasis in original). Nor does it support an argument that the statute provides a private remedy.

1.    **Plaintiffs' Arguments Regarding Section 36(a)'s Text And Structure Fail.**

Initially, plaintiffs raise two arguments regarding the text and structure of Section 36(a). They argue, first, that because Section 36(a) "discusses" the individuals to be protected, a private right of action can be implied. Plaintiffs' Opp. at 59. Plaintiffs are wrong. A statute must do more than "discuss" the plaintiffs; it must have an "unmistakable focus" on the benefited class. *See Gonzaga University v. Doe*, 536 U.S. 273, 284 (2002) (emphasis in original). And, rather than focusing on individual rights, Section 36(a) explicitly states that "[t]he *Commission* is authorized to bring an action." 15 U.S.C. §801-35(a) (emphasis added). Indeed, the sole reference to investors appears in a portion of the statute dealing with the relief than can be granted in connection with an action *by the SEC*. Thus, rather than having an unmistakable focus on investors, the statute makes clear than enforcement by the SEC, and not by other plaintiffs, is intended. *See Lord Abbett*, 2005 WL 2090517, at *15 (rejecting plaintiffs' argument and holding that "the text of Section 36(a) does not contain 'rights-creating language' but instead merely describes prohibited conduct"); *see also Franklin*, 2005 U.S. Dist. LEXIS 20106, at *40.[5]

Second, plaintiffs argue that the "SEC's express right to enforce § 36(a) in no way forecloses the possibility of an implied right of action." Plaintiffs' Opp. at 62. But plaintiffs' argument is based entirely on a 30 year old case that is clearly part of the *ancien regime*. *Id.* (citing *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412 (1975)). Recent cases have

---

[5]    Plaintiffs also argue that because Section 36(a) incorporates Section 1(b)'s reference to the "interests of investors," a private right of action should be implied. But such a general reference to purpose is insufficient under *Sandoval*. *See Olmsted*, 283 F.3d at 434 ("Past decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an 'ancien regime'") (quoting *Sandoval*, 532 U.S. at 287). In fact, because the ultimate purpose of virtually all securities laws is to protect investors, under plaintiffs' reasoning, all securities laws would imply a private right of action. Obviously, that is not the case.

made clear that the express provision of an enforcement scheme is strong evidence that a private

remedy should not be implied. *Sandoval*, 532 U.S. at 290; *Bonano*, 365 F.2d at 85; *In re Pharm.*

*Indus. Average Wholesale Price Litig.*, 339 F. Supp. 2d 165, (D.Mass. 2004). Indeed, numerous

courts have specifically held that Section 36(a)'s reference to suit by the SEC makes clear that

Congress did not intend a private right of action. *See Dreyfus*, *slip op.* at 13-14, ("This statutory

text actually evidences a legislative intent to preclude the relief sought by its clear indication of

one, and only one, entity that has the power to enforce its provisions."); *Franklin*, 2005 U.S.

Dist. LEXIS 20106, at *40 (finding no private right of action in Section 36(a) based in part on

comparison with language creating private right of action in Section 36(b)); *Eaton Vance*, 380 F.

Supp. 2d at 232 (finding that "the existence of an alternative method of enforcement, and the

existence of an explicit private right of action for another provision of the statute creates the

strong presumption that Congress did not intend to create private rights of action under §§ 34(b),

36(a) or 48(a))").

### 2. Plaintiffs' Reliance on *Strougo* Fails.

Plaintiffs' next argument is that a private right of action was upheld in *Strougo v. Bassini*,

282 F.3d 162 (2d Cir. 2002). Plaintiffs' Opp. at 62. The only question presented in *Strougo*,

however, was whether claims under Section 36(a) for coercion could be brought in a direct or

derivative action, and in particular, whether "Maryland's law of shareholder standing would

frustrate the specific federal policy objectives underlying the ICA." *Id.* at 165. Thus, the Second

Circuit did not consider or decide whether Section 36(a) gives rise to a private right of action; in

fact, it does not appear that dismissal on this basis was even requested. When the Second Circuit

did squarely address the issue of implied rights of action under the ICA a week after *Strougo*, in

*Olmsted*, it laid down the analytical framework that should be followed here.[6] *See Mutual Fund*, 2005 U.S. Dist. LEXIS 19083, at *48 (rejecting plaintiffs' argument based upon *Strougo* and explaining that the *Strougo* court reversed the dismissal of the 36(a) claim "without considering whether a private right of action exists under that section").

### 3.  Plaintiffs Cannot Rely On Legislative History.

Finding no help in the text or structure of the ICA, plaintiffs argue that a legislative intent to create a private right of action under Section 36(a) may be gleaned from the "judicial posture" at the time of the amendments to the ICA that created Section 36(a) and from comments made by members of Congress ten years later.  For several reasons, plaintiffs' resort to legislative history fails.

First, because Section 36(a) is unambiguous, there is no need to examine legislative history. *Exxon Mobil Corp. v. Allapattah Services Inc.*, 125 S.Ct. 2611, 2625 (2005).  *See also Olmsted*, 283 F.3d at 435 ("Where the text of a statute is unambiguous, 'judicial inquiry is complete[] except in rare and exceptional circumstances'") (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1985)).  Numerous courts have rejected plaintiffs' resort to legislative history on this basis. *See, e.g., Dreyfus, slip op.* at 11 ("We are to consult the legislative history only in order to shed light on ambiguous statutory text"); *Dull*, 2005 U.S. Dist. LEXIS 14988, at *8 (finding that because "[Section 36(a)] is unambiguous, the Court need not look to the legislative history"); *Jacobs*, 378 F. Supp. 2d at 865 (finding "even affirmative statements of specific intent in congressional committee reports are impotent in the face of unambiguous statutory language").

---

[6]  Although *Strougo* was "amended" on March 11, 2002, it was originally decided on February 28, 2002, before the decision in *Olmsted*.

Moreover, even if the Court were to consider the legislative history, there is no support for implying a private right of action. Plaintiffs argue, for instance, that for thirty years prior to the creation of Section 36(a) in 1970 courts had implied a private right of action under former Section 36 and that, Congress, therefore, must have intended this purported implied right of action to continue. *See* Plaintiffs' Opp. at 63. But use of the so-called "contemporary legal context" was flatly rejected by the Supreme Court in *Sandoval*. *Sandoval*, 532 U.S. at 288 (rejecting the argument that the "cases interpreting statutes enacted prior to *Cort v. Ash* have given 'dispositive weight' to the 'expectations' that the enacting Congress had formed 'in light of the 'contemporary legal context.'"). As a result, courts have rejected recent attempts by plaintiffs to revive such arguments in the context of Section 36(a). *See Stegall*, 2005 WL 2709127, at *7-*12 (plaintiff cannot "sidestep[]" *Sandoval* by relying on contemporary legal context); *Jacobs*, 378 F. Supp. 2d at 865 ("*Sandoval* establishes that the text of the statute –and not any 'contemporary legal context' – must be the touchstone of any private right of action.").

Plaintiffs also attempt to rely on remarks made in a House committee report during consideration of other amendments to the ICA. *See* Plaintiffs' Opp. at 65. But these remarks were made more than *ten years* after Section 36(a)'s creation and have no bearing on the relevant question. As the Supreme Court has held, "the interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute." *Central Bank v. First Interstate Bank of Denver*, 511 U.S. 164, 185 (1994); *Exxon Mobil*, 125 S. Ct. at 2628 (noting that "the views of the 2005 Congress are not relevant to our interpretation of a text enacted in 1990"). Thus, none of plaintiffs' arguments based on legislative history is sufficient to establish a private right of action.

### 4.    *Jackson* Does Not Support Finding An Implied Private Right Of Action.

Plaintiffs' final argument is that the Supreme Court's recent decision in *Jackson v. Birmingham Board of Education*, 125 S.Ct. 1497 (2005), supports a private right of action under Section 36(a). Specifically, plaintiffs claim that *Jackson* clarified that "*Sandoval* stood for the simple proposition that a private right to enforce a statute does not necessarily include a private right to enforce regulations promulgated thereunder." Plaintiffs' Opp. at 67. Plaintiffs' interpretation of *Jackson* is flawed.

*Jackson* involved the interpretation of Title IX – a statute the Supreme Court had already held gives rise to a private right of action for discrimination. The Court was asked simply to determine whether retaliatory discharge constituted discrimination within the meaning of that statute. It was not asked to create, and did not find, a new implied private right of action.

Moreover, the Court in *Jackson* did not limit or circumscribe the Supreme Court's decision in *Sandoval*. Rather, it emphasized that the keystone to implied rights of action, laid down in *Sandoval*, was the statute itself. It stated, "In step with *Sandoval*, we hold that Title IX's private right of action encompasses suits for retaliation, because retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex." *Jackson*, 125 S.Ct. at 1507 (footnote omitted). Thus, *Jackson* only *reinforces* the *Sandoval* rule, as applied by the First Circuit in *Bonano*, the Second Circuit in *Olmsted*, and by numerous district courts. Indeed, twelve courts have decided the question of whether there is a private right of action under Section 36(a) after *Jackson*. Every single one has applied *Sandoval* and found no private right of action. *See Hamilton*, 2005 WL 2660356, at *15, ("Considering the actual text of Section 36(a) in light of *Sandoval*, the Court concludes that no private right of action was intended by Congress."); *Stegall*, 2005 WL 2709127, at *16, (applying *Sandoval* and *Olmsted* to find no

private right of action under Section 36(a)); *Yameen,* 2005 WL 2709116, at 2 n.1, (same);

*Dreyfus, slip op.* at 11-14 (same); *Franklin,* 2005 U.S. Dist. LEXIS 20106, at *31-*41 (same);

*Lord Abbett,* 2005 WL 2090517, at *15 (same); *Mutual Funds,* 2005 U.S. Dist. LEXIS 19083, at

*48-*55 (same); *Eaton Vance,* 380 F. Supp. 2d, at 231-233 (same); *Dull,* 2005 U.S. Dist. LEXIS

14988, at *8 (same); *Jacobs,* 378 F. Supp. 2d at 865 (same); *Mutchka,* 373 F. Supp 2d 1021,

(same); *see also Davis,* 2005 U.S. Dist. LEXIS 23203, at *8-*10 (finding no private right of

action under Sections 34(b), 36(a), and 48(a) based on Judge Koeltl's reasoning in the *Eaton

Vance* decision).[7]

    For all of these reasons, plaintiffs fail to state a claim under Section 36(a). Count II

should therefore be dismissed with prejudice.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 36(b) OF THE ICA.

    As the defendants discuss in their initial brief, the plaintiffs rely on a "prototype"

complaint, filed in substantially similar form by the same counsel against more than a dozen

mutual fund complexes. Defendants' Mem. at 1 and fn. 2. When defendants filed their opening

brief, only a single court, in *Eaton Vance,* 380 F. Supp. 2d 222, had ruled on the sufficiency of

the complaint, dismissing it in its entirety. Since that time, additional courts have addressed

motions to dismiss in similar cases. In *Davis,* 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y.), the

court dismissed all claims, finding *Eaton Vance* persuasive. In two cases, *Franklin,* 2005 U.S.

Dist. LEXIS 20106 (D.N.J.) and *Lord Abbett,* 2005 WL 2090517 (D.N.J.), the court dismissed

---

[7]    As plaintiffs concede, the *Eaton Vance* court was well aware of plaintiffs' argument
regarding *Jackson* when holding that Section 36(a) does not give rise to a private right of action.
*See* Plaintiffs' Opp. at 68-69. That *Eaton Vance* did not cite *Jackson* does not mean that the
Court "did not even consider the Supreme Court's decision." *Id.* Rather, because *Jackson* did
not change the applicable test established by *Sandoval,* it is not surprising that the court in *Eaton
Vance* had no need to discuss *Jackson.*

the §36(b) claim without prejudice, on the grounds that it could be asserted, if at all, only as a derivative claim.[8]

As is discussed below, the rationale in *Eaton Vance* and *Davis* warrants dismissal. The plaintiffs' allegations are insufficient to state a claim under Section 36(b) because their claim is predicated on improper distribution practices, and not a breach of fiduciary duty in connection with the receipt of advisory fees. Other than to recite in conclusory fashion that economies of scale were not passed on to investors, plaintiffs fail to allege a factual predicate for their claim that defendants breached a fiduciary duty in connection with the receipt of fees. As the plaintiffs' opposition makes clear, the gist of their purported Section 36(b) allegations is that defendants engaged in improper distribution practices to increase assets under management and thereby to increase advisory fees. Such allegations are insufficient to state a claim under *Eaton Vance*, as well as under the long line of prior cases which hold that, to state a claim under Section 36(b), a plaintiff must allege facts relating to the "negotiation and enforcement of payment arrangements between investment advisers and funds, not whether investment advisers acted improperly in the use of the funds". *Eaton Vance* 380 F. Supp. 2d 222 at 237.

### A.   Plaintiffs Must Plead Facts Showing That The Advisory Fees Were Disproportionate To The Services Provided.

Plaintiffs argue that there is no "heightened pleading" standard for Section 36(b) claims. Although plaintiffs' reference to "heightened pleading" is vague, defendants understand the plaintiffs' argue that they need not plead facts to support each of the *Gartenberg* factors to withstand a motion to dismiss. Plaintiffs' Opp. at 11. Without regard to whether plaintiffs must

---

[8]      In two cases, the courts have allowed the §36(b) claims to go forward. *See Dreyfus*, slip op. (noting that the sufficiency of the pleadings presented a "close case") and *AllianceBernstein Mutual Fund Excessive Fee Litigation*, No. 04-4885, 2005 WL 2677753, *6 (S.D.N.Y. October 19, 2005) (distinguishing the complaint before it from *Eaton Vance)*. For the reasons set forth below, the rationales in *Davis, Eaton Vance, Franklin* and *Lord Abbett* require dismissal here.

plead each element of *Gartenberg,* however, the plaintiffs fail to go beyond conclusory allegations to allege specific facts on which they claim that the advisory fees were excessive, *i.e.*, facts showing that the fees are so large that they bear no reasonable relationship to the services rendered.

In *Krantz v. Prudential Investments Finds Management, LLC,* 305 F.3d 140 (3d Cir. 2002), for instance, the court acknowledged that "the pleading requirements . . . are very liberal," but held that "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." *Id.* at 142-43 (citation omitted). The court dismissed the Section 36(b) claim because the plaintiffs "failed to allege any facts indicating that the fees received were disproportionate to services rendered." *Id.* at 143. Similarly, in *Migdal v. Rowe Price-Fleming International Inc.,* 248 F.3d 321, 327 (4th Cir. 2001), the court affirmed the dismissal of a Section 36(b) claim, explaining: "To survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are 'excessive.' Instead, a plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive." *Id.* at 327. Accordingly, dismissal was warranted because "plaintiffs have failed to allege any facts pertinent to [the] relationship between fees and services." *Id.* Thus, whether *Gartenberg* applies strictly or not, plaintiffs must allege facts showing that the fees received were disproportionate to the services provided.

**B.      Plaintiffs Fail To Plead Facts Showing That The Advisory Fees Were Disproportionate To The Services Provided.**

Plaintiffs' chief grievance is that defendants allegedly used wrongful distribution practices. In an effort to fit this grievance under Section 36(b), plaintiffs have larded their complaint with conclusory references to *Gartenberg* elements such as "economies of scale". Plaintiffs, thus, cite their allegation that "as the Funds were marketed and the number of Fund

- 13 -

investors increased, the economies of scale thereby created, *if any* were not passed on to

Columbia Funds investors." Compl. ¶129, cited by plaintiffs, Opp. at 9 n.5 (emphasis added).

This noncommittal pleading regarding economies of scale, "*if any*", is not a sufficient predicate

for a claim that defendants breached a fiduciary duty in connection with the receipt of advisory

fees. For example, the plaintiffs fail to identify the advisory fees that were paid by any particular

fund. They do not compare those fees to the fees paid by other funds to other advisers. And they

do not identify the services that were provided in return for those fees or explain why such fees

were excessive. Accordingly, the claim should be dismissed.

In similar circumstances, the courts in *Eaton Vance* and *Davis* have dismissed virtually

identical Section 36(b) claims in the past few months. *See Eaton Vance*, 380 F. Supp. 2d 222

and *Davis*, 2005 U.S. Dist. LEXIS 23203. In each of these cases, the courts held that allegations

regarding improper 12b-1 fees, soft dollars, and excessive brokerage commissions were

insufficient to state a Section 36(b) claim because they failed to show that the advisory fees were

disproportionate to the services provided. As the *Davis* court concluded just a few weeks ago:

> [A]llegations of 'improper 12b-1 fees, soft dollar payments, and
> commissions to brokers are insufficient to allege a claim under
> 36(b), which addresses only the negotiation and enforcement of
> payment arrangements between investment advisers and funds, not
> whether investment advisers acted improperly in the use of the
> funds. *Eaton Vance*, 380 F. Supp. 2d at 277. *The complaint
> contains no allegations from which it can be inferred that the
> investment advisory fees paid to defendants were 'so
> disproportionately large' that they bore "no reasonable
> relationship to the services rendered and could not have been the
> product of arm's-length bargaining.*" Id. at 236.

*Davis*, 2005 U.S. Dist. LEXIS 23203, at *9-*10 (Emphasis added).

The substantial section 36(b) jurisprudence that preceded *Dreyfus* and *Davis* dictated the

result in these cases. The prior Section 36(b) cases, discussed in defendants' initial

memorandum, held that allegations that the adviser and its affiliates acted to increase assets

- 14 -

under management so as to increase advisory fees, without specific facts to support a claim that a fee was excessive, were insufficient to state a claim. *See* Defendants' Mem. at 29-31, *discussing Green v. Nuveen Advisory Corp*, 295 F.3d 738, 742 (7th Cir. 2002) (allegations of a potential conflict of interest are insufficient to state a claim under Section 36(b)); *Green v. Fund Asset Management L.P.*, 286 F. 3d 682, 684-85 (3d Cir. 2002) ("a fee arrangement in which a fund's investment advisers have an incentive to maximize leverage in order to increase their advisory fees is not a *per se* breach or an investment adviser's fiduciary duties under Section 36(b)"); *Nuveen Fund Litigation*, 1996 U.S. Dist. LEXIS 8071, at *12 (N.D.Ill. 1996) (Section 36(b) does not apply to a "claim that accuses an investment advisor of imposing a transaction on the investment company only to generate fees for itself"); and *King v. Douglass*, 973 F. Supp. 707, 722-223 (S.D. Tex 1996) (dismissing a complaint where plaintiffs alleged that defendants improperly increased fund assets and fees through a coercive rights offering).

At most, plaintiffs allege that the defendants' purported misconduct increased the assets under management, which in turn increased the advisory fees. Such allegations are insufficient because the plaintiffs fail to allege any breach of fiduciary duty in connection with the fees themselves. *See Stegall*, *supra*, 2005 WL 2709127, at *32 (dismissing Section 36(b) claim: "[a]t a minimum, plaintiff must demonstrate some nexus between the alleged violation and the excessiveness of the fees charged"). The plaintiffs' allegations offer no basis on which this Court can find that the fees were excessive. The focus of the plaintiffs' allegations is that the distribution practices that resulted in greater fund sales were improper, not that fees were excessive.[9]

---

[9]    For that reason, this Court should find the decisions in *Dreyfus* and *AllianceBernstein* to be unpersuasive in this case. *Dreyfus*, slip op. at 16, the Court stated that allegations that "center on the 'wrongfulness' of the compensation paid to these defendants, without regard to the

In this case, as in *Eaton Vance*, the plaintiffs simply use the *Gartenberg* factors to dress a complaint about distribution practices in the guise of a section 36(b) claim. Instead of pleading any specific factual predicate for their conclusory allegations, plaintiffs' premise is that advisory fees were "excessive" because the defendants allegedly made payments that were designed to grow the Funds. Indeed, under plaintiffs' construct, any time the Funds grew, defendants were obligated to refund any additional advisory fees that resulted from such growth. But plaintiffs cannot show that advisory fees were "excessive" merely by pointing to an increase in the size of the Funds or the amount of fees or by reciting that economies of scale "if any" were not passed along to investors.

### C.    Plaintiffs Reliance On *Wicks* And *Jones* Is Misplaced.

Equally unavailing is plaintiffs' reliance on *Wicks v. Putnam*, No. 04-10988 GAO, 2005 U.S. Dist. LEXIS 4892 (D. Mass. March 28, 2005) and *Jones v. Harris Associates, L.P.*, CIV. A. No. 04-8305, 2005 WL 831301 (N.D. Ill. April 7, 2005). Those cases, in which the allegations of the complaint focus on advisory fees, and not distribution practices, are inapposite.

Unlike the plaintiffs here, the plaintiffs in *Wicks* alleged numerous facts regarding the specific services that had been provided by the adviser. Specifically, plaintiffs alleged that the nature and quality of services provided by the adviser had not changed, even though the assets

---

services rendered", would "not support a section 36(b) claim". The Court nonetheless denied the motion to dismiss where plaintiffs alleged that defendants collected fees "in excess of standard charges, and in violation of SEC rules", noting that it was a "close case". Similarly in *In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, 2005 WL 267753 at *6, the Court distinguished *Eaton Vance* as a case in which the "plaintiffs' allegations 'contain no specific facts that would demonstrate that the compensation paid to the defendants was disproportionate to the services rendered'".

held by the Funds had increased significantly.  They also alleged that the defendants'

institutional clients were able to negotiate and pay lower fees than the mutual funds.  *Id.* at *1.[10]

Similarly, in *Jones*, the plaintiffs made numerous factual allegations to support their

claim that the advisory fees were excessive in relation to the services provided.  Specifically,

plaintiffs alleged that there had been a "43-fold" increase in advisory fees over 10 years, that the

adviser charged lower fees to other clients for identical services, and that technological

improvements within the industry allowed the adviser to provide the services at a lower cost than

was previously possible.  *Id.* at *1.[11]

Here, unlike in these cases, there are no factual allegations which support plaintiffs'

conclusion that the advisory fees were excessive.  Plaintiff do not identify the amount of fees

paid by any Fund, the market rate for advisory services, the profitability of the advisers' work for

the Funds, or the nature or cost of the services provided to the Funds.  Therefore, the Court

should decline to follow *Wicks* and *Jones*.  Instead, the Court should follow *Davis* and *Eaton*

*Vance* and dismiss plaintiffs' Section 36(b) claim.

---

[10]   Plaintiffs claim that they have made allegations which are similar to those made in *Wicks*. *See* Plaintiffs' Opp. at 9 n. 5.  The paragraph of the Complaint plaintiffs cite, however, fails to allege any specific facts and instead alleges in wholly conclusory terms that defendants failed to pass along economies of scale.  *Id.* (citing Compl. ¶129).

[11]   Plaintiffs also try to excuse their failure to plead facts by relying on *Stragliabotti v. Franklin Resources, Inc.*, CIV. A. No. 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005), and *Pfeiffer v. Bjurman, Barry & Assoc.*, 2004 WL 1903075 (S.D.N.Y. Aug. 26, 2004).  Neither case is on point.  In *Stragliabotti*, the plaintiffs alleged "that defendants charge plaintiffs much higher fees than other clients for equivalent advisory services, and offer[ed] an example of the lower fee schedule utilized in a contract with New York State."  *Stragliabotti*, 2005 WL 645529 at *3.  In *Pfeiffer*, plaintiffs alleged that the12b-1 distribution fees were continued after a fund was closed to new investors.  *Pfeiffer*, 2004 WL 1903075  at *3.  Here, by contrast, plaintiffs do not allege that the 12b-1 fee charged to each Fund were excessive in relation to the services provided.

**D.    Plaintiffs' Allegations Regarding 12b-1 Fees, Excessive Commissions And Soft Dollars Fail To State A Section 36(b) Claim.**

Plaintiffs' Section 36(b) claim fails in its entirety for the reasons set forth above.  As set forth in defendants' initial memorandum, however, plaintiffs' allegations regarding 12b-1 fees, soft dollars and excessive commissions fail to state a claim for additional, independently sufficient reasons.  Accordingly, for these additional reasons, Count III should be dismissed.

**1.    Plaintiffs Cannot Assert A Claim Based Upon The 12b-1 Fees.**

Section 36(b)(4) provides that payments are exempt from Section 36(b) if they are covered by Section 17.  As plaintiffs concede, 12b-1 fees are not covered by Section 17 if they were paid under a "proper Rule 12b-1 plan."  Plaintiffs' Opp. at 18.  Because plaintiffs allege that the 12b-1 fees were not paid pursuant to a proper 12b-1 plan, plaintiffs have effectively alleged that the fees are covered by Section 17.  As such, the fees are not subject to Section 36(b).

In response to this argument, plaintiffs claim that the 12b-1 fees are subject to Section 36(b) because "defendants" have offered no reason why the alleged wrongful payments are subject to Section 17.  *Id*.  Plaintiffs miss the point.  Defendants' argument is based upon plaintiffs' own allegations:  it is plaintiffs who allege that the 12b-1 fees were not paid pursuant to a valid Rule 12b-1 plan.  Compl. ¶ 125.  Thus, it is plaintiffs who have already made allegations rendering the 12b-1 fees exempt from Section 36(b).[12]

---

[12]    Plaintiffs cite a number of cases holding that 12b-1 fees can be considered under Section 36(b).  *See* Plaintiffs' Opp. at 16-17 (citing *Meyer v. Oppenheimer*, 764 F.2d 76 (2d Cir. 1985); *Meyer v. Oppenheimer*, 895 F.2d 861 (2d Cir. 1990); and *Pfeiffer*, 2004 WL 1903075).  None of those cases, however, addressed allegations that the 12b-1 fees were not paid pursuant to a valid 12b-1 plan and, thus, none is relevant to defendants' argument that, because the 12b-1 fees are subject to Section 17, they are exempt from Section 36(b).

##### 2.    Plaintiffs Fail To Make Allegations Showing That The 12b-1 Fees Were Excessive.

Even if the 12b-1 fees were subject to Section 36(b), plaintiffs have failed to state a claim because plaintiffs nowhere describe the services that were provided in return for the 12b-1 fees and allege no facts showing that the fees were excessive in relation to such services. Indeed, two cases decided by the District of Massachusetts have dismissed Section 36(b) claims based upon 12b-1 fees for this very reason. *See Yameen*, 2005 WL 2709116, at *10, *16-*17 (dismissing Section 36(b) claim based upon 12b-1 fees where the plaintiff alleged that fees did not benefit shareholders but failed to make allegations showing that the fees were disproportionate to the services ); *ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163, 169 (D. Mass. 2005) (dismissing Section 36(b) claim alleging excessive 12b-1 fees where plaintiffs failed to allege that the "distribution fees are disproportionate and unrelated to the sales-related services actually provided when shares of he funds were marketed and sold").

Rather than making these necessary factual allegations, plaintiffs launch a wholesale assault on 12b-1 fees. Specifically, plaintiffs allege that the 12b-1 fees provided no benefit whatsoever to investors or the Funds. Compl ¶ 129. As described in defendants' brief, however, 12b-1 fees do, in fact, provide benefits to shareholders. Indeed, as plaintiffs now concede as "truisms," Plaintiffs' Opp. at 15 n. 12, 12b-1 fees were "essential to prevent an 'enormous and rapid shrinkage in asset size'" *Id*. (*citing* Def. Brf. at 32). Moreover, "12b-1 plans allow investors to purchase mutual funds without paying up front sales loads." *Id*.[13]

---

[13]    Plaintiffs claim that there is no support for defendants' argument that the addition of new shareholders led to economies of scale. *See* Plaintiffs' Opp. at 16. As set forth in defendants' public disclosures, however, the advisory fees declined on a percentage basis as the funds grew in size. The SAI for the Columbia Acorn trust provides, for instance, that the adviser would receive 0.75% of the first $700 million of the fund's daily net assets; 0.70% of the next $1.3 billion; and 0.65% of the amount in excess of $2 billion. Thus, as the fund grew larger, the advisory fee declined on a per share basis.

In light of these concessions, there is nothing left to plaintiffs' claim other than their unsupported and conclusory allegation that the 12b-1 fees were "excessive." Plaintiffs cannot proceed on the theory that 12b-1 fees provide no benefits to shareholders, because they have admitted that benefits exist. And they allege no facts showing that the fees were disproportionate to the services rendered (and the benefits provided). Accordingly, plaintiffs' allegations regarding 12b-1 fees fail to state a claim under Section 36(b).

### E.    Allegations Regarding Excessive Commissions And Soft Dollars Fail To State A Section 36(b) Claim.

In defendants' opening memorandum, defendants established that plaintiffs' allegations regarding excessive commissions and soft dollars failed to state a Section 36(b) claim because plaintiffs do not plead facts showing that the commissions were excessive. Defendants specifically noted that plaintiffs had "fail[ed] to identify a single transaction where an allegedly excessive commission was paid to a particular broker." Defendants' Mem. at 34. In their response, plaintiffs continue to fail to identify any such transaction. Accordingly, because there is no factual support for plaintiffs' conclusion that brokerage commissions were "excessive," plaintiffs' allegations regarding excessive commissions and soft dollars fail to state a Section 36(b) claim.

In addition, plaintiffs' allegations regarding excessive commissions and soft dollars fail because brokers -- and not defendants -- were the recipients of those payments. *See* Defendants' Mem. at 34. In response, plaintiffs claim that courts interpret "§ 36(b) to apply whenever a designated recipient under § 36 receives a benefit from a breach of fiduciary duty." Plaintiffs' Opp. at 22. But the case upon which plaintiffs primarily rely, *Fogel v. Chestnutt*, 533 F.2d 731 (2d Cir. 1975), was not a Section 36(b) case and does not support their argument. As the Second Circuit explained in *Fogel II*:

> That Section 36(b) was addressed only to cases where the advisory
> fee was attacked as such is demonstrated by the provision in
> Section 36(b) whereby any recovery is limited to the amount of
> compensation received. . . . The present action is not one . . . to
> which Section 36(b) applies.  It is rather for breach of the fiduciary
> duty to make a full disclosure to the independent directors of
> opportunities available to the Fund, even though a motivation for
> and the effect of the nondisclosure were to increase the gross fees
> by stimulating growth of the Fund . . . .

*Fogel v. Chestnutt*, 668 F.2d 100 (2nd Cir. 1981) at 112.

    Thus, as *Fogel II* makes clear, Section 36(b) is addressed only to cases involving

advisory fees "as such."  *Id*.  It does not apply to allegations that an adviser breached its duties

with the motivation of increasing advisory fees.  As such, it does not support plaintiffs' argument

that shareholders may recover based solely upon allegations regarding payments made to third

parties.  *See also Green*, 286 F.3d at 684-85 ("a fee arrangement in which a fund's investment

advisors have an incentive to maximize leverage in order to increase their advisory fees is not a

per se breach of" Section 36(b)); *King v. Douglass*, 973 F. Supp. 707 (dismissing complaint

where plaintiffs alleged that defendants increased fund assets but failed to allege that advisory

fee was disproportionate to the services provided).

    In summary, plaintiffs' allegations regarding excessive commissions and soft dollars fail

to state a claim.  Not only do such allegations fail to show that the fees were disproportionate to

the services provided, but plaintiffs cannot recover against defendants for payments made to

others.  *Green*, 286 F. 3d at 685; *see, e.g. Pfeiffer v. Bjurman, Barry & Assoc.*, No. 03-9741,

2004 WL 1903075, at *4 n.11 (S.D.N.Y. Aug. 26, 2004) (dismissing Section 36(b) claim

alleging that a fund incurred excessive expenses where plaintiff did not sue the company that

received such compensation).  Accordingly, plaintiffs' allegations regarding excessive

commissions and soft dollars fail to state a Section 36(b) claim.

**F.    The Complaint Fails To State A Claim Against The Individual Defendants.**

As Section 36(b) itself makes clear, a Section 36(b) claim can be brought only against an entity or person who received compensation for providing advisory services.  Section 36(b)(3) provides:

> No such action shall be brought or maintained against any person other than the recipient of such compensation or payments and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments.

15 U.S.C. 80a-35(b)(3).  Here, plaintiffs argue that a Section 36(b) claim can be brought against the trustees and officers because those individuals were "paid for services they did not perform." Plaintiffs' Opp. at 25.  Specifically, plaintiffs allege that the fees paid to directors were excessive because the directors failed to ensure that the advisory fees were scaled back as the funds grew larger.  *Id*.  With regard to the officers, plaintiffs allege that they failed to take care of the "day-to-day activities of the Funds."  *Id*. at 26.  Putting aside the utter failure of plaintiffs to plead any facts to support their theories, their Section 36(b) claim fails because they nowhere allege that the directors or officers received advisory fees.

In a case directly on point, the Western District of Pennsylvania recently dismissed a virtually identical Section 36(b) claim that had been brought against directors of a mutual fund. In reasoning fully applicable here, the court explained:

> Plaintiffs . . . argue that the Director Defendants should be or could possibly be, liable under section 36(b) because they were paid high salaries in order to induce them to breach their fiduciary duties to investors.  However, this argument ignores the plain text of the statute.  The statute does not provide for the recovery of any and all monies from anyone who may have been involved in a breach of fiduciary duty owed to mutual fund investors.  Instead, the statute allows for recovery of advisory compensation from the person or entity who received it.

*Dreyfus, slip op.* at 19.  Accordingly, because plaintiffs had failed to make the "fundamental allegation that the Directors Defendants received compensation for advisory services," the court dismissed the claim. *Id.* at 20-21.  *See also In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, No. 04 Civ. 4885 (SWK), 2005 WL 2677753, *6 (S.D.N.Y. October 19, 2005) (dismissing Section 36(b) claim against directors and explaining that "Plaintiffs' pleadings fail to delineate how the basic compensation packages of the Directors can be accurately characterized as advisory commissions"); *Eaton Vance*, 380 F. Supp. 2d at 35-37 (dismissing Section 36(b) claim against directors and rejecting the argument that a Section 36(b) claim can be brought against an indirect recipient of advisory fees); *Green v. Fund Asset Management*, 147 F. Supp. 2d 318, 329-30 (D.N.J. 2001) (dismissing Section 36(b) claim against officers).[14]

Here, as in *Dreyfus,* the Complaint does not allege that officers and directors received advisory fees.  At most, plaintiffs now claim that the individual defendants performed services that were related to the advisers' work, *e.g.*, that the directors approved the advisory contract and the officers oversaw the "day to day operations of the Funds."  Plaintiffs' Opp. at 27.  But there is a huge difference between serving as an adviser (and receiving advisory fees) and merely approving an advisory contract (and receiving directors' fees).  Therefore, because plaintiffs do not allege that the individual defendants received advisory fees, the Section 36(b) claim against the individual defendants should be dismissed.

---

[14]    The sole case plaintiffs cite, *Halligan v. Standard & Poor's/Intercapital*, 434 F. Supp. 1082 (E.D.N.Y. 1977), is not to the contrary.  It provides that Section 36(b) "must be narrowly read to mean that only those who receive money paid by the investment company for investment advisory services may be held liable for breach of their fiduciary duty with respect to such payments." *Id.* at 1085.

**G.    The Section 36(b) Claim Fails Because Plaintiffs Do Not Seek To Recover On Behalf Of The Funds.**

Lastly, plaintiffs' Section 36(b) claim should be dismissed "because plaintiffs do not seek to recover on behalf of the Funds." Defendants' Mem. at 35. In two very recent decisions, *Lord Abbett*, 2005 WL 2090517, and *Franklin*, 2005 U.S. Dist. LEXIS 20106, the District of New Jersey dismissed Section 36(b) claims for just this reason. The *Lord Abbett* court held that, under Section 36(b)'s express language and the Supreme Court case of *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984), "Section 36(b) confers only a derivative right." *Lord Abbett*, 2005 WL 2090517, at 488. Therefore, the court held that a direct Section 36(b) claim -- such as the one alleged here -- cannot proceed. *See also Daily Income Fund*, 464 U.S. at 535 n. 11 (explaining that the "right asserted by a shareholder suing under the statute is a 'right of the corporation'" and that "a § 36(b) action is undeniably 'derivative' in the broad sense of the word"); *Olmsted*, 283 F.3d at 433 (noting that Congress provided for a "private right of derivative action" under Section 36(b)).

In response, plaintiffs confusingly argue that they "have brought their § 36(b) claim 'on behalf of themselves and the class' in order to provide recovery to all of the Columbia Funds harmed by Defendants' misconduct." Plaintiffs' Opp. at 29. Plaintiffs' argument makes no sense. Under Section 36(b), any recovery "will go to the company rather than the plaintiff." *Daily Income*, 464 U.S. at 535. Here, however, plaintiffs do not seek recovery on behalf of the Funds, choosing, instead, to seek recovery on behalf of a class of shareholders. Thus, for this independent reason, plaintiffs' claim fails. *Lord Abbett*, 395 F. Supp. 2d at 474-491; *Mutchka*, 373 F. Supp. 2d 1021 at 1024 (dismissing Section 36(b) claim which was not brought on behalf of the fund).