## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE:  COLUMBIA ENTITIES LITIGATION

Civil Action No. 04-11704-NMG

### JOINT MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The parties jointly submit this memorandum in support of their Joint Motion for Preliminary Approval of Class Action Settlement (the "Joint Motion").  That motion asks this Court to enter the proposed Preliminary Approval Order, granting preliminary approval of the Stipulation and Settlement Agreement dated January 19, 2007 (the "Settlement Agreement").[1]  In addition, the motion seeks certification of the Settlement Class, the scheduling of a Final Settlement Hearing, a deadline for filing objections to the Settlement Agreement, and approval of the method and form of class notice.

## I.    INTRODUCTION

Plaintiffs brought class and derivative claims under the Investment Advisers Act of 1940 ("IAA"), the Investment Company Act of 1940 ("ICA"), and state law against the Columbia Funds' investment advisers, distributor, and affiliates.  Plaintiffs allege that defendants engaged in improper distribution practices, including, among others, purported improper payments to broker-

---

[1] A copy of the Settlement Agreement is submitted as Exhibit 1 to the Joint Motion; the proposed Preliminary Approval Order is Exhibit A to the Settlement Agreement.  Unless otherwise defined herein, all capitalized terms herein shall have the meanings attributed to them in the Settlement Agreement.

dealers to promote sales of fund shares. Plaintiffs allege that the defendants' conduct created conflicts of interests that prevented them from acting in best interests of the shareholders and that the defendant trustees breached their fiduciary duties to manage and supervise the funds.

The defendants deny liability for and dispute the matters alleged and deny any wrongdoing, harm, or liability to the plaintiffs.

This Court dismissed the complaint and entered final judgment dismissing all claims as to all parties. Plaintiffs subsequently appealed the dismissal and this matter was settled through the First Circuit Civil Appeals Management Program.

The parties believe that the settlement is fair, reasonable, and consistent with the provisions of Fed. R. Civ. P. 23(e), and respectfully request that the Court preliminarily approve the Settlement Agreement and enter the proposed Preliminary Approval Order.

## II.     BACKGROUND
### A.     Procedural History

In August 2004, and thereafter, plaintiffs brought separate actions against defendants in this Court. By order entered on March 3, 2005, the Court consolidated plaintiffs' actions as *In re Columbia Entities Litigation*, Civil Action No. 04-11704-REK (the "Action"). On June 9, 2005, plaintiffs filed a Consolidated Amended Complaint. Plaintiffs purport to bring the Action individually and as a class action, together with derivative claims.

Plaintiffs subsequently moved for class certification, and defendants moved to dismiss. On December 1, 2005, the Court issued a 21-page memorandum and order dismissing all claims and dismissing plaintiffs' motion for class certification as moot, and final judgment was entered in favor of all defendants, closing the case. Judge Keeton's opinion can be found at 2005 U.S. Dist. LEXIS 33439 (D. Mass. November 30, 2005).

On December 29, 2005, plaintiffs filed a notice of appeal. The appeal was docketed in the United States Court of Appeal for the First Circuit as File No. 06-1227.

To avoid the expense, uncertainty, and disruption of further litigation, the parties engaged in arms-length settlement negotiations and agreed to a compromise and settlement. Settlement negotiations were conducted on April 26, 2006 by the Honorable Neil Lynch, Settlement Counsel to the First Circuit Court of Appeals Civil Appeals Management Program. Subsequently, the parties negotiated further and finalized settlement documents, and entered into the Settlement Agreement on or about January 19, 2007.

On February 14, 2007, the parties filed a Joint Stipulation of Dismissal and Motion for Remand with the United States Court of Appeals for the First Circuit. The First Circuit dismissed the appeal and remanded the action to this Court on February 20, 2007 for settlement approval.

### B.    Factual Background

In the Action, plaintiffs brought class and derivative claims under the ICA and IAA, and common law against the following entities and persons: Columbia Management Advisors, Inc. ("CMA") and Columbia Wanger Asset Management, L.P. ("CWAM"), the advisers to the funds identified in Appendix A to the Settlement Agreement (the "Settling Funds") (collectively, CMA and CWAM shall be referred to as the "Adviser Defendants"); Columbia Funds Distributor, Inc., the distributor of the Settling Funds; FleetBoston Financial Corporation, n/k/a Bank of America Corporation, and Columbia Management Group, Inc., the present and former corporate parents of the advisers and the distributor, respectively; certain individuals named as defendants by reason of their current or former employment by the advisers or distributor; and certain individuals who

were trustees of one or more of the Settling Funds. The Settling Funds were named in the Action as nominal defendants.

Plaintiffs alleged that defendants used certain distribution practices -- "revenue sharing," "directed brokerage," 12b-1 payments, and "soft dollars" -- to make improper payments to broker-dealers to promote sales of Columbia fund shares, thereby increasing various fees that benefited the defendants to the detriment of fund shareholders. Additionally, plaintiffs alleged that the defendants' conduct created conflicts of interests that prevented them from acting in best interests of the shareholders, and that the defendant trustees breached their fiduciary duties to manage and supervise the funds. Defendants denied these allegations.

## III.    THE TERMS OF THE SETTLEMENT

### A.    <u>Definition of Settlement Class</u>

The Settlement Agreement defines the "Settlement Class" to include "all shareholders who held one or more shares of any of the Settling Funds at any time during the period August 2, 1999 through the fourteenth (14th) day following the entry of the Preliminary Approval Order, inclusive." *See* Settlement Agreement, § 1.2. The Settling Funds are listed on <u>Appendix A</u> to the Settlement Agreement. The parties seek certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3).

The principal terms of the Settlement Agreement are as follows:

**B.    <u>No Admission of Wrongdoing.</u>** The Settlement Agreement broadly provides that the Settlement Agreement shall not be offered or received as evidence of, or construed or deemed to be evidence of, any wrongdoing by any of the defendants. *See* Settlement Agreement, § 10.1.

C. **Actions to be Taken by Adviser Defendants.** The Settlement Agreement provides that, during the pendency of the Action or upon entry of final judgment, and in part as a result of the pendency of the Action, the Adviser Defendants have taken, or will take, the following actions:

1. Breakpoints: Adviser Defendants have taken certain actions regarding "break points," *i.e.*, a reduction in the overall rate charged as advisory fees when the mutual funds advised by Adviser Defendants reach certain levels of assets under management. In or about October or November, 2004, Adviser Defendants implemented certain breakpoints for many of the Settling Funds. Adviser Defendants have acknowledged that the Action was a factor in the implementation of such breakpoints.

2. Shareholder Communications: Adviser Defendants will enhance shareholder communications, including that the Adviser Defendants shall post disclosures on the relevant website(s) and may make certain other public disclosures regarding third-party revenue sharing payments, including stating the range of fees paid in basis points or appropriate financial equivalents. Adviser Defendants have acknowledged that the Action was a factor in the decision to so enhance such shareholder communications.

3. Research Expenses: Since the Action was filed, Adviser Defendants have reduced the Settling Funds' "soft dollar" spending from approximately $20 million per year to approximately $5 million per year. In calendar year 2007, Adviser Defendants agree further:

(a) to contribute, subject to Court approval of the Settlement Agreement, $100,000 in total as a "hard dollar" contribution to research expenses for the benefit of some or all of the Settling Funds; and

(ii) to confirm by letter to counsel for plaintiffs that they have done so.

*See* Settlement Agreement, § 5.2.

**D.      Releases.**  In consideration of the benefits provided by the Settlement Agreement, the Settlement provides that, within fifteen days of the Settlement Agreement's Effective Date, the parties shall execute and deliver general releases in the form of those attached to the Settlement Agreement as Exhibits D, E, and F.  *See* Settlement Agreement, § 5.1.  Exhibit D is a release to be executed by the "Class Shareholders" (*i.e.*, a release pertaining to the class claims made in the Action) and signed by the five named plaintiffs and Exhibit E is a release to be executed by the Settling Funds and "Current Shareholders" (*i.e.*, a release pertaining to the derivative claims) and signed by representatives of the Settling Funds and the five named plaintiffs; both of these release the Released Parties from all Released Claims.  Exhibit F, signed by the defendants, releases the Named Plaintiffs and all of their present and former counsel and each of their families, heirs, spouses, successors, general or limited partners or partnerships, personal or legal representatives, estates, administrators, agents, related or affiliated entities from all Settled Defendants' Claims.

**E.      Notice and Settlement Class Members Ability to Object.**

The Settlement Agreement provides that the parties will seek, by moving the Court to approve the proposed Preliminary Approval Order, to have forms of notice and a notice procedure approved.  *See* Settlement Agreement, § 6.2.  The proposed Notice of Settlement and Final Approval Hearing and Summary Notice of Settlement and Final Approval Hearing are Exhibits 1 and 2, respectively, to the proposed Preliminary Approval Order.

The notice procedure reflected in the proposed Preliminary Approval Order (consistent with Section 6.2 of the Settlement Agreement), is the following:

1.      Not later than June 30, 2007 (provided that the Preliminary Approval Order is entered prior to May 1, 2007) (the "Notice Date"), Adviser Defendants shall cause a copy of the Notice of Settlement to be mailed, postage prepaid, directly to each Shareholder whose identity is known to Defendants;

2.      Not later than the Notice Date, Adviser Defendants shall, with respect to Shareholders who held or hold their shares in "street name" (*i.e.*, in the name of the broker-dealer that sold them their shares), cause copies of the Notice of Settlement to be sent with notice to the relevant broker-dealers;

3.      Until ten days prior to the Final Settlement Hearing, Adviser Defendants shall make extra copies of the Notice of Settlement available to the relevant broker-dealers upon request;

4.      Not later than the Notice Date, Adviser Defendants shall cause a summary of the Notice of Settlement to be published on *Business Wire*; and

5.      Prior to the Final Settlement Hearing, Adviser Defendants shall serve on Counsel of Record and file with the Court proof, by affidavit or declaration, that the Notice of Settlement has been mailed or distributed to Shareholders as provided for in the Preliminary Approval Order.

*See* proposed Preliminary Approval Order, § 5.

The Settlement Agreement also provides that any Shareholder who objects to the approval of the Settlement Agreement may file written objections and appear at the Final Settlement Hearing to show cause why the Settlement Agreement should not be approved as fair, reasonable, and adequate and a judgment should not be entered thereon, or why attorneys' fees and expenses should not be awarded in such amount as requested by plaintiffs' counsel.  To be heard or to have their papers or briefs entertained at the Final Settlement Hearing (except if the Court in its

discretion shall otherwise direct), a notice of intention to appear or copies of all papers and briefs proposed to be submitted at the hearing must be served upon Counsel of Record at least ten (10) days prior to the date fixed for the Final Settlement Hearing.  *See* Settlement Agreement, § 6.2(c); *see also* proposed Preliminary Approval Order, § 8.

      **F.**     **<u>Attorneys Fees and Litigation Expenses.</u>**  The Settlement Agreement provides that, subject to the Court's approval, counsel for plaintiffs may make, and defendants will not oppose, an application for the reimbursement of attorneys' fees and expenses of up to a maximum of $450,000 in the aggregate to be paid by Adviser Defendants in connection with the prosecution of this Action on behalf of plaintiffs.[2]  The Settlement Agreement also provides that none of the attorneys' fees and expenses awarded to counsel for plaintiffs will be paid or reimbursed by the Columbia Funds.  *See* Settlement Agreement, §§ 5.3, 8.1.

      **G.**     **<u>Defendants' Right to Reject Settlement.</u>**  The Settlement Agreement provides that it is contingent upon preliminary and final court approval, including class certification for the purposes of settlement, and provides that in the event that the cost of providing notice to shareholders pursuant to the terms of the Settlement Agreement exceeds $1 million, the Adviser Defendants have the unilateral right, in their sole discretion, to reject the Settlement Agreement. *See* Settlement Agreement, §§ 9.1, 9.2.

      **H.**     **<u>Costs of Administering Settlement.</u>**  The Settlement Agreement provides that the Adviser Defendants shall bear the reasonable costs and expenses of notifying shareholders of the terms of the Settlement Agreement, the costs of identifying shareholders of the Settling Funds to

---

[2] In conjunction with the final settlement hearing, Plaintiffs will submit a detailed memorandum supporting Plaintiffs' fee and expense application.

whom the notice is required to be sent, and of printing, addressing, and mailing or distributing the notice as provided for in the proposed Preliminary Approval Order, subject to the proviso noted above, that if cost of providing notice to shareholders exceeds $1 million, the Adviser Defendants have the unilateral right, in their sole discretion, to reject the Settlement Agreement. *See* Settlement Agreement, § 6.3.

## IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The parties believe that the settlement of the Action on the terms and conditions outlined at Section III, *infra*. -- and more fully set forth in the Settlement Agreement -- is fair, reasonable, and in the best interest of the parties and the absent members of the Settlement Class.  The parties have reviewed and analyzed the legal and factual issues presented in the Action, the risks and expense involved in pursuing the appeal to conclusion, and the likelihood of obtaining consideration or recovering damages in excess of those obtained through the Settlement Agreement.

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval.  4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.25, p. 38 (4th ed. 2002).  Approval of a proposed settlement is a matter within the broad discretion of the district court.  *See*, *e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a settlement approval or final fairness hearing.  *See* MANUAL FOR COMPLEX LITIGATION § 21.632, p. 320-21 (4th ed. 2004).

9

At the preliminary approval phase, the Court need <u>not</u> answer the ultimate question of whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Rather, the Court is asked to determine that the form of notice is adequate, to permit notice of the terms of the settlement be sent to the class, to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), and to preliminarily consider the fairness of the settlement. *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998) (at preliminary approval, court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing"); *see also* 5 James Wm. Moore, MOORE'S FEDERAL PRACTICE 23.165[2], 23-515 (3d ed. 1999) ("Although Rule 23(e) does not require it to do so, a court will often conduct a preliminary review of a proposed settlement before ordering that notice be sent to the class.").

Furthermore, in considering a proposed settlement, the court need not reach any ultimate conclusions on the substantive factual or legal issues of plaintiffs' claims. *See Detroit v. Grinnel Corp.*, 495 F.2d 448 (2d. Cir. 1974). "It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement. . . . Such procedure would emasculate the very purpose for which settlements are made." *Id.* at 462 (citation omitted). "Nor should the Court make the proponents of the agreement justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-525 (S.D.N.Y. 1972).

When making its final determination regarding the 'fairness, reasonableness, and adequacy' of a settlement, courts will "consider both the substantive terms of the settlement compared to the likely result of the trial and the negotiating process by which the settlement was reached." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) (internal quotations and citation omitted). In such an evaluation, "the primary concern is with the substantive terms of the settlement: Basic to this . . . is the need to compare the terms of the compromise with the likely rewards of litigation." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotations and citations omitted). That said, because a final determination as to the 'fairness, reasonableness, and adequacy' of the settlement is not necessary at the preliminary approval stage, the Court now only need conclude that there is "probable cause" that the criteria for approval will be satisfied. *In re Panasonic Consumer Elecs. Products Antitrust Litig.*, 1989 WL 63240 at *2 (S.D.N.Y. June 5, 1989) (quoting *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). This standard is met where, as here, "the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies such as giving preferential treatment to class representatives, or granting excessive attorneys fees." *In re Medical X-ray Film Antitrust Litig.*, 1997 WL 33320580 at *6 (E.D.N.Y. Dec. 26, 1997) (citation omitted); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. at 210 (at preliminary approval, "the Court need only find that the proposed settlement fits within the range of possible approval. . . .'") (internal quotations and citations omitted). Moreover, even before the application of these factors, the proposed settlement is entitled to a presumption of fairness because it was negotiated at arm's length by experienced, knowledgeable counsel. *See In re Excess Value Ins. Coverage*

*Litig.*, 2004 U.S. Dist. LEXIS 14822, at *32 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (internal quotations and citations omitted).

Application of the above standards to the proposed settlement demonstrates that preliminary approval should be granted.  As an initial matter, the Settlement Agreement was the product of extensive, adversarial, non-collusive, arms-length negotiations conducted before a neutral, court-appointed mediator.  Furthermore, negotiations on both sides were conducted by competent, experienced, and knowledgeable counsel who have extensive experience in complex class action litigation.  The settlement has produced concessions that will benefit certain Settlement Class members, depending on the dates on which they hold or held their shares. Accordingly, the settlement has no "obvious deficiencies."  Notice and administrative costs will be borne by the Adviser Defendants (subject to the contingency discussed above).  Subject to the Court's approval of plaintiffs' application for attorneys' fees and expenses, the Adviser Defendants will pay the reimbursement of such attorneys' fees and expenses of up to a maximum of $450,000 in the aggregate.

Finally, settlement of disputes is favored by the law: "[i]t is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement . . . .  In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong*, 616 F.2d at 312-13 (internal quotations and citations omitted).  The court in *Armstrong* also stressed that "the essence of a settlement is a compromise [--] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a resolution somewhere

between the two extremes." *Id.* at 315. The Settlement Agreement, reached after substantial litigation and extensive negotiation, represents a fair and reasonable resolution to the Action, provides substantial benefits to the members of the Settlement Class tailored to the unique situation of this case, and disposes of the inherent uncertainty, burden, expense, and delay of potentially protracted appeal practice and litigation.

## V.     THE PROPOSED SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED UNDER RULES 23(a) AND 23(b)(3)

In granting preliminary settlement approval, the Court should also provisionally certify the class for purposes of the settlement under Rules 23(a) and (b)(3). Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. at 205. Here, as discussed below, the Settlement Class meets the requirements of Rule 23(a)(1)-(4) and (b)(3) – *i.e.*, that (a) "the class is so numerous that joinder of all members is impracticable" ("numerosity"), (b) "there are questions of law or fact common to the class" ("commonality"), (c) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality") and (d) "the representative will fairly and adequately protect the interests of the class" ("adequacy"), (e) "the questions of law predominate over any questions affecting only individual members" ("predominance"), and (f) "a class action is superior to all other available methods for the fair and efficient adjudication of the controversy" ("superiority"). Therefore, the proposed Settlement Class has no obvious defects and warrants provisional certification.

A.     **Numerosity.** The Settlement Class includes all shareholders who held one or more shares of any of the Settling Funds at any time during the period August 2, 1999 through the

fourteenth (14th) day following the entry of the Preliminary Approval Order, inclusive. The Settling Funds include the 81 funds listed on Appendix A to the Settlement Agreement. There are therefore many thousands of persons who are included in the definition of the Settlement Class and joinder is consequently impracticable. This is more than sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See, e.g., Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (40 sufficient).

B. **Commonality.** The "threshold requirements of commonality and typicality [under Rule 23(a)(1) and (2)] are not high." *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir. 1993). "Because the class need share only a single legal *or* factual issue at this stage of the analysis, the commonality prerequisite ordinarily is easily satisfied." *Mulligan v. Choice Mortgage Corp. USA*, 1998 U.S. Dist. LEXIS 13248 *8 (D.N.H. 1998) (emphasis added); *see also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (courts have "liberally construed" the commonality requirement, requiring only a "minimum of one issue common to all class members.") (citation omitted). Here, the Consolidated Amended Complaint alleges a common course of conduct undertaken by the defendants -- allegedly improper distribution practices -- that affected the Settlement Class members, which easily satisfies the commonality requirement of Rule 23(a)(2).

C. **Typicality.** The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *See, e.g., De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory") (quoting H.

14

Newberg, CLASS ACTIONS § 1115(b) at 185 (1977)); *see also Kornberg v. Carnival Cruse Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").  "The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs."  *Priest v. Zayre Corp.,* 118 F.R.D. 552, 555 (D. Mass. 1988) (internal citation omitted).  "The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claims."  *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991)  "The claims of a class representative are 'typical' when the representative's injuries arise from the same course of conduct as do the injuries that form the basis of the class claims."  *Fraser v. Major League Soccer, L.L.C.,* 180 F. R. D. 178, 181 (D. Mass. 1998); *see also Burstein v. Applied Extrusion Technologies, Inc.,* 153 F.R.D. 488, 491 (D. Mass. 1994) (same).  Here, because the Named Plaintiffs' claims and those of the Settlement Class arise out of the same course of conduct alleged to have perpetrated by the defendants, the typicality requirement of Rule 23(a)(3) is satisfied.

    **D.**    **Adequacy.**  The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involves two considerations:  (1) whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiff has any interests antagonistic to the Class.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Retired Chicago Police Ass'n.* 7 F.3d at 598.  Addressing the first question, Moulton & Gans, P.C., Milberg Weiss & Bershad LLP, and Stull, Stull & Brody have successfully pursued and resolved a multitude of complex class actions

in courts throughout the United States.[3]  With regard to the second inquiry, it is initially noteworthy that a conflict or potential conflict of interest will not necessarily defeat a finding of adequacy.  To do so, the conflict must be "fundamental."  *In re Visa Check/ MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001).  Here, Named Plaintiffs and the members of the Settlement Class share an interest in obtaining redress for the allegedly improper distribution practices.  Named Plaintiffs have pursued this matter diligently, including launching an appeal of the granting of defendants' motion to dismiss.  Named Plaintiffs and their counsel therefore satisfy the adequacy of representation requirement embodied in Rule 23(a)(4).

  **E.** **Predominance and Superiority.**  In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual claims.  *See, e.g., Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986).  "Courts generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."  *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986) (citation omitted).

  "Varying fact patterns may underlie individual claims as long as a common pattern of unlawful conduct by the defendant is directed at class members."  *Curtis v. Commissioner, Me. Dept. Hum. Servs*. 159 F.R.D. 339, 341 (D. Me. 1994).  "A common  nucleus of operative fact is usually enough to satisfy the commonality  requirement of Rule 23(a)(2)."  *Keele v. Wexler*, 149

---

[3] The parties are aware of the March 15, 2007 ruling in *In re Organogenesis Securities Litigation*, Civil Action No. 04-10027 (D. Mass), in which Judge Tauro found that Milberg Weiss & Bershad LLP failed to meet its Fed. R. Civ. P. 23(a)(4) burden of showing adequacy as lead counsel.  In that case, Milberg Weiss & Bershad LLP was "sole Lead Counsel," here they are co-class counsel.  *Id.*, at 27.

F.3d 589, 594 (7th Cir. 1998) (internal quotations and citations omitted). Here, common issues relating to the legality of the allegedly improper distribution practices predominate over any individual issues, as required by Rule 23(b)(3).

Finally, a class action is the superior method to resolve the claims presented in this action. In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. *See In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d at 133. In its analysis, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of class members would possess the initiative to litigate individually. *See id.*; *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court can certify the case as a class action under Rule 23(b)(3). Given the number of individual lawsuits that would be required if a class were not certified in this case, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the members of the Settlement Class within the meaning of Rule 23(b)(3). Moreover, to the extent that any member of the Settlement Class wishes to pursue any such individual claim, they are free to opt-out of the Settlement under Rule 23(b)(3) by mailing a request for exclusion in the manner specified in the Notice no later than fourteen days prior to the Final Settlement Hearing.

## VI. THE PROPOSED NOTICE AND METHOD OF CLASS NOTICE IS APPROPRIATE

Under rule 23(c)(2)(B), the class notice must "concisely and clearly state in plain, easily understood language:" (1) "the nature of the action," (2) "the definition of the class certified," (3)

"the class claims, issues or defenses," (4) "that a class member may enter an appearance through counsel if the member so desires," (5) "that the court will exclude from the class any who requests exclusion, stating when and how members may elect to be excluded," and (6) "the binding effect of a class judgment on class members under Rule 23(c)(3)."  A review of the proposed Notice of Settlement, Exhibit B to the Settlement Agreement, reflects that each of these requirements is satisfied.

In actions brought under Fed. R. Civ. P. 23(b)(3), the Court "must direct to class members the best notice practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "In every case, reasonableness is a function of anticipated results, costs, and amounts involved."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977).

Notice of this class action to the Settlement Class will be effected in the following manner.   First, not later than the Notice Date, Adviser Defendants will mail the Notice of Settlement, postage prepaid, directly to each Shareholder whose identity is known to Defendants. Second, also not later than the Notice Date, Adviser Defendants will, with respect to Shareholders who held or hold their shares in "street name" (*i.e.*, in the name of the broker-dealer that sold them their shares), cause copies of the Notice of Settlement to be sent with notice to the relevant broker-dealers.  Third, until ten days prior to the Final Settlement Hearing, Adviser Defendants shall make extra copies of the Notice of Settlement available to the relevant broker-dealers upon request.  Finally, not later than the Notice Date, Adviser Defendants shall cause a summary of the Notice of Settlement to be published on Business Wire.

"Individual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice," but "it is the court's duty to ensure that the notice ordered is *reasonably calculated* to reach the absent class members." *Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53, 56 (1st Cir. 2004) (quoting *Hallman v. Pa. Life Ins. Co.*, 536 F. Supp. 745, 748-49 (N.D. Ala.1982) (emphasis added). Therefore, "the question … is not whether some individual shareholders got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). With regard to the Shareholders whose identity is known to the Adviser Defendants and to whom the Notice of Settlement will be mailed directly, such individual mailed notice satisfies Rule 23 and the requirements of due process. *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175 (1974). With regard to those Shareholders who held or hold their shares in "street name," Adviser Defendants will cause copies of the Notice of Settlement to be sent with notice to the relevant broker-dealers, with a request that the broker-dealers include a copy of the notice in shareholder mailings. Federal courts have approved distribution of settlement notice to shareholders who hold their shares in "street name" through the respective broker-dealers. *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 940, 946-947 (10th Cir. 2005) (upholding district court approval of "street name" notice in Rule 23(b)(3) class action, even though certain beneficial owners received the notice after the close of the opt-out period); *see also Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (same).

In addition, Adviser Defendants have agreed to make additional copies of the Notice of Settlement available to the relevant broker-dealers upon request. Finally, the parties have agreed

to supplement the mailed notices by publication of a summary notice on *Business Wire* no later than the Notice Date. *Business Wire* is the global market leader in commercial news distribution: its comprehensive news and disclosure network originates hundreds of thousands of new announcements each year. The summary notice directs Shareholders to the multiple websites at which the full Notice of Settlement is available for downloading. The summary notice also lists a toll-free telephone number which Shareholders may call to request that a copy of the full Notice be mailed to them.

As is reflected in the Settlement Agreement, the parties expect that the cost of administering the Settlement for the Adviser Defendants may be up to—but no more than—$1 million. Given the nature of the Settlement—including anticipated results, costs, and amounts involved—the above method of providing notice is reasonable and is the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)B.

## VII.  CONCLUSION

For the reasons stated above, the parties respectfully request that the Court enter the proposed Preliminary Approval Order, (1) granting preliminary approval of the Settlement Agreement, (2) certifying, for settlement purposes only, a settlement class, (3) scheduling a final settlement hearing to take place following notice to the settlement class, (4) setting the deadline for filing objections to the Settlement Agreement and (5) approving, as to form and content, the Notice of Settlement and the summary of the Notice of Settlement and the method by which notice will be provided.

Dated: April 11, 2007

Respectfully Submitted,

  /s/ Nancy Freeman Gans
Nancy Freeman Gans (BBO # 184540)
Moulton & Gans, P.C.
55 Cleveland Road
Wellesley, MA 02481
(781) 235-2246

*Counsel for Plaintiffs Joan Cohen, Gene F. Osburn, Jean S.B. Simmonds and R.L. Simmonds*

Jerome M. Congress
Janine L. Pollack
Milberg Weiss & Bershad LLP
One Pennsylvania Plaza
New York, NY 10119-0165
(212) 594-5300

*Counsel for Plaintiff Joan Cohen*

Jules Brody
Mark Levine
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017
(212) 687-7230

*Counsel for Plaintiffs Gene F. Osburn, Jean S.B. Simmonds and R.L. Simmonds*

Charles J. Piven
Marshall N. Perkins
Brower Piven, A Professional Corporation
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, MD 21202
(410) 332-0030

*Counsel for Plaintiff Joan Cohen*

  /s/ Frances S. Cohen
Frances S. Cohen  (BBO # 542811)
T. Peter R. Pound (BBO# 657378)
Michael C. Moran (BBO# 666885)
Bingham McCutchen LLP
150 Federal Street, Boston, MA  02110
(617) 951-8000

*Counsel for Defendants FleetBoston Financial Corporation, a/k/a Bank of America Corporation, Columbia Management Group, Inc., Columbia Management Advisers, Inc., Columbia Wanger Asset Management, L.P., Columbia Funds Distributor, Inc., Kevin Connaughton, P. Zachary Egan, Kevin S. Jacobs, Kenneth A. Kalina, Bruce H. Lauer, Jean Loewenberg, Louis J. Mendes, Robert A. Mohn,  Todd Narter, Christopher Olson, John H. Park, Vincent P. Pietropaolo, Joseph Turo, and Leah J. Zell*

Brien T. O'Connor
Giselle J. Joffre
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

*Counsel for Defendants Columbia Funds Trust and Columbia Funds, excluding Columbia Acorn Trust and Columbia Acorn Funds*

21

Joseph H. Weiss
Richard A. Acocelli
Weiss & Lurie
551 Fifth Avenue, Suite 1600
New York, NY 10176
(212) 682-3025

*Counsel for Plaintiffs Gene F. Osburn, Jean
S.B. Simmonds and R.L. Simmonds*

Marc A. Topaz
Richard A. Maniskas
Schiffrin, Barroway, Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

*Counsel for Plaintiff Paula Slicker*

David Pastor
Gilman and Pastor, LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
(617) 742-9700

*Counsel for Plaintiff Paula Slicker*

Brian E. Pastuszenski
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(617) 570-1094

*Counsel for Columbia Acorn Trust and
Columbia Acorn Funds*

Kenneth E. Rechtoris
Todd E. Pentecost
Bell, Boyd & Lloyd LLC
70 W. Madison St., 3100
Chicago, IL 60602
(312) 807-4210

Timothy O. Egan
Peabody & Arnold LLP
50 Rowes Wharf
Boston, MA 02110
(617) 951-2100

*Counsel for Independent Trustee Defendants*

Richard J. Rosensweig
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, MA 02110
(617) 482-1776

Phil C. Neal
Mark A. Rabinowitz
Dao J. Boyle
Jenny S. Kim
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street, Suite 2200
Chicago, IL 60602
(312) 269-8000

*Counsel for Defendants Charles P.
McQuaid and Ralph Wanger*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon counsel of record for each other party via the ECF/CM system on April 11, 2007.

/s/ T. Peter R. Pound
T. Peter R. Pound
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000
peter.pound@bingham.com

23