**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE:  COLUMBIA ENTITIES LITIGATION

Civil Action No. 04-11704-MBB

**JOINT MEMORANDUM IN SUPPORT OF**
**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

The parties jointly submit this memorandum in support of their joint motion for final approval of class action settlement and entry of final order and judgment (the "Joint Motion") and to respond to objections made by members of the Settlement Class.  The Joint Motion asks this Court to finally approve the Stipulation and Settlement Agreement dated January 19, 2007 (the "Settlement Agreement") and to enter the proposed Final Order and Judgment attached thereto as Exhibit 1 (the "Final Order and Judgment").   For the reasons set forth herein, the Joint Motion should be granted.

**I.      INTRODUCTION**

Plaintiffs brought class and derivative claims under the Investment Advisers Act of 1940 ("IAA"), the Investment Company Act of 1940 ("ICA"), and state law against the Columbia Funds' investment advisers, distributor, and affiliates.  Plaintiffs allege that defendants engaged in improper distribution practices, including, among others, purported improper payments to broker-dealers to promote sales of fund shares.  Plaintiffs allege that the defendants' conduct created conflicts of interests that prevented defendants from acting in the best interests of the shareholders and that the defendant trustees breached their fiduciary duties to manage and supervise the funds.

A/72189130.2

The defendants deny liability for and dispute the matters alleged and deny any wrongdoing, harm, or liability to the plaintiffs.

This Court dismissed the complaint and entered final judgment dismissing all claims as to all parties. Plaintiffs subsequently appealed the dismissal and this matter was settled through the First Circuit Civil Appeals Management Program ("CAMP").

The parties believe that the settlement is fair, reasonable, and consistent with the provisions of Fed. R. Civ. P. 23(e) and that the objections made by a miniscule number of members of the Settlement Class are without merit. They jointly request that this Court finally approve the Settlement Agreement and enter the proposed Final Order and Judgment.

## II. BACKGROUND

### A. <u>Procedural History</u>.

In August 2004, and thereafter, plaintiffs brought separate actions against defendants in this Court. By order entered on March 3, 2005, the Court consolidated plaintiffs' actions as *In re Columbia Entities Litigation*, Civil Action No. 04-11704-REK (the "Action"). On June 9, 2005, plaintiffs filed a Consolidated Amended Complaint. Plaintiffs purport to bring the Action individually and as a class action, together with derivative claims.

Plaintiffs subsequently moved for class certification, and defendants moved to dismiss. On December 1, 2005, the Court issued a 21-page memorandum and order dismissing all claims and rejecting plaintiffs' motion for class certification as moot. Final judgment entered in favor of all defendants, closing the case. Judge Keeton's opinion can be found at 2005 U.S. Dist. LEXIS 33439 (D. Mass. November 30, 2005).

On December 29, 2005, plaintiffs filed a notice of appeal. The appeal was docketed in the United States Court of Appeal for the First Circuit as File No. 06-1227.

To avoid the expense, uncertainty, and disruption of further litigation, the parties engaged in arms-length settlement negotiations and agreed to a compromise and settlement. Settlement negotiations were conducted on April 26, 2006 by the Honorable Neil Lynch, CAMP Settlement Counsel. Subsequently, the parties negotiated further and finalized settlement documents, and entered into the Settlement Agreement on or about January 19, 2007.

On February 14, 2007, the parties filed a Joint Stipulation of Dismissal and Motion for Remand with the United States Court of Appeals for the First Circuit. The First Circuit dismissed the appeal and remanded the Action to this Court on February 20, 2007 for settlement approval.

On April 11, 2007, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement, accompanied by a memorandum in support thereof. A hearing on that motion occurred on April 30, 2007, before the Honorable Marianne B. Bowler, USMJ. On May 11, 2007, the Court entered a preliminary approval order. On May 16, 2007, the parties filed a Joint Motion to Amend Preliminary Approval Order. On May 17, 2007, the Court granted that motion and entered the Amended Preliminary Approval Order (the "Preliminary Approval Order").

## B.      Factual Background.

In the Action, plaintiffs brought class and derivative claims under the ICA and IAA, and common law against the following entities and persons: Columbia Management Advisors, Inc. ("CMA") and Columbia Wanger Asset Management, L.P. ("CWAM"), the advisers to the funds identified in Appendix A to the Settlement Agreement (the "Settling Funds") (collectively, CMA and CWAM shall be referred to as the "Adviser Defendants"); Columbia Funds Distributor, Inc., the distributor of the Settling Funds; FleetBoston Financial Corporation, n/k/a Bank of America Corporation, and Columbia Management Group, Inc., the present and former corporate parents of

A/72189130.2

the advisers and the distributor, respectively; certain individuals named as defendants by reason of their current or former employment by the advisers or distributor; and certain individuals who were trustees of one or more of the Settling Funds. The Settling Funds were named in the Action as nominal defendants.

Plaintiffs alleged that defendants used certain distribution practices -- "revenue sharing," "directed brokerage," 12b-1 payments, and "soft dollars" -- to make improper payments to broker-dealers to promote sales of Columbia fund shares, thereby increasing various fees that benefited the defendants to the detriment of fund shareholders. Additionally, plaintiffs alleged that the defendants' conduct created conflicts of interests that prevented them from acting in the best interests of the shareholders, and that the defendant trustees breached their fiduciary duties to manage and supervise the funds. Defendants deny these allegations.

## III. THE TERMS OF THE SETTLEMENT

### A. Definition of Settlement Class

The Settlement Agreement defines the "Settlement Class" to include "all shareholders who held one or more shares of any of the Settling Funds at any time during the period August 2, 1999 through the fourteenth (14th) day following the entry of the Preliminary Approval Order, inclusive." *See* Settlement Agreement, § 1.2. For the reason that the Preliminary Approval Order was entered May 17, 2007, the Settlement Class includes all shareholders who held one or more shares of any of the Settling Funds at any time during the period August 2, 1999 through May 31, 2007. The Settling Funds are listed on Appendix A to the Settlement Agreement.

The principal terms of the Settlement Agreement are as follows:

A/72189130.2

B.    __Actions to be Taken by Adviser Defendants.__

The Settlement Agreement provides that, during the pendency of the Action or upon entry of final judgment, and in part as a result of the pendency of the Action, the Adviser Defendants have taken, or will take, the following actions:

1.    Breakpoints:  Adviser Defendants have taken certain actions regarding "break points," *i.e.*, a reduction in the overall rate charged as advisory fees when the mutual funds advised by Adviser Defendants reach certain levels of assets under management.  In or about October or November, 2004, Adviser Defendants implemented certain breakpoints for many of the Settling Funds.  Adviser Defendants have acknowledged that the Action was a factor in the implementation of such breakpoints.

2.    Shareholder Communications:  Adviser Defendants will enhance shareholder communications, including that the Adviser Defendants shall post disclosures on the relevant website(s) and may make certain other public disclosures regarding third-party revenue sharing payments, including stating the range of fees paid in basis points or appropriate financial equivalents.  Adviser Defendants have acknowledged that the Action was a factor in the decision to so enhance such shareholder communications.

3.    Research Expenses:  Since the Action was filed, Adviser Defendants have reduced the Settling Funds' "soft dollar" spending from approximately $20 million per year to approximately $5 million per year.  In calendar year 2007, Adviser Defendants agree further:

(i)    to contribute, subject to Court approval of the Settlement Agreement, $100,000 in total as a "hard dollar" contribution to research expenses for the benefit of some or all of the Settling Funds; and

(ii)    to confirm by letter to counsel for plaintiffs that they have done so.

5

*See* Settlement Agreement, § 5.2.

**C.      Releases.**

In consideration of the benefits provided by the Settlement Agreement, the Settlement provides that, within fifteen days of the Settlement Agreement's Effective Date, the parties shall execute and deliver general releases in the form of those attached to the Settlement Agreement as Exhibits D, E, and F.  *See* Settlement Agreement, § 5.1.  Exhibit D is a release to be executed by the "Class Shareholders" (*i.e.*, a release pertaining to the class claims made in the Action) and signed by the five named plaintiffs and Exhibit E is a release to be executed by the Settling Funds and "Current Shareholders" (*i.e.*, a release pertaining to the derivative claims) and signed by representatives of the Settling Funds and the five named plaintiffs; both of these release the Released Parties from all Released Claims.  Exhibit F, to be executed by the defendants, releases the Named Plaintiffs and all of their present and former counsel and each of their families, heirs, spouses, successors, general or limited partners or partnerships, personal or legal representatives, estates, administrators, agents, related or affiliated entities from all Settled Defendants' Claims.

**D.      Notice and Settlement Class Members' Ability to Object.**

The Settlement Agreement provides that the parties would seek, by moving the Court to approve a Preliminary Approval Order, to have forms of notice and a notice procedure approved. *See* Settlement Agreement, § 6.2.  The Notice of Settlement and Final Approval Hearing and Summary Notice of Settlement and Final Approval Hearing were Exhibits 1 and 2, to the proposed Preliminary Approval Order, and were approved by the Court May 17, 2007.

The notice procedure reflected in the Preliminary Approval Order (and consistent with Section 6.2 of the Settlement Agreement) (the "Notice Procedure"), is the following:

1.      Not later than June 30, 2007 (provided that the Preliminary Approval Order is entered prior to May 1, 2007) (the "Notice Date"), Adviser Defendants would cause a copy of the Notice of Settlement to be mailed, postage prepaid, directly to each Shareholder whose identity is known to Defendants;

2.      Not later than the Notice Date, Adviser Defendants would, with respect to Shareholders who held or hold their shares in "street name" (*i.e.*, in the name of the broker-dealer that sold them their shares), cause copies of the Notice of Settlement to be sent with notice to the relevant broker-dealers;

3.      Until ten days prior to the Final Settlement Hearing, Adviser Defendants would make extra copies of the Notice of Settlement available to the relevant broker-dealers upon request;

4.      Not later than the Notice Date, Adviser Defendants would cause a summary of the Notice of Settlement to be published on *Business Wire*; and

5.      Prior to the Final Settlement Hearing, Adviser Defendants would serve on Counsel of Record and file with the Court proof, by affidavit or declaration, that the Notice of Settlement has been mailed or distributed to Shareholders as provided for in the Preliminary Approval Order. *See* Preliminary Approval Order, § 5.

The Settlement Agreement also provides that any Shareholder who objects to the approval of the Settlement Agreement may file written objections and appear at the Final Settlement Hearing to show cause why the Settlement Agreement should not be approved as fair, reasonable, and adequate and a judgment should not be entered thereon, or why attorneys' fees and expenses

should not be awarded in such amount as requested by plaintiffs' counsel.  To be heard or to have their papers or briefs entertained at the Final Settlement Hearing (except if the Court in its discretion shall otherwise direct), a notice of intention to appear or copies of all papers and briefs proposed to be submitted at the hearing must be served upon counsel identified in the notice.  *See* Settlement Agreement, § 6.2(c); *see also* Preliminary Approval Order, § 9.

E. **Attorneys' Fees and Litigation Expenses.**  The Settlement Agreement provides that, subject to the Court's approval, counsel for plaintiffs may make, and defendants will not oppose, an application for the reimbursement of attorneys' fees and expenses of up to a maximum of $450,000 in the aggregate to be paid by Adviser Defendants in connection with the prosecution of this Action on behalf of plaintiffs.  The Settlement Agreement also provides that none of the attorneys' fees and expenses awarded to counsel for plaintiffs will be paid or reimbursed by the Columbia Funds.  *See* Settlement Agreement, §§ 5.3, 8.1.

F. **Defendants' Right to Reject Settlement.**  The Settlement Agreement provides that it is contingent upon preliminary and final court approval, including class certification for the purposes of settlement, and provides that in the event that the cost of providing notice to shareholders pursuant to the terms of the Settlement Agreement exceeds $1 million, the Adviser Defendants have the unilateral right, in their sole discretion, to reject the Settlement Agreement. *See* Settlement Agreement, §§ 9.1, 9.2.

G. **Costs of Administering Settlement.**  The Settlement Agreement provides that the Adviser Defendants shall bear the reasonable costs and expenses of notifying shareholders of the terms of the Settlement Agreement, the costs of identifying shareholders of the Settling Funds to whom the notice is required to be sent, and of printing, addressing, and mailing or distributing the

8

notice as provided for in the proposed Preliminary Approval Order, subject to the proviso noted above, that if the cost of providing notice to shareholders exceeds $1 million, the Adviser Defendants have the unilateral right, in their sole discretion, to reject the Settlement Agreement. *See* Settlement Agreement, § 6.3.

        **H.**      <u>**No Admission of Wrongdoing.**</u>

The Settlement Agreement broadly provides that the Settlement Agreement shall not be offered or received as evidence of, or construed or deemed to be evidence of, any wrongdoing by any of the defendants. *See* Settlement Agreement, § 10.1.

**IV.**    **THE PRELIMINARY APPROVAL ORDER AND NOTICE TO THE SETTLEMENT CLASS**

In the Preliminary Approval Order, entered by the Court May 17, 2007, the Court (1) granted preliminary approval of the Settlement Agreement, (2) certified, for settlement purposes only, a settlement class, (3) scheduled a final settlement hearing to take place following notice to the settlement class, (4) set the deadline for filing objections to the Settlement Agreement, and (5) approved, as to form and content, the Notice of Settlement and the summary of the Notice of Settlement and the method by which notice will be provided.

The Adviser Defendants have complied with the Notice Procedure ordered by the Court. *See* Affidavit of T. Peter R. Pound Regarding Notice Procedure ("Pound Aff."), §§ 2-11. Over 875,000 Notices of Settlement were mailed directly to shareholders. *See* Pound Aff. § 3; Affidavit of Joanne Kane Regarding Notice Procedure ("Kane Aff."), §§ 2-4; Affidavit of Robert D. Krogman Regarding Mailing Notice to Settlement Class ("Krogman Aff."), §§ 4-7. For shareholders who held or hold shares in "street name," the Adviser Defendants caused copies of the Notice of Settlement to be sent to the broker-dealers who are the nominal owners of the

shares.  *See* Pound Aff. §4; Kane Aff. § 5.  The Adviser Defendants also made extra copies of the Notice of Settlement available to the relevant broker-dealers upon request.  *See* Pound Aff. § 5.  A summary of the Notice of Settlement was published on *Business Wire*.  *See id*., §6.   The full Notice of Settlement was available on the Columbia Funds website, the Milberg Weiss LLP website, and the Stull, Stull & Brody website.  *See id*., § 7; *see also* Kane Aff. § 6.  The toll-free telephone number shareholders could call to request that a copy of the Notice of Settlement be mailed to them was available and in response to such requests, copies of the Notice were mailed out.  *See* Pound Aff., § 8; Kane Aff., § 7.

The Notice of Settlement provided that members of the Settlement Class could object to the settlement.  As of August 27, 2007, of the more than 875,000 notices mailed out, only twelve (12) objection letters were filed with the Court that complied with the requirements for objecting.  *See* Pound Aff., § 9.  Six other objection letters were filed with the Court which did not comply with the requirements and five other objection letters were received by counsel for either plaintiffs or defendants, but not filed with the Court.   *See id*.  This total number of twenty-three (23) objection letters (the "Objections"; each an "Objection" or "Obj.") demonstrates an overwhelmingly favorable response to the Settlement Agreement by the Settlement Class members.  The Objections -- regardless of whether the letters were compliant with the formal requirements in the Notice of Settlement -- are addressed at Section VI, *infra*.  In addition, no members of the Settlement Class asked the Court for permission to appear and be heard at the Final Approval Hearing.  *See* Pound Aff., § 10.

The Preliminary Approval Order and the Notice of Settlement provided a procedure by which members of the Settlement Class could exclude themselves from the Settlement.  *See*

Preliminary Approval Order, § 8; Pound Aff., § 11.  In the Preliminary Approval Order, the court

approved Gilardi & Co. LLC as administrator for gathering exclusion notices from persons who

seek to opt out of the Settlement Class.  *See* Preliminary Approval Order, § 4.  Gilardi & Co.

LLC has communicated to Bingham McCutchen LLP that, as of September 10, 2007, it has

received 239 opt-out letters postmarked as of August 27, 2007.  *See* Pound Aff., § 11.

## V.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Under Fed. R. Civ. P. 23, this Court should approve a settlement upon finding its terms are

"fair, reasonable, and adequate."  *Duhaime v. John Hancock Mut. Life. Ins. Co.*, 177 F.R.D. 54, 73

(D. Mass 1997).  The parties believe that the settlement of the Action on the terms and conditions

outlined at Section III, *infra*. -- and more fully set forth in the Settlement Agreement -- is fair,

reasonable, and in the best interest of the parties and the absent members of the Settlement Class.

When making a final determination regarding the "fairness, reasonableness, and

adequacy" of a settlement, courts will "consider both the substantive terms of the settlement

compared to the likely result of the trial and the negotiating process by which the settlement was

reached."  *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) (internal

quotations and citation omitted).  "Approval is to be given if a settlement is untainted by collusion

and is fair, adequate, and reasonable."  *In re Lupron Marketing and Sales Practices Litig*., 228

F.R.D. 75, 93 (D. Mass. 2005).  In such an evaluation, "[t]he primary concern is with the

substantive terms of the settlement: Basic to this . . . is the need to compare the terms of the

compromise with the likely rewards of litigation."  *Maywalt v. Parker & Parsley Petroleum Co.,*

67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotations and citations omitted).  "This fairness

determination is not based on a single inflexible litmus test but, instead, reflects its studied review

of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Bussie*, 50 F. Supp. 2d at 72 (citing *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-23 (D. Mass. 1987)).

Furthermore, in considering a proposed settlement, the court need not reach any ultimate conclusions on the substantive factual or legal issues of plaintiffs' claims. *See City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 456 (2d. Cir. 1974), *overruled on other grounds*, 491 U.S. 274 (1989). "It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement. . . . Such procedure would emasculate the very purpose for which settlements are made." *Id*. at 462 (internal quotations and citation omitted). "Nor should the Court make the proponents of the agreement justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

There is a "strong initial presumption" that a proposed settlement negotiated during the course of litigation is "fair and reasonable." *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993); *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ("A strong initial presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process and when the number of objectors is small."). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (citation omitted).

The determination of the fairness of a proposed settlement is left to the sound discretion of the trial court. *See, e.g.*, *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972); *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. at 53. When exercising its discretion, the Court will review the proposed settlement in light of the strong judicial and public policies that favor settlements. *See, e.g., In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999).

While the "central question of whether the settlement is reasonable in light of the uncertainty of litigation" (*Bussie*, 50 F. Supp. 2d at 72 (citation omitted)), specific factors to be considered in evaluating the fairness of the Settlement include, *inter alia*: (1) the timing and nature of the settlement negotiations and the amount of discovery completed; (2) the substantial risks the Settlement Class faces of prevailing on appeal and establishing liability and recovering damages in further litigation; (3) class counsel's recommendations; (4) the reaction of the Settlement Class to the settlement; and (5) the nature and merit of any objections to the Settlement by members of the settlement class. *See, e.g.*, *M. Berenson Co.*, 671 F. Supp. at 822-823; *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. at 94; *City of Detroit*, 495 F.2d at 463. As discussed below, the Settlement is fair, reasonable and adequate to the members of the Settlement Class and should be approved by this Court.[1]

---

[1] The nature and merit of Objections to the Settlement made by members of the Settlement Class are addressed at Section VI, *infra*.

### A.    The Parties Negotiated and Entered into the Settlement Only After the Case was Dismissed on the Merits and Plaintiffs Filed an Appeal

In examining the fairness of a settlement, the Court may scrutinize the negotiations leading to the settlement.  *See, e.g., Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  In the absence of evidence to the contrary, however, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11:41 (4th ed. 2002).  Here, hard fought settlement negotiations only commenced after defendants' motion to dismiss, extensively briefed and argued by the parties, was granted in its entirety  and  judgment entered in favor of defendants.  The Settlement Agreement was the product of extensive, adversarial, non-collusive, arms-length negotiations conducted before a neutral, court-appointed mediator in CAMP.  In addition, the Settlement Agreement was negotiated by counsel with extensive experience in derivative and class action litigation.

### B.    The Substantial Risks the Class Faces of Prevailing on Appeal and Establishing Liability and Recovering Damages in Further Litigation

In evaluating the Settlement, the Court is not required to engage in a trial on the merits to determine the prospects of success. *See, e.g.*, *In re Michael Milken and Assocs.*, 150 F.R.D. at 53. The determination of reasonableness recognizes that "in any case there is a range of reasonableness with respect to a settlement--a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman*, 464 F.2d at 693.  Moreover, the possibility that plaintiffs "might have received more if the case had been fully litigated is no reason not to approve the

14

settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted). Finally:

> [t]he dollar amount of the settlement by itself is not decisive in the fairness determination. . . . Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, *but rather in light of the strengths and weaknesses of plaintiffs' case*.

*In re Agent Orange Product Liability Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (citations omitted; emphasis added).

Here, the Settlement is a significant recovery for the Settlement Class in light of the totality of the circumstances: it has produced valuable concessions that will benefit certain Settlement Class members, depending on the dates on which they hold or held their shares. *See* Section III.B, *supra*; *see also* Section VI, *infra*. Indeed, settlements can be approved even when the recovery therein amounts to only a small percentage of the recovery sought. *See, e.g., In re Michael Milken and Assocs.*, 150 F.R.D. at 54-55; *City of Detroit*, 495 F.2d at 455; *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590-91 (S.D.N.Y. 1992). In fact, settlements which did not provide for any monetary damages for class members have also been approved by courts. *See, e.g., City of Detroit*, 495 F.2d at 455 n. 2; *Sunrise Toyota, Ltd. v. Toyota Motor Co., Ltd.*, No. 71 Civ. 1335-LFM, 1973 WL 778, at *4-5 (S.D.N.Y. Feb. 20, 1973); *Kusner v. First Pa. Corp.*, 74 F.R.D. 606, 609 (E.D. Pa. 1977), *aff'd*, 577 F.2d 726 (3d Cir. 1978).

Although the parties disagree regarding whether defendants' motion to dismiss was properly granted, the parties agree that plaintiffs face substantial risks of establishing liability and recovering damages in pursuing further litigation. Defendants believe that plaintiffs have no likelihood of prevailing on the merits, as is demonstrated by the results in recent cases addressing

A/72189130.2

dismissal of identical or substantially similar complaints. *See* Defendants' Supplemental Memorandum in Support of Joint Motion for Class Action Settlement and Entry and Final Order and Judgment.

As evidenced by the vigor with which they have prosecuted the case and filed their appeal, and the amount of time and money they have expended on a contingent basis towards that end, plaintiffs' counsel have been and are fully committed to obtaining the best possible result in this case. Plaintiffs acknowledge, however, that both the appeal and a trial on the merits would present numerous risks for the plaintiffs.

Plaintiffs conclude that the substantial risks of prevailing on appeal and establishing liability and recovering damages in further litigation dictate that the Settlement is reasonable, fair, and adequate. In evaluating the appropriateness of settlement, plaintiffs and their counsel have been mindful of substantial appeal and litigation risks and costs, case law developments, and substantial differences of opinion between plaintiffs and defendants on plaintiffs' ability to prove liability. Plaintiffs recognize that defendants, represented by experienced and competent counsel, have forcefully argued that plaintiffs' claims fail as a matter of law, and have further consistently denied liability for and dispute the matters alleged and deny any wrongdoing, harm, or liability to the plaintiffs and the Settling Funds. Moreover, plaintiffs' assessment is that defendants have shown no hesitancy to argue the appeal and litigate the matter through trial and further appeal if necessary. Plaintiffs and their counsel have also considered that pursuing the appeal and further litigation might result in less or no recovery.

16

Defendants' view of plaintiffs' chances, set forth in the Defendants' Supplemental Memorandum in Support of Joint Motion for Final Approval of Class Action Settlement, is far more pessimistic.  Recent legal developments since the execution of the Settlement Agreement demonstrate that plaintiffs' position on appeal has been substantially weakened and that defendants would almost certainly prevail on key legal issues in the appeal and any further litigation.  Consequently, defendants' view is that while the Settlement was "fair, adequate, and reasonable" at the time it was executed, it is now all the more so.

Further, even if it is assumed that plaintiffs could successfully establish liability, there are significant uncertainties as to both the fact and the quantum of damages.  The issue of damages would be intensely disputed, and such dispute would almost certainly involve analysis by experts retained by the parties, which infuses an additional element of uncertainty.  *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages . . . . In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited . . . .") (citations omitted).

### C.  Plaintiffs' Counsel Highly Recommends Approval of the Settlement.

"The opinion and judgment of experienced counsel, whose labors produced the settlement, should also receive due consideration." *In re National Student Marketing Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974).  Plaintiffs' counsel has extensive experience in litigating derivative actions and class actions and has negotiated numerous other derivative action and class action settlements that have been approved by courts throughout the country.  Plaintiffs' counsel reached the

A/72189130.2

Settlement only after extensive analysis of the applicable law. Plaintiff's counsel has "a full understanding of the legal and factual issues surrounding this case," *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996), and are in an ideal position to evaluate the merits of their case.

Plaintiffs' counsel agreed to the Settlement upon consideration of the strengths and weaknesses of the plaintiffs' claims and the benefits to the Settlement Class and Settling Funds associated with the Settlement. Given the risks that would come with the appeal and further litigation, including delay, the significant expenses of continued litigation, the uncertainties of this complex area of law and a probable appeal regardless of the trial's outcome, it is the informed conclusion of plaintiffs' counsel that this Settlement is fair, reasonable and adequate to the Class.

### D.    The Favorable Reaction of the Fund's Shareholders Supports Approval of the Settlement.

An important factor to be considered in determining the fairness of the Settlement is the reaction by the Funds' shareholders. *Shlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978). In particular, "one indication of the fairness of a settlement is the lack of or small number of objections." *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C.1990) (quoting *Newberg on Class Actions*, § 11.47, at 463 (2d ed. 1985)). As set out above, pursuant to the Preliminary Approval Order, the Adviser Defendants mailed upwards of 875,000 copies of the Notice of Settlement. The Notice of Settlement set out the terms of the Settlement, stated that plaintiffs' counsel will seek an award of attorneys' fees and expenses not to exceed $450,000 in the aggregate (to be paid by the Adviser Defendants upon the Court's approval of plaintiffs' counsel's application), and provided instructions regarding how members of the Settlement Class could

object to the Settlement. In total, only twenty-three (23) shareholders filed objections (only twelve (12) of which complied with the procedural requirements for objecting). Thus, the objections represent a miniscule portion of the Settlement Class and reflect the highly favorable reaction of the members of the Settlement Class. In addition, no Settlement Class members requested permission to appear or to be heard at the Final Approval Hearing.

## E.    Conclusion.

The settlement of disputes is favored by the law: "[i]t is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. . . . In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong*, 616 F.2d at 312-13 (internal quotations and citations omitted). The court in *Armstrong* also stressed that "the essence of a settlement is a compromise [--] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a resolution somewhere between the two extremes." *Id.* at 315. The Settlement Agreement, reached after substantial litigation and extensive negotiation, represents a fair and reasonable resolution to the Action, provides substantial benefits to the members of the Settlement Class tailored to the unique situation of this case, and disposes of the inherent uncertainty, burden, expense, and delay of potentially protracted appeal practice and litigation.

## VI.    RESPONSE TO OBJECTIONS

### A.    The Objections.

The objectors assert that the Settlement is inadequate for the following reasons:[2]

- The Settling Funds should not be forced to absorb, directly or indirectly, the costs of Plaintiffs' Counsels' attorneys' fees. *See* Balfour Obj. (Docket No. 108); Yared Obj. (Docket No. 110); Million Obj. (Docket No. 109); Monette Obj. (Docket No. 125); Holmes Obj. (Exhibit C to Pound Aff.); Seidel Obj. (Exhibit C to Pound Aff.).

- The Settlement fails to provide payments or benefits to the Settling Funds' shareholders or does not provide adequate benefits. *See* Yared Obj. (Docket No. 110); G. Miller Obj. (Docket No. 111); W. and E. Miller Obj. (Docket No. 113); Hoyer Obj. (Docket No. 115); Ouzts Obj. (Docket No. 119); Fuller Obj. (Exhibit C to Pound Aff.); Arsuaga/Merheb Obj. (Docket No. 120); Randall Obj. (Docket No. 118); Moellenhoff Obj. (Docket No. 124); Seidel Obj. (Exhibit C to Pound Aff.); Schiebel Obj. (Exhibit C to Pound Aff.). In particular, one of the Objectors states, "[m]ost of the benefits listed in the Notice of Settlement occurred prior to the entry of the settlement agreement." Seidel Obj. (Exhibit C to Pound Aff.). In addition, the Notice of Settlement is not clear on which of the funds will benefit from the $100,000 "hard dollar" contribution to research expenses. *Id*. The Settlement also fails to

---

[2] The Davis (Docket No. 112), Flocco (Exhibit C to the Pound Affidavit), and Vickers (Docket No. 114) Objections do not state substantive objections to the Settlement. The Goyetche Objection (Docket No. 117) confuses this litigation with different litigation relating to the Columbia Funds. The Talkington Objection (Docket No. 122) requests that the Court sanction the plaintiffs' attorneys for bringing the Action, without stating the basis for the request.

provide any compensation for former shareholders, even though such persons are required to provide a release.  *See* W. and E. Miller Obj. (Docket No. 113).

- Putative class members who did not own Columbia Acorn or Columbia Acorn Select Funds were not represented at the Settlement negotiations.  *See* Seidel Obj. (Exhibit C to Pound Aff.).

- There is no commonality of interest among the various class members because the class includes both current and former shareholders of the Settling Funds.  *See* Seidel Obj. (Exhibit C to Pound Aff.).

- One basis for the dismissal of the Action by the district court was that class representatives lacked standing to bring claims on behalf of other shareholders, but the parties have executed a settlement contrary to that ruling.  *See* Seidel Obj. (Exhibit C to Pound Aff.).

- The Notice of Settlement arrived only in mid-July, even though the Notice is dated May 17, 2007, such that there was not enough time "for researching old files" or for "contacting an attorney to write a proper letter."  W. and E. Miller Obj. (Docket No. 113).

- There was no prior notice of the Litigation to the members of the putative class.  W. and E. Miller Obj. (Docket No. 113).

- The Notice of Settlement does not provide enough information to permit a determination of whether plaintiffs' and defendants' counsel have a conflict of

interest with the "Columbia Entities Investment." Osei-Bonsu Obj. (Docket No. 121).

- Plaintiffs' counsels' fees and expenses are unwarranted, excessive or should be borne by plaintiffs' counsel since they agreed to represent the Named Plaintiffs in the Action on a contingent basis. *See* Yared Obj. (Docket No. 110); G. Miller Obj. (Docket No. 111); Hoyer Obj. (Docket No. 115); Stevens Obj. (Docket No. 116); Ouzts Obj. (Docket No. 119); Fuller Obj. (Exhibit C to Pound Aff.); Arsuaga/Merheb Obj. (Docket No. 120); Randall Obj. (Docket No. 118); Osei-Bonsu Obj. (Docket No. 121); Semin Obj. (Docket No. 123); Moellenhoff Obj. (Docket No. 124); Monette Obj. (Docket No. 125); Seidel Obj. (Exhibit C to Pound Aff.). [3]

- Concern about the motivation of the class representatives in filing the Action and the adequacy of representation because of the involvement of the "Milberg Weiss law firm." *See* Seidel Obj. (Exhibit C to Pound Aff.).[4]

**B.    Preliminary Statement.**

As set out above, a total of twenty-three (23) Objections were received (only twelve (12) of which complied with the procedural requirements for objecting). That so few objectors emerged -- approximately 0.0026% (23 of approximately 875,000 persons to whom the Notice of Settlement was sent directly) -- "constitutes 'strong evidence' of the fairness of [the] proposed

---

[3] This Objection will be addressed by plaintiffs in their Memorandum of Law in Support of Class Counsel's Motion for Attorney's Fees and Reimbursement of Expenses.

[4] *Id.*

settlement and supports judicial approval." *In re Painewebber P'ship Litig.*, 171 F.R.D. 104, 104 (S.D.N.Y 1997). The number of objections is *de minimis*, and the reaction of the class overwhelmingly favorable. *See Bussie*, 50 F. Supp. 2d at 77 (considering the number of objections to be "*de minimis*" where 0.003% of class members timely filed objections to the settlement).

In addition, the Objections need to be evaluated in light of the "central question of whether the settlement is reasonable in light of the uncertainty of litigation," addressed above. *Bussie*, 50 F. Supp. 2d at 72 (*citing M. Berenson Co.,* 671 F. Supp. at 822-23). Finally, it must be kept in mind that "the essence of a settlement is a compromise [--] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a resolution somewhere between the two extremes." *Armstrong*, 616 F.2d at 315.

As demonstrated below, none of the Objections has merit and all should be overruled.

**C.    The Objections Lack Merit and Should Be Overruled.**

**1.    The Settling Funds Are Not Paying the Costs of Plaintiffs' Counsels' Fees and Expenses.**

The Settlement Agreement provides that the "Adviser Defendants shall pay attorneys' fees and expenses, as described below in paragraph 8.1, that shall not exceed, in the aggregate, $450,000." Settlement Agreement, § 5.3. The Settlement Agreement also provides that:

> [s]ubject to the Court's approval, counsel for Named Plaintiffs may make an application for the reimbursement of attorneys' fees and expenses of up to $450,000 in the aggregate to be paid by Adviser Defendants in connection with the prosecution of this Action on behalf of Named Plaintiffs and the Settling Funds. That shall be the total and complete obligation of the Released Parties for attorneys' fees and expenses. In no event shall any of the Released Parties have an obligation to pay counsel for Named Plaintiffs attorneys' fees and expenses in excess of $450,000. The Released Parties will not oppose an application by counsel for Named Plaintiffs for attorneys' fees and expenses of up to $450,000 in

connection with the prosecution of this Action.  None of the attorneys' fees and expenses awarded to counsel for Named Plaintiffs shall be paid or reimbursed by the Columbia Funds.

Settlement Agreement, § 8.1.  The Adviser Defendants shall pay such attorneys' fees as may be approved by the Court not to exceed, in the aggregate, $450,000.  Such fees will be paid from the legitimate profits of the Adviser Defendants and will not result in an increase in fees charged to the Columbia Funds.  *See* Affidavit of J. Kevin Connaughton ("Connaughton Aff."), §§ 2, 3. Objections to the contrary are unfounded speculation, and should be summarily disregarded.

## 2.    The Settlement is Supported by Adequate Consideration.

Consideration for the Settlement includes the "break points" implemented by the Adviser Defendants, the agreement to enhance shareholder communications, the reduction of "soft dollar" spending from approximately $20 million per year to approximately $5 million per year, the agreement by the Adviser Defendants to contribute, subject to Court approval of the Settlement, $100,000 in total as a "hard dollar" contribution to research expenses for the benefit of some or all of the Settling Funds, and the mutual releases provided by the parties.[5]

Breakpoints are levels of assets under management at which a mutual fund becomes eligible for a reduction in the fees charged by its adviser.  *See* Connaughton Aff., § 4.    In November and December 2004, breakpoints were implemented for many of the Settling Funds.

---

[5] In addition, the Settlement Agreement provided that the Adviser Defendants would bear the reasonable costs of identifying Shareholders of the Settling Funds to whom the Notice of Settlement is required to be sent, and of printing, addressing, and mailing or distributing the Notice of Settlement.  *See* Settlement Agreement, § 6.3.  As set out above, the Adviser Defendants have complied with the requirements of the Notice Procedure.  While the final costs associated with the Notice Procedure are not yet known, they are presently estimated to amount to several hundreds of thousands of dollars.

*Id.*  These breakpoints were approved by the Funds' Boards on October 12, 2004.  *Id.*  Initially, the changes were implemented, effective November 1, 2004, by a fee waiver for certain funds, and, thereafter by a change to the Statements of Additional Information ("SAI").  *Id.*  In particular, a Supplement to the SAI which implemented fee changes/breakpoints for many of the Settling Funds, dated April 15, 2005, reflects the implementation of the SAI changes and references the earlier implementation by fee waiver.  *Id.*  The implemented fee changes/breakpoints had the effect of introducing breakpoints for most Funds in the complex which did not already have them.  *Id.*  An important, although not the sole, impetus for the change was the pending settlement with New York Attorney General Elliott Spitzer relating to alleged "market-timing" activity.  *Id.*  The institution of this action was also a factor in causing the implementation of the fee changes/breakpoints.  *See* Settlement Agreement, § 5.2(a).

The breakpoints resulted in substantial savings to the Columbia Funds, including the Settling Funds.  Connaughton Aff., § 5.  Initially, fees were reduced in 2004 to a level that provided for savings to shareholders of Columbia Funds of approximately $15.8 million.  *Id.* Simultaneously, the installation of the breakpoints provided for the perpetuation of the fee reductions.  *Id.*  Since that time, however, the amount of savings to shareholders from the breakpoints has increased significantly beyond what was initially projected in late 2004 / early 2005:  for 2005, shareholder savings were approximately $25.7 million; for 2006, shareholder savings were approximately $29.1 million; and projected shareholder savings for 2007 are approximately $27.8 million.[6]  *Id.*

---

[6] One of the Objections suggests that former shareholders receive no benefit under the Settlement Agreement.  *See* W. and E. Miller Obj. (Docket No. 113).  As set out above, however, depending

The Columbia Funds have made, and continue to make, enhancements to shareholder communications.  *See* Affidavit of James R. Bordewick, Jr. ("Bordewick Aff."), § 3.  In 2006, the disclosures relating to the Columbia Funds' revenue-sharing practices were enhanced, particularly to state the range of fees paid in basis points or appropriate financial equivalents.  *Id.*; *compare also* Exhibits A and B to Bordewick Aff.   Commencing in 2007, Columbia Funds began introducing further revised disclosures for all of the Columbia Funds.   *Id.*  The "roll-out" of the revised disclosure language began with certain Columbia Funds on July 1, 2007, and is presently scheduled to continue through June 1, 2008.  *Id.*; *see also* Exhibit C to Bordewick Aff.

In addition, on May 18, 2007, the Columbia Funds posted new disclosure language on its website, www.columbiafunds.com.  *Id.*, § 4.  An option on the first page, under the heading "Product Resources," allows the viewer to click to navigate to a webpage that contains information on "Payments to Intermediaries."  *Id.*  That page states the following:

> Columbia Management Distributors, Inc. or its affiliates may make payments, from their own resources, to certain financial intermediaries, including other Bank of America affiliates, for marketing support services. Payments may also be made to certain financial intermediaries, including other Bank of America affiliates, that provide investor services to retirement plans and other investment programs to compensate financial intermediaries for services they provide to such programs, including, but not limited to, sub-accounting, sub-transfer agency, similar shareholder or participant recordkeeping, shareholder or participant reporting, or shareholder or participant transaction processing.

> Additional information regarding these payments is available in your Fund's prospectus and statement of additional information. View an example of this disclosure. Specific information in this disclosure may vary by Fund and may change without notice. Please see your Fund's prospectus and statement of

---

upon when a shareholder sold his or her shares, he or she might have benefited from the breakpoints which were implemented in November and December 2004.

additional information for specific information on payments to financial intermediaries relating to your Fund.

*Id.*; *see also* <u>Exhibit D</u>, to Bordewick Aff. A link to "[v]iew an example of this disclosure" connects to a sample disclosure, from the Columbia Large Cap Growth Fund Prospectus dated February 1, 2007. *Id.*, *see also* Exhibit E to Bordewick Aff.

As noted above, if the Settlement is finally approved by the Court, the Adviser Defendants will contribute $100,000 in total as a "hard dollar" contribution to research expenses. This "hard dollar" contribution will be used, under the auspices of the Columbia Funds' Trading Committee's governance process, to purchase external research. Connaugton Aff., § 6. The "hard dollar" contribution to research expenses will benefit some or all of the Settling Funds because the Adviser Defendants pool research expenses and once external research is purchased, the research is available to the Adviser Defendants in managing the portfolios of any of the Columbia Funds, as well as its other clients.[7] *Id.*

Accordingly, more than adequate consideration supports the settlement and this Objection should be overruled.

      **3.**    <u>**The Objection That Putative Class Members Who Did Not Own Columbia Acorn or Columbia Acorn Select Funds Were Not Represented in the Settlement Negotiations Is Untrue and Without Merit.**</u>

While the Court ruled that the plaintiffs did not have standing to represent persons who did not own funds within the Columbia Acorn Trust/Columbia Acorn Funds, the Action was initially

---

[7] This explanation also disposes of Ms. Seidel's Objection (*see* Exhibit C to Pound. Aff.) that the Notice of Settlement is not clear regarding which of the funds will benefit from the $100,000 "hard dollar" contribution to research expenses.

brought on such other fund holders' behalf and the appeal sought to reinstate the claim on their behalf. Thus, during the ensuing settlement negotiations, plaintiffs' counsel continued to act on behalf of all the shareholders of all of the Settling Funds. Similarly, the Objection that the Settlement is contrary to the ruling of the Court for the reason that the Court had ruled that the class representatives lacked standing to bring claims on behalf of other shareholders (of other funds) ignores the whole concept of negotiating a settlement of a case that has been dismissed and is pending on appeal. The effect of the appeal is that the Court's ruling as to the standing of the plaintiffs (as well as to all of the other issues which were ruled upon) was placed on a certain level of uncertainty. Although plaintiffs were at risk in proceeding with the appeal, there was an uncertainty as to whether the Court of Appeals would have reversed the ruling of the Court. Thus, for all parties to address that level of uncertainty, it was appropriate to negotiate a settlement that implicates holders of all of the Settling Funds. Otherwise, there would have been no incentive for the parties to have engaged in settlement negotiations and they would have been forced to go through the lengthy and expensive process of briefing and arguing the appeal and having the Court of Appeals resolve the uncertainties and risk rather than, as public policy favors, the parties resolving the issues amongst themselves. Finally, as set out above, the Settlement has produced valuable concessions that will benefit Settlement Class members other than those who held Columbia Acorn or Columbia Acorn Select Funds.

As such, this Objection lacks merit and should be overruled.

4.    **There is Commonality of Interest Among the Members of the Settlement Class.**

The inclusion of both current and former shareholders of the Settling Funds does not undermine commonality of interest.  "Because the class need share only a single legal *or* factual issue at this stage of the analysis, the commonality prerequisite ordinarily is easily satisfied." *Mulligan v. Choice Mortgage Corp. USA*, 1998 U.S. Dist. LEXIS 13248, at *8 (D.N.H. 1998) (emphasis added); *see also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (courts have "liberally construed" the commonality requirement, requiring only a "minimum of one issue common to all class members.") (citation omitted).   Here, the Action concerned allegations of a common course of conduct undertaken by the defendants -- allegedly improper distribution practices -- that affected the Settlement Class members, which easily satisfies the commonality requirement of Federal Rule of Civil Procedure 23(a)(2).   Indeed, although defendants disagree, plaintiffs emphasize that Courts frequently reject the proposition that a class representative who still holds a security cannot represent class members who have sold, and vice-versa.  *See generally, In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 185-88 (D. Me. 2003) (approving settlement whereby club membership was required in order to make use discount that was benefit of settlement of class action and court noted, "the odds of winning the lawsuit for music club members were extremely slim," and therefore, the court was "satisfied that this settlement does provide value to the class members and that it is better than nothing, the probable outcome of continuing the lawsuit"); *In re Tricord Sys. Sec. Litig.*, 1996 U.S. Dist. LEXIS 20943, *25 (D. Minn. Apr. 5, 1996) (holding that "a plaintiff who has acquired and retained securities can thoroughly and adequately represent parties who purchased securities and then sold them, and vice versa" (quoting 4 Newberg on Class Actions, §

22.32 at 22-137-140; and citing *In re Endotronics*, 1988 U.S. Dist. LEXIS 745 (D. Minn. Jan 28,

1988))).  *See also Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 461-63

(9th Cir. 2000) (affirming district court's approval of the plan of distribution of settlement

proceeds' methodology under which a large portion of the class received no benefit).

Therefore, this Objection is without merit and should be overruled.

## 5.    The Settlement Provides for Appropriate Releases.

In the Action, plaintiffs proceeded on both a class and derivative basis.  One basis for the

district court's dismissal of certain claims in the Action was that the class representatives lacked

standing to bring derivative claims on behalf of Funds in which the Named Plaintiffs did not own

shares.  For the reason that litigating the Action has been costly and disruptive to the defendants

and to ensure that the threat of litigation regarding the allegations in the Action are definitively

put to rest, counsel for the Adviser Defendants' insisted that the Settlement Agreement provide

that releases be made by both the Class Shareholders and the Current Shareholders.  Without such

broad releases, there would be no motive for corporate defendants to enter into class action or

derivative settlements.  Similarly, plaintiffs' counsel insisted that a release be executed by

defendants.  To provide definitive resolution of all issues relating to the Action for both parties,

such releases are appropriate.

In order to achieve the settlement, plaintiffs reasonably agreed to require a release from

Class members who are no longer shareholders of the Settling Funds ("Former Holders") if they

fail to opt out of the class, despite the fact that the benefits from the litigation and settlement may

not impact persons who ceased to be shareholders prior to November 2004.  The claims of the

Former Holders are extremely weak.  By the time of the mediation, an avalanche of cases held

30

that claims similar to the Former Holders' claims must be dismissed because they do not provide private rights of action or are barred under Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), rendering those claims valueless. *See, e.g., Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110, 115 (2d Cir. 2007) (holding that ICA §§ 34(b), 36(a), and 48(a) do not provide a private right of action); *Gilliam v. Fidelity Management & Research Co.,* C.A. No. 04-11600-NMG (Report and Recommendation of Magistrate Bowler dated Sept. 18, 2006 (Docket No. 132); adopted by Judge Gertner Sept. 29, 2006) (same); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71 (2006) (dismissing similar state law claims because they were precluded under SLUSA.) Certain of these cases are discussed in more detail in Defendants' Supplemental Memorandum in Support of Joint Motion for Final Approval of Class Action Settlement and Entry of Final Order and Judgment. In light of those cases, the only remaining claim that could be effectively pursued, at least in theory, is the claim under Section 36(b) of the ICA -- a claim that is unavailable to the Former Holders as it statutorily requires a plaintiff to continue to be a shareholder to maintain an action thereunder. *See* 15 USCS § 80a-35(b) ("An action may be brought under this subsection by … a security holder of such registered investment company."). Further, many of these former Columbia Funds shareholders did in fact benefit from this litigation: as described above, the Adviser Defendants began reducing fees in late 2004, shortly after this action was commenced.

In addition, steps were taken to protect the rights of persons who did not want their claims to be released. Paragraph 8 of the Preliminary Approval Order provided a procedure for members of the Settlement Class to exclude themselves from the Settlement, thus preserving their ability to pursue any claims that would otherwise have been released if the Settlement is approved. *See Reppert v. Marvin Lumber & Cedar Co.,* 359 F.3d 53, 59 (1st Cir. 2004) (noting that even though

31

a claim was not presented and might not even have been presentable in a class action, it may be released in the context of a settlement).

Accordingly, this Objection lacks merit and should be overruled.

### 6.    Other Objections.

The Objection that the Notice of Settlement only arrived in mid-July, even though the Notice is dated May 17, 2007, is without merit.  May 17, 2007 was the date on which the Preliminary Approval Order was entered by the Court.  The Preliminary Approval Order approved the Notice of Settlement, which is why the Notice reflects that date.  The Preliminary Approval Order specifically provided that Notice of Settlement be mailed no later than June 30, 2007.  *See* Preliminary Approval Order, § 5.  As set out above at Section IV, the Adviser Defendants complied with the Notice Procedure.  When the parties sought preliminary approval from the Court and suggested a date for the deadline to submit objections, the parties took into account that it is reasonable to assume that there may be some delays associated with the delivery of certain mailings.  In this case, there was a window of approximately two months between the Court ordered deadline for mailing the notice and the deadline for opting out or objecting.  Even assuming that the objector did not receive the mailing until mid-July, that still provides an approximately six week time period for the objector to obtain any records (assuming that was necessary), to retain an attorney, if desired, and to make a decision as to whether or not to object and to file an objection.  The objector had more than enough time to take any and all appropriate steps (and did take such steps) to be heard in this action.

A/72189130.2

There is no merit to the Objection that there was no prior notice of the Action to the members of the putative class because such notice is not required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(e). Here, no class was certified in advance of the parties' request in their Joint Motion for Preliminary Approval of Class Action Settlement that a class be certified solely for the purposes of settlement. The Federal Rules of Civil Procedure only require notice when a class is certified. Providing a notice earlier in the litigation would have served no purpose. Such a notice would have resulted in extraordinary expense, and because there was no class certified, there were no steps for potential class members to take, such as excluding themselves from the class or opting out of a settlement. Accordingly, that objection is without merit.

The Objection that the Notice of Settlement does not provide enough information to permit a determination of whether plaintiffs' and defendants' counsel have a conflict of interest with the "Columbia Entities Investment" reflects either a misunderstanding of the Settlement or a misreading of the Notice of Settlement. Osei-Bonsu Obj. (Docket No. 121). Because there is no such conflict at issue in the Action, there was no information to provide in the notice for the Settlement Class to consider. Accordingly, that objection is without merit.

## VII.    THE COURT SHOULD FINALLY CERTIFY A SETTLEMENT CLASS

In the parties' Joint Memorandum in Support of Joint Motion for Preliminary Approval of Class Action Settlement filed with the Court April 11, 2007, the parties, at pages 13-17, set forth the reasons why the proposed Settlement Class should be provisionally certified under Federal Rules of Civil Procedure 23(a) and 23(b)(3). In the Preliminary Approval Order, the Court certified, for the purposes of the Settlement only, the Action as a class action on behalf of all

persons or entities who held one or more shares of any of the Settling Funds at any time during the period August 2, 1999 through the fourteenth (14th) day following the entry of the Amended Preliminary Approval Order.  *See* Preliminary Approval Order, § 2.    For the reason that the Preliminary Approval Order was entered May 17, 2007, the Settlement Class includes all shareholders who held one or more shares of any of the Settling Funds at any time during the period August 2, 1999 through May 31, 2007.

Nothing has changed since the entry of the Preliminary Approval Order which affects the Court's certification of the Settlement Class.  Therefore, for the reasons set out in the Parties' Joint Memorandum in Support of Joint Motion for Preliminary Approval of Class Action Settlement, the Court should finally certify, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, a Settlement Class comprised of all persons or entities who held one or more shares of any of the Settling Funds at any time during the period August 2, 1999 through May 31, 2007.  Excluded from the Settlement Class, however, are all persons and entities who timely and validly requested exclusion from the Class pursuant to the Notice of Settlement disseminated in accordance with the Preliminary Approval Order.

## VIII.  CONCLUSION

For the reasons stated above, the parties respectfully request that the Court grant the parties' Joint Motion and finally approve the Settlement and enter the proposed Final Order and

Judgment.

Dated: September 11, 2007

    Respectfully Submitted,

  /s/ Nancy Freeman Gans                            /s/ Frances S. Cohen
Nancy Freeman Gans (BBO # 184540)         Frances S. Cohen  (BBO # 542811)
Moulton & Gans, P.C.                                T. Peter R. Pound (BBO# 657378)
55 Cleveland Road                                    Michael C. Moran (BBO# 666885)
Wellesley, MA 02481                              Bingham McCutchen LLP
(781) 235-2246                                     150 Federal Street, Boston, MA  02110
                                              (617) 951-8000

*Counsel for Plaintiffs Joan Cohen, Gene F.*                *Counsel for Defendants FleetBoston*
*Osburn, Jean S.B. Simmonds and R.L.*               *Financial Corporation, a/k/a Bank of*
*Simmonds*                                          *America Corporation, Columbia*
                                              *Management Group, Inc., Columbia*
Jerome M. Congress                          *Management Advisors, Inc., Columbia*
Janine L. Pollack                             *Wanger Asset Management, L.P., Columbia*
Milberg Weiss LLP                          *Funds Distributor, Inc., Kevin*
One Pennsylvania Plaza                    *Connaughton, P. Zachary Egan, Kevin S.*
New York, NY 10119-0165               *Jacobs, Kenneth A. Kalina, Bruce H. Lauer,*
(212) 594-5300                              *Jean Loewenberg, Louis J. Mendes, Robert*
                                            *A. Mohn,  Todd Narter, Christopher Olson,*
*Counsel for Plaintiff Joan Cohen*              *John H. Park, Vincent P. Pietropaolo,*
                                            *Joseph Turo, and Leah J. Zell*
Jules Brody
Mark Levine
Stull, Stull & Brody                          Brien T. O'Connor
6 East 45th Street                                 Giselle J. Joffre
New York, NY 10017                            Ropes & Gray LLP
(212) 687-7230                                  One International Place
                                              Boston, MA 02110-2624
*Counsel for Plaintiffs Gene F. Osburn, Jean*        (617) 951-7000
*S.B. Simmonds and R.L. Simmonds*

                                            *Counsel for Defendants Columbia Funds*
                                          *Trust and Columbia Funds, excluding*
                                          *Columbia Acorn Trust and Columbia Acorn*
                                          *Funds*

A/72189130.2

Charles J. Piven
Marshall N. Perkins
Brower Piven, A Professional Corporation
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, MD  21202
(410) 332-0030

*Counsel for Plaintiff Joan Cohen*

Joseph H. Weiss
Richard A. Acocelli
Weiss & Lurie
551 Fifth Avenue, Suite 1600
New York, NY 10176
(212) 682-3025

*Counsel for Plaintiffs Gene F. Osburn, Jean
S.B. Simmonds and R.L. Simmonds*

Marc A. Topaz
Richard A. Maniskas
Schiffrin, Barroway, Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA  19087
(610) 667-7706

*Counsel for Plaintiff Paula Slicker*

David Pastor
Gilman and Pastor, LLP
225 Franklin Street, 16th Floor
Boston, MA  02110
(617) 742-9700

*Counsel for Plaintiff Paula Slicker*

Brian E. Pastuszenski
Joshua Vitullo
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(617) 570-1094

*Counsel for Columbia Acorn Trust and
Columbia Acorn Funds*

Kenneth E. Rechtoris
Todd E. Pentecost
Bell, Boyd & Lloyd LLC
70 W. Madison St., 3100
Chicago, IL  60602
(312) 807-4210

Timothy O. Egan
Peabody & Arnold LLP
50 Rowes Wharf
Boston, MA  02110
(617) 951-2100

*Counsel for Independent Trustee Defendants*

Richard J. Rosensweig
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, MA  02110
(617) 482-1776

Phil C. Neal
Mark A. Rabinowitz
Dao J. Boyle
Jenny S. Kim
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street, Suite 2200
Chicago, IL 60602
(312) 269-8000

*Counsel for Defendants Charles P.
McQuaid and Ralph Wanger*

A/72189130.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon counsel of record for each other party via the ECF/CM system on September 11, 2007.

/s/ T. Peter R. Pound
T. Peter R. Pound
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000
peter.pound@bingham.com

37