UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: COLUMBIA ENTITIES
LITIGATION

Civil Action No. 04-11704-MBB

### AFFIDAVIT OF J. KEVIN CONNAUGHTON

J. Kevin Connaughton does hereby state and depose under oath as follows:

1. I am the Managing Director, Fund Administration at Columbia Management Advisors, Inc. (together with Columbia Wanger Asset Management, L.P., the "Adviser Defendants"). I am the individual charged with, among other matters, the implementation of breakpoints for the Columbia Funds.

2. The Stipulation and Settlement Agreement dated January 19, 2007, executed by, *inter alia*, the Adviser Defendants (the "Settlement Agreement"), states that the "Adviser Defendants shall pay attorneys' fees and expenses, as described below in paragraph 8.1, that shall not exceed, in the aggregate, $450,000." Settlement Agreement, § 5.3. The Settlement Agreement also provides that:

> [s]ubject to the Court's approval, counsel for Named Plaintiffs may make an application for the reimbursement of attorneys' fees and expenses of up to $450,000 in the aggregate to be paid by Adviser Defendants in connection with the prosecution of this Action on behalf of Named Plaintiffs and the Settling Funds. That shall be the total and complete obligation of the Released Parties for attorneys' fees and expenses. In no event shall any of the Released Parties have an obligation to pay counsel for Named Plaintiffs attorneys' fees and expenses in excess of $450,000. The Released Parties will not oppose an application by counsel for Named Plaintiffs for attorneys' fees and expenses of up to $450,000 in connection

A/72172814.2

with the prosecution of this Action. None of the attorneys' fees and expenses awarded to counsel for Named Plaintiffs shall be paid or reimbursed by the Columbia Funds.

Settlement Agreement, § 8.1.

3.  The Adviser Defendants shall pay such attorney fees as may be approved by the Court not to exceed, in the aggregate, $450,000. Such fees will be paid from the legitimate profits of the Adviser Defendants and will not result in an increase in fees charged to the Columbia Funds.

4.  The Settlement Agreement notes that the Adviser Defendants have implemented certain break points:

> Adviser Defendants have taken certain actions regarding "break points", *i.e.*, a reduction in the overall rate charged as advisory fees when the mutual funds advised by Adviser Defendants reach certain levels of assets under management. In or about October or November, 2004, Adviser Defendants implemented certain breakpoints for many of the Settling Funds. Adviser Defendants acknowledge that the Action was a factor in the implementation of such breakpoints.

Settlement Agreement, § 5.2. Breakpoints are levels of assets under management at which a fund becomes eligible for a reduction in the fees charged by its adviser.

In November and December 2004, breakpoints were implemented for many of the Settling Funds. These breakpoints were approved by the Funds' Boards on October 12, 2004. Initially, the changes were implemented, effective November 1, 2004, by a fee waiver for certain funds, and, thereafter by a change to the Statements of Additional Information ("SAI"). In particular, a Supplement to the SAI which implemented fee changes / breakpoints for many of the Settling Funds, dated April 15, 2005, reflects the implementation of the SAI changes and references the earlier implementation by fee waiver. The implemented fee changes / breakpoints had the effect of introducing

breakpoints for most Funds in the complex which did not already have them. An important, although not the sole, impetus for the change was the pending settlement with New York Attorney General Elliott Spitzer relating to alleged "market-timing" activity.

5.  The breakpoints resulted in substantial savings to the Columbia Funds, including the Settling Funds. Initially, fees were reduced in 2004 to a level that provided for savings to shareholders of Columbia Funds of approximately $15.8 million. Simultaneously, the installation of the breakpoints provided for the perpetuation of the fee reductions. Since that time, however, the amount of savings to shareholders from the breakpoints has increased significantly beyond what was initially projected in late 2004 / early 2005: for 2005, savings were approximately $25.7 million; for 2006, savings were approximately $28.1 million; and projected savings for 2007 are approximately $27.8 million.

6.  The Settlement Agreement provides that:

> Since the Action was filed, Adviser Defendants have reduced the Settling Funds' soft dollar spending from approximately $20 million per year to approximately $5 million per year. In calendar year 2007, Adviser Defendants agree further: (i) to contribute, subject to the Court approval of the Settlement, $100,000 in total as a "hard dollar" contribution to research expenses for the benefit of some or all of the Settling Funds; and (ii) to confirm by letter to counsel for Named Plaintiffs that they have done so.

Settlement Agreement, § 5.2(c). If the Settlement Agreement is approved such that the "hard dollar" contribution to research expenses is to be paid, it will not be charged to, or paid or reimbursed by the Columbia Funds, but will instead be paid from the legitimate profits of the Adviser Defendants and will not result in an increase in fees charged to the Columbia Funds. This "hard dollar" contribution will be used, under the auspices of the

Columbia Funds' Trading Committee's governance process, to purchase external research. The "hard dollar" contribution to research expenses will benefit some or all of the Settling Funds because the Adviser Defendants pool research expenses and once external research is purchased, the research is available to the Adviser Defendants in managing the portfolios of any of the Columbia Funds, as well as its other clients.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 10th day of September, 2007.

/s/ J. Kevin Connaughton
J. Kevin Connaughton